## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE 1, JANE DOES 1–3,<br>JACK DOES 1–1750, JOAN DOES 1–750,<br><br>         Plaintiffs,<br>v.<br><br>KATHY HOCHUL, in her official capacity as<br>Governor of the State of New York,<br>HOWARD A. ZUCKER, in his official capacity<br>as Commissioner of the New York State<br>Department of Health, TRINITY HEALTH,<br>INC., NEW YORK-PRESBYTERIAN<br>HEALTHCARE SYSTEM, INC.,<br>WESTCHESTER MEDICAL CENTER<br>ADVANCED PHYSICIAN SERVICES, P.C.,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)  Case No. 21-CV-5067<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES

For their VERIFIED COMPLAINT against Defendants, KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., and WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C. ("WMC Health"), Plaintiffs, JOHN DOE 1–2, JANE DOES 1–3, JACK DOES 1–750, and JOAN DOES 1–750, allege and aver as follows:

### URGENCIES JUSTIFYING EMERGENCY RELIEF

1.     The seminal issue before this Court can be boiled down to a simple question: Does federal law apply in New York? Though the question borders on the absurd, so does Defendants' answer to it. Defendants have explicitly claimed to healthcare workers in New York, including

Plaintiffs, that federal law does not apply, and neither should they. Defendants have informed Plaintiffs, who have sincerely held religious objections to the Governor's mandate that all healthcare workers in New York must be fully vaccinated against COVID-19 by September 27, 2021 (the "**COVID-19 Vaccine Mandate**"), that no protections or considerations are given to religious beliefs in New York. Indeed, Defendants' answer has been an explicit claim that federal law does not provide protections to New York's healthcare workers. When presented with requests from Plaintiffs for exemption and accommodation for their sincerely held religious beliefs, Defendants have responded in the following ways:

- "**Religious exemptions are no longer accepted" in New York**. (*See infra* ¶ 83.)

- "As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination – even those previously approved**." (*See infra* ¶ 86.)

- "**WMC Health, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered**." (*See infra* ¶ 89.)

- "**Under the emergency regulations the NYS DOH will not permit exemptions or deferrals for: Sincerely held religious beliefs . . . . We are required to comply with state law**." (*See infra* ¶¶ 92–93.)

2. The answer to the question before this Court is clear: **federal law and the United States Constitution are supreme over any New York statute or edict, and New York cannot override, nullify, or violate federal law**. *See* U.S. Const. Art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). "**[The Supreme] Court has long made clear that**

federal law is as much the law of the several States as are the laws passed by their legislatures." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added). Indeed, "**[i]t is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712–13 (1985) (emphasis added) (cleaned up).

3.      Thus, there can be no dispute that **New York is required to abide by federal law and provide protections to employees who have sincerely held religious objections to the COVID-19 vaccines**. And, here, the federal law is clear: There can be no dispute that Title VII of the Civil Rights Act prohibits Defendants from discriminating against Plaintiffs on the basis of their sincerely held religious beliefs. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . religion."). And, Defendants have a duty under Title VII to provide religious exemptions and accommodations to those with sincerely held religious objections to the COVID-19 Vaccine Mandate. In direct contrast to this unquestionable principle of black letter law, however, every Defendant in this suit has seen fit to claim to its healthcare workers that the converse is true, and that New York law is supreme over federal law; has engaged in a conspiracy and scheme to discourage employees with religious objections to the mandatory vaccines from even seeking religious exemptions from such a policy; has informed Plaintiffs that their requests for an exemption and accommodation from the mandate cannot even be evaluated or considered; and has flatly denied all requests for religious exemption and accommodation from the mandate that all healthcare workers receive a COVID-19 vaccine.

Employers bent on discrimination "usually don't post help wanted signs reading 'blacks need not apply.'" *Lewis v. City of Unity City*, 918 F.3d 1213, 1261 (11th Cir. 2019) (Rosenbaum, J., concurring in part). But New York and its healthcare employers have no problem being direct: "**religious misbelievers need not apply**."

4.    The dispute in this case is not about what accommodations are available to Plaintiffs or whether accommodation of Plaintiffs' sincerely held religious objections can be conditioned on compliance with certain reasonable requirements. Plaintiffs have already acknowledged to Defendants that they are willing to comply with reasonable health and safety requirements that were deemed sufficient a few, short weeks ago and have been sufficient to consider them heroes for the last eighteen months. **The dispute is about whether Defendants are required to even consider a request for reasonable accommodation of Plaintiffs' sincerely held religious beliefs**. The answer is clear: **yes**. And this Court should require Defendants to acknowledge and accept that federal law mandates accommodation for Plaintiffs' sincerely held religious beliefs and order that Defendants extend such protections.

5.    **Plaintiffs have been given a deadline to become vaccinated by September 27, 2021 for hospital employees and October 7, 2021 for other facilities, forcing them to accept a vaccine injection by various arbitrary deadlines set by the employers, including September 13 at the latest for many Plaintiffs. If Plaintiffs do not comply with the vaccine mandate, they will be terminated and deprived of their ability to feed their families. No American should be faced with this unconscionable choice, especially the healthcare heroes who have served us admirably for the entire duration of COVID-19. A TRO is needed now to ensure that Defendants are enjoined from their continued efforts to deny that federal law even applies in New York and to compel Defendants to extend the protections that federal law demands**

of them. **Plaintiffs will suffer (and some have already suffered) irreparable harm by being forced to choose between their jobs and their sincerely held religious beliefs. Despite the Governor's mandate only requiring full vaccination by September 27, Plaintiff Jane Doe 3 was told her deadline to comply with the mandate was September 3, and she has already suffered de facto termination as a result of the Governor's mandate. Relief from this unconscionable and unlawful deprivation of Plaintiffs' liberties cannot wait another day.**

6.      Earlier this year, the then-Governor of New York rightfully declared that New York's healthcare workers were "the true heroes in this crisis." *Amid Ongoing COVID-19 Pandemic, Governor Cuomo Calls on Federal Government to Provide Hazard Pay to Essential Public Workers* (Apr. 20, 2020), https://www.governor.ny.gov/news/amid-ongoing-COVID-19-pandemic-governor-cuomo-calls-federal-government-provide-hazard-pay. Every word of that statement is equally as true today as it was the day the Governor uttered it. **Yet, on August 16, 2021, those same heroes have now been cast as evil villains for requesting exemption and accommodation from the Governor's edict for their sincerely held religious beliefs**.

