# LIBERTY COUNSEL

| DISTRICT OF COLUMBIA | FLORIDA | VIRGINIA |
|---|---|---|
| 109 Second Street NE | PO Box 540774 | PO Box 11108 |
| Washington, DC 20002 | Orlando, FL 32854 | Lynchburg, VA 24506 |
| Tel 202-289-1776 | Tel 407-875-1776 | Tel 407-875-1776 |
| Fax 407-875-0770 | Fax 407-875-0770 | Fax 407-875-0770 |
| LC.org | | Liberty@LC.org |

**REPLY TO FLORIDA**

September 1, 2021

**VIA FACSIMILE and EMAIL**

Kathy Hochul
Governor
State of New York
NYS State Capital Building
Albany, NY 12224
Facsimile: (518) 474-1513

Letitia James
Office of the Attorney General
State of New York
28 Liberty Street
New York, NY 10005
Facsimile: (212) 416-6030
Email: civil.rights@ag.ny.gov

Howard A. Zucker
Commissioner
New York State Department of Health
Corning Tower
Empire State Plaza
Albany, NY 12237
Email: dohweb@health.ny.gov

RE: Unlawful Attempt to Remove Religious Exemptions and Accommodations from State's Mandatory COVID-19 Vaccine Policy

**THIS IS A LEGAL DEMAND LETTER. YOUR PROMPT RESPONSE IS REQUIRED ON OR BEFORE TUESDAY, SEPTEMBER 7, 2021 AT 12:00 P.M. TO AVOID A LAWSUIT**

Dear Governor Hochul, Commissioner Zucker, and Attorney General James:

Liberty Counsel is a national non-profit litigation, education and public policy organization with an emphasis on First Amendment liberties, and a particular focus on religious freedom and the sanctity of human life. Liberty Counsel has engaged in extensive litigation in the last year regarding civil rights violations ostensibly justified by "COVID-19," and has had great success holding both government entities and private actors accountable. *See, e.g., Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 1289 ( 2021) (permanent injunction granted and $1,350,000 in attorney's fees awarded in *Harvest Rock Church, Inc. v. Newsom*, No. 2:20-cv-06414, C.D. Cal., May 17, 2021); *Harvest Rock Church, Inc. v. Newsom,* 141 S. Ct. 889 (2020); *Elim Romanian*

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 2

*Pentecostal Church v. Pritzker,* 962 F.3d 341 (7th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020).

I write on behalf of numerous doctors, nurses, medical professionals, and other health care workers who have been forced to choose between the exercise of their sincerely held religious beliefs and feeding their families. No individual in New York should be forced into such an unconscionable decision. On August 16, 2021, the Governor of New York announced that the State will now require health care workers to accept or receive one of the three currently available COVID-19 vaccines in order to remain employed in the healthcare profession. *See* Office of Governor, *Governor Cuomo Announces COVID-19 Vaccination Mandate for Healthcare Workers* (Aug. 16, 2021), https://www.governor.ny.gov/news/governor-cuomo-announces-covid-19-vaccination-mandate-healthcare-workers (last visited Sept. 1, 2021) ((hereinafter "Mandatory COVID-19 Vaccination Policy"). The deadline for healthcare workers in New York to become fully vaccinated is Monday September 27, 2021. (*Id.*) The Mandatory COVID-19 Vaccination Policy applies to healthcare workers in all "hospitals, nursing homes, diagnostic and treatment centers, adult care facilities, certified home health agencies, hospices, long-term home health care programs, AIDS home care programs, licensed home care service agencies and limited licensed home care service agencies." (*Id.*)

Though the Governor's announcement initially indicated that there would be "limited exceptions for workers with religious or medical reasons" (*id.*), the State's Public Health and Health Planning Council eliminated such an exemption and accommodation for religious reasons on August 26th. *See* Spencer Tracy, *New York Department of Health eliminates religious exemption for healthcare workers who refuse vaccination* Localsyr.com (Aug. 31, 2021), https://www.localsyr.com/health/coronavirus/unvaccinated-healthcare-workers-could-lose-jobs-over-new-vaccine-mandate/ (last visited Sept. 1, 2021). In fact, under the State's rule change, the only exemptions permitted in the State of New York will be for medical reasons documented by a physician or certified nurse practitioner. *See* Section 2.61 Rule Change (Aug. 26, 2021), https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2021-08-26/docs/revised_proposed_regulation.pdf (last visited Sept. 21, 2021).

