UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOES 1–2, JANE DOES 1–3, JACK DOES 1–1750, JOAN DOES 1–750, <br><br>　　　　　　Plaintiffs,<br>v.<br><br>KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C.,<br><br>　　　　　　Defendants. | Case No. 21-CV-5067 |

---

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNTION**
**WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 65 and L.R. 7, Plaintiffs, JOHN DOES 1–2, JANE DOES 1–3, JACK DOES 1–750, and JOAN DOES 1–750, hereby move this Court for a temporary restraining order (TRO) and preliminary injunction (PI) against Defendants, KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., and WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C., as set forth below and in Plaintiffs' contemporaneously filed Verified Complaint. In the alternative, should this Court deny Plaintiffs' motion, Plaintiffs also move this Court for an injunction pending appeal under Fed. R. App. P. 8.

1

**MEMORANDUM OF LAW IN SUPPORT**

To obtain a TRO or PI, Plaintiffs must demonstrate that they have a strong likelihood of success on the merits, that they will suffer irreparable injury absent the order, that the balance of the equities favors the order, and that the public interest is served by the Court's issuing the order. *See Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005); *Doe v. Livanta LLC*, 489 F. Supp. 3d 11, 16 (E.D.N.Y. 2020) ("The standard for granting a temporary restraining order is the same as for a preliminary injunction."). Plaintiffs easily satisfy each of these elements factually and legally. (Plaintiffs hereby incorporate by reference the allegations of the Verified Complaint, filed contemporaneously herewith, as their statement of facts in support of this motion.)

**I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT DEFENDANTS MUST FOLLOW FEDERAL LAW AND GRANT RELIGIOUS ACCOMMODATIONS AND EXEMPTIONS FROM THE GOVERNOR'S COVID-19 VACCINE MANDATE.**

**A. Defendants' Refusal to Recognize the Supremacy Clause's Mandate That State Law Align With Federal Law Is Plainly Unlawful.**

As a matter of black letter law, federal law and the United States Constitution are supreme over any contrary New York statute, edict, or executive decree from the Governor, and New York cannot override, nullify, or violate federal law. *See* U.S. Const. Art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). In fact, it is an elementary principle of the Nation's founding charter that the laws of the federal government constitute the laws appliable in the states. *Haywood v. Drown*, 556 U.S. 729, 734 (2009) ("**This Court has long made clear that federal law is as much the law of the several States as are the laws passed by their legislatures**."

(emphasis added)). For this Court and Defendants in this case, the Supremacy Clause "provides a rule of decision for determining whether federal or state law applies in a particular situation," *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020), and where—as here—federal law "imposes restrictions [and] confers rights on private actors," and New York law "imposes restrictions that conflict with the federal law," "**the federal law takes precedence** and the state law is preempted." *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (emphasis added). Indeed, "**[i]t is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712–13 (1985) (emphasis added) (cleaned up).

Here, Defendants have purported to exclude themselves from the requirements and mandates of federal law. There can be no dispute that Title VII of the Civil Rights Act prohibits Defendants from discriminating against Plaintiffs on the basis of their sincerely held religious beliefs. 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . religion . . . ."). And, Defendants have a duty under Title VII to provide religious exemptions and accommodations to those with sincerely held religious objections to the COVID-19 Vaccine Mandate. Yet, when presented with requests from Plaintiffs outlining their sincerely held religious objections to the mandate, Defendant employers have all issued blanket denials of such exemptions, refused to even consider or evaluate such requests, refused to grant any reasonable accommodation for Plaintiffs' sincerely held religious beliefs, revoked previously granted exemptions from the mandate, and threatened to terminate Plaintiffs

for their failure to violate their conscience by complying with the Governor's mandate. (V. Compl. ¶¶ 1, 5, 78–94.)

As detailed in Plaintiffs' Verified Complaint, Defendants are callously and unconscionably ignoring federal law and its demand that sincerely held religious belief be protected and accommodated. (*Id.*) Specifically, Plaintiffs are receiving the following responses to their requests for religious exemption and accommodation:

- "**Religious exemptions are no longer accepted" in New York**.

- "As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination − even those previously approved**."

- "**WMCHealth, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be [sic] not be considered**."

- "**Under the emergency regulations the NYS DOH will not permit exemptions or deferrals for: Sincerely held religious beliefs . . . . We are required to comply with state law**."

(V. Compl. ¶ 1.)

