## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

JOHN DOES 1–2, JANE DOES 1–3, JACK DOES 1–750, JOAN DOES 1–750,

                    Plaintiffs,

           - v. -

KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C.,

                    Defendants.

Case No. 1:21-cv-05067

## DEFENDANT NEWYORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064

*Attorneys for Defendant NewYork-Presbyterian Healthcare System, Inc.*

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 4

I.  A Novel Coronavirus Emerges, Causing a Global Public Health Emergency. ................. 4

II.  To Protect Its Patients, Staff, Visitors, and Communities, NYP Adds The COVID-19 Vaccine To Its List Of Mandatory Vaccinations For All Employees and Implements a Robust Process for Reviewing Religious Exemptions. ............................... 6

III.  The DOH Compels Hospitals to Require Personnel to Be Fully Vaccinated Against COVID-19 and Precludes Religious Exemptions, Thereby Requiring NYP to Amend Its COVID-19 Vaccination and Exemption Policy. .................................. 9

IV.  This Litigation. ............................................................................................ 10

ARGUMENT ...................................................................................................... 11

I.  Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits. ...................... 12

    A.  Plaintiffs Fail To Demonstrate A Likelihood of Success on Their Supremacy Clause Claim. ................................................................ 12

        1.  The Supremacy Clause Does Not Create a Cause of Action ................... 12

        2.  Title VII Does Not Preempt the DOH Mandate ...................................... 13

    B.  Plaintiffs Fail To Demonstrate A Likelihood of Success on Their Title VII Claim. ....................................................................................... 15

    C.  Plaintiffs Fail To Demonstrate A Likelihood of Success on Their Section 1985 Claim. ................................................................................... 18

II.  Plaintiffs Cannot Demonstrate Irreparable Harm ............................................... 22

III.  Plaintiffs Fail To Show That The Balance of the Equities Tips in Their Favor. ............. 23

IV.  The Public Interest Favors NYP. ................................................................. 24

CONCLUSION ................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdi* v. *Brookhaven Sci. Assocs., LLC*,
  447 F. Supp. 2d 221 (E.D.N.Y. 2006) ...............................................................20, 21

*Armstrong* v. *Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)....................................................................................................12

*Baker* v. *The Home Depot*,
  445 F.3d 541 (2d Cir. 2006)......................................................................................16

*Bhatia* v. *Chevron U.S.A., Inc.*,
  734 F.2d 1382 (9th Cir. 1984) ..................................................................................16

*Bridges* v. *Houston Methodist Hosp.*,
  --- F. Supp. 3d ----, No. 4:21-cv-01774, 2021 WL 2399994
  (S.D. Tex. June 12, 2021) .....................................................................................1, 23

*California Fed. Sav. & Loan Ass'n* v. *Guerra*,
  479 U.S. 272 (1987)..............................................................................................13, 14

*Cassano* v. *Carb*,
  436 F.3d 74 (2d Cir. 2006)........................................................................................15

*Chin* v. *Port Auth. of N.Y. & N.J.*,
  685 F.3d 135 (2d Cir. 2012)......................................................................................17

*Cine SK8, Inc.* v. *Town of Henrietta*,
  507 F.3d 778 (2d Cir. 2007) .....................................................................................20

*CQS ABS Master Fund Ltd.* v. *MBIA Inc.*,
  No. 12 Civ. 6840, 2014 WL 11089340 (S.D.N.Y. Jan 29, 2014)...........................24

*CSX Transp., Inc.* v. *Easterwood*,
  507 U.S. 658 (1993)....................................................................................................14

*Davis* v. *Shah*,
  821 F.3d 231 (2d Cir. 2016)......................................................................................13

*Dist. Council 1707* v. *N.Y. Ass'n For New Americans, Inc.*,
  No. 03-CIV-9536, 2003 WL 22871926 (S.D.N.Y. Dec. 4, 2003)...........................22

*Emanuel* v. *Barry*,
   724 F. Supp. 1096 (E.D.N.Y. 1989) ........................................................................19

*Faiveley Transp. Malmo AB* v. *Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009)....................................................................................22

*Kalsi* v. *N.Y.C. Transit Auth.*,
   62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998) .............................................................16

*Fowlkes* v. *Ironworkers Loc. 40*,
   790 F.3d 378 (2d Cir. 2015)....................................................................................18

*Friends of Falun Gong* v. *Pac. Cultural Enter., Inc.*,
   288 F. Supp. 2d 273 (E.D.N.Y. 2003) ........................................................19, 20, 21

*Garcia* v. *New York City Dep't of Health & Mental Hygiene*,
   106 N.E.3d 1187 (N.Y. 2018)..................................................................................24

*Griffin* v. *Breckenridge*,
   403 U.S. 88 (1971)..............................................................................................20, 21

*Hanson Trust PLC* v. *SCM Corp.*,
   774 F.2d 47 (2d Cir. 1985)......................................................................................11

*Hardaway* v. *Hartford Pub. Works Dep't*,
   879 F.3d 486 (2d Cir. 2018)....................................................................................18

*Hillsborough Cty., Fla.* v. *Automated Med. Lab'ys, Inc.*,
   471 U.S. 707 (1985)................................................................................................14

*Holt* v. *Cont'l Grp., Inc.*,
   708 F.2d 87 (2d Cir. 1983)......................................................................................18

*Hopkins Hawley LLC* v. *Cuomo*,
   518 F. Supp. 3d 705 (S.D.N.Y. 2021)....................................................................24

*Hyde* v. *KLS Pro. Advisors Grp., LLC*,
   500 F. App'x 24 (2d Cir. 2012) ..............................................................................23

*Int'l Bhd. Teamsters, Loc. 743* v. *Cent. States, Se. & Sw. Areas Health & Welfare*
   *& Pension Funds*,
   No. 1:21-cv-03840 (N.D. Ill. Aug. 3, 2021) ............................................................1

*Int'l Bhd. of Teamsters* v. *United States*,
   431 U.S. 324 (1977)................................................................................................17

*Jacobson* v. *Massachusetts*,
   197 U.S. 11 (1905)..................................................................................................19

*Kamerling* v. *Massanari*,
  295 F.3d 206 (2d Cir. 2002)........................................................................22

*LeBlanc-Sternberg* v. *Fletcher*,
  67 F.3d 412 (2d Cir. 1995).........................................................................22

*Litwin* v. *OceanFreight, Inc.*,
  865 F. Supp. 2d 385 (S.D.N.Y. 2011).........................................................23

*Loce* v. *Time Warner Ent. Advance/Newhouse P'ship*,
  191 F.3d 256 (2d Cir. 1999)........................................................................18

*Lowman* v. *NVI LLC*,
  821 F. App'x 29 (2d Cir. 2020) ..................................................................15

*M.O.C.H.A. Soc'y, Inc.* v. *City of Buffalo*,
  689 F.3d 263 (2d Cir. 2012)........................................................................17

*Mazurek* v. *Armstrong*,
  520 U.S. 968 (1997)....................................................................................11

*In re MF Global Holdings Ltd.*,
  561 B.R. 608 (Bankr. S.D.N.Y. 2016) .......................................................11

*Norris* v. *Stanley*,
  --- F. Supp. 3d ----, No. 1:21-cv-00756, 2021 WL 3891615 (W.D. Mich. Aug.
  31, 2021) ......................................................................................................1

*Peck* v. *Montefiore Med. Ctr.*,
  987 F. Supp. 2d 405 (S.D.N.Y. 2013).........................................................22

*Phillips* v. *City of New York*,
  775 F.3d 538 (2d Cir. 2015)........................................................................19

