PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3096

WRITER'S DIRECT FACSIMILE

(212) 492-0096

WRITER'S DIRECT E-MAIL ADDRESS

lvelazquez@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ROBERT A. BRITTON
DAVID W. BROWN
WALTER BROWN*+
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH DEARBORN*+
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
JOSHUA HILL
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT E. HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
ALEXIA D. KORBERG
ALAN W. KORNBERG

DANIEL J. KRAMER
BRIAN KRAUSE
CAITH KUSHNER
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*+
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. McCOLM
JEAN M. McLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
LINDSAY B. PARKS
ANDREW M. PARLEN
DANIELLE C. PENHALL
CHARLES J. PESANT
JESSICA E. PHILLIPS*
AUSTIN POLLET*+
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
CULLEN L. SINCLAIR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
JOHN WEBER
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
ADAM WOLLSTEIN
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR
+ADMITTED ONLY TO THE CALIFORNIA BAR

September 14, 2021

**By ECF**

Hon. Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 6G North
Brooklyn, New York 11201

      *Does et al* v. *Hochul et al,* No. 1:21-cv-05067-AMD-TAM (E.D.N.Y.)

Dear Judge Komitee:

      As Your Honor is aware, we represent defendant NewYork-Presbyterian Healthcare System, Inc. ("NYP"). We write to address briefly three issues that arose at yesterday's argument.

      The Medical Exemption Issue.  Plaintiffs' argument that the DOH Mandate violates the Free Exercise Clause of the First Amendment because it requires employers to grant medical exemptions to eligible employees but does not permit religious exemptions is not supported by any controlling authority in this Circuit.

      The Supreme Court and the Second Circuit have consistently instructed that the Free Exercise Clause "does not relieve an individual of the obligation to comply

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

with a *valid and neutral law of general applicability* on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Central Rabbinical Congress of U.S. & Canada* v. *New York City Dept. of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (quoting *Emp. Div.* v. *Smith*, 494 U.S. 872, 879 (1990)) (emphasis added); *see also Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520, 531 (1993) ("[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice").

The DOH Mandate plainly satisfies this "neutral and of general applicability" test:  it does not single out religious conduct (or beliefs), but instead requires *all* employees of covered institutions—regardless of religious belief or nonbelief—to be vaccinated against COVID-19, other than those for whom the vaccination would be medically contraindicated.  It is thus both *neutral* with respect to religious conduct or belief, and of *general applicability*.

The Second Circuit's decision in *Phillips* v. *City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) is on point and controlling.  The court there squarely held that the State was *not* required to allow religious exemptions from a generally applicable rule requiring children attending public school to be vaccinated *although "a medical exemption [was] available" under the same statute*. *Id*. at 540.  The court stated:

> [W]e agree with the Fourth Circuit . . . that mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause. [¶] New York could constitutionally require that all children be vaccinated in order to attend public school.  New York law goes beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs.  Because the State could bar Phillips's and Mendoza–Vaca's children from school altogether, *a fortiori,* the State's more limited exclusion during an outbreak of a vaccine-preventable disease is clearly constitutional.

*Id*. at 543 (citing *Workman* v. *Mingo Cty Bd. of Educ.,* 419 F. App'x 348, 353–54 (4th Cir. 2011) (unpublished)); *see also Smith*, 494 U.S. at 874 (upholding against Free Exercise attack state law prohibiting possession of controlled substances, and providing exemption for such substances "prescribed by a medical practitioner," but with no religious exemption); *W.D.* v. *Rockland County*, No. 19-civ-2066, 2021 WL 707065, at *7 (S.D.N.Y. Feb. 22, 2021) (upholding vaccination requirement that provided medical but not religious exemption); *F.F.* v. *State*, 143 N.Y.S.3d 734, 739 (N.Y. App. Div. 3d Dep't 2021) (same).

Plaintiffs' reliance on *Fraternal Ord. of Police Newark Lodge No. 12* v. *City of Newark*, 170 F.3d 359, 367 (3d Cir. 1999) ("*FOP*")—which of course is not controlling in this Circuit—is misplaced.  The court there did not adopt a *per se* rule that

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

the presence of a medical exemption to a regulation of otherwise general applicability—there, a policy prohibiting police officers from wearing beards—required the government to offer a religious exemption as well.  Rather, the court held that, in the circumstances of that case, the defendants' recognition of a medical exemption but not a religious exemption was "suggestive of discriminatory intent" and accordingly triggered heightened scrutiny.  *Id*. at 365.  The court distinguished *Smith* on the ground that the exemption for medically prescribed controlled substances in the challenged state statute did not necessarily undermine the state's interest in curbing the unregulated use of dangerous drugs, while a medical exemption to the rule at issue in *FOP* undermined the state's expressed interest in "fostering a uniform appearance" among police officers.  *Id*. at 366.  Here, as in *Smith*—and in contrast to *FOP*—the state's interest in protecting the health and safety of health care employees would be undermined by imposing a vaccination requirement on employees whose health would be put at risk by the vaccination itself.  *FOP* is inapposite for the additional reason that the state's interest in protecting health care workers and patients and controlling the COVID-19 pandemic is far more compelling than the state's asserted interest in that case of encouraging a "uniform appearance" among police officers.  *FOP*, 170 F.3d at 366.

