UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOES 1-2, JANE DOES 1–3,<br>JACK DOES 1–750, JOAN DOES 1–750,<br><br>    Plaintiffs,<br>v.<br><br>KATHY HOCHUL, in her official capacity as<br>Governor of the State of New York,<br>HOWARD A. ZUCKER, in his official capacity<br>as Commissioner of the New York State<br>Department of Health, TRINITY HEALTH,<br>INC., NEW YORK-PRESBYTERIAN<br>HEALTHCARE SYSTEM, INC.,<br>WESTCHESTER MEDICAL CENTER<br>ADVANCED PHYSICIAN SERVICES, P.C.,<br><br>    Defendants. | )<br>)<br>)<br>) Case No. 1:21-CV-05067-AMD-TAM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' NOTICE OF MOTION AND
MOTION TO PROCEED USING PSEUDONYMS AND FOR PROTECTIVE ORDER
WITH INCORPORATED MEMORANDUM OF LAW**

  Plaintiffs, JOHNN DOES 1–2, JANE DOES 1–3, JACK DOES 1–750, and JOAN DOES 1–750, hereby move this Court for leave to proceed under pseudonyms and for a protective order prohibiting the disclosure of their identities and identifying information beyond counsel for Defendants and those employees of Defendants necessary for the defense of this action. In support hereof, Plaintiffs show unto the Court as follows:

**MEMORANDUM OF LAW IN SUPPORT**

  "[A] party to a civil action—whether defendant or plaintiff—may proceed using pseudonyms when the particular circumstances of the case justify pseudonymity." *Doe v. Providential Life & Accident Ins. Co.*, 176 F.R.D. 464, 466 (E.D. Pa. 1997). Indeed, "the Supreme Court has given the practice implicit recognition" in cases involving sensitive issues of a private or highly personal nature. *Doe v. C.A.R.S. Protections Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir.

2008) (citing *Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973)). "[T]he judge ruling on a motion to use a pseudonym has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Thus, while there is a presumption that "parties' identities are public information," that presumption "can be rebutted by showing that the harm to the plaintiff . . . exceeds the harm from concealment." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). Additionally, while members of the public have a right to know who is using their court systems to challenge laws, there are certain well-defined exceptions. Specifically, "fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997).

The Second Circuit has held that "when determining whether a plaintiff may be allowed to maintain an action under pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). In making such a determination, the courts should consider the following factors:

> (1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature" . . . (2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties," . . . (3) whether identification presents other harms and the likely severity of those harms, . . . including whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," . . . (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure. . . . particularly in light of his age. . . (5) whether the suit is challenging the actions of the government or that of private parties, . . . (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court, . . . (7) whether the plaintiff's identity has thus far been kept confidential, . . . (8) whether the public's interest in the litigation is furthered by requiring the

2

   plaintiff to disclose his identity, . . . (9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," . . . and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (citations omitted).

  Importantly, "this factor-driven balancing inquiry does not require a district court to list each of the factors or use any particular information as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Rapp v. Fowler*, No. 20-cv-9586 (LAK), 2021 WL 1738349, * (S.D.N.Y. May 3, 2021) (citing *Sealed Plaintiff*, 537 F.3d at 189, 191 n.4). Plaintiffs satisfy every formulation of the test and every factor warranting the pursuit of claims under a pseudonym. The instant Motion should be granted.

**I. THERE ARE SUBSTANTIALLY COMPELLING REASONS FOR PERMITTING PLAINTIFFS TO PROCEED USING A PSEUDONYM.**

  **A. Plaintiffs Have Kept Their Identities Confidential, Except as to Defendant Employers When Submitting Requests for a Religious Exemption.**