7.      Neither the Governor nor any of the Defendant employers is permitted to blatantly ignore federal protections under the First Amendment and Title VII, and that is precisely why emergency relief is needed in the instant action: Plaintiffs need **an order mandating that Defendants follow federal protections for religious objectors to the COVID-19 Vaccine Mandate.**

8.      Plaintiffs are all healthcare workers in New York who have sincerely held religious beliefs that preclude them from accepting any of the COVID-19 vaccines because of the vaccines' connections to aborted fetal cell lines and for other religious reasons that have been articulated to Defendants. John Doe 2 has sincerely held religious beliefs that compel him to abstain from all

vaccines, and he has followed that religious conviction his entire life. Since COVID-19 first arrived in New York, Plaintiffs have risen every morning, donned their personal protective equipment, and fearlessly marched into hospitals, doctor's offices, senior living facilities, emergency rooms, operating rooms, and examination rooms with one goal: to provide quality healthcare to those suffering from COVID-19 and every other illness or medical need that confronted them. They did it bravely and with honor. They answered the call of duty to provide healthcare to the folks who needed it the most and worked tirelessly to ensure that those ravaged by the pandemic were given appropriate care. **All Plaintiffs seek in this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for the last 18 months**. Defendants shamelessly seek to throw these healthcare workers out into the cold and ostracize them from the very medical facilities for which they have sacrificed so much solely because of Plaintiffs' desire to continue to provide quality healthcare while still exercising their sincerely held religious beliefs.

9.     The law mandates that Defendants permit them to do both. Regardless of whether New York sees fit to extend protections to religious objectors under its own statutory framework, **federal law demands that these Plaintiffs and all employees in New York receive protections for their sincerely held religious beliefs**. This Court should hold New York to the bargain it made with its citizens when it joined the union and ensure that New York extends the required protections that federal law demands. As the Supreme Court held just last year, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added). When we have demanded so much of our healthcare heroes, we owe them nothing less than the full measure of our own commitment

to constitutional principles. Anything less would be desecrating the sacrifice these medical heroes made for untold numbers of people—including Defendants—when the call of duty demanded it of them. As the former Governor once stated, "Thanks is nice, but recognition of their efforts and their sacrifice is appropriate. . . . They're the ones carrying us through this crisis." Chris Sommerfeldt, *Cuomo proposes hazard pay for coronavirus frontline workers*, NY Daily News (Apr. 20, 2020), https://www.nydailynews.com/coronavirus/ny-coronavirus-cuomo-briefing-20200420-joov5nje2va6jairdx45ctteei-story.html. Unfortunately, Defendants have neither thanked nor recognized Plaintiffs' extraordinary efforts. This Court should.

## **PARTIES**

10.     Plaintiff John Doe 1 is a citizen of New York and the President of the Board of a private, faith-based senior care facility in New York with employees who have sincerely held religious objections to the Governor's COVID-19 Vaccine Mandate. John Doe 1 has sincerely held religious objections to accepting or receiving the COVID-19 vaccines (*see infra*) and has sincerely held religious beliefs that he is to honor the sincerely held religious beliefs of his employees who object to the COVID-19 vaccines. John Doe 1 will have only 1 employee in his entire facility as of October 7 if the Governor's mandate is not enjoined. John Doe 1 has been threatened with the loss of his facility and daily fines for failure to reject the request for religious objections from his employees.

11.     John Doe 2 is a citizen of New York and is a healthcare worker employed by Defendant New York-Presbyterian at one of its hospital facilities in New York. John Doe 2 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon his sincerely held religious beliefs against all vaccines, including COVID-19 vaccines, but New York-Presbyterian denied the exemption because of the Governor's

mandate. New York-Presbyterian previously granted John Doe 2 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, New York-Presbyterian revoked John Doe 2's religious exemption.

12.     Jane Doe 1 is a citizen of the State of New York and is a healthcare worker employed by New York-Presbyterian at Brooklyn Methodist Hospital. Jane Doe 1 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but New York-Presbyterian denied the exemption because of the Governor's mandate. New York-Presbyterian previously granted Jane Doe 1 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, New York-Presbyterian revoked Jane Doe 1's religious exemption.

13.     Jane Doe 2 is a citizen of the State of New York and is a doctor employed by Defendant WMC Health. Jane Doe 2 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but WMC Health denied the exemption because of the Governor's mandate.

14.     Jane Doe 3 is a citizen of the State of New York and is a registered nurse employed by Defendant Trinity Health at its St. Joseph's Health Hospital in New York. Jane Doe 3 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but Trinity Health denied the exemption because of the Governor's mandate. Trinity

Health previously granted Jane Doe 3 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, Trinity Health revoked Jane Doe 3's religious exemption.

15.     Plaintiffs Jack Does 1–250 are citizens of the State of New York and are healthcare workers employed by Trinity Health at its healthcare facilities in New York. Jack Does 1–250 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but Trinity Health either denied their exemption requests or told them not to submit exemption requests because the Governor does not allow Trinity Health to grant or even consider religious exemption or accommodation requests.

16.     Plaintiffs Joan Does 1–250 are citizens of the State of New York and are healthcare workers employed by Trinity Health at its healthcare facilities in New York. Joan Does 1–250 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but Trinity Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow Trinity Health to grant or even consider religious exemption or accommodation requests.

17.     Plaintiffs Jack Does 251–500 are citizens of the State of New York and are healthcare workers employed by Defendant WMC Health at its healthcare facilities in New York. Jack Does 251–500 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but WMC Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow WMC Health to grant or even consider religious exemption or accommodation requests.

18.     Plaintiffs Joan Does 251–500 are citizens of the State of New York and are healthcare workers employed by WMC Health at its healthcare facilities in New York. Joan Does 251–500 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but WMC Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow WMC Health to grant or even consider religious exemption or accommodation requests.

19.     Plaintiffs Jack Does 501–750 are citizens of the State of New York and are healthcare workers employed by Defendant New York-Presbyterian at its healthcare facilities in New York. Jack Does 501–750 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but New York-Presbyterian either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow New York-Presbyterian to grant or even consider religious exemption or accommodation requests.