**As you are undoubtedly aware, while New York may choose not to provide certain religious exemptions in its state statutory scheme under some circumstances, <u>virtually every employee in New York – including the health care workers who have been subjected to the Mandatory COVID-19 Vaccination Policy – are protected by Title VII of the Civil Rights Act, which does provide for religious exemptions and accommodations, and mandates that employers provide them</u>.**

**New York cannot override federal law, or the federal Constitution. New York's purported guidance and attempts to remove federal protections and even religious exemptions available under federal law is causing direct and irreparable harm.**

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 3

**We ask that you advise us and the public by noon on this <u>Tuesday September 7, 2021</u>, that New York will honor all federal protections and entitlements to accommodation for sincerely held religious beliefs. Your failure to timely and positively provide this assurance will indicate to us that New York is, in fact, continuing in its attempt to nullify and override legal protections afforded to religious objectors under federal law and the United States Constitution. In that event, we will proceed with an emergency legal action against New York and other entities to protect the fundamental rights of New York's citizenry.**

> A. **New York's Attempt to Nullify, Override, Dissuade, Discourage, or Suppress Requests for Religious Accommodations and Exemptions is Plainly Inconsistent with Title VII; Denying Merited Religious Exemptions and Accommodations Would Violate Title VII; and New York is Not Permitted to Inquire into Correctness of an Employee's Sincerely Held Religious Beliefs.**

As you are undoubtedly aware, Title VII of the Civil Rights Act prohibits every employer in New York from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin"). *See also EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) (same). And, **health care workers who are employed by the State of New York itself are also afforded the same protection under Title VII**. *See* 42 U.S.C. §2000e(f); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) (noting that States are also required to abide by Title VII's mandates in relation to their employees). Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. §2000e(j). Put simply, an employer violates Title VII if it makes employment decisions related to an employee based solely upon that individual's sincerely held religious beliefs. *Abercrombie & Fitch*, 575 U.S. at 773 ("**An employer may not make an applicant's religious practices, confirmed or otherwise, a factor in employment decisions**." (emphasis added)).

Put simply, employers in New York and the State itself as an employer are mandated by Title VII to provide reasonable accommodations to employees with sincerely held religious objections to the COVID-19 vaccines. 42 U.S.C. §2000e(j). Indeed, hospitals have been sued and lost over forced influenza vaccines. *See, e.g. EEOC v. Mission Hosp., Inc.*, No. 1:16-cv-118-MOC-DLH, 2017 WL 3392783 (W.D.N.C. Aug. 7, 2017) (resulting in permanent injunction against Mission Hospital from improperly denying religious exemptions from mandatory vaccinations and requiring the hospital to pay $89,000 in damages); *United States v. Ozaukee Cnty.*, No 18-cv-343-pp (E.D. Wis. 2018) (resulting in a permanent injunction against the county for failure to grant religious exemptions from compulsory vaccinations and ordering county to pay $18,000 in damages to the employee).

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 4

As you also must know, **federal law and the United States' Constitution are supreme over any New York statute or edict, and New York cannot override, nullify, or violate federal law**. *See* U.S. Const. Art. VI, cl. 2 ("**This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (emphasis added)). "**This Court has long made clear that federal law is as much the law of the several States as are the laws passed by their legislatures**." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added). In fact, as the Supreme Court has made clear,

> **It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law.**

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (emphasis added) (cleaned up). **Thus, as you are undoubtedly aware, New York's constant refrain to its health care workers that there is no religious exemption to the Mandatory COVID-19 Vaccination Policy is legally incorrect. Federal law provides protection for every health care worker in New York with a religious objection, and requires accommodation from such mandates. New York simply has no authority to override this federal law.**