While Defendants might be forgiven for articulating such responses if Plaintiffs were raising them only under New York law, Defendants are fully aware of the fact that Plaintiffs were seeking to invoke the protections of federal law and nevertheless refused to accept the supremacy of such federal protections. Indeed, Plaintiffs' counsel sent a letter to the Government Defendants informing them of the private employers in New York who were interpreting the Governor's mandate to preclude the application of Title VII in New York. (V. Compl., Ex. K.) Yet, no response was forthcoming from the Government Defendants and the private employer Defendants have stressed to Plaintiffs that— despite federal law's demands that religious beliefs be accommodated—"[u]nder the emergency regulations the NYS DOH will not permit exemptions

4

or deferrals for: Sincerely held religious beliefs . . . . **We are required to comply with state law**." (V. Compl. ¶¶ 92–93 (emphasis added).) (*See also* V. Compl. ¶ 89 ("**WMCHealth, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be [sic] not be considered**.").) And, **Trinity Health has granted numerous exemptions and accommodations for its employees with religious beliefs at its facilities in other states, including *inter alia*, Michigan, Idaho, Florida and others**. (V. Compl. ¶93.)

For Defendants, it is as if the protections for religious beliefs demanded by the First Amendment (for the Governor) and Title VII (for employers in New York) simply do not exist. But Defendants' willful disregard of federal law provides no refuge for their unconstitutional and unlawful denials of Plaintiffs' requests for accommodation. For, "**as stated [nearly two centuries ago], the Supremacy Clause invalidates state laws that interfere with or are contrary to the laws of congress**." *Chicago & N.W. Transp. Co. v. Kalo Brick Tile Co.*, 450 U.S. 311, 317 (1981) (emphasis added) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824)). The constitutional structure of the Republic demands that the State, including New York, comply with and adhere to the demands of federal law. Defendants have ignored this structure.

    **B.    The Governor's COVID-19 Vaccine Mandate Violates the Free Exercise Clause of the First Amendment.**

        **1.    Imposing the Governor's Mandate on John Doe 1's practice violates the Free Exercise Clause.**

Plaintiff John Doe 1 is the President of a senior care facility in New York with employees who have sincerely held religious objections to the Governor's COVID-19 Vaccine Mandate. (V. Compl. ¶ 78.) John Doe 1 has sincerely held religious beliefs that he is to honor the sincerely held religious beliefs of his employees who object to the COVID-19 vaccines. (*Id.*) John Doe 1 has

5

been threatened with closure of his practice and loss of his business license for considering and granting religious accommodations and exemptions for his employees. (*Id.* ¶¶ 79-80.) And, there is no question that the Governor has threatened John Doe 1 with the penalty of the loss of his license for failure to comply with the Governor's mandate. (V. Compl. ¶ 80 ("John Doe 1 has spoken with state officials that are responsible for regulating his facility, and he has been informed that offering religious exemptions and accommodation to his employees will result in daily fines and a potential closure of his facility.")

The Governor's mandate and its threat of revocation of John Doe 1's ability to operate his facility for failure to comply is almost identical to the mandates struck down by the Supreme Court in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). There, the federal government mandated that Hobby Lobby (a privately held corporation with sincerely held religious beliefs against abortion) provide insurance coverage for its employees to receive abortion-inducing drugs and contraceptives. 573 U.S. at 690–91. There, the Court noted that the plaintiffs—as here—

> have a sincere religious belief that life begins at conception. They therefore object on religious grounds to providing health insurance that covers methods of birth control that, as HHS acknowledges . . . may result in the destruction of an embryo. By requiring the Hahns and Greens and their companies to arrange for such coverage, **the HHS mandate demands that they engage in conduct that seriously violates their religious beliefs**.

*Id.* at 720 (emphasis added). Here, too, the Governor's mandate imposes a substantial burden on Plaintiffs' religious beliefs. In fact, John Doe 1 must either mandate that his employees receive a vaccine they find objectionable under their sincerely held religious beliefs, or deprive his employees of their abilities to feed their families. Such an unconscionable choice is clearly a substantial burden. Indeed, the First Amendment can hardly be thought to countenance as "a tolerable result to put a family-run business to the choice of violating their sincerely held religious beliefs or making all of their employees lose their existing [employment]." *Id.* at 722.