*Robert* v. *Austin*,
  No. 1:21-cv-02228 (D. Colo. Sept. 1, 2021)................................................1

*Robinson* v. *Children's Hospital Boston*,
  No. 14-CV-10263, 2016 WL 1337255 (D. Mass. Apr. 5, 2016) .....................16, 25

*Roman Catholic Diocese of Brooklyn* v. *Cuomo*,
  141 S. Ct. 63 (2020)....................................................................................19

*Sampson* v. *Murray*,
  415 U.S. 61 (1974)......................................................................................22

*Savage* v. *Gorski*,
  850 F.2d 64 (2d Cir. 1988)......................................................................22, 23

*Sealed Plaintiff* v. *Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008)................................................................................10

*Sutton* v. *Providence St. Joseph Med. Ctr.*,
  192 F.3d 826 (9th Cir. 1999) .......................................................................15, 16

*Tom Doherty Assocs., Inc.* v. *Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995)...................................................................................12

*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO* v. *Scott*,
  463 U.S. 825 (1983)......................................................................................20, 21

*W.D.* v. *Rockland County*,
  No. 19-CV-2066, 2021 WL 707065 (S.D.N.Y. Feb. 22, 2021).............................19

*Webb* v. *Goord*,
  340 F.3d 105 (2d Cir. 2003)................................................................................20

*Winter* v. *Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)................................................................................................11

*We the Patriots USA, Inc.* v. *Hochul*, No. 21-cv-4954 (E.D.N.Y. Sept. 12, 2021) ........................1

*Yeager* v. *FirstEnergy Generation Corp.*,
  777 F.3d 362 (6th Cir. 2015) ..............................................................................15

*Yisrael* v. *Per Scholas, Inc.*,
  No. 01-CV-8290, 2004 WL 744485 (S.D.N.Y. Apr. 7, 2004) ..............................16

*Zhang Jingrong* v. *Chinese AntiCult World All.*,
  311 F. Supp. 3d 514 (E.D.N.Y. 2018) .................................................................20

*Zucht* v. *King*,
  260 U.S. 174 (1922)............................................................................................19

*F.F. ex rel. Y.F.* v. *State*,
  114 N.Y.S.3d 852 (N.Y. Sup. Ct. 2019) ..............................................................24

*Tucson Police Officers Ass'n* v. *City of Tucson*,
  No. C20213869 (Ariz. Sup. Ct. Aug. 19, 2021) ....................................................1

## Federal Statutes, Regulations & Orders

42 U.S.C. § 1985(3) .................................................................................. *passim*

42 U.S.C. § 2000e–2(a)(1).................................................................................15

42 U.S.C. § 2000e(j) ..........................................................................................14

85 Fed. Reg. 17,335 (Mar. 24, 2020) ...........................................................................6

85 Fed. Reg. 7316 (Feb. 4, 2020) ...............................................................................5

Emergency Declaration (Mar. 14, 2020), https://www.fema.gov/press-
    release/20210318/covid-19-emergency-declaration ...............................................5

Fed. R. Civ. P. 10(a) ..................................................................................................10

**State Statutes & Regulations**

N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021) ......................................... *passim*

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3 (2001).

N.Y. Pub. Health L. § 2806 (2021) .............................................................................24

Prevention of COVID-19 Transmission by Covered Entities at 24 (Aug. 26,
    2021), https://regs.health.ny.gov/sites/default/files/pdf/emergency_
    regulations/ Prevention%20of%20COVID-19%20Transmission%20by%20
    Covered%20Entities.pdf .....................................................................................9

**Secondary Sources**

*About Us*, New York-Presbyterian, https://www.nyp.org/about ....................................7

Cases & Deaths Among Healthcare Personnel, CDC COVID Data Tracker,
    https://covid.cdc.gov/covid-data-tracker/#health-care-personnel ...............................5

CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-
    tracker/#datatracker-home ...................................................................................5

Century Health Threats, *Rapid Expert Consultation on Understanding Causes of
    Health Care Worker Deaths Due to the COVID-19 Pandemic* 4 (Dec. 10,
    2020), https://www.nap.edu/read/26018/chapter/1 ..................................................5

Devin Watkins, *Pope Francis Urges People to Get Vaccinated Against Covid-19*
    Vatican News (Aug. 18, 2021), https://www.vaticannews.va/en/pope/news /
    2021-08/pope-francis-appeal-covid-19-vaccines-act-of-love.html ..........................21

*Influenza (Flu)*, CDC, https://www.cdc.gov/flu/about/season/flu-season.htm..............8

Jeanne Whalen, *Models Predict U.S. Coronavirus Infections Could Surge This
    Fall If Vaccination Rates Lag, Former FDA Chief Says*, Washington Post
    (June 20, 2021).....................................................................................................8

Jonathan Levin, *U.S. Evangelical Leaders Preach Covid Vaccine Benefits to Their Followers* (Mar. 26, 2021, 10:03 AM), https://www.bloomberg.com/news/articles/2021-03-26/u-s-evangelical-leaders-preach-vaccine-to-holdout-flocks ................................................................................21

*New Video*, Jewish Times (Aug. 12, 2021), https://www.jewishtimes.com/baltimore-rabbis-encourage-vaccinations-in-new-video ............................................................................................................22

*New York-Presbyterian Hospital/Weill Cornell Medical Center*, Castle Connolly Top Doctors, https://www.castleconnolly.com/top-hospitals/newyork-presbyterian-hospital-weill-cornell-medical-center-nyc0120 ....................................................6

NPR, *'Lost On The Front Line': Tracks Health Workers Who Died Of COVID-19* (Apr. 8, 2021, 5:02 AM), https://www.npr.org/2021/04/08/985253407/lost-on-the-front-line-tracks-health-workers-who-died-of-covid-19 .....................................................5

Press Release, CDC, *First Travel-related Case of 2019 Novel Coronavirus Detected in United States* (Jan. 21, 2020), https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html ...............................................................................................................4

Special Committee on Codes, Regulations and Legislation and Special Full Public Health and Health Planning Council Meeting (August 26, 2021) at 26:00–26:15, 27:30–55, https://totalwebcasting.com/view/?func=VIEW&id=nysdoh&date=2021-08-26&seq=1 ...........................................................................................................9

Vatican News (Aug. 18, 2021), https://www.vaticannews.va/en/pope/news/2021-08/pope-francis-appeal-covid-19-vaccines-act-of-love.html; ...................................................21

*WHO Director-General's Statement on IHR Emergency Committee on Novel Coronavirus (2019-nCov)* (Jan. 30, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-statement-on-ihr-emergency-committee-on-novel-coronavirus-(2019-ncov); ...........................................................4

World Health Organization, *Listings of WHO's Response to COVID-19* (Jan. 29, 2021), https://www.who.int/news/item/29-06-2020-covidtimeline ...........................................4

World Health Organization, *WHO Director-General's Opening Remarks at the Media Briefing on COVID-10 – 11 March 2020* (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 ..................................4

Defendant NewYork-Presbyterian Healthcare System, Inc. ("NYP") respectfully submits this memorandum of law in opposition to plaintiffs' application for a temporary restraining order and preliminary injunction.