Irreparable Harm.  As shown in NYP's brief in opposition to plaintiffs' motion, plaintiffs cannot establish irreparable injury based upon possible loss of employment because, under settled law, any such harm can be fully compensated with money damages.  ECF 20 at 23 (citing *Sampson* v. *Murray*, 415 U.S. 61, 90–92 (1974); *Hyde* v. *KLS Pro. Advisors Grp., LLC*, 500 F. App'x 24, 25 (2d Cir. 2012); *Savage* v. *Gorski*, 850 F.2d 64, 67 (2d Cir. 1988); *Peck* v. *Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 412 (S.D.N.Y. 2013); *Dist. Council 1707* v. *N.Y. Ass'n For New Americans, Inc.*, No. 03-CIV-9536, 2003 WL 22871926, at *3 (S.D.N.Y. Dec. 4, 2003)).  The Court inquired at yesterday's oral argument whether this rule applies where, as here, the plaintiffs assert Constitutional claims against government defendants.  We respectfully submit that it does.  We are not aware of any authority that dispenses with the irreparable harm requirement in the TRO or Preliminary Injunction setting merely because the case involves a constitutional attack on a state statute.

To the contrary, in New York, employers have broad discretion to establish the essential functions of a job.  *See Murphy* v. *Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983).  This discretion includes the authority to require that all employees be vaccinated as a condition of continued employment.  *See Bridges* v. *Houston Methodist Hospital*, No. 21-cv-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021) (applying similar principle under Texas law).  Under a balance of hardship analysis, the risk of injury to the public patient population outweighs any potential harm to a hospital employee who can obtain full relief in damages.

Plaintiffs' contention that the loss of First Amendment rights is irreparable as a matter of law, Pl. Mem. at 15 citing *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 141 S. Ct. 63, 67 (2020)), is incorrect.  The DOH Mandate does not compel an employee

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

to do anything that violates their religious convictions.  As the court in *Houston Methodist* reasoned in dismissing health care workers' challenge against a COVID-19 vaccination mandate:

> [Plaintiff] is not being coerced.  [Plaintiff] says that she is being forced to be injected with a vaccine or be fired.  That is not coercion. . . . .  [Plaintiff] can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply have to work somewhere else. . . . .  Every employment includes limits on the worker's behavior in exchange for his remuneration.  That is all part of the bargain.

*Bridges*, 2021 WL 2399994, at *2.

This case thus stands in stark contrast to *Roman Catholic Diocese* and *Agudath Israel of Am.* v. *Cuomo*, 983 F.3d 620 (2d Cir. 2020), where the challenged state regulation precluded worshippers from attending services and practicing important religious rituals.  *Roman Catholic Diocese*, 141 S. Ct. at 67 (noting that under the challenged rule "the great majority of those who wish to attend Mass on Sunday or services in a synagogue on Shabbat will be barred," and that for Catholics and Orthodox Jews some significant religious obligations "require personal attendance"); *Agudath Israel*, 938 F.3d at 636 (same).  There is no comparable infringement of religious exercise here.

Accommodations for John Doe 2.  The Court asked at yesterday's oral argument about possible accommodations for plaintiff John Doe 2, allegedly an NYP employee who has been working remotely and has abstained from receiving all vaccines based on his religious beliefs.  Compl. ¶ 69.  Because the Complaint identifies John Doe 2 only by that pseudonym, NYP does not know his identity or the facts regarding his employment.  Nevertheless, we are able to say that plaintiffs' allegations about John Doe 2 do not establish that his religious beliefs can reasonably be accommodated without material cost to NYP or its other employees.

As a general matter, under NYP's telecommuting policy, eligible employees may work remotely on a conditional basis where appropriate and consistent with the operational needs of the hospital, and their ability to do so may be discontinued at any time.  Employees who are permitted to perform some or all of their job responsibilities remotely may be, and have been, required to work on-site or otherwise interact with patients or other employees in person where called for by their job responsibilities.  Thus, plaintiffs' allegation that John Doe 2 has been working remotely does not establish that he will be able in the future to continue performing his job responsibilities remotely and without interacting with patients or other employees in person.  Based upon the allegations in the Complaint, allowing John Doe 2 to work remotely indefinitely could well impose a meaningful cost on NYP and other employees who may have to step in to do work that John Doe 2 is unable to perform.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

5

More generally, Title VII does not require employers to grant a religious accommodation where "its impact on coworkers or its cost would be more than *de minimis*." *Bhatia* v. *Chevron U.S.A., Inc*., 734 F.2d 1382, 1384 (9th Cir. 1984) (citing *Yott* v. *North Am. Rockwell Corp*., 602 F.2d 904, 908 (9th Cir. 1979), *cert. denied*, 445 U.S. 928 (1980)).  As the EEOC has emphasized, "The fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship."  EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* at D. 15, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.  Whether or not an accommodation was previously made in the individual case of John Doe 2, there has been no Title VII or constitutional violation, or legal requirement that the accommodation be continued in the face of the ongoing pandemic where the unvaccinated population is most likely to become ill and spread COVID-19.  It is critical for NYP to maintain a safe environment for all patients and employees.

\* \* \*

We thank the Court for its attention to this matter, and we are available at the Court's convenience to answer any questions about the issues addressed in this letter.

Respectfully,

*/s/ Liza M. Velazquez*

Liza M. Velazquez

cc:      All counsel by ECF