  The first factor weighs in favor of proceeding pseudonymously. All Plaintiffs have taken steps to keep their identities confidential and out of the public eye. (*See, e.g.*, dkt. 1, Verified Complaint, ¶¶10-20.) And, the fact that Plaintiffs necessarily had to make their identities known to their respective employers in order to seek a religious accommodation and exemption does not undermine this analysis in any way. Indeed, "**the question is not whether anyone knows the Plaintiff's identity, but rather whether his identity is widely known beyond his social circle or among the general public**." *Doe v. Regional Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 WL 2833248, *3 (D. Me. May 29, 2020) (emphasis added); *see also Doe v. Trustees of Dartmouth Coll.*, No. 18-cv-040-LM, 2018 WL 2048385, *5 n.2 (D.N.H. May 2, 2018) (noting that the appropriate consideration is "wide dissemination in the [relevant] community or amongst the general public"). In fact, because the process involving requesting an exemption from Defendant

3

employers was confidential, and "[n]othing in the record suggests that plaintiff's identity is publicly known," *id.* at *5, the first "factor supports plaintiff's position" of proceeding under a pseudonym. *Id.*

> **B.     There Is a Substantial Basis to Permit Plaintiffs to Proceed Under a Pseudonym and to Protect Their Identities From Disclosure.**
>
> **1.     Plaintiffs' medical decisions relating to their health care and treatment are sensitive and personal matters warranting use of a pseudonym.**

Plaintiffs should be permitted to proceed using pseudonyms because the issues involved in this matter relate to sensitive and private medical decisions. Plaintiffs are all private citizens of New York who sought a religious exemption and accommodation from a mandate directly related to their private health care. (V. Compl. ¶¶ 10–20.) They bring this challenge solely to challenge the denial of a religious accommodation for a specific, personal, and private medical decision concerning their healthcare (*i.e.*, declining a COVID-19 vaccine on religious grounds). There is little else at issue in this case but whether federal law applies in New York and whether consideration of a religious exemption for conscientious objectors is available under federal law. And, there is a "**long tradition** in both federal and state courts of permitting parties to proceed anonymously when they have a strong privacy interest in doing so." *Anonymous v. Legal Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996). Indeed, "[h]istorically, courts have permitted plaintiffs to proceed pseudonymously in cases involving . . . medical conditions." *Doe v. Cook Cnty.*, No. 1:20-cv-5832, 2021 WL 2258313, *3 (N.D. Ill. June 3, 2021).

The caselaw on proceeding under a pseudonym demonstrates a nearly universal recognition that issues relating to medical history, medical conditions, or decisions relating to healthcare are fundamentally private issues and that plaintiffs can proceed anonymously in challenges involving those issues. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973) (permitting plaintiff to proceed under

4

pseudonym in case involving pregnancy decisions); *Doe v. Bolton*, 410 U.S. 179 (1973) (same); *Doe v. Gaughan*, 808 F.3d 871 (1st Cir. 1986) (allowing plaintiff to proceed under pseudonym when issues involved plaintiff's mental health condition); *Roe v. City of Milwaukee*, 37 F. Supp. 2d 1127 (E.D. Wis. 1999) (granting use of pseudonym to protect privacy of plaintiff's medical history); *Anonymous v. Legal Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996) (allowing plaintiff to proceed anonymously because medical issues involved sufficient private interests); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mon. 1974) (allowing plaintiff to proceed anonymously in case involving pregnancy and medical decisions because such issues are of "intensely personal nature"); *W.G.A. v. Priority Pharm., Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999) (allowing plaintiff to proceed under pseudonym in action involving plaintiff's prescription medications and his underlying medical conditions); *Doe v. Sessions*, No. 18-0004(RC), 2018 WL 4637014, *4 (D.D.C. Sept. 27, 2018) (noting that plaintiffs should be permitted to proceed under pseudonyms when case involves confidential medical issues); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997) (permitting plaintiff to proceed under pseudonym where medical conditions and treatment are involved); *Roe v. Catholic Health Initiatives Colo.*, No. 11-cv-021799-WYD-KMT, 2012 WL 12840 (D. Colo. Jan. 4, 2012) (granting plaintiff's motion to proceed under pseudonym where pursuing case in her own name would necessarily involve the disclosure of her medical records and history); *Doe v. Standard Ins. Co.*, No. 1:15-cv-00105-GZS, 2015 WL 5778566 (D. Me. Oct. 2, 2015) (granting plaintiff's motion to proceed under a pseudonym where underlying claims arose from medical conditions and medical treatment); *Doe v. Regional Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 WL 2833248 (D. Me. May 29, 2020) (same).