20.     Plaintiffs Joan Does 501–750 are citizens of the State of New York and are healthcare workers employed by New York-Presbyterian at its healthcare facilities in New York. Joan Does 501–750 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but New York-Presbyterian either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow New York-Presbyterian to grant or even consider religious exemption or accommodation requests.

21.     Defendant Kathy Hochul, in her official capacity as Governor of the State of New York (the "Governor"), is responsible for enacting the COVID-19 Vaccine Mandate. Governor Hochul is sued in her official capacity

22.     Defendant Howard A. Zucker, in his official capacity as Commissioner of the New York State Department of Health, is responsible for overseeing the healthcare industry in New York and is responsible for implementing the Governor's COVID-19 Vaccine Mandate and enforcing the provisions of threatened loss of licensure for those healthcare providers who refuse to mandate the COVID-19 vaccine. Defendant Zucker is sued in his official capacity.

23.     Defendant Trinity Health, Inc. is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

24.     Defendant New York-Presbyterian Healthcare System, Inc. is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

25.     Defendant Westchester Medical Center Advanced Physician Services, P.C. ("WMC Health") is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

26.     This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under federal statutory laws, namely 42 U.S.C. § 1985(3) and 42 U.S.C. § 2000e-2.

27.     This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1331 and 1343.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

29.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

30.     This Court is authorized to grant Plaintiffs' prayer for a temporary restraining order and preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

31.     This Court is authorized to grant Plaintiffs' prayer for relief regarding damages under 42 U.S.C. § 2000e-5.

32.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

**GENERAL ALLEGATIONS**

**A.     THE GOVERNOR'S COVID-19 VACCINE MANDATE FOR HEALTHCARE WORKERS IN NEW YORK.**

33.     On August 16, 2021 the Governor announced that "all healthcare workers in New York State, including staff at hospitals and long-term care facilities (LTCF), including nursing

homes, adult care, and other congregate care settings, will be required to be vaccinated against COVID-19 by Monday, September 27." (A true and correct copy of the Governor's Mandatory COVID-19 Vaccine Policy is attached hereto as **EXHIBIT A** and incorporated herein.)

34.     On August 18, 2021 the New York State Department of Health issued an Order for Summary Action requiring all "Covered entities" to "continuously require all covered personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021." (A true and correct copy of the Department of Health's Order for Summary Action is attached hereto as **EXHIBIT B** and incorporated herein.)

35.     "Covered entity" was defined to include "a general hospital or nursing home pursuant to section 2801 of the Public Health Law." (Exhibit B at 3.)

36.     "Covered Personnel," who are those employees required to be fully vaccinated under the Governor's Mandate, include

> All persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose patients, residents, or personnel working for such entity to the disease.

(Exhibit B at 3-4.)

37.     In its Order for Summary Action on August 18, the State Department of Health included a religious exemption for those with sincerely held religious beliefs against receipt of one of the COVID-19 vaccines. (Exhibit B at 5.) Specifically, it stated: "Religious Exemption. Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer." (Exhibit B at 5–6.)

38. Additionally, the Order for Summary Action provided for a medical exemption of those personnel for whom it was recommended by a physician or certified nurse practitioner and provided that reasonable accommodations should be provided for those employees as well. (Exhibit B at 5.)

39. On August 26, the State Department of Health issued the amended rule concerning mandatory COVID-19 vaccines ("Section 2.61 Rule Change") finalizing the scope of the Governor's COVID-19 Vaccination Mandate. (A true and correct copy of the Section 2.61 Rule Change is attached hereto as **EXHIBIT C** and incorporated herein.)

40. In the Section 2.61 Rule Change, New York completely removed religious exemptions and accommodations, precluding any healthcare worker in New York from requesting or obtaining a reasonable accommodation and exemption for their sincerely held religious beliefs. (Exhibit C at 3.)

41. The Section 2.61 Rule Change retained the medical exemptions from the COVID-19 Vaccination Mandate, but specifically stripped religious objections from any accommodation or exemption process in New York.

**B. PLAINTIFFS' SINCERELY HELD RELIGIOUS OBJECTIONS TO COVID-19 VACCINE MANDATE.**

42. Plaintiffs all have sincerely held religious beliefs that preclude them from accepting or receiving any of the three available COVID-19 vaccines because of the connection between the various COVID-19 vaccines and the cell lines of aborted fetuses, whether in the vaccines' origination, production, development, testing, or other inputs.

43. A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

14

44. Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

45. Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

46. Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to their birth, and that because of this, life is sacred from the moment of conception. *See Psalms* 139:13–14 (ESV) ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made."); *Psalms* 139:16 (ESV) ("Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them."); *Isaiah* 44:2 (KJV) ("the LORD that made thee, and formed thee from the womb"); *Isaiah* 44:24 (KJV) ("Thus saith the LORD, thy redeemer, and he that formed thee from the womb, I am the LORD that maketh all things."); *Isaiah* 49:1 (KJV) ("The LORD hath called my from the womb; from the bowels of my mother hath he made mention of my name."); *Isaiah* 49:5 (KJV) ("the LORD that formed me from the womb to be his servant"); *Jeremiah* 1:5 (KJV) ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee.").

47. Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because children are made in the image of God. *See Genesis* 1:26–27 (KJV) ("Let us make man in our image, after our likeness. . . . So God created man in his own image; in the image of God created he him; male and female created he them.").

48.     Plaintiffs also have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 (KJV) ("Though shalt not kill."); *Exodus* 21:22–23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 (KJV) ("the innocent and righteous slay thou not, for I will not justify the wicked"); *Genesis* 9:6 (KJV) ("Whoso sheddeth a man's blood, by man shall his blood by shed: for in the image of God made he man."); *Deuteronomy* 27:25 (KJV) ("Cursed be he that taketh reward to slay an innocent person."); *Proverbs* 6:16–17 (KJV) ("These six things doth the LORD hate: yea, seven are an abomination to him . . . hands that shed innocent blood.").

49.     Plaintiffs also have the sincerely held religious belief that it would be better to tie a millstone around their necks and be drowned in the sea than bring harm to an innocent child. *See Matthew* 18:6; *Luke* 17:2.

50.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that anything that condones, supports, justifies, or benefits from the taking of innocent human life via abortion is sinful, contrary to the Scriptures, and must be denounced, condemned, and avoided altogether.