While there may be some who consider COVID-19 vaccines to be acceptable as a matter of religious doctrine or belief, no employer in New York – including the State – is permitted to determine which religious adherent has a correct understanding of religious doctrine or whether a health care worker's sincerely held religious beliefs are shared broadly among members of her faith. As the Supreme Court has recognized, an employee's "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). *See also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (same). Additionally, though membership in or adherence to the tenets of an organized religious is plainly sufficient to provide protection for an individual's sincerely held religious beliefs, it is not a necessary precondition. *See Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 834 (1989) ("**Undoubtedly, membership in an organized religious denomination, especially one with a specific tenet forbidding members to work on Sunday, would simplify the problem of identifying sincerely held religious beliefs, but we reject the notion that to claim the protection [for sincerely held religious beliefs], one must be responding to the commands of a particular religious organization**." (emphasis added)). *See also Office of Foreign Assets Control v. Voices in the Wilderness*, 329 F. Supp. 2d 71, 81 (D.D.C. 2004) (noting that the law provides protection for "sincerely held religious beliefs," "not just tenets of organized religion").

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 5

In fact, the law provides protection for sincerely held religious beliefs even when some members of the same religious organization, sect, or denomination disagree with the beliefs espoused by the individual. That some individuals may have sincerely held religious beliefs that differ from those espoused by health care providers with a sincere religious objection to the three currently available COVID-19 vaccines is irrelevant to whether those sincerely held religious beliefs are entitled to protection under Title VII. Indeed,

> **[i]ntrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences . . .** and **the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation**."

450 U.S. at 715-16 (emphasis added).

Moreover, the denial of an employee's request for a religious accommodation and exemption based upon the views of other individuals who do not share their sincere religious beliefs is unlawful. In fact, it is legally irrelevant what other individuals think or religiously believe. Once an employee has articulated her sincerely held religious objections to acceptance or receipt of the currently available COVID-19 vaccines, the proper inquiry is at its end.

Indisputably, all three of the currently available COVID-19 vaccines are produced by, derived from, manufactured with, tested on, developed with, or otherwise connected to aborted fetal cell lines. There is no question about the accuracy of this determination. The North Dakota Department of Health, in its literature for those considering one of the three, currently available COVID-19 vaccines, notes the following: "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (bold added).

The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (bold added).

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 6

The same is true of the Moderna and Pfizer/BioNTech mRNA vaccines. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf. The North Dakota Department of Health, in its handout literature on COVID-19 vaccines, notes: "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 10, 2021) (emphasis added).

Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, the sincerely held religious beliefs of the employees we represent compel them to abstain from accepting or injecting any of these products into their body, regardless of the perceived benefit or rationale. Thus, while there may be some faith leaders and other adherents whose understanding of Scripture is different, and who may be willing to accept one of the three currently available COVID-19 vaccines despite their connection with aborted fetal cell lines, official recognition of a sincerely held religious objection to acceptance or receipt of a vaccine that is inextricably intertwined with aborted fetal cell lines is unnecessary to warrant protection.

**<u>In sum, denying a health care worker's request for a religious accommodation based upon the beliefs of others is unlawful, and refusing to grant a health care worker a religious accommodation at all is plainly a violation of Title VII, regardless of the New York rule or any other provision of New York law</u>**.

**B.     The First Amendment to the United States Constitution Protects New York Healthcare Workers Employed by the State of New York.**

Further, all healthcare workers in the State of New York that are employed by the State also have protection for the exercise of their sincerely held religious beliefs under the First Amendment. It is beyond cavil that government employees do not shed their constitutional rights upon entering government employment. *See Martin v. Lauer*, 686 F.2d 24, 31(D.C. Cir. 1982) ("**government employees do not shed their first amendment rights on assuming public responsibilities**" (emphasis added)). Indeed, "**people do not give up their free-exercise or free-speech rights when they become government employees**." *Warnock v. Archer*, 380 F.3d 1076, 1082 (8th Cir. 2004) (emphasis added). *See also Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 675 (1996) ("The First Amendment's guarantee . . . protects government employees."); *Putnam v. Regional Sch. Unit 50*, No. 1:14-cv-154-JAW, 2015 WL 5440783, *14

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 7

(D. Me. Sept. 15, 2015) ("This guarantee applied to government employees as well, who should not 'suffer reprisal from a government official . . . because of the possible chilling effect against the free exercise of constitutional rights.'" Quoting *Rosaura Bldg. Corp. v. Mun. of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015)).