6

There, as here, the Court was faced with a government mandate that conflicted with the sincerely held religious beliefs of the plaintiffs. There, as here, compliance with the government's mandate imposed a substantial burden on the plaintiffs' sincerely held religious beliefs. There, as here, the government's restrictions on the plaintiffs' sincerely held religious beliefs were subject to (and failed) strict scrutiny. Because the Governor's COVID-19 Vaccine Mandate is not neutral or generally applicable, and provides for individualized medical exemptions but not religious, the mandate is subject to strict scrutiny, and Defendants utterly fail to carry their burden under that standard. (*See infra*.)

> **2. The Governor's refusal to permit accommodation of sincerely held religious beliefs violates the Free Exercise Clause.**

In *Tandon v. Newsom*, the Supreme Court held that the government violates the First Amendment "**whenever it treats *any* comparable activity more favorably than religious exercise**." 141 S. Ct. 1294, 1296 (2021) (bold emphasis added). Here, that is plainly what Defendants have done. The government Defendants have mandated that individuals who are employed in the healthcare industry accept and receive a COVID-19 vaccine. No choice has been given to religious adherents, yet nonreligious exemptions and accommodations are readily available.

And, there is no dispute about the two separate categories of exemptions the Governor has created. Plaintiffs have been informed that while religious exemptions are per se barred in the State of New York, the more favored medical category of exemptions is alive and well in New York. (V. Compl. ¶¶ 95–102.) Specifically, in its response to John Doe 2, Defendant New York-Presbyterian has indicated it is perfectly willing to accept and grant medical exemptions but will not allow religious exemptions. Specifically, New York-Presbyterian told John Doe 2: "Religious exemptions are no longer accepted. **This does not impact an approved or submitted Medical**

7

**exemption request**." (V. Compl. ¶ 97 and Exhibit E at 1.) Jane Doe 1 received the same indication. Specifically, Jane Doe 1 was informed that while her religious exemption has been revoked, staff could still receive an exemption for medical requests. (V. Compl. ¶ 99.)

### 3.     The Governor's discriminatory mandate fails strict scrutiny.

Because the Governor's COVID-19 Vaccine Mandate is neither neutral nor generally applicable, and indeed because it singles out religious objectors for disparate treatment, it must satisfy strict scrutiny, meaning the restrictions must be supported by a compelling interest and narrowly tailored. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 62, 67 (2000); *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1233 (9th Cir. 2020) ("disparate treatment of religion triggers strict scrutiny"). "That standard is not watered down; it really means what it says." *Tandon v. Newsom*, 141 S. Ct. 1294, 1298 (2021). This is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 US. 507, 534 (1997), which is rarely passed. *See Burson v. Freeman*, 504 U.S. 191, 200 (1992) ("[W]e readily acknowledge that a law rarely survives such scrutiny . . . ."). This is not that rare case.

Whatever interest the Governor claims, she cannot show the orders are the least restrictive means of protecting that interest. And it is the Governor's burden to make the showing because "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). "As the Government bears the burden of proof on the ultimate question of . . . constitutionality, **[Plaintiffs] must be deemed likely to prevail unless the Government has shown** that [their] proposed less restrictive alternatives are less effective than [the mandate]." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) (emphasis added). Under this standard, "[n]arrow tailoring requires the government to demonstrate that a policy is the 'least restrictive means' of achieving its objectives." *Agudath Israel of Am. v.*

8

*Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)).

To meet this burden, the government must show it "**seriously** undertook to address the problem with less intrusive tools readily available to it," meaning that it "**considered different methods that other jurisdictions have found effective**." *McCullen v. Coakley*, 573 U.S. 464, 494 (2014) (emphasis added). *See also Agudath Israel*, 983 F.3d at 633 (same). And the Governor must "show either that **substantially less-restrictive alternatives were tried and failed**, or that the **alternatives were closely examined and ruled out for good reason**," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016) (emphasis added), and that "imposing lesser burdens on religious liberty 'would fail to achieve the government's interest, not simply that the chosen route was easier.'" *Agudath Israel*, 983 F.3d at 633 (quoting *McCullen*, 573 U.S. at 495).

Here, for 18 months Plaintiffs have risen every morning, donned their personal protective equipment (PPE), and fearlessly marched into hospitals, doctors' offices, emergency rooms, operating rooms, and examination rooms with one goal: to provide quality healthcare to those suffering from COVID-19 and every other illness or medical need that confronted them. They did it bravely and with honor. They answered the call of duty to provide healthcare to the folks who needed it the most and worked tirelessly to ensure that those ravaged by the pandemic were given appropriate care. For 18 months PPE and other protocols have been sufficient to protect both Plaintiffs and their patients. Yet now, Defendants claim that such measures do not suffice. The Governor tried nothing else. She went straight to a COVID-19 Vaccine Mandate for healthcare workers and purported to remove any protections for their sincerely held religious beliefs. That plainly fails strict scrutiny, as the other, less restrictive alternatives—including alternatives that New York claimed were sufficient to make Plaintiffs' "heroes" for 18 months (V. Compl. ¶72)—

9

are available and protect Defendants' interests while still preserving Plaintiffs' rights under federal law.