## PRELIMINARY STATEMENT

In the midst of the most severe public health crisis in a century, plaintiffs seek emergency injunctive relief that would compel NYP and other private hospital systems to violate state law, namely the New York State Department of Health's ("DOH") vaccination mandate, codified at N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021) (the "DOH Mandate"), which seeks to protect the public health and safety—and the health and safety of hospital employees, patients, and visitors—by mandating that all healthcare employees (other than those medically exempted) be vaccinated against COVID-19.  The relief plaintiffs request is unprecedented—courts have consistently rejected claims challenging COVID-19 vaccination mandates by private health care providers, such as NYP, and other employers.[1]  Just yesterday, Judge Kuntz of this Court denied an application for a TRO in another action challenging the DOH Mandate on grounds substantially similar to those plaintiffs plead here.[2]  Because there is no basis for the extraordinary relief that plaintiffs are seeking, plaintiffs' application should be denied.

---

[1]   *See Bridges* v. *Houston Methodist Hosp.*, --- F. Supp. 3d ----, No. 4:21-cv-01774, 2021 WL 2399994 (S.D. Tex. June 12, 2021) (dismissing challenges to private hospital employer's COVID-19 vaccination policy); *Int'l Bhd. Teamsters, Loc. 743* v. *Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds*, No. 1:21-cv-03840 (N.D. Ill. Aug. 3, 2021) (order denying request for TRO against private employer's COVID-19 vaccine policy); *Norris* v. *Stanley*, --- F. Supp. 3d ----, No. 1:21-cv-00756, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) (denying request for TRO against university employer's COVID-19 vaccine policy); *Robert* v. *Austin*, No. 1:21-cv-02228 (D. Colo. Sept. 1, 2021) (order denying request for TRO against the military's COVID-19 vaccine requirement for servicemembers who have already had COVID-19); *Tucson Police Officers Ass'n* v. *City of Tucson*, No. C20213869 (Ariz. Sup. Ct. Aug. 19, 2021) (minute entry denying request for TRO against city's COVID-19 vaccination policy for city employees).

[2]   Order, *We the Patriots USA, Inc.* v. *Hochul*, No. 21-cv-4954 (E.D.N.Y. Sept. 12, 2021).

Since the beginning of the outbreak, NYP has been on the front lines in providing life-saving care to many thousands of patients infected with the coronavirus and to reduce the spread of the pandemic.  More recently, in July 2021, after highly effective vaccines against COVID-19 became available, NYP added the COVID-19 vaccine to its list of required vaccinations for all of its employees, unless granted an exemption.  NYP's policy originally provided for exemptions to the vaccine mandate based on employees' sincere religious objections.  In late August, DOH—NYP's primary regulator—issued its mandate requiring healthcare employees to be vaccinated against COVID-19, and recognizing only medical exemptions to that mandate.  Consistent with the DOH Mandate, NYP has advised its employees that it will not recognize religious exceptions to its policy.

Plaintiffs do not challenge NYP's vaccination policy, or its denial of any religious exemption claims before the DOH Mandate issued.  Nor do they contest that NYP may condition any exemptions on appropriate measures to protect patient and employee health and safety.  Instead, plaintiffs challenge only NYP's determination, in compliance with the DOH Mandate, not to allow exemptions to its employee vaccination requirement based upon religious beliefs.  They seek by this motion a temporary restraining order and preliminary injunction compelling NYP to disregard the DOH Mandate.  Their motion does not satisfy any of the requirements for the relief they seek, and it should be denied.

*First*, plaintiffs cannot show that they are likely to succeed on any of their underlying claims against NYP.  Contrary to plaintiffs' allegations, the federal Title VII statute prohibiting religious and other discrimination in employment has only a narrow preemptive effect, and the statute does not preempt the DOH Mandate.  Courts have repeatedly held that Title VII does not require employers to grant religious accommodations where doing so would cause them to

2

violate state health and safety laws or put the health and safety of its workforce at risk. Plaintiffs' claim under Title VII is also barred because plaintiffs have failed to exhaust their administrative remedies through the EEOC as required before commencing suit under the statute.

Plaintiffs' other claims against NYP fare no better.  Their purported claim under the Supremacy Clause runs aground because, as the Supreme Court has held, the Supremacy Clause does not give rise to a cause of action and is not the source of any federal rights.  Plaintiffs likewise cannot show a likelihood of success on their claim under Section 1985(3) that NYP allegedly conspired with the State to violate their First Amendment rights.  Under well-settled law going back more than a century, vaccination mandates to protect the public health do not contravene the Constitution.  Plaintiffs' Section 1985(3) claim also fails because plaintiffs have not pleaded and cannot prove any conspiracy.  Instead, the facts alleged show only that NYP complied with the DOH Mandate after the Governor and state regulators independently decided to adopt the mandate.  Nor is there any allegation, or a shred of evidence, that NYP was motivated by animus against religious believers or anyone else—a necessary predicate for a claim under Section 1985(3).

*Second*, plaintiffs have not shown irreparable injury absent an injunction.  As a matter of law, it is well established that neither the loss of employment nor financial loss constitute "irreparable harm" for purposes of determining whether injunctive relief is warranted.  Such losses are entirely remediable by money damages, and thus do not support injunctive relief.

*Third*, in the absence of irreparable harm, plaintiffs cannot make the requisite showing that the balance of the equities weighs in their favor.  An injunction requiring NYP to violate state law would jeopardize NYP's ability to continue treating patients, and would, in the State's

expressed view, undermine its efforts to protect public health by controlling the COVID-19 pandemic.

*Fourth*, plaintiffs fail to show that the injunctive relief sought is in the public interest. It cannot be reasonably debated—and plaintiffs do not even try to say otherwise—that greater harm to the public may result from granting the relief than from denying it. As noted above, an injunction requiring NYP to violate state law would jeopardize NYP's license and undermine the State's effort to control the pandemic.

For these reasons, as discussed further below, plaintiffs' application for a temporary restraining order and preliminary injunction should be denied.

## STATEMENT OF FACTS

### I.     A Novel Coronavirus Emerges, Causing a Global Public Health Emergency.

On December 31, 2019, Chinese health officials reported a cluster of novel coronavirus cases, which led the World Health Organization ("WHO") to begin investigating the outbreak.[3] Soon thereafter, on January 21, 2020, the CDC confirmed the first case of COVID-19 in the United States.[4] The WHO declared a global public health emergency a few days later, on January 30, 2020, and declared it a pandemic on March 11, 2020.[5] On February 4, 2020, the

---

[3]   World Health Organization, *Listings of WHO's Response to COVID-19* (Jan. 29, 2021), https://www.who.int/news/item/29-06-2020-covidtimeline.

[4]   Press Release, CDC, *First Travel-related Case of 2019 Novel Coronavirus Detected in United States* (Jan. 21, 2020), https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html.

[5]   World Health Organization, *WHO Director-General's Statement on IHR Emergency Committee on Novel Coronavirus (2019-nCov)* (Jan. 30, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-statement-on-ihr-emergency-committee-on-novel-coronavirus-(2019-ncov); World Health Organization, *WHO Director-General's Opening Remarks at the Media Briefing on COVID-10 – 11 March 2020* (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

Secretary of the U.S. Department of Health and Human Services ("HHS") determined that

COVID-19 presented a public health emergency.[6]  Governor Cuomo confirmed the first case of

COVID-19 in New York on February 28, 2020, and President Trump declared a U.S. National

Emergency on March 13, 2020.[7]

     According to the CDC, since early 2020, COVID-19 has infected over 40.8 million

people in the United States and has killed over 650,000.[8]  These figures include over 550,000

cases and at least 1,750 deaths among healthcare personnel.[9]  These numbers are likely an

undercount,[10] and fail to capture the devastating physical and emotional toll that the pandemic

has unleashed on healthcare workers.