The district court's decision in *Roe v. Catholic Health Initiatives Colorado* is particularly instructive. There, the court noted that both the Americans with Disabilities Act and Title VII itself prohibit employers from disclosing an employee's private medical records or making improper inquiries into an employee's medical conditions. 2012 WL 12840, at *3-4. Given those general prohibitions, (*see* 42 U.S.C. §12112((d)(4)(c) (mandating that employers treat employee's "medical information" as "a confidential medical record")), the court noted that forcing a plaintiff whose claims arise out of medical issues and medical records to litigate in their own name would necessarily force a violation of the federal statutes at issue. In fact, the court found that requiring a plaintiff in such circumstances to litigate in their own name would force the court – itself – to violate some provisions of federal law. *See* 2012 WL 12840, at *5 ("The court also recognizes that, if it requires Plaintiff to proceed under her own name, **the court itself may be violating at least the spirit of the provisions of the ADA that protect any information gathered from a medical examination as confidential. The court is not inclined to do so**." (emphasis added) (citation omitted)). The same should hold true here.

In fact, when the case involves issues of "the recipients of certain medical treatment," "the desire to maintain the anonymity of the [plaintiffs] is motivated by legitimate reasons." *Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 WL 242422, *1 (D. Me. Jan. 25, 2021). Here, the gravamen of Plaintiffs' Verified Complaint is inextricably intertwined with their receipt of (or request not to receive) certain medical treatment. (V. Compl. ¶¶ 1-9.) Thus, Plaintiffs' request to proceed under a pseudonym is legitimate and compelling. The Motion should be granted.

> **2. Plaintiffs' religious beliefs are sensitive and personal matters warranting the use of pseudonyms.**

As the Fifth Circuit has recognized, "**religion is perhaps the quintessentially private matter**." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (emphasis added). Other courts, too,

6

have recognized that proceeding under a pseudonym is appropriate when a plaintiff's religious convictions are at issue. *See, e.g.*, *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (affirming district court's order allowing pseudonymous plaintiffs where the "suit—challenging a government activity—forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment"); *Doe v. Franklin Bank, SSB*, No. A-08-CA-293 LY, 2008 WL 11334179 (W.D. Tex. Sept. 3, 2008) (same); *Doe v. Barrow Cnty.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003) (same); *id.* (noting involvement of "religious beliefs" and "the proper interaction between government and religion" are sufficiently private concerns to warrant a plaintiff's proceeding anonymously).

In *Barrow County*, the court considered a plaintiff's motion to proceed under a pseudonym when challenging a religious display. *Barrow Cnty.*, 219 F.R.D. at 190. The court noted that while public access to information is important, the plaintiff was merely trying to shield his name from the records and not attempting to shield the constitutional questions he was raising. *Id.* at 193. There, the plaintiff did not have to explicitly state his religious beliefs in order to prosecute his lawsuit, but he had to prove injury as a result of the display to show he had standing. *Id.* As such, his "explanation will necessarily require him to reveal his beliefs concerning the proper interaction between government and religion." *Id.* Because the majority of the community in which the plaintiff lived supported the display, "the court recognize[d] that such concerns can implicate privacy matters similar to those associated with actual religious teachings and beliefs. Accordingly, the court acknowledges plaintiff's privacy concerns." *Id.*

Here, the same is true. Though Plaintiffs have plainly noted their sincerely held religious beliefs against the COVID-19 vaccines, both to their employers and in the Verified Complaint, such a statement of their beliefs was required in order to qualify for a religious exemption under

7

Title VII. However, as demonstrated *supra* in Section I.A, Plaintiffs have not disclosed their identities (and thus their own personal religious beliefs) to the public at large. Thus, while including a recitation of Plaintiffs' sincerely held religious beliefs was necessary to demonstrate their standing to challenge the Governor's mandate and the Defendant employers' refusal to accommodate such religious beliefs (*see* V. Compl. ¶¶ 42–69), their personal identification to the public at large would necessarily tie those verified facts to the individual Plaintiffs and would disclose the "quintessentially private matter" of Plaintiffs' personal religious beliefs. *Doe v. Stegall*, 653 F.2d at 186.