51.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that it is an affront to Scripture's teaching that all life is sacred when any believer uses a product derived from or connected in any way with abortion.

52.     Plaintiffs' sincerely held religious beliefs, rooted in the above Scriptures, preclude them from accepting any one of the three currently available COVID-19 vaccines derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

53.     Plaintiffs have sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccine.

54.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19 _Vaccine_Fetal_Cell_Handout.pdf (last visited Sept. 8, 2021) (bold emphasis original).

55.     The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used the PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/CenterPH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Sept. 8, 2021) (emphasis added).

56.     Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. *Meredith Wadman*, *Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full (last visited Sept. 8, 2021).

57.     Plaintiffs have sincerely held religious objections to the Moderna and Pfizer/BioNTech COVID-19 vaccines because both of these vaccines, too, have their origins in research on aborted fetal cells lines.

58.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19 _Vaccine_Fetal_Cell_Handout.pdf (last visited Sept. 8, 2021) (emphasis added).

59.     The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Sept. 8, 2021).

60.     Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

61.     Plaintiffs have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit. (*See 1 Corinthians* 6:15-20 (KJV) ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.").

62.     In addition to their sincerely held religious beliefs that compel them to abstain from any connection to the grave sin of abortion, Plaintiffs have sincerely held religious beliefs that the Holy Spirit—through prayer and the revelation of Scripture—guide them in all decisions they make in life.

63.     Plaintiffs have sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for their sins, and was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *See John* 16:7 (KJV) ("Nevertheless I tell you the truth, It is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you."); *John* 14:26 (KJV) ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you.").

64.     Plaintiffs have sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. *See John* 16:8, 13 (KJV) ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . . [W]hen he, the Spirit of truth, is come, he will guide you into all truth: for he

shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come.").

65.     Plaintiffs also have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. *See James* 1:5 (KJV) ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him."); *Mark* 11:24 (KJV) ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them."); *Philippians* 4:6–7 (KJV) ("Be careful for nothing, but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus."); *1 John* 4:14–15 (KJV) ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him.").

66.     Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and Plaintiffs have been convicted by the Holy Spirit in their beliefs that accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

67.     Plaintiff John Doe 2 is a member of the Church of Christ, Scientist, and has a sincerely held religious objection to all vaccines. John Doe 2's Christian Scientist religious beliefs compel him to believe that healing comes through prayer.

68.     John Doe 2's sincerely held religious beliefs compel him to focus on prayer and Bible-based approaches when dealing with all health-related issues, and his convictions compel

him to believe what the book of *Psalms* states, which is that God "healeth all thy diseases." *Psalms* 103:3.

69.     John Doe 2's sincerely held religious beliefs compel him to abstain from receiving all vaccines, and he has followed that religious practice his entire life.

## C.     PLAINTIFFS' WILLINGNESS TO COMPLY WITH ALTERNATIVE SAFETY MEASURES.

70.     Plaintiffs have offered, and are ready, willing, and able to comply with all reasonable health and safety requirements to facilitate their religious exemption and accommodation from the COVID-19 Vaccine Mandate.

71.     Plaintiffs have all informed their respective employers that they are willing to wear facial coverings, submit to reasonable testing and reporting requirements, monitor symptoms, and otherwise comply with reasonable conditions that were good enough to permit them to do their jobs for the last 18 months with no questions asked.

72.     In fact, last year the State said Plaintiffs were heroes because of their willingness to abide by the same conditions and requirements that Plaintiffs are willing to abide by now. *Amid Ongoing COVID-19 Pandemic, Governor Cuomo Calls on Federal Government to Provide Hazard Pay to Essential Public Workers* (Apr. 20, 2020), https://www.governor.ny.gov/news/amid-ongoing-COVID-19-pandemic-governor-cuomo-calls-federal-government-provide-hazard-pay.

73.     In fact, New York still recommends that vaccinated individuals wear a mask in public settings. *See* Karen Matthews & Michael Hillap, *Masks encouraged in New York but no city or state mandate*, AP (Aug. 2, 2021), https://apnews.com/article/lifestyle-business-health-coronavirus-pandemic-97863fa563eadaad177e0ccba8000cb4.

74.     And the reason for this is simple,

> A preliminary study has shown that in the case of a breakthrough infection, the Delta variant is able to grow in the noses of vaccinated people **to the same degree as if they were not vaccinated at all**. The virus that grows is just as infectious as that in unvaccinated people, meaning vaccinated people can transmit the virus and infect others.

Sanjay Mishra, *Evidence mounts that people with breakthrough infections can spread Delta easily*, National Geographic (Aug. 20, 2021), https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily (emphasis added).

75.     Masking and testing protocols remain sufficient to prevent the spread of COVID-19 among healthcare workers, and constitute a reasonable alternative to vaccination as an accommodation of sincerely held religious beliefs.

76.     In fact, the United States District Court for the Western District of Louisiana just issued a temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body. *See Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021).

77.     And the United States District Court for the Western District of Michigan issued a temporary restraining order against a school for its failure to allow students with religious exemptions and accommodations to participate in athletics and other extracurricular activities when masking and testing was available as a reasonable accommodation for such religious beliefs. *See Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 1:21-cv-757, 2021 WL 3891620, *2 (W.D. Mich. Aug. 31, 2021)

### D. PLAINTIFFS' DESIRE FOR AN ACCOMMODATION AND DEFENDANTS' RESPONSES CLAIMING FEDERAL LAW IS IRRELEVANT IN NEW YORK.

78.     Consistent with his sincerely held religious beliefs, John Doe 1 and his facility desires to obtain a religious exemption and accommodation from the Governor's COVID-19 Vaccination Mandate, so that he may offer his employees with sincerely held religious objections to the vaccine an accommodation from the mandate.

79.     The Governor and State Department of Health, by removing religious exemptions from the COVID-19 Vaccine Mandate, have precluded John Doe 1 from offering religious exemptions to his employees and violated his sincerely held religious beliefs and those of his facility.

80.     John Doe 1 has spoken with state officials that are responsible for regulating his facility, and he has been informed that offering religious exemptions and accommodation to his employees will result in daily fines and a potential closure of his facility.