As the Supreme Court made clear last year, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (emphasis added). Moreover, the Supreme Court has further noted that it will not "abandon the field when government officials with experts in tow seek to infringe a constitutionally protected liberty." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Gorsuch, J.). Indeed, **"[e]ven in times of crisis—perhaps *especially* in times of crisis—we have a duty to hold governments to the Constitution**." *Id.* (emphasis added).

Every healthcare worker employed by the State of New York has the First Amendment right to the free exercise of their religion, including whether to accept a forcible injection of a vaccine. Neither the flick of the Governor's pen, nor a purported public health emergency cannot override those cherished constitutional liberties.

  **C.** **New York Law Protects Every Individual's Right to Refuse Unwanted Medical Treatment.**

New York law provides a long-established common law right to all individuals to refuse unwanted medical care. *See Rivers v. Katz*, 495 N.Y.2d 337, (N.Y. Ct. App. 1986) ("we recognized that a patient's right to determine the course of his medical treatment was paramount to what might otherwise be the doctor's obligation to provide medical care, and that **the right of a competent adult to refuse medical treatment must be honored, even though the recommended treatment may be beneficial or even necessary to preserve the patient's life**" (emphasis added)); *Randolph v. City of N.Y.*, 501 N.Y.S.2d 837, 841 (N.Y. Sup. Ct. 1986) (noting "the right of the competent adult to make his own decision . . . although the treatment may be beneficial or even necessary to preserve the patient's life"); *In re Westchester Cnty. Med. Ctr. on Behalf of Connor*, 72 N.Y.2d 517, (N.Y. Ct. App. 1988) ("It has long been the common-law rule in this State that a person has the right to decline medical treatment, even life-saving treatment").

As the California Supreme Court noted,

> Anglo American law starts with the premise of thorough-going self-determination. It follows that **each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of lifesaving surgery, or other medical treatment**. A doctor might well believe that an operation or form of treatment is desirable or necessary, but the law does not permit him to substitute his own judgment for that of the patient by any form of artifice or deception.

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 8

*Thor v. Superior Ct.*, 855 P.2d 375, 381-82 (Cal. 1993) (emphasis added).

Put simply, "if the patient's informed consent is to have any meaning at all, **it must be accorded respect even when it conflicts with the advice of the doctor or the values of the medical profession as a whole**." *Thor*, 855 P.2d at 386. By mandating that all New York health care workers submit to one of the COVID-19 vaccines as a condition of retaining their ability to feed their families and earn a living, New York runs roughshod over this basic protection. If an employee decides for herself that she desires to abstain from forcible injection of a COVID-19 vaccine that violates her sincerely held religious beliefs, that is her basic right. Put simply, "**[t]he forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty**." *Washington v. Harper*, 494 U.S. 210, 229 (1990) (emphasis added). The Governor's Mandatory COVID-19 Vaccination Policy blatantly ignores this well-established principle of bodily integrity and personal autonomy.

## **CONCLUSION**

**We await your prompt confirmation, on or before close of business on this Tuesday, Sept. 7, 2021, that New York will no longer purport to nullify or override the right of New York citizens to seek religious exemptions from vaccination requirements under federal and state law. Absent this confirmation, we will understand that New York is continuing in its attempt to nullify and override legal protections afforded to religious objectors, and we will proceed with an emergency legal action against New York and other entities to protect the fundamental rights of New York's citizenry. We will seek emergency injunctive relief and all other remedies available under law.**

Sincerely,

Daniel J. Schmid[†]

cc:
Laurian Cristea (Attorney admitted in New York)
Horatio G. Mihet

---

[†] Licensed in Virginia