      **C.**     **Defendants Have Conspired to Violate Plaintiffs' Civil Rights.**

Section 1985(3) prohibits Defendants from conspiring to deprive Plaintiffs of the equal protection of the laws or to deprive them of other constitutionally protected liberties. 42 U.S.C. § 1985(3). Such claims include a prohibition on Defendants' conspiring together to deprive Plaintiffs of their constitutionally protected right to the free exercise of religion under the First Amendment. *See, e.g.*, *United Bhd. of Carpenters & Joiners of Am. Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 830–31 (1983) (holding that a "conspiracy to infringe First Amendment rights is [a] violation of § 1985(3) [if] it is proved that the state is involved in the conspiracy"); *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) ("Several courts, including this one, have defined class-based animus to include discrimination based on religion."); *Perez-Sanchez v. Public Bldg. Auth.*, 531 F.3d 104, 109 (1st Cir. 2008) (noting that § 1985(3) claims extend to "members of recognized classifications such as race, sex, religion, or national origin" (citing *Brown v. Reardon*, 770 F.2d 896, 906 (10th Cir. 1985)); *Zhang Jingrong v. Chinese Anti-Cult World Alliance*, 311 F. Supp. 3d 514, 551 (E.D.N.Y. 2018) (targeting religion for discriminatory treatment is actionable under 42 U.S.C. § 1985(3)).

Here, Defendants have plainly entered into an agreement to deprive Plaintiffs of their constitutionally protected rights to equal protection and the free exercise of their religion, have done so with a conspiratorial purpose to so deprive them of such rights, have committed overt acts in furtherance of the conspiracy, and have actually deprived Plaintiffs of their constitutionally cherished liberties. *See Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996).

### 1.     Defendants entered into an agreement to violate Plaintiffs' rights.

There is no question that the Governor and her officials have entered into an agreement with Defendant employers to deprive Plaintiffs of their constitutionally protected liberties. Indeed, the Governor's COVID-19 Vaccine Mandate, combined with the Defendant employers' agreements to enforce its provisions and revoke any potential for a religious exemption for healthcare workers in New York, constitutes a conspiracy to violate Plaintiffs' civil and constitutional rights. (V. Compl. ¶ 180.) And, the collusion of the Governor's COVID-19 Vaccine Mandate, the State Department of Health's removal of the option for a religious exemption in the State of New York, and all Defendants' agreement to blatantly ignore federal law's requirement that employees be provided with a religious exemption and accommodation for sincerely held religious beliefs is based upon a conspiratorial purpose to deprive Plaintiffs of their rights to the exercise of their religious beliefs and equal protection.

And, if these statements of Defendants were somehow insufficient to demonstrate their express agreement with the Governor to enforce her COVID-19 Vaccine Mandate without providing any religious exemptions whatsoever, the actions and other statements of Defendants confirm their agreement. New York-Presbyterian's agreement with the Governor to deprive Plaintiffs of their constitutionally protected liberties is evidenced in its denial of Jane Doe 1's request for religious exemption and accommodation. (V. Compl. ¶ 185.) Specifically, the statement that New York-Presbyterian "**must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination – even those previously approved** (*id.* ¶ 1 (emphasis added)) demonstrates that New York-Presbyterian has reached an agreement with the Governor to refuse requests for religious exemptions based on the State's mandate. The same is true of WMC Health, as it has noted its

11

lockstep agreement with the Governor. (V. Compl. ¶¶ 1, 89 ("**[I]n order to comply with DOH Regulations, [WMC Health] will no longer accept applications for a religious exemption and those applications already received will be not be considered**.").)

These statements and actions have more than demonstrated Defendants' agreement to deprive Plaintiffs of their constitutionally protected liberties. "In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express **or tacit**, to achieve an unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (emphasis added) (quoting *Romer v. Morganthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Defendants' public representations that they are in lockstep with the Governor in requiring Plaintiffs to receive a COVID-19 vaccine and that no religious accommodations are available plainly demonstrates a tacit—if not express—agreement to preclude Plaintiffs from seeking and receiving a religious accommodation to the vaccine.