     In the months that followed the outbreak, healthcare workers endeavored to treat patients

with COVID-19 while protecting other patients, themselves, their families and colleagues, and

---

[6]   "Determination of Public Health Emergency," 85 Fed. Reg. 7316 (Feb. 4, 2020).

[7]   Federal Emergency Management Agency, *COVID-19 Emergency Declaration* (Mar. 14, 2020), https://www.fema.gov/press-release/20210318/covid-19-emergency-declaration.

[8]   *See* CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited September 12, 2021).

[9]   *See* Cases & Deaths Among Healthcare Personnel, CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#health-care-personnel (last visited September 12, 2021); Jane Spencer & Christina Jewett, *12 Months of Trauma: More Than 3,600 US Health Workers Died in Covid's First Year,* Kaiser Family Foundation (Apr. 8, 2021).

[10]  National Academies of Sciences, Engineering, and Medicine - Standing Committee on Emerging Infectious Diseases and 21st Century Health Threats, *Rapid Expert Consultation on Understanding Causes of Health Care Worker Deaths Due to the COVID-19 Pandemic* 4 (Dec. 10, 2020), https://www.nap.edu/read/26018/chapter/1 (describing how the CDC COVID Data Tracker relies on data where occupation type and job setting information is frequently missing); NPR, *'Lost On The Front Line': Tracks Health Workers Who Died Of COVID-19* (Apr. 8, 2021, 5:02 AM), https://www.npr.org/2021/04/08/985253407/lost-on-the-front-line-tracks-health-workers-who-died-of-covid-19 (finding that more than 3,600 U.S. healthcare workers had died in the COVID-19 pandemic); Jane Spencer & Christina Jewett, *12 Months of Trauma: More Than 3,600 US Health Workers Died in Covid's First Year,* Kaiser Family Foundation (Apr. 8, 2021) (estimating over 3,600 deaths among healthcare personnel).

their communities from the virus, and while the nation's top immunologists and virologists

worked to develop a vaccine.  On March 27, 2020, the Secretary of HHS declared that

circumstances exist justifying the authorization of medical devices, including alternative

products used as medical devices, pursuant to § 564 of the Federal Food, Drug, and Cosmetic

Act ("FDCA").[11]  This declaration allowed the U.S. Food and Drug Administration ("FDA") to

issue Emergency Use Authorizations ("EUA") for COVID-19 vaccines under § 564 of the

FDCA.  In December 2020 and February 2021, the FDA issued EUAs for three COVID-19

vaccines, one of which subsequently received full approval by the FDA in September 2021.

II.    **To Protect Its Patients, Staff, Visitors, and Communities, NYP Adds The COVID-19 Vaccine To Its List Of Mandatory Vaccinations For All Employees and Implements a Robust Process for Reviewing Religious Exemptions.**

NYP, with its affiliates and subsidiaries, is a premier comprehensive healthcare system

with roots in two historic healthcare institutions, the New York Hospital founded in 1771 and the

Presbyterian Hospital founded in 1898.  Dedicated to providing the highest quality, most

compassionate care and service to its patients, NYP is consistently ranked among the top

hospitals in the United States overall, as well as for various specialty practices.  In collaboration

with two renowned medical schools, the Columbia University Vagelos College of Physicians &

Surgeons and Weill Cornell Medicine, NYP is consistently regarded as a leader in education,

ground-breaking medical research, and patient-centered care.[12]  Through seven world-class

campuses, more than 6,500 affiliated physicians, and 20,000 staff, NYP services the New York

---

[11]   Emergency Use Authorization Declaration, 85 Fed. Reg. 17,335 (Mar. 24, 2020).

[12]   *New York-Presbyterian Hospital/Weill Cornell Medical Center*, Castle Connolly Top Doctors, https://www.castleconnolly.com/top-hospitals/newyork-presbyterian-hospital-weill-cornell-medical-center-nyc0120.

Metropolitan area and sees more than two million visits annually, including more than 310,000 emergency department visits.[13]

Like all hospitals, NYP maintains myriad policies and procedures designed to promote patient care and ensure the safety of its patients and healthcare workers.  For many years, those policies and procedures have included a requirement that all employees who are not eligible for an exemption due to medical or religious reasons obtain certain vaccinations as a condition of employment.  Until recently, NYP's vaccination requirement included vaccinations against influenza, measles, rubella, and varicella.  Declaration of Shaun E. Smith ("Smith Decl.") ¶ 5. Under New York State law, religious exemptions are not permitted for hospital workers for vaccinations against measles or rubella.  N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3 (2001).

On June 11, 2021, after careful consideration of the risks posed by COVID-19 as well as the vast data concerning the safety and efficacy of the vaccines, NYP added the vaccination against COVID-19 to its list of required vaccinations for employees.  *Id.* ¶ 11.  Thus, in a memorandum to all employees underscoring the severity of the current global health crisis, the threat of further harm, the possibility of more dangerous mutations, and the demonstrated safety and efficacy of the COVID-19 vaccines now available, NYP informed its employees that they must receive their first dose of the vaccine no later than September 1, 2021, and must complete the second dose, if any, within the prescribed timeline.  That deadline was subsequently adjusted to September 15, 2021 for all non-supervisory employees.  *Id.* ¶ 12. The September deadline was

---

[13] *About Us*, New York-Presbyterian, https://www.nyp.org/about (last visited September 12, 2021).

intended to reduce the potential deleterious impact of a fall surge in coronavirus cases,[14] compounded by seasonal influenza, which typically begins to increase in October.[15]

NYP further communicated that employees who cannot be vaccinated for medical reasons, pregnancy, or religious reasons must apply for an exemption by August 1, 2021 (that deadline subsequently was extended to August 6, 2021).  Smith Decl. ¶ 14.  On July 7, 2021, NYP provided additional details concerning the exemption process.[16]  In particular, NYP explained that employees seeking an exemption must complete and submit a form setting forth the basis for the exemption request.[17]  NYP further communicated that requests would be reviewed individually and that, if a request were denied, the requesting employee would have up to one week after receiving the denial to either submit additional documentation for medical exemptions or an additional statement for religious exemptions to support the request.[18]  To review religious exemption requests, NYP formed an internal committee comprised of multiple staff in NYP's workforce health and safety, human resources, pastoral care, and social work departments, as well as retained external consultants with relevant expertise in religion and ethics.  As of August 2021, NYP's internal committee had carefully reviewed over 1,200 requests for a religious exemption, 129 of which were approved.  Smith Decl. ¶¶ 16–17.

---

[14]   Jeanne Whalen, *Models Predict U.S. Coronavirus Infections Could Surge This Fall If Vaccination Rates Lag, Former FDA Chief Says*, Washington Post (June 20, 2021), https://www.washingtonpost.com/nation/2021/06/20/us-coronavirus-infection-rate-fall-2021.

[15]   *Influenza (Flu)*, CDC, https://www.cdc.gov/flu/about/season/flu-season.htm (last visited September 12, 2021).

[16]   Smith Decl. Ex. A (COVID-19 Vaccine Program FAQs dated July 7, 2021).