> **C.  There Is an Atypically Weak Public Interest in Plaintiffs' Identities Because the Principal Questions Before This Court Are Legal.**

Because of the purely legal questions at issue in this litigation, namely whether Title VII and federal law still apply in New York (V. Compl. ¶ 1), the public has an atypically weak interest in the identity of the Plaintiffs in this matter. Indeed, "**[w]hen a case raises questions that are purely legal there is an atypically weak public interest in the identity of the litigants**." *Doe v. Princeton Univ.*, No. 19-7853 (BRM), 2019 WL 5587327 (D.N.J. Oct. 30, 2019) (emphasis added); *see also L.A. v. Hoffman*, No. 14-6895(FLW)(DEA), 2015 WL 4461852 (D.N.J. July 21, 2015) (holding plaintiffs could proceed under pseudonyms because "[p]laintiffs bring a constitutional challenge to a statute as it applies to a general class of people and therefore the individual facts and circumstances surrounding each Plaintiff are not of central importance to Plaintiffs' claims"); *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477, 513 (M.D. Pa. 22007) ("The subject matter of this litigation is primarily constitutional law, and the identities of the particular plaintiffs are not as important to the outcome of the litigation as the legal arguments they raise."). In fact, the public's interest is more aligned with not disclosing Plaintiffs' identities in this matter. **Indeed, "there is a substantial public interest in ensuring that litigants not face such**

8

**retribution in their attempt to seek redress for what they view as a Constitutional violation**." *Freedom From Religion Found., Inc. v. Connellsville Area Sch. Dist.*, No. 2:12-cv-1406, 2013 WL 2296075, *2 (W.D. Pa. May 24, 2013) (emphasis added); *see also Bryan C.*, 2021 WL 242422, at *1 (noting public interest more significantly aligns with not deterring other similarly situated litigants from pursuing merited claims).

Moreover, "the issue in this case does not turn on the identity of the Plaintiff, and the Court presently does not see how denying Plaintiffs' request will interfere with the public's right to follow the proceedings, which will be kept open to the public while maintaining the confidentiality of the Does' identities." *Freedom From Religion*, 2013 WL 2296075, at *3.

Critically, at this stage this case is **not** about whether Plaintiffs' religious beliefs are sincere, nor about whether individual Defendants can accommodate Plaintiffs' religious beliefs without undue burden, because the Governor and her co-conspirator Defendants have not even permitted Plaintiffs to present their exemption requests to their employers. This case is only about the existence of federal protections for religious objectors in New York, and that is a purely legal question that does not depend at all on the identity of the Plaintiffs.

      **D.**      **Plaintiffs' Decisions Relating to the COVID-19 Vaccine Raise the Potential for Stigma and Ostracization, Plaintiffs' Public Identification Would Cause a Refusal to Pursue Their Claims in This Court, and Demanding Identification of Plaintiffs' Identities Would Inhibit Merited Claims From Being Brought.**

Plaintiffs should also be permitted to proceed under pseudonyms because of their legitimate fear of retaliation from employers and the public at large. There is no question that the fear of harm from disclosure of a plaintiff's identity is a substantial factor in determining whether a plaintiff should be permitted to proceed under a pseudonym. *See, e.g.*, *Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004) ("The fear of retaliation is often a compelling ground for allowing a party to litigate anonymously."); *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)

9

(same); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (same); *Doe v. St. Clair Cnty.*, No. 18-CV-380-SMY-SCW, 2018 WL 1071744 (S.D. Ill. Feb. 26, 2018) (granting use of pseudonym to plaintiff who "lives in fear of retaliation and has legitimate fears of humiliation for bringing this lawsuit"); *id.* ("The Court finds that revealing the Plaintiff's name will potentially expose her to the risk of retaliation by members of the public.").