81.     John Doe 2, for the last 10 years of his employment with New York-Presbyterian, has received an exemption from mandatory vaccines in his employment. In fact, on July 28, 2021 Defendant New York-Presbyterian approved John Doe 2 for an exemption and accommodation from the COVID-19 vaccine. (A true and correct copy of John Doe 2's accommodation acceptance is attached hereto as **EXHIBIT D** and incorporated herein.)

82.     After an announcement from his employer that the Governor's mandate precluded New York-Presbyterian from offering or accepting religious exemptions and accommodations, John Doe 2 communicated with his superiors to inquire whether his previously granted religious exemption and accommodation would be honored. (A true and correct copy of John Doe 2's email communications with his superiors is attached hereto as **EXHIBIT E** and incorporated herein.)

83.     New York-Presbyterian responded to John Doe 2, stating: "**Religious exemptions are no longer accepted**." (Exhibit E at 1 (emphasis added).)

84.     Jane Doe 1 has also requested and received religious accommodations from New York-Presbyterian and Brooklyn Methodist Hospital in the past, and on August 24, 2021 was granted a religious accommodation from the Governor's COVID-19 Vaccine Mandate. (A true and correct copy of Jane Doe 1's religious exemption and accommodation is attached hereto as **EXHIBIT F** and incorporated herein.)

85.     However, on August 30, New York-Presbyterian and Brooklyn Methodist Hospital informed Jane Doe 1 that her previously accepted religious exemption and accommodation had been revoked. (A true and correct copy of New York-Presbyterian's revocation of Jane Doe 1's religious exemption is attached hereto as **EXHIBIT G** and incorporated herein.)

86.     Specifically, New York-Presbyterian stated:

Late last week, the Public Health and Health Planning Council of the NYS Department of Health formally approved and adopted the state*s COVID-19 vaccination requirement for health care workers. **In addition, the Council made the determination to exclude religious exemptions as an alternative to receiving the vaccine.** The DOH cited examples of measles and other vaccinations, which are required of NY health care workers, as also not having a religious exemption. As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination 듖 even those previously approved.**

(Exhibit G at 2.)

87.     Thus, Jane Doe 1 was initially given a religious accommodation, but had it revoked because New York-Presbyterian stated religious accommodations were no longer available in the State of New York.

88.     On August 26, 2021 Jane Doe 2 submitted a request for a religious exemption and accommodation to Defendant WMC Health outlining her religious beliefs against receipt of the COVID-19 Vaccine. However, on August 27, the very next day, WMC Health responded to Jane

Doe 2 informing her that because of the Governor's mandate, WMC Health was not even considering and reviewing, much less granting, requests for religious exemption or accommodation. (A true and correct copy of WMC Health's response to Jane Doe 2 is attached hereto as **EXHIBIT H** and incorporated herein.)

89. Specifically, WMC Health stated:

On August 26, hospitals were notified that the New York State Department of Health was removing the option allowing hospitals to offer a religious exemption to health care workers from receiving the COVID-19 vaccination. Accordingly, **WMC Health, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered**.

(Exhibit H at 1 (emphasis added).)

90. Jane Doe 3 also submitted a request for a religious accommodation and exemption from Defendant Trinity Health, and was initially approved for the religious exemption. (A true and correct copy of Trinity Health's approval of Jane Doe 3's religious exemption and accommodation is attached hereto as **EXHIBIT I** and incorporated herein.)

91. On September 1, Trinity Health sent a communication to Jane Doe 3 informing her that her religious exemption had been revoked. (A true and correct copy of Trinity Health's communication revoking Jane Doe 3's religious exemption is attached hereto as **EXHIBIT J** and incorporated herein.)

92. Specifically, Trinity Health stated that "**[u]nder the emergency regulations the NYS DOH will not permit exemptions or deferrals for: Sincerely held religious beliefs, Pregnancy, Planning to become pregnant**." (Exhibit J at 1 (emphasis added).)

93. Trinity Health continued by noting: "We are required to comply with **state law**. Therefore, any colleague who was previously approved for one of the above-exemptions/deferrals will be required to provide proof of (1) first dose of a 2-dose series (mRNA) or (2) a single dose

vaccine (Johnson & Johnson) no later than September 21, 2021." (Exhibit J at 1 (emphasis added).) **However, Trinity Health has granted numerous exemptions and accommodations for its employees with religious beliefs at its facilities in other states, including *inter alia*, Michigan, Idaho, Florida and others**. Thus, Defendant knows that accommodations and exemptions are available but has refused to provide them.

94. Thus, what Defendants hath given in accordance with federal law, Defendants hath taken away in violation federal law. Defendants have purported to remove the protection of federal law from all healthcare workers in New York and are forcing Plaintiffs to choose between their religious convictions and their abilities to feed their families.

### E. DEFENDANTS ADMIT THAT OTHER, NON-RELIGIOUS EXEMPTIONS ARE AVAILABLE.

95. The Governor's mandate, the State Department of Health's rules, and Defendants' responses to Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs all confirm that New York is, indeed, willing to grant other exemptions from the Governor's COVID-19 Vaccine Mandate but have relegated religious exemption requests to constitutional orphan status.

96. On August 26, in its Section 2.61 rule change, Defendant Zucker's officials stripped out protections that were previously available under the Governor's mandate and have informed Plaintiffs and all healthcare workers in New York that their religious beliefs will not be honored in the workplace or in the State.

97. In its response to John Doe 2, Defendant New York-Presbyterian has indicated it is perfectly willing to accept and grant medical exemptions but will not allow religious exemptions. Specifically, it told John Doe 2: "Religious exemptions are no longer accepted. **This does not**

**impact an approved or submitted Medical exemption request**." (Exhibit E at 1 (emphasis added).)

98.     Thus, while New York-Presbyterian says it will consider and grant the preferred medical exemptions, **it will not even consider the constitutionally orphaned religious exemption requests**.

99.     Jane Doe 1 was similarly informed that though religious exemptions had been removed, the preferred medical exemption requests would still be honored and considered. (Exhibit G at 1 ("Staff must receive the first dose of the vaccine or have an approved medical exemption by no later than September 15, 2021.").)

100.     And New York-Presbyterian further noted to Jane Doe 1 that while religious exemption request were previously available, only medical exemption requests would now be considered or honored. (Exhibit G at 2.)