### 2. Defendants acted with a conspiratorial purpose and committed overt acts in furtherance of the conspiracy.

The conspiratorial purpose of Defendants' agreement to deprive Plaintiffs of their constitutionally and statutorily protected rights to a religious accommodation is manifested by Defendants' overt acts in furtherance of the conspiratorial agreement. The Governor and her officials engaged in an overt act in furtherance of the conspiracy by removing all religious protections from mandatory vaccines via the agency rule change. (*See, e.g.*, V. Compl. ¶¶ 33–41.) Indeed, on August 26, New York completely removed the religious exemptions and accommodations, precluding any healthcare worker in New York from requesting or obtaining a reasonable accommodation and exemption for their sincerely held religious beliefs. (V. Compl. ¶ 39), which purports to exempt only those personnel for whom it was recommended by a physician or certified nurse practitioner and provided that reasonable accommodations should be

12

provided for those employees as well, despite the fact that the prior version of the rule permitted religious exemptions. (V. Compl. ¶ 41.) Moreover, the Governor's officials engaged in an overt act of denying even consideration of religious exemptions by stating to the public that religious accommodations and exemptions were no longer permissible in New York, regardless of federal law's requirement that such accommodations be made available to conscientious and religious objectors. (V. Compl. ¶ 41.)

Defendant employers in New York engaged in overt acts in furtherance of their conspiratorial purpose by falsely stating to their employees that religious exemptions, **including those offered and mandated by federal law**, were inapplicable in New York and by revoking exemptions that were previously available. (*See, e.g.*, V. Compl. ¶¶ 1, 78–94.)

Thus, Defendants have all engaged in overt acts in furtherance of their conspiracy and conspiratorial motives by publicly stating—falsely—that no protections or accommodations are available to those individuals who might have sincerely held religious objections to the COVID-19 Vaccine Mandate. **Those statements to the public and the explicit denials of religious exemptions to Plaintiffs on the false premise that federal protections do not apply in New York are overt acts in furtherance of Defendants' conspiracy to deprive Plaintiffs of any accommodation for their sincerely held religious beliefs to which the law entitles them**.

### 3. Defendants have deprived Plaintiffs of their constitutionally protected civil rights to Equal Protection and Free Exercise.

Not only have Defendants agreed to deprive Plaintiffs of their constitutionally and statutorily protected liberties and engaged in overt acts in furtherance of their conspiratorial motives, Defendants have actually deprived Plaintiffs of their protected civil liberties in violation of 42 U.S.C. § 1985(3). Indeed, John Doe 1 has been told that his facility will face crippling fines and be forced to close if he does not comply with the Governor's mandate and refuse to provide

13

religious exemptions to his employees. (V. Compl. ¶ 103.) Defendants have also informed Plaintiffs—who fortunately still have their jobs for now—that failure to comply with the Governor's mandate will result in their termination for merely refusing to accept the COVID-19 vaccine regardless of their sincerely held religious objections to it. (V. Compl. ¶¶ 78-94, 103–113.)

Thus, because Defendants have agreed to deprive, and in fact have deprived, Plaintiffs of their rights to accommodation of their sincerely held religious beliefs, Defendants have violated Section 1985(3) and must be enjoined from continuing to engage in their unlawful and unconscionable conspiracy to deprive Plaintiffs of their protected free exercise of their sincerely held religious beliefs.

### D. The Governor's Impermissible Creation of an Unprotected Class of Religious Objectors in the Healthcare Industry Violates Plaintiffs' Right to Equal Protection.

The Equal Protection Clause of the Fourteenth Amendment makes it unconstitutional for any state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "[T]he concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the government action questioned or challenged." *Reynolds v. Sims*, 377 U.S. 533, 565 (1964). Indeed, when the Governor engages in a system of systematically targeting religious objectors for disparate treatment under New York's immunization laws, her actions plainly violates the Equal Protection Clause.

The Governor's COVID-19 Vaccine Mandate and the State Department of Health's removal of religious exemptions for healthcare workers in New York, on their face and as applied, are each a "status-based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996). The Governor's COVID-19 Vaccine Mandate, on its face and

as applied, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633. Under such a scenario, *Romer* demands a finding that the removal of protections that previously existed represents per se animus in violation of the Fourteenth Amendment. Defendants' removal of religious exemptions from immunizations—while keeping medical exemptions as perfectly acceptable in the healthcare field—results in a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.* Indeed, "**[a] law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [an exemption from the COVID-19 Vaccine Mandate] is itself a denial of equal protection of the laws in the most literal sense**." *Id.* (emphasis added). The Governor's COVID-19 Vaccine Mandate, on its face and as applied, and the State Department of Health's removal of religious exemptions for healthcare workers, are each such a law.