[17]   *Id.* at 2.  A portion of the medical exemption request form must be completed by a health care provider.  *Id.*

[18]   *Id.*

III.    **The DOH Compels Hospitals to Require Personnel to Be Fully Vaccinated Against COVID-19 and Precludes Religious Exemptions, Thereby Requiring NYP to Amend Its COVID-19 Vaccination and Exemption Policy.**

On August 26, 2021, the New York State Public Health and Health Planning Council invoked its emergency powers to mandate that New York hospitals, among other health care institutions, require personnel to be "fully vaccinated against COVID-19 . . . absent receipt of an exemption as allowed" by the regulation. *Prevention of COVID-19 Transmission by Covered Entities*, N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021). The DOH Mandate was issued "in response to [the] significant public health threat" posed by COVID-19 and the Delta variant and the special risk faced by unvaccinated healthcare workers and patients.[19]

The DOH Mandate expressly allows medical, but not religious, exemptions to the COVID-19 vaccination requirement. *Id.* § 2.61(d). At a public hearing on August 26, 2021, a representative from the DOH stated that entities covered by the statute could not grant religious exemptions and that previously granted exemptions would be deemed revoked.[20] Smith Decl. ¶¶ 20–23.

In response to the emergency regulation, NYP amended its vaccination policy to comply with the new law by eliminating religious exemptions and notified employees of the regulatory change in policy. *See* ECF 1-13 at 2; Smith Decl. ¶¶ 23–24. Specifically, on August 30, 2021, NYP informed employees that the Public Health and Health Planning Council of the New York State Department of Health formally adopted a COVID-19 vaccination requirement for health

---

[19]    Prevention of COVID-19 Transmission by Covered Entities at 24 (Aug. 26, 2021), https://regs.health.ny.gov/sites/default/files/pdf/emergency_regulations/Prevention%20of%20COVID-19%20Transmission%20by%20Covered%20Entities.pdf.

[20]    Special Committee on Codes, Regulations and Legislation and Special Full Public Health and Health Planning Council Meeting (August 26, 2021) at 26:00–26:15, 27:30–55, https://totalwebcasting.com/view/?func=VIEW&id=nysdoh&date=2021-08-26&seq=1.

care workers and "made the determination to exclude religious exemptions as an alternative to receiving the vaccine." ECF 1-13 at 2 (emphasis omitted). NYP further stated that "NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination[,] even those previously approved." *Id.* (emphasis omitted).

## IV.    This Litigation

On September 10, 2021, plaintiffs commenced this lawsuit against Governor Kathy Hochul, Commissioner Howard A. Zucker (together, the "Government Defendants"), and the Private Employer Defendants, seeking preliminary and permanent injunctive relief, declaratory relief, and damages. *See* ECF 1 ("Compl.").[21] Plaintiffs John Doe 2 and Jane Doe 1 allege that they are current NYP employees who received religious exemptions that were subsequently revoked after the DOH issued its COVID-19 vaccination requirement. *Id.* ¶¶ 11, 12, 81–87.

Plaintiffs do not challenge NYP's prior religious exemption review process or NYP's denial of any religious exemption request before the DOH Mandate issued. Nor do plaintiffs challenge NYP's policy requiring all non-exempted employees to be vaccinated. Instead, plaintiffs challenge only NYP's determination, in compliance with the DOH Mandate, not to allow exemptions to that policy based upon religious beliefs. Plaintiffs purport to assert claims against NYP and the other Private Employer Defendants based upon alleged violations of the

---

[21]   The complaint violates the requirement under Fed. R. Civ. P. 10(a) to "name all the parties" and fails to show, or even allege, that their "interest in anonymity [outweighs] both the public interest in disclosure and any prejudice to the defendant." *See Sealed Plaintiff* v. *Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (determining whether to allow a party to proceed under a pseudonym involves the "balancing of interests"). Nor have plaintiffs been granted leave from the Court to proceed using pseudonyms.

Supremacy Clause (Count II), Title VII of the Civil Rights Act of 1964 (Count IV), and Section 2 of the Klu Klux Klan Act, subsequently codified at 42 U.S.C. § 1985(3) (Count V).  *Id.*

Plaintiffs seek a temporary restraining order and preliminary injunction.  Although plaintiffs' moving brief largely focuses on enjoining the Government Defendants and the DOH Mandate (*see* ECF 2 ("TRO Application")), as to NYP, plaintiffs seek emergency injunctive relief that would require NYP to "immediately cease in [its] refusal to consider, evaluate, or accept plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs" and "immediately grant Plaintiffs' requests . . . provided that Plaintiffs agree to abide by reasonable accommodation provisions such as masking, testing, symptom monitoring, and reporting."  Compl. at 43.[22]

## ARGUMENT

A temporary restraining order, like a preliminary injunction, is "an extraordinary and drastic remedy."  *Mazurek* v. *Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see Hanson Trust PLC* v. *SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies").[23]  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Where, as here, the plaintiff seeks mandatory preliminary injunctive relief (*i.e.*, "an

---

[22]   Plaintiffs do not appear to ask the Court to limit any accommodations to those it specifies. To the extent they intend to do so, they offer no justification in their moving papers for any such relief.

[23]   "[T]he standards for a temporary restraining order and a preliminary injunction are not materially different."  *In re MF Global Holdings Ltd.*, 561 B.R. 608, 624 (Bankr. S.D.N.Y. 2016).

injunction [that] will alter, rather than maintain, the status quo"), the plaintiff must "meet a higher standard" by making a "clear" or "substantial" showing of entitlement to the relief requested. *Tom Doherty Assocs., Inc.* v. *Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

Because plaintiffs have failed to make a clear showing of entitlement to a temporary restraining order or preliminary injunction, plaintiffs' extraordinary application should be denied.

**I.     Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits.**

Plaintiffs assert that NYP has violated the Supremacy Clause, Title VII, and 42 U.S.C. § 1985(3).  Plaintiffs' attempt to establish a likelihood of success on the merits, however, falls short as to each claim.

**A.     Plaintiffs Fail To Demonstrate A Likelihood of Success on Their Supremacy Clause Claim.**

Plaintiffs have not shown and cannot show that they are likely to succeed on their claim based on the Supremacy Clause.  That is because (i) there is no private right of action under the Supremacy Clause, and (ii) Title VII does not preempt the DOH Mandate or require employers to grant religious accommodations that would violate state laws , particularly state laws protecting health and safety.

**1.     *The Supremacy Clause Does Not Create a Cause of Action***

The Supremacy Clause is not "the source of any federal rights" or any private cause of action, but a "rule of decision" that courts should not give effect to state laws that conflict with federal law.  *Armstrong* v. *Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015) (citing *Golden State Transit Corp.* v. *Los Angeles*, 493 U.S. 103, 107 (1989)).  Thus, as the Supreme Court held in *Armstrong*, the Supremacy Clause "certainly does not create a cause of action."  575 U.S. at 325.  The Court reasoned in *Armstrong* that reading a private right of action into the Supremacy Clause would be "strange" given the Constitution's "silen[ce] regarding who may enforce federal

laws in court, and in what circumstances they may do so," and that the result of permitting a

private right of action would be to "significantly curtail [Congress's] ability to guide the

implementation of federal law." *Id.* at 325–26. Thus, as the Second Circuit concluded, the

Supremacy Clause "does not create a private right of action." *Davis* v. *Shah*, 821 F.3d 231, 245

(2d Cir. 2016) (stating, in light of *Armstrong*, that there is no "implied right of action arising out

of the Supremacy Clause."). Plaintiffs' claim under the Supremacy Clause fails for this reason

alone.