### 1. Plaintiffs fear reprisal and retaliation.

Here, there is no question that Plaintiffs face the threat of retaliation from the community and their employers. Indeed, the Governor has informed Plaintiffs and all other New Yorkers with sincere religious objections to the COVID-19 vaccines that they are not being good "apostles" of the Governor, that they are ignorant, and that they are not doing what God wants them to do. (Schmid Decl. ¶¶6-7.) Specifically, Governor Hochul told Plaintiffs and other New Yorkers that instead of following their own sincerely held religious convictions, **they need to be her apostles rather than apostles of Jesus Christ**. (EXHIBIT A, Declaration of Daniel. J. Schmid ¶6 (citing *Rush Transcript: Governor Hochul Attends Service at Christian Cultural Center*, (Sept. 26, 2021), https://www.governor.ny.gov/news/rush-transcript-governor-hochul-attends-service-christian-cultural-center ("I need you to be my apostles.").) Moreover, Governor Hochul informed Plaintiffs and others with sincerely religious objections against receiving the COVID-19 vaccine that their religious beliefs were wrong, that they were not doing what God wanted them to do, and that they were ignorant.

> God did answer our prayers. He made the smartest men and women, the scientists, the doctors, the researchers - he made them come up with a vaccine. That is from God to us and we must say, thank you, God. Thank you. **And I wear my 'vaccinated' necklace all the time to say I'm vaccinated. All of you, yes, I know you're vaccinated, you're the smart ones, but you know there's people out there who aren't listening to God and what God wants. You know who they are**.

10

(Schmid Decl. ¶7 (emphasis original).)

A sampling of community comments from news articles about similar challenges to vaccination mandates on religious grounds demonstrates considerable hostility towards Plaintiffs' beliefs.

- "Well one would have to wonder if the above is really true since both these **deplorable 'Christian' sociopathic groups** see no harm in placing innocents at risk of serious long term health problems or death."

- "These people turn my stomach! Somebody's fake religion has nothing to do with our health. **Such a lawsuit shouldn't even be considered by the court. In fact, maybe as citizen, Americans ought to be suing the fools who put this lawsuit together**."

- "**The Liberty Counsel is the Christian American Taliban**."

- "This dangerous and deadly public health matter presents an opportunity to further control those who look to [religion] for spiritual nourishment."

- "When your choice endangers everyone around you, **you are a public threat**, and **should be incarcerated**, just as you would be if you were **firing a gun at random in a crowd**."

(Schmid Decl. ¶8.) These types of comments and sentiment against healthcare workers seeking religious exemption to mandatory COVID-19 vaccines demonstrate the legitimacy of Plaintiffs' fear of reprisal.

Other examples of hostility towards religious objectors abound. (Schmid Decl. ¶9.) A recent guest on an MSNBC program referred to those seeking religious exemptions as "**bioterrorists**" and called for "**drone strikes**" against those who object to such mandatory vaccines. *See* Hannah Bleau, *MSNBC Guest Calls for Drone Strikes on Americans Opposed to Vaccine Mandates* (Sept. 10, 2021), https://www.breitbart.com/politics/2021/09/10/msnbc-guest-calls-drone-strikes-americans-opposed-vaccine-mandates/ (last visited Sept. 30, 2021). A commentator on ABC News, *The Week*, stated that the government should "just make it almost

impossible for people to – to live their lives without being protected and protecting the rest of us." ABCNews, *The Week*, Transcript of 7-25-21 Show (July 25, 2021), https://abcnews.go.com/Politics/week-transcript-25-21-speaker-nancy-pelosi-sen/story?id=79045738 (last visited Sept. 30, 2021). Other commentators on national media have made similar statements that those with religious objections to the vaccine "should be exiled from society until they get their shots." Ryan Cooper, *There's 1 obvious solution to the Delta variant: Mandatory vaccination* (July 23, 2021), https://theweek.com/coronavirus/1002909/theres-1-obvious-solution-to-the-delta-variant-mandatory-vaccination (last visited Sept. 30, 2021).

As in *Doe v. Stegall*, there is ample evidence that "the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to [the] community hostile to the viewpoint reflected in plaintiffs' complaint." 653 F.2d at 186.