101.     The Governor, through the COVID-19 Vaccine Mandate, has created a two-tiered system of exemptions, and placed religious beliefs and those who hold them in a class less favorable than other exemptions that Defendants are perfectly willing to accept.

102.     Under the Governor's scheme of creating a disfavored class of religious exemptions, Defendants are not even willing to consider religious exemptions, much less grant them to those who have sincerely held religious objections to the COVID-19 vaccines.

### F.     IRREPARABLE HARM SUFFERED BY PLAINTIFFS.

103.     Because of the Governor's COVID-19 Vaccine Mandate, John Doe 1 faces the unconscionable choice of violating his own sincerely held religious beliefs by demanding he require his employees to accept the Governor's mandatory vaccine or potentially having to close his facility for failure to adhere to the Governor's requirements.

104. **As of October 8, absent injunctive relief protecting his sincerely held religious convictions and those of his faith-based senior care facility, John Doe 1 will face daily fines and the potential closure of his facility for the mere act of exercising his religious beliefs**.

105. Because of the Governor's COVID-19 Vaccine Mandate, John Doe 1 also faces the unconscionable choice of refusing to grant his employees' requests for exemption and accommodation from the Governor's COVID-19 Vaccine Mandate or facing significant daily fines and the closure of his facility.

106. Because John Doe 2's request for an exemption and accommodation of his sincerely held religious beliefs has been denied by New York-Presbyterian, John Doe 2 faces the unconscionable choice of accepting a vaccine that conflicts with his religious beliefs or losing his job. Unless John Doe 2 immediately violates his conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, he will be terminated from his employment.

107. Because Jane Doe 1's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by New York-Presbyterian, Jane Doe 1 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 1 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment.

108. Additionally, **because Jane Doe 1 has merely requested an accommodation for her sincerely held religious beliefs, she has already been placed on unpaid leave and has been told she will be terminated if she does not violate her beliefs and comply with the Governor's mandate by September 10.**

109.    Because Jane Doe 2's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by WMC Health, Jane Doe 2 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 2 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment.

110.    Because Jane Doe 3's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by Trinity Health, Jane Doe 3 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 3 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment

111.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being prohibited from engaging in their constitutionally and statutorily protected rights to the free exercise of their sincerely held religious beliefs.

112.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being forced to choose between maintaining the ability to feed their families and the free exercise of their sincerely held religious beliefs.

113.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being stripped of their rights to equal protection of the law and being subjected to disfavored class status in New York.

### G. PLAINTIFFS' ATTEMPTS TO SECURE RELIEF PRIOR TO SEEKING A TRO AND PRELIMINARY INJUNCTION.

114. On September 1, 2021, Plaintiffs' counsel sent the Governor, Commissioner Zucker, and New York Attorney General Letitia James a letter informing them that the COVID-19 Vaccine Mandate, both on its own and in its interpretation and application by others, deprives Plaintiffs of their rights to request an accommodation of their sincerely held religious beliefs under federal law. (A true and correct copy of the Letter sent to the Governor, Commissioner, and Attorney General is attached hereto as **EXHIBIT K** and incorporated herein.)

115. Plaintiffs requested that the Governor withdraw her unlawful directives and publicly announce that any interpretation of her mandate to deprive Plaintiffs and all healthcare workers in New York of their rights to request and receive an exemption and accommodation for their sincerely held religious objections to the mandatory COVID-19 vaccine was unlawful and impermissible.

116. Plaintiffs requested the response and the public announcement from the Governor prior to September 7, 2021.

117. Plaintiffs' counsel requested a response informing counsel that the Governor would permit Plaintiffs and other healthcare workers with sincere religious objections to the vaccine to request and receive reasonable accommodation from the mandate.

118. Neither Governor Hochul, Commissioner Zucker, nor Attorney General James responded to Plaintiffs' counsel, nor announced that federal law would continue to apply in New York, nor provided any information to healthcare employers in New York that federal law required Defendants to accept and permit their healthcare employees to request and receive religious exemption and accommodation from the COVID-19 Vaccine Mandate.

**COUNT I—VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION.**
**(All Plaintiffs v. Government Defendants)**

119.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

120.    The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

121.    Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

122.    Plaintiffs reallege the discussion of their sincerely held religious beliefs (*supra* Section B) as if fully set forth herein.

123.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccine.

124.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

125.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

126.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their ability to feed their families.

127.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable.

128.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, specifically targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

129.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

130.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, constitutes a religious gerrymander by unconstitutionally orphaning exemption and accommodation requests based solely on sincerely held religious beliefs of healthcare workers in New York while permitting the more favored medical exemptions to be granted.

131.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

132.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

133.     There is no legitimate, rational, or compelling interest in the Governor's COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs.

134.     The Governor's COVID-19 Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest.

135. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

136. Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT II—DEFENDANTS' WILLFUL DISREGARD OF FEDERAL PROTECTIONS VIOLATES THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION BY ATTEMPTING TO MAKE NEW YORK LAW SUPERSEDE FEDERAL LAW
### (All Plaintiffs v. All Defendants)

137. Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

138. The Supremacy Clause provides:

**This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 22 (emphasis added).

139. "**When federal law forbids an action that state law requires, the state law is without effect**." *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 486 (2013) (emphasis added).

140. Simply put, "**It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (emphasis added) (cleaned up).

141.     By claiming that the protections of Title VII are inapplicable in the State of New York, which all Defendants have either explicitly or tacitly stated, Defendants are running roughshod over the Supremacy Clause and appointing themselves independent of the protections of federal law.

142.     As demonstrated by Defendant New York-Presbyterian's response to John Doe 2, New York-Presbyterian believes that "**religious accommodations are no longer accepted**" in New York (Exhibit E at 1 (emphasis added).)

143.     More specifically, in response to Jane Doe 1's request for an accommodation for her sincerely held religious beliefs, New York-Presbyterian stated that because New York "made the determination to exclude religious exemptions . . . **NYP must follow the NYS DOH requirement [and] can no longer consider any religious exemptions.**" (Exhibit G at 2.)

144.     Similarly, in its response to Jane Doe 3, Trinity Health explicitly stated that "[w]e are required to comply with **state law**," and **state law "will not permit exemptions or deferrals for . . . Sincerely held religious beliefs**." (Exhibit J at 1 (emphasis added).)