## II. DEFENDANTS' UNLAWFUL CONDUCT IS CAUSING PLAINTIFFS' IRREPARABLE HARM.

As the Supreme Court has just recently affirmed, "**There can be no question that the challenged restrictions, if enforced, will cause irreparable harm.** 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Catholic Diocese*, 141 S. Ct. at 67 (emphasis added) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Here, for Plaintiffs, the Governor's COVID-19 Vaccine Mandate and its unlawful and impermissible prohibition of religious exemptions that are required under federal law is causing immediate and irreparable harm to Plaintiffs. Because Plaintiffs' requests for exemption and accommodation of their sincerely held religious beliefs has been denied by Defendants, Plaintiffs faces the unconscionable choice of accepting a vaccine that conflicts with their religious beliefs or losing their job. (V. Compl. ¶¶ 103-113.)

Because of the Governor's COVID-19 Vaccine Mandate, John Doe 1 faces the unconscionable choice of violating his own sincerely held religious beliefs and forcing his employees to violate their religious beliefs of face crippling fines and closure of his facility. (V. Compl. ¶¶ 103-105.) And John Doe 1 also faces the unconscionable choice of refusing to grant his employees' requests for exemption and accommodation from the Governor's COVID-19 Vaccine Mandate or losing his practice and his business license. (V. Compl. ¶ 103.)

The Governor's mandate, which forces Plaintiffs to choose between their sincerely held religious beliefs and compliance with an unlawful edict that prohibits mandatory federal protections, is unconscionable, unconstitutional, and unlawful. It imposes immediate and irreparable harm on Plaintiffs each day it is permitted to continue. A TRO and preliminary injunction are needed now to protect Plaintiffs' cherished First Amendment liberties and the protections afforded to them under the Constitution.

Pursuant to Fed. R. Civ. P. 65(b)(1), the Court should order a TRO without notice to the Defendants because, as demonstrated in paragraph 5 of the Verified Complaint **Plaintiffs have been given a deadline to become vaccinated by September 27, 2021 for hospital employees and October 7, 2021 for other facilities, forcing them to accept a vaccine injection by various arbitrary deadlines set by the employers, including September 13 at the latest for many Plaintiffs. If Plaintiffs do not comply with the vaccine mandate, they will be terminated and deprived of their ability to feed their families**.

### III. PLAINTIFFS SATISFY THE REMAINING REQUIREMENTS FOR A TRO AND PRELIMINARY INJUNCTION.

When Defendants impose a mandatory vaccine upon Plaintiffs and purport to strip them of their abilities to receive exemption and accommodation for the exercise of their sincerely held religious beliefs, courts "have a duty to conduct a serious examination of the need for such a drastic

16

measure." *Catholic Diocese*, 141 S. Ct. at 68. And, as here, "it has not been shown that granting the applications will harm the public." *Id.* Nor could it be shown, as Plaintiffs are merely seeking to rise each morning, don the same personal protective equipment that sufficed to make them heroes for 18 months, and continue to provide quality healthcare to those who need it most. Plaintiffs' vaccination status was irrelevant for 18 months, and it is irrelevant today.

Moreover, the State "is in no way harmed by the issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291, 302–03 (4th Cir. 2011). But, for Plaintiffs, even minimal infringements upon First Amendment values constitute irreparable injury. *Catholic Diocese*, 141 S. Ct. at 67. As such, there is no comparison between the irreparable injury suffered by Plaintiffs and the non-existent interest Defendants have in enforcing unconstitutional mandates and depriving Plaintiffs of federally required protections of their sincerely held religious beliefs and the exercise thereof. Absent a preliminary injunction, Plaintiffs "face an impossible choice: [accept a vaccine] in violation of their sincere religious beliefs, or risk [termination] for practicing those sincere religious beliefs." *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 914 (W.D. Ky. 2020). The TRO and preliminary injunction should issue immediately to protect Plaintiffs' sincerely held religious beliefs and ensure that federal protections afforded to them are honored by New York and the employers located therein.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion and issue a TRO and preliminary injunction immediately. In the alternative, Plaintiffs' request that this Court issue a preliminary injunction pending appeal.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
*Applications for Admission pro hac vice pending

*Attorneys for Plaintiffs*