        **2.**     ***Title VII Does Not Preempt the DOH Mandate***

        Plaintiffs' claim under the Supremacy Clause fails for an additional reason that the DOH

Mandate does not conflict with Title VII. *California Fed. Sav. & Loan Ass'n* v. *Guerra*, 479

U.S. 272, 281 (1987). Federal law preempts state law (1) where Congress "preempt[s] state law

by so stating in express terms"; (2) where "the scheme of federal regulation is sufficiently

comprehensive to make the reasonable inference that Congress 'left no room' for supplementary

state regulation"; and (3) only where there is an actual conflict between the two because

compliance with both is "a physical impossibility" or because state law stands "as an obstacle to

the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 280

(citations omitted).[24] In determining whether a state statute is pre-empted by federal law and

therefore invalid under the Supremacy Clause, the court's "sole task" is to "ascertain the intent of

Congress." *Id.* (citations omitted). "Pre-emption is not to be lightly presumed." *Id.* (citing

*Maryland* v. *Louisiana*, 451 U.S. 725, 746 (1981)).

---

[24]  The first two bases for preemption are inapplicable here given that plaintiffs do not and
cannot claim that Title VII expressly preempts the DOH Mandate or that Title VII "explicitly
disclaimed any intent to categorically to pre-empt state law." *Id.* (citing 42 U.S.C. §§ 2000e–
7; 2000h–4).

Title VII does not conflict with the DOH Mandate because, as discussed further below, it does not require employers to grant religious accommodations that would cause the employer to violate state law protecting public health and safety.  As the Supreme Court has emphasized, there is a strong presumption that "state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause."  *Hillsborough Cty., Fla.* v. *Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 715 (1985) (holding that county ordinances and implementing regulations concerning health and safety matters are not preempted by federal regulation). Federal preemption of a state health and safety regulation will be found only in situations where it is "the clear and manifest purpose of Congress."  *CSX Transp., Inc.* v. *Easterwood*, 507 U.S. 658, 664 (1993) (courts "interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.").  The DOH Mandate is an emergency public health regulation requiring COVID-19 vaccination of personnel in hospitals and other healthcare settings aimed at preventing the transmission of COVID-19 during a worldwide pandemic.  Plaintiffs have failed to show a conflict between Title VII and the DOH Mandate that is strong enough to overcome this presumption afforded to the DOH Mandate.

Title VII does not preempt the DOH Mandate because the DOH Mandate does not expressly sanction a practice that is unlawful under Title VII or is inconsistent with the purpose of Title VII.  *See California Fed. Sav. & Loan Ass'n*, 479 U.S. 272 at 284 (Title VII preempts "only those state laws that expressly sanction a practice unlawful" under the statute).  Contrary to plaintiffs' claim, there is no conflict between the requirements of Title VII and the DOH Mandate.  Title VII requires employers to accommodate religious beliefs, practices, or observances only to the extent that doing so would not impose "undue hardship" on the employer.  *See* 42 U.S.C. § 2000e(j) ("religion" includes all aspects of religious observance and

practice, as well as belief, *unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business*.") (emphasis added).  As discussed below, this standard does not require employers to provide accommodations that would result in the employer violating state law.  *See Yeager* v. *FirstEnergy Generation Corp*., 777 F.3d 362, 363 (6th Cir. 2015) (noting that Title VII's text does not license an employer to disregard other laws "in the name of reasonably accommodating an employee's religious practices").

For the foregoing reasons, plaintiffs' claim under the Supremacy Clause fails as a matter of law.

**B.    Plaintiffs Fail To Demonstrate A Likelihood of Success on Their Title VII Claim.**

Plaintiffs also are not likely to succeed on their religious discrimination claims under Title VII.  Title VII makes it unlawful for an employer to discharge or otherwise to discriminate against an individual with respect to the terms or conditions of employment because of such individual's religion, among other protected characteristics.  42 U.S.C. § 2000e–2(a)(1).  Plaintiffs' contention that NYP discriminated against plaintiffs by failing to grant or consider their religious exemption requests fails for multiple reasons.

*First*, as courts have repeatedly recognized, an employer is not obligated to grant a religious exemption under Title VII when "accommodating an employee's religious beliefs would require it to violate federal law or state law."  *Sutton* v. *Providence St. Joseph Med. Ctr*., 192 F.3d 826, 830 (9th Cir. 1999); *see Lowman* v. *NVI LLC*, 821 F. App'x 29, 31–32 (2d Cir. 2020); *Cassano* v. *Carb*, 436 F.3d 74, 75 (2d Cir. 2006) (per curiam); *Yeager* v. *FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015).  "An accommodation is said to cause an

15

undue hardship whenever it results in 'more than a de minimis cost' to the employer." *Baker* v. *The Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006) (quoting *Trans World Airlines, Inc.* v. *Hardison*, 432 U.S. 63, 84 (1977)).  As the Ninth Circuit held in *Sutton*, "when accommodating an employee's religious beliefs would require the employer to violate federal or state law[,] . . . the existence of such a law establishes 'undue hardship'" under Title VII, relieving the employer of any obligation to provide the accommodation. *Sutton*, 192 F.3d at 830.

Courts have applied this rule in multiple analogous contexts.  In *Yisrael* v. *Per Scholas, Inc.*, No. 01-CV-8290, 2004 WL 744485 (S.D.N.Y. Apr. 7, 2004), for example, the court determined that the plaintiff failed to establish a prima facie case of religious discrimination under Title VII because the employee sought a religious exemption from a requirement imposed by law, not by his employer. *Id.* at *3.  Likewise, in *Bhatia* v. *Chevron U.S.A., Inc.*, 734 F.2d 1382 (9th Cir. 1984), the Ninth Circuit found that undue hardship precluded liability under Title VII where the religious accommodation sought, if granted, would cause the employer to violate state health and safety standards. *Id.* at 1383–84; *see also Kalsi* v. *N.Y.C. Transit Auth.*, 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998) (granting summary judgment for employer on Title VII claims on the ground that the proposed accommodations "threaten[ed] to compromise workplace safety"), *aff'd*, 189 F.3d 461 (2d Cir. 1999).

Even if NYP were permitted under New York law to provide religious exemptions, plaintiffs still have not shown a likelihood of success on the merits.  Failure to accommodate an employee's sincerely held religious beliefs is not a per se violation of Title VII.  In fact, given the transmissibility of COVID-19 and the threat it poses to the health and safety of NYP's workplace and patients, religious accommodations for certain employees would likely constitute an undue hardship. *See Robinson* v. *Children's Hospital Boston*, No. 14-CV-10263, 2016 WL

16

1337255, at *8 (D. Mass. Apr. 5, 2016) (rejecting employee's failure to accommodate claim under Title VII where religious exemption to influenza vaccination would "cause or increase safety risks or the risk of legal liability for the employer").

Here, granting plaintiffs' requests for a religious exemption would require NYP to violate state law.  Because that amounts to undue hardship within the meaning of Title VII, this, too, is fatal to Plaintiffs' showing of a likelihood of success on the merits.

*Second*, to the extent plaintiffs assert a disparate impact claim under Title VII, they have failed to demonstrate that such a claim is likely to succeed.  "Disparate impact" giving rise to a Title VII claim occurs when a facially neutral policy "fall[s] more harshly on one group than another and cannot be justified by business necessity."  *Int'l Bhd. of Teamsters* v. *United States*, 431 U.S. 324, 335 n.15 (1977).  To establish a prima facie case of disparate impact, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."  *Chin* v. *Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (citation and internal quotation marks omitted).  To demonstrate a likelihood of success, plaintiffs must show with substantial statistical support demonstrating that the policy is likely to result in termination at disproportionate rates due to disparate treatment under NYP's COVID-19 vaccine policy.  *M.O.C.H.A. Soc'y, Inc.* v. *City of Buffalo*, 689 F.3d 263, 273 (2d Cir. 2012) (citing *N.Y.C. Transp. Auth.* v. *Beazer*, 440 U.S. 568, 584 (1979)) (challenged policy must have the effect of denying members of protected class equal access to employment opportunities).  Here, plaintiffs have failed to state even a prima facie case, as they do not allege *any* facts showing that a disparity based on religion exists as a consequence of NYP's vaccination program.  Further, there can be no dispute that NYP's vaccination policy is consistent with business necessity.  For NYP to grant religious exemptions

17

in contravention of the DOH Mandate would jeopardize NYP's license to operate and threaten NYP's core mission of providing patient care.  Plaintiffs therefore also fail to demonstrate a likelihood of success on the merits on their Title VII claims based on a disparate impact theory.