## 2. Plaintiffs face the unconscionable choice of abandoning merited claims based on the fear of retribution in the community and would abandon claims in this Court if forced to identify themselves.

This factor "asks if the litigant will choose to sacrifice a claim to preserve his anonymity." *Doe v. Regional Sch. Unit*, 2020 WL 2833248, at *3. And, where sworn testimony demonstrates that a plaintiff "will not prosecute his claims if he must do so in his own name, this factor weighs in plaintiff's favor" for proceeding under a pseudonym. *Doe v. Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *6. Here, the sworn testimony before the Court demonstrates that Plaintiffs will abandon merited claims to avoid public disclosure of their identities. (*See* Exhibit A, Declaration of Daniel J. Schmid, ¶¶ 3-5, 10-11.). Indeed, Plaintiffs with otherwise merited claims will refuse to pursue such claims if forced to litigate in their own names. (Ex. A, Schmid Decl., ¶ 3 ("Based upon my conversations with John Does 1-2 and Jane Does 1–3, I have been informed by most Plaintiffs that should this Court deny Plaintiffs' request to proceed using a pseudonym, Plaintiffs

12

would decline pursuit of their merited claims."); *id.* ¶ 4 ("Though Plaintiffs desire to proceed with a determination of the merits of their claims against Defendants, Plaintiffs have informed me that public disclosure of their personal identities, personal medical decisions relating to the COVID-19 vaccines, personal religious beliefs concerning the issues underlying the above-captioned cause, and other personally identifying information would cause them to decline to further pursue their claims in this action."); *id.* ¶ 5 ("The Plaintiffs who have informed me of their decisions to abstain from litigation that would identify them personally base their decisions upon their fears of retribution, reprisal, and ostracization because of their sincerely held religious beliefs concerning the COVID-19 vaccines and the mandates concerning such vaccines.").

Plaintiffs are aware of the sentiment and comments made against them for their desire to keep their jobs and feed their families while maintaining their religious beliefs, and are legitimately fearful of public reaction to the disclosure of their identities. Forcing Plaintiffs to publicly disclose their identities will discourage them from pursuing their claims, subject them to reprisal for bringing such claims, and discourage others from bringing similar claims. Precedent demands that Plaintiffs not be put to such an unconscionable and unbearable choice. If any Plaintiff is "forced to reveal his or her name . . . other similarly situated litigants [will] be deterred from litigating claims that the public would like to have litigated." *Does v. Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *6 (quoting *Megless*, 654 F.3d at 410). The instant Motion should be granted to allow determination of the underlying issues without ostracizing or deterring potential litigants from pursuing otherwise merited claims.

E. **Granting Plaintiffs Leave to Proceed Pseudonymously Will Not Impede the Public's Right to Follow the Proceedings.**

In determining whether a plaintiff should be permitted to proceed under a pseudonym, courts have considered the fact that the proceedings themselves will be open to support a finding

13

that leave to proceed anonymously will not harm the public. As one district court explained, "although the issues in the Amended Complaint may be of some interest to the public, Doe's use of a pseudonym will not interfere with the public's right or ability to follow the proceedings. Indeed, this Court intends to keep the proceeding open to the public while still maintaining the confidentiality of plaintiff's identity." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997). Here, Plaintiffs do not seek the complete sealing of these proceedings, or any other mechanism to prevent access to the otherwise available information about the instant litigation. In fact, Plaintiffs encourage open records, proceedings, and litigation. Plaintiffs are challenging the government Defendants' ability to impose a mandatory vaccine without any recognition of federal protections for their religious beliefs. (V. Compl. ¶¶ 1-9.) Every record to date has been publicly available, and Plaintiffs encourage the same going forward. The use of pseudonyms does not restrict the public's right to see the arguments and contentions advanced in this litigation, and Plaintiffs welcome such public access. Plaintiffs merely seek to have their names protected from disclosure while this Court determines the legal questions at issue here.