145.     Thus, all Defendants have purported to remove the availability of religious exemptions and accommodations within the State of New York, have ignored Title VII's commands that employers provide reasonable accommodations to individuals with sincerely held religious beliefs, and have claimed that the Governor's COVID-19 Vaccine Mandate prohibits employers in New York from even considering a religious exemption or accommodation request.

146.     By purporting to place itself outside of the protections of Title VII and the First Amendment, New York and each individual Defendant have violated the most basic premise that "**federal law is as much the law of the several States as are the laws passed by their legislatures**." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added).

147.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

148.    Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

### COUNT III—VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (All Plaintiffs v. Government Defendants)

149.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

150.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

151.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is an unconstitutional abridgment of Plaintiffs' right to equal protection under the law, is not neutral, and specifically targets Plaintiffs' sincerely held religious beliefs for discriminatory and unequal treatment.

152.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits the State to treat Plaintiffs differently from other similarly situated healthcare workers on the basis of Plaintiffs' sincerely held religious beliefs.

153. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, singles out Plaintiffs for selective treatment based upon their sincerely held religious objections to the COVID-19 vaccines.

154. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is intended to inhibit and punish the exercise of Plaintiffs sincerely held religious beliefs and objections to the COVID-19 vaccines.

155. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, creates a system of classes and categories that permit the Governor to accommodate the exemptions of some healthcare workers while denying consideration of those individuals requesting religious exemptions to the COVID-19 Vaccine Mandate.

156. By removing statutorily required religious accommodations from consideration in New York, the Governor has created and singled out for disparate treatment a specific class of healthcare employees (*i.e.*, religious objectors to COVID-19 vaccinations) as compared to other similarly situated healthcare workers (*i.e.*, those with medical exemption requests).

157. There is no rational, legitimate, or compelling interest in the Governor's COVID-19 Vaccine Mandate's application of different standards to the similarly situated field of healthcare workers.

158. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, discriminates between religion and nonreligion by allowing certain, nonreligious exemptions to the COVID-19 Vaccine Mandate while prohibiting religious exemptions to the same mandate for the same similarly situated field of healthcare workers.

159. The Governor's COVID-19 Vaccine Mandate and New York's removal of religious exemptions for healthcare workers in New York, on their face and as applied, are each a "status-

based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996).

160.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

161.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, along with the State Department of Health's removal of religious exemptions from immunizations—while keeping medical exemptions as perfectly acceptable in the healthcare field—results in a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

162.    "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [an exemption from the COVID-19 Vaccine Mandate] is itself a denial of equal protection of the laws in the most literal sense." *Id.* The Governor's COVID-19 Vaccine Mandate, on its face and as applied, and the State Department Of Health's removal of religious exemptions for healthcare workers, are each such a law.

163.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

164.    Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

**COUNT IV—VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e,** *et seq.*
**(All Plaintiffs v. Private Employer Defendants)**

165.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

166.     Title VII prohibits discrimination against employees on the basis of their religion. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .").

167.     Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Moreover, as the EEOC has made clear, Title VII's protections also extend nonreligious beliefs if related to morality, ultimate ideas about life, purpose, and death. *See EEOC, Questions and Answers: Religious Discrimination in the Workplace* (June 7, 2008), https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace ("Title VII's protections also extend to those who are discriminated against or need accommodation because they profess no religious beliefs."); (*Id.* ("Religious beliefs include theistic beliefs (i.e. those that include a belief in God) as well as non-theistic 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.' Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious, beliefs are not protected merely because they are strongly held. Rather, religion typically concerns 'ultimate ideas' about 'life, purpose, and death.'").)

168. Each of Defendants New York-Presbyterian, WMC Health, and Trinity Health is an employer within the meaning of Title VII and employs more than 15 employees.

169. By refusing to even consider, much less grant, any religious accommodation or exemption to the Governor's COVID-19 Vaccine Mandate, Defendants have discriminated against Plaintiffs' sincerely held religious beliefs with respect to the terms, conditions, and privileges of employment.

170. By threatening to fire Plaintiffs unless they violate their sincerely held religious beliefs and comply with the Governor's COVID-19 Vaccine Mandate, Defendants have unlawfully discriminated against Plaintiffs by discharging them or constructively discharging them for the exercise of their religious beliefs.

171. Each Plaintiff has a bona fide and sincerely held religious belief against the COVID-19 vaccines, as outlined above.

172. Plaintiffs' sincerely held religious beliefs conflict with Defendants' policies in collusion with the Governor to impose the Governor's COVID-19 Vaccine Mandate and to withhold from Plaintiffs any consideration of sincerely held religious objections.

173. Plaintiffs have all raised their sincerely held religious beliefs with their respective Defendant employers, have brought their objections and their desire for a religious accommodation and exemption to the respective Defendants' attention, and have requested a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

174. Employer Defendants' termination, threatened termination, denial of benefits, and other adverse employment actions against Plaintiffs are the result of Plaintiffs' exercise of their sincerely held religious beliefs.

175. Employer Defendants' refusal to consider or grant Plaintiffs' requests for accommodation and exemption from the Governor's COVID-19 Vaccine Mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

176. Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT V—DEFENDANTS HAVE ENGAGED IN AN UNLAWFUL CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1985
### (All Plaintiffs v. All Defendants)

177. Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

178. Section 1985 provides a cause of action against public and private defendants who unlawfully conspire to deprive an individual of his constitutionally protected liberties. 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws").

179. The elements of the claim of conspiracy to violate civil rights under § 1985 include (1) a conspiracy, (2) a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws or of a constitutionally protected liberty, (3) an overt act in furtherance of the conspiracy, and (4) a deprivation of a constitutionally protected right. *See Mian v. Donaldson, Lukin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

180.    The Governor's COVID-19 Vaccine Mandate, combined with the Defendant employers' agreements to enforce its provisions and revoke any potential for a religious exemption for healthcare workers in New York, constitutes a conspiracy to violate Plaintiffs' civil and constitutional rights.

181.    The Governor and Commissioner Zucker have both reached an agreement with the Defendant employers to deprive all healthcare workers in New York with any exemption or accommodation for the exercise of their sincerely held religious beliefs.

182.    The Governor and Defendant employers have reached an express or tacit agreement to mandate COVID-19 vaccines for their employees while explicitly agreeing to deprive them of their right to request and receive an accommodation and exemption for their sincerely held religious beliefs.