*Third*, plaintiffs' Title VII claim further fails for the additional and independent reason that plaintiffs have not exhausted their administrative remedies.  "[I]t is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court."  *Fowlkes* v. *Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015).  Although "the failure of a Title VII plaintiff to exhaust administrative remedies raises no jurisdictional bar to the claim proceeding in federal court," exhaustion is "a precondition of suit," *id.* at 385, and "operates as an affirmative defense."  *Hardaway* v. *Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).  Because plaintiffs have not exhausted their administrative remedies under the EEOC and obtained a right to sue letter, *see Holt* v. *Cont'l Grp., Inc.*, 708 F.2d 87, 89 n.1 (2d Cir. 1983), they cannot demonstrate a likelihood of success on the merits on their Title VII claims.

### C.    Plaintiffs Fail To Demonstrate A Likelihood of Success on Their Section 1985 Claim.

Plaintiffs are unlikely to prevail on their claim under 42 U.S.C. § 1985(3) that NYP conspired with defendants to deprive plaintiffs of their First Amendment rights for the straightforward reason that, as shown above, their First Amendment rights were not violated. Only government action, not that of a private entity, can violate the First Amendment.  *Loce* v. *Time Warner Ent. Advance/Newhouse P'ship*, 191 F.3d 256, 266 (2d Cir. 1999).  Government action may not be premised simply on the private entity's "licensing, or regulation by the government."  *Id.*  Employees therefore necessarily do not have a constitutional right to the

availability of a religious exemption from a private employer's policy.  Plaintiffs cite no authority holding otherwise.

Plaintiffs' contention that their First Amendment rights are violated by being required to receive a vaccination as a condition of continued employment is also contrary to established law. *Jacobson* v. *Massachusetts*, 197 U.S. 11, 27, 31 (1905); *Zucht* v. *King*, 260 U.S. 174, 176 (1922); *Phillips* v. *City of New York*, 775 F.3d 538, 543 (2d Cir. 2015); *W.D.* v. *Rockland County*, No. 19-CV-2066, 2021 WL 707065, at *16 n.4, *22, *24 (S.D.N.Y. Feb. 22, 2021). This case is wholly unlike *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 141 S. Ct. 63 (2020) (per curiam), where the challenged State rule was deemed to impose more stringent restrictions on worship services than on other, similar activities.  Here, the DOH Mandate imposes the same vaccination requirement on all covered employees not medically exempted.

As this Court has repeatedly held, "to maintain a claim pursuant to § 1985(3), there must be some predicate constitutional right which the alleged conspiracy violates." *Friends of Falun Gong* v. *Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003); *see Emanuel* v. *Barry*, 724 F. Supp. 1096, 1100 (E.D.N.Y. 1989) ("[T]here must be some sort of predicate constitutional right which the alleged conspirators conspired to violate.").  Because no violation of a predicate constitutional right can be established, there is no basis for the Section 1985(3) conspiracy claim here.

Plaintiffs are unlikely to prevail on their claim under Section 1985(3) for the additional, independent reason that they have not pleaded with particularity, and will be unable to prove, the elements of such a claim.  To prevail on a claim under the statute, a plaintiff must establish "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

19

(3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc.* v. *Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).

A claim of conspiracy must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb* v. *Goord*, 340 F.3d 105, 110 (2d Cir. 2003). In addition, "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO* v. *Scott*, 463 U.S. 825, 830 (1983). Finally, the plaintiffs must plead and prove that the alleged conspiracy was the result of "class-based, invidiously discriminatory animus." *Griffin* v. *Breckenridge*, 403 U.S. 88, 102 (1971); *see also Abdi* v. *Brookhaven Sci. Assocs., LLC*, 447 F. Supp. 2d 221, 226–27 (E.D.N.Y. 2006) ("[T]he conspiracy must be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.") (citations omitted). *See generally Zhang Jingrong* v. *Chinese AntiCult World All.*, 311 F. Supp. 3d 514, 547 (E.D.N.Y. 2018) (discussing the origin of the statute in response to activities of the Ku Klux Klan during the Reconstruction era).

Plaintiffs cannot satisfy these standards. *First*, they "fail to plead a conspiracy or meeting of the minds" between NYP and defendants, and will be unable to prove such a conspiracy. *Friends of Falun Gong*, 288 F. Supp. 2d at 279. As discussed above, plaintiffs' claim rests on the assertion that Governor Hochul's August 26 COVID-19 vaccine mandate violates plaintiffs' constitutional rights. But the facts plaintiffs allege show only that NYP acted in compliance with the Governor's mandate. Plaintiffs do not allege—and will not be able to prove—that NYP

20

played a role in the decision of the Governor or state regulators to adopt that mandate, much less

that it "conspired" or entered into a "meeting of the minds" with the State to adopt it.  Plaintiffs'

"conclusory allegations of concerted action" are insufficient to state a claim under Section

1985(3).  *Friends of Falun Gong*, 288 F. Supp. 2d at 279.

       *Second*, plaintiffs fail to plead (and will be unable to establish) any agreement to

"influence the activity of the state."  *United Bhd. of Carpenters*, 463 U.S. at 830.  Plaintiffs

contend that a decision by the Governor, followed by NYP's decision to abide by the new rule—

as State law required it to do—constituted an unlawful agreement.  *See* TRO Application at 11.

But they point to no facts showing that NYP sought to influence the decision by the Governor or

any other State regulator to enact the mandate.

       *Third*, plaintiffs cannot show any discriminatory, class-based animus by NYP.  *Griffin*,

403 U.S. at 102; *Abdi*, 447 F. Supp. 2d at 226–27.  Plaintiffs allege in conclusory fashion that

defendants acted with a "purpose to deprive Plaintiffs of their rights to the exercise of their

religious beliefs and equal protection."  Compl. ¶ 183.  But they cite no facts indicating that NYP

was motivated by animus in complying with a legal mandate imposed by the State.  Plaintiffs

cite no statements or actions by NYP from which any "invidiously discriminatory animus" can

be inferred.

       Plaintiffs also fail to identify a recognized class that is the target of any animus.  Indeed,

while the Complaint generally alleges that the named plaintiffs are religious believers and

members of Christian faiths, leaders of a wide variety of religions—including many Christian

denominations—have publicly stated that there is no religious impediment to receiving one of

the COVID-19 vaccines.[25]  Plaintiffs' claim under Section 1985(3) thus fails because plaintiffs cannot establish that "defendants' impetus [in complying with the State mandate] was the plaintiffs' religion" to satisfy the purpose element of a Section 1985(3) claim.  *LeBlanc-Sternberg* v. *Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995).

* * *

Because plaintiffs have failed to demonstrate a likelihood of success on the merits, their request for injunctive relief should be denied.

## II.    Plaintiffs Cannot Demonstrate Irreparable Harm

Plaintiffs' application also should be denied because they have not established, and cannot establish, that they will suffer irreparable harm in the absence of injunctive relief, which is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling* v. *Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam) (alteration in original) (quoting *Bell & Howell: Mamiya Co.* v. *Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)).  To meet their burden, plaintiffs "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB* v. *Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted).