### F. Plaintiffs' Status as Private Individuals Warrants Allowing Pseudonyms.

Where, as here, "the Plaintiff himself is not a public figure," "the public's interest in the subject matter will not be impeded merely because plaintiff's identity is kept private." *Doe v. Regional Sch. Dist.*, 2020 WL 2833248, *4 (quoting *Doe v. Trustees of Dartmouth Coll.*, 2018 WL 2048385, *7). *See also Doe v. Princeton Univ.*, No. 19-7853(BRM), 2019 WL 5587327, *6 (D.N.J. Oct. 30, 2019) (where plaintiff is not a public figure, analysis weighs in favor of granting leave to proceed using a pseudonym). Plaintiffs are private litigants (V. Compl. ¶¶10-20.) That status warrants leave to proceed pseudonymously.

## II. DEFENDANTS WILL SUFFER NO PREJUDICE FROM PLAINTIFFS' USE OF PSEUDONYMS.

"Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Does v. Stegall*, 653 F.3d 180, 185 (5th Cir. 1981); *see also Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004). Additionally, the concerns typically associated with proceeding under a pseudonym are substantially diminished when the questions to be resolved in the proceeding are purely legal questions. *See Doe v. Alaska*, 122 F.3d 1070, 1070 (9th Cir. 1997). *See also supra* Section I.C. In *Doe v. Alaska*, the court stated that the issues presented were "purely legal and do not depend on identifying the specific plaintiffs. None of the values protected by public access will be hindered by the use of pseudonyms. The public, as well as the plaintiffs, will benefit when the case proceeds to a resolution on the merits." *Id.* The same is true of Plaintiffs' claims here.

Defendant employers are all aware of the identities of their employees who have requested and been denied religious accommodation. (*See, e.g.*, V. Compl. ¶¶ 78–94.) Indeed, Defendant employers have dealt individually with each employee, including Plaintiffs, and at least know the identities of all their respective employees who have requested a religious exemption. That Defendants may not know the specific employees who are Plaintiffs is largely irrelevant because the rejections of Plaintiffs' requested religious accommodations **were not based on any individualized considerations**. Defendants' responses all involved an unequivocal statement that religious exemptions are not available **to anyone**. Such responses include:

- "**Religious exemptions are no longer accepted**" in **New York**.

- "As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer**

15

**consider any religious exemptions to the COVID vaccination – even those previously approved**."

- "**WMC Health, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered**."

- "**Under the emergency regulations the NYS DOH will not permit exemptions or deferrals for: Sincerely held religious beliefs . . . . We are required to comply with state law**."

(V. Compl. ¶¶1, 83, 86, 89, 92, 93(emphasis original).)

Neither Defendants' responses and defenses to the underlying claims, nor their specific defenses to the individual denials of Plaintiffs' requested religious exemptions, require identifying Plaintiffs to even the Defendants, let alone the public. Categorical denials call for categorical defenses.

### III. PLAINTIFFS HAVE PROPOSED A PROTECTIVE ORDER TO DEFENDANTS AND ARE ENGAGED IN ONGOING DISCUSSIONS REGARDING ITS CONTENTS.

Prior to the filing of the instant Motion, Plaintiffs communicated with counsel for Defendants concerning a Proposed Protective Order providing information to counsel for Defendants and to Defendants' employees who are necessary to defend the instant action. (A true and correct copy of that Proposed Protective Order is attached hereto as **EXHIBIT B**.) The terms of Plaintiffs' Proposed Protective Order are consistent with the foregoing arguments, give appropriate consideration to Plaintiffs' substantial interest in maintaining their anonymity in the instant proceedings, and provides Defendants with the ability to defend against Plaintiffs' claims. Plaintiffs' Proposed Protective Order appropriately balances the interests in the instant action. Some Defendants have indicated their willingness to negotiate the terms of the Proposed Protective Order. Plaintiffs will continue the discussions and keep the Court apprised of any developments.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted and a Protective Order issued to protect their identities from public disclosure.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
*Applications for Admission pro hac vice pending

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2021, I caused a true and correct copy of the foregoing to be electronically file with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronica notification system.

/s/ Roger K. Gannam
Roger K. Gannam

17