183.    The purpose behind the Governor's COVID-19 Vaccine Mandate, the State Department of Health's removal of the option for a religious exemption in the State of New York, and all Defendants' agreement to blatantly ignore federal law's requirement that employees be provided with a religious exemption and accommodation for sincerely held religious beliefs is based upon a conspiratorial purpose to deprive Plaintiffs of their rights to the exercise of their religious beliefs and equal protection.

184.    Defendants' conspiratorial agreement has been made express by their stating that no religious exemptions would be permitted and by informing Plaintiff employees of the legally ridiculous positions that Title VII does not apply in New York and that federal law does not supersede New York law when it comes to the Governor's COVID-19 Vaccine Mandate.

185.    The Governor has engaged in an overt act in furtherance of the conspiracy to deprive Plaintiffs of their civil rights by mandating that all healthcare workers receive a mandatory

COVID-19 vaccine and by failing to recognize that federal law provides each of these employees with the option to request and receive a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

186. Defendant employers have each engaged in an overt act in furtherance of the conspiracy to deprive Plaintiffs of their civil rights by refusing to consider, evaluate, or accept any Plaintiff's request for a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

187. By denying Plaintiffs their requested religious exemption and accommodation and threatening termination and discharge from employment because of the exercise of their sincerely held religious beliefs, Defendants' conspiracy has resulted in a deprivation of Plaintiffs' constitutionally protected rights to free exercise of religion.

188. By denying Plaintiffs their requested religious exemption and accommodation and threatening termination and discharge from employment because of the exercise of their sincerely held religious beliefs while at the same time granting and accepting the preferred category and class of medical exemptions for similarly situated healthcare workers, Defendants' conspiracy has resulted in a deprivation of Plaintiffs' constitutionally protected rights to equal protection of the laws under the Fourteenth Amendment.

189. Defendants' refusal to consider or grant Plaintiffs' requests for accommodation and exemption from the Governor's COVID-19 Vaccine Mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

190. Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.      That the Court issue a temporary restraining order restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate such that:

      i.      Defendant Governor Hochul will not enforce her unconstitutional mandate that John Doe 1 require his employees to receive a COVID-19 vaccine and refuse to provide a religious exemption or accommodation for such employees in violation of John Doe 1's and his employees' sincerely held religious beliefs;

      ii.      Defendants immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

      iii.      Defendants will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, provided that Plaintiffs agree to abide by reasonable accommodation provisions such as masking, testing, symptom monitoring, and reporting;

iv.     Defendants will immediately cease threatening to discharge and terminate Plaintiffs from their employment for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs; and

v.     Defendants will immediately cease proclaiming that federal law does not apply in New York or otherwise declining Plaintiffs' requests for religious exemption on the basis that Title VII does not apply in the State of New York;

B.     That the Court issue a preliminary injunction pending trial, and a permanent injunction upon judgment, restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate such that:

i.     Defendant Governor Hochul will not enforce her unconstitutional mandate that John Doe 1 require his employees to receive a COVID-19 vaccine and refuse to provide a religious exemption or accommodation for such employees in violation of John Doe 1's and his employees' sincerely held religious beliefs;

ii.     Defendants immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

iii.     Defendants will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, provided that Plaintiffs agree to abide by reasonable

accommodation provisions such as masking, testing, symptom monitoring, and reporting;

iv.    Defendants will immediately cease threatening to discharge and terminate Plaintiffs from their employment for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs; and

v.    Defendants will immediately cease proclaiming that federal law does not apply in New York or otherwise declining Plaintiffs' requests for religious exemption on the basis that Title VII does not apply in the State of New York;

C.    That this Court render a declaratory judgment declaring that the Governor's COVID-19 Vaccine Mandate, both on its face and as applied by Defendants is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from healthcare workers in New York, and further declaring that

i.    in imposing a mandatory COVID-19 vaccine without any provision for exemption or accommodation for sincerely held religious beliefs, the Governor has violated the First Amendment to the United States Constitution by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs while granting exemptions to similarly situated healthcare workers with medical exemptions to the COVID-19 Vaccine Mandate;

ii.    by refusing to consider or evaluate Plaintiffs' requests for religious exemption and accommodation, Defendants have violated Title VII and other federal protections for Plaintiffs in New York and have blatantly ignored the Supremacy Clause's mandate that federal protections for

religious objectors in New York supersede and apply with full force in New York;

iii.     by terminating, threatening to terminate, or otherwise taking adverse employment action against Plaintiffs on the basis of their sincerely held religious beliefs, Defendants have violated Title VII of the Civil Rights Act of 1964;

iv.     that by creating a class system in which religious objectors in New York are disparately and discriminatorily denied the option of receiving an exemption or accommodation while simultaneously allowing and granting exemptions for other nonreligious reasons, Defendant Governor Hochul has violated Plaintiffs' rights to equal protection of the law; and

v.     that by entering into an agreement to unlawfully deprive Plaintiffs of their right to request and receive a religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, Defendants have conspired to violate Plaintiffs' civil rights to free exercise of religious beliefs and equal protection of the law;

D.     That this Court award Plaintiffs damages in an amount to be proven at trial, including damages for adverse employment action resulting in lost wages and other compensatory damages, and further including nominal damages in the absence of proof of damages;

E.     That this Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

F. That this Court retain jurisdiction over the matter for the purposes of enforcing the Court's order;

G. That this Court award Plaintiffs the reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988; and

H. That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
*Applications for Admission pro hac vice pending

*Attorneys for Plaintiffs*

## <u>VERIFICATION</u>

I, John Doe 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ John Doe 1
John Doe 1
(Original Signature of John Doe 1 retained by Counsel)

## VERIFICATION

I, John Doe Doe 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ John Doe 2
John Doe 2
(Original Signature of John Doe 2 retained by Counsel)

## <u>VERIFICATION</u>

I, Jane Doe 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 1
Jane Doe 1
(Original Signature of Jane Doe 1 retained by Counsel)

## **VERIFICATION**

I, Jane Doe 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 2
Jane Doe 2
(Original Signature of Jane Doe 2 retained by Counsel)

## <u>VERIFICATION</u>

I, Jane Doe 3, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 3
Jane Doe 3
(Original Signature of Jane Doe 3 retained by Counsel)