---

[25]   Devin Watkins, *Pope Francis Urges People to Get Vaccinated Against Covid-19*, Vatican News (Aug. 18, 2021), https://www.vaticannews.va/en/pope/news/2021-08/pope-francis-appeal-covid-19-vaccines-act-of-love.html; Jonathan Levin, *U.S. Evangelical Leaders Preach Covid Vaccine Benefits to Their Followers*, Bloomberg (Mar. 26, 2021, 10:03 AM), https://www.bloomberg.com/news/articles/2021-03-26/u-s-evangelical-leaders-preach-vaccine-to-holdout-flocks; Jesse Berman, *Baltimore Rabbis Encourage Vaccinations in New Video*, Jewish Times (Aug. 12, 2021), https://www.jewishtimes.com/baltimore-rabbis-encourage-vaccinations-in-new-video.

In the employment context, it is well established that neither the loss of employment nor financial loss constitute "irreparable harm" for purposes of determining whether injunctive relief is warranted. *Sampson* v. *Murray*, 415 U.S. 61, 90–92 (1974); *Hyde* v. *KLS Pro. Advisors Grp., LLC*, 500 F. App'x 24, 25 (2d Cir. 2012); *Savage* v. *Gorski*, 850 F.2d 64, 67 (2d Cir. 1988); *Peck* v. *Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 412 (S.D.N.Y. 2013); *Dist. Council 1707* v. *N.Y. Ass'n For New Americans, Inc.*, No. 03-CIV-9536, 2003 WL 22871926, at *3 (S.D.N.Y. Dec. 4, 2003). That is because reinstatement and/or money damages can make a discharged employee whole. *Hyde*, 500 F. App'x at 25; *Savage*, 850 F.2d at 68. Because plaintiffs fail to demonstrate why reinstatement or money damages would be inadequate, they have failed to establish that they will be irreparably harmed absent an injunction.[26]

Moreover, plaintiffs' assertion that they will be irreparably harmed because, absent an injunction, they will be "force[d] . . . to choose between their sincerely held religious beliefs and compliance with an unlawful edict" (TRO Application at 16) is simply untrue. Plaintiffs "can freely choose to accept or refuse a COVID-19 vaccine; however, if [they] refuse[], [they] will simply need to work somewhere else." *See Bridges* v. *Houston Methodist Hosp.*, No. 21-CV-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021). Accordingly, plaintiffs fail to demonstrate irreparable harm.

**III.    Plaintiffs Fail To Show That The Balance of the Equities Tips in Their Favor.**

Plaintiffs' request for injunctive relief also should be denied because a "preliminary injunction may not issue unless the movant clearly shows that the balance of equities favors the movant"—a showing that plaintiffs have failed to make. *Litwin* v. *OceanFreight, Inc.*, 865 F.

---

[26]    Indeed, in view of the fact that plaintiffs are proceeding as anonymous John and Jane Does (and purport to include hundreds of anonymous persons about whom no specific facts are alleged), it is far from clear that plaintiffs can show any harm, irreparable or otherwise.

Supp. 2d 385, 401–02 (S.D.N.Y. 2011) (citation omitted); *see CQS ABS Master Fund Ltd.* v. *MBIA Inc.*, No. 12 Civ. 6840, 2014 WL 11089340, at \*3 (S.D.N.Y. Jan. 29, 2014) (denying preliminary injunction where court found "the equities would appear to be in equipoise" and thus plaintiffs could not establish "that the equities tip decidedly in their favor"). As discussed above, plaintiffs will suffer no irreparable harm if the Court denies this injunction. Indeed, if plaintiffs ultimately prevail in this case and NYP's policy is found to be inconsistent with federal law, plaintiffs will be made entirely whole through an award of money damages or other appropriate relief. On the other hand, an order compelling NYP to grant religious exemptions to John Doe 2 and Jane Doe 1, notwithstanding the DOH Mandate to the contrary, would cause NYP to violate state law, thereby jeopardizing NYP's license and ability to care for tens of thousands of patients in the middle of the most significant public health crisis of our time as well as putting tens of thousands of other employees out of work. N.Y. Pub. Health L. § 2806(1)(a) (2021) ("A hospital operating certificate may be revoked, suspended, limited or annulled . . [if] the hospital has failed to comply with the provisions of [Article 28] or rules and regulations promulgated thereunder"). Accordingly, plaintiffs have failed to show that the balance of equities clearly weighs in their favor.

## IV.   The Public Interest Favors NYP.

Finally, the public interest further weighs against an injunction. "Stemming the spread of COVID-19 is unquestionably a compelling interest." *Hopkins Hawley LLC* v. *Cuomo*, 518 F. Supp. 3d 705, 717 (S.D.N.Y. 2021) (quoting *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 141 S. Ct. 63, 67 (2020)). "The question here is [thus] whether [NYP's compliance with the DOH Mandate] effectuates that compelling interest." *Id.* It does. *See Garcia* v. *New York City Dep't of Health & Mental Hygiene*, 106 N.E.3d 1187, 1196 (N.Y. 2018) ("Undisputedly," there is a "very direct connection" between vaccination rules and "the preservation of health and

24

safety."); *F.F. ex rel. Y.F.* v. *State*, 114 N.Y.S.3d 852, 867–68 (N.Y. Sup. Ct. 2019) ("Protecting

public health" through the use of vaccines "has long been recognized as the gold standard for

preventing the spread of contagious diseases" and "is unquestionably a compelling [public]

interest"), *aff'd*, 143 N.Y.S.3d 734 (N.Y. Ap.. Div. 3d Dep't 2021); *cf. Robinson*, 2016 WL

1337255, at *2, *10 (granting summary judgment for employer hospital on claims related to

mandatory flu vaccine policy where hospital's "patient population includes some of the most

critically ill infants, children and adolescents in the world" and the "risk of infection and fatality"

is high).  As discussed above, NYP's compliance with state law also ensures that NYP will

remain licensed to continue providing patient care during this critical time.

The public interest therefore weighs heavily against the issuance of injunctive relief.[27]

## **CONCLUSION**

For the foregoing reasons, NYP respectfully submits that the Court should deny

plaintiffs' application for a temporary restraining order and preliminary injunction.

---

[27]   The Complaint in this action, together with plaintiffs' application for a TRO, was filed late in the afternoon on Friday, September 10, 2021.  In view of the very limited time available to NYP to respond before the hearing scheduled on September 13, 2021, NYP reserves its right to assert additional defenses or to present additional grounds for denying plaintiffs' application.

Dated:   September 13, 2021          Respectfully submitted,
         New York, New York


                                     PAUL, WEISS, RIFKIND, WHARTON &
                                     GARRISON LLP


                                     By:   */s/ Liza M. Velazquez*_____

                                     Bruce Birenboim
                                     Michael E. Gertzman
                                     Liza M. Velazquez
                                     Gregory F. Laufer
                                     Jonathan Hurwitz
                                     Emily A. Vance
                                     1285 Avenue of the Americas
                                     New York, NY  10019-6064
                                     Phone:  (212) 373-3000
                                     Fax:  (212) 757-3990
                                     bbirenboim@paulweiss.com
                                     mgertzman@paulweiss.com
                                     lvelazquez@paulweiss.com
                                     glaufer@paulweiss.com
                                     jhurwitz@paulweiss.com
                                     evance@paulweiss.com

                                     *Attorneys for NewYork-Presbyterian*
                                     *Healthcare System, Inc.*