## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

JOHN DOES 1–2, JANE DOES 1–3, JACK DOES 1–750, JOAN DOES 1–750,

                             Plaintiffs,

               - v. -

KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C.,

                             Defendants.

Case No. 1:21-cv-05067

## DEFENDANT NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064

*Attorneys for Defendant New York-Presbyterian Healthcare System, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 4

I.     Healthcare Workers Have Long Been Subject to Vaccination Mandates ......................... 4

II.    COVID-19 Sparks A Global Public Health Emergency ................................................... 5

III.   To Protect Its Patients, Staff, Visitors, And Communities, NYP Adds The
COVID-19 Vaccine To Its List Of Mandatory Vaccinations For All Employees
And Implements A Robust Process For Reviewing Exemptions ...................................... 6

IV.   The DOH Compels Hospitals To Require Personnel To Be Fully Vaccinated
Against COVID-19 And Precludes Religious Exemptions, Thereby Requiring
NYP To Amend Its COVID-19 Vaccination Program .................................................... 8

V.    This Litigation ............................................................................................................... 8

VI.   Other Actions Challenging the DOH Mandate and NYP's Response .............................10

ARGUMENT ........................................................................................................................11

I.     Plaintiffs Cannot Demonstrate Irreparable Harm ...........................................................12

II.    Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits ........................14

      A.    Plaintiffs Have Failed to Show They Are Likely to Succeed On Their Title
           VII Claim ...........................................................................................................15

      B.    Plaintiffs Fail To Demonstrate A Likelihood Of Success On Their
           Supremacy Clause Claim.....................................................................................16

      C.    Plaintiffs Fail To Demonstrate A Likelihood Of Success On Their Section
           1985 Claim .........................................................................................................18

           1.    Plaintiffs Do Not Plead and Cannot Prove a Conspiracy in
               Violation of § 1985 ...................................................................................18

           2.    Plaintiffs Cannot Establish a Constitutional Violation ............................20

III.   Plaintiffs Fail To Show That The Balance Of The Equities Tips In Their Favor ............24

IV.   The Public Interest Favors NYP..................................................................................25

CONCLUSION.....................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdi* v. *Brookhaven Sci. Assocs., LLC*,
    447 F. Supp. 2d 221 (E.D.N.Y.) ..............................................................................19

*Agudath Israel of Am.* v. *Cuomo*,
    983 F.3d 620 (2d Cir. 2020) ...................................................................................14

*Armstrong* v. *Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ........................................................................................12, 17

*Beckerich* v. *St. Elizabeth Med. Ctr., Inc.*,
    No. 2:21-cv-00105(E.D. Ky. Sept. 17, 2021), ECF 23.............................................10

*Bell & Howell: Mamiya Co.* v. *Masel Supply Co.*,
    719 F.2d 42 (2d Cir. 1983) .....................................................................................12

*Bhatia* v. *Chevron U.S.A., Inc.*, 734 F.2d 1382 (9th Cir. 1984) .......................................16

*Bridges* v. *Houston Methodist Hosp.*,
    No. 21-cv-1774, 2021 WL 2399994 (S.D. Tex. June 12, 2021) ................................14

*Bronx Household of Faith* v. *Bd. of Educ.*,
    331 F.3d 342 (2d Cir. 2003) ...................................................................................13

*Buckley* v. *N.Y. & Presbyterian Hosp.*,
    No. 1:21-cv-07864 (S.D.N.Y. Sept. 21, 2021), ECF 6 ......................................10, 13

*C.F.* v. *N.Y.C. Dep't of Health & Mental Hygiene*,
    139 N.Y.S.3d 273 (App. Div. 2d Dep't 2020) ........................................................22

*Cal. Fed. Sav. & Loan Ass'n* v. *Guerra*,
    479 U.S. 272 (1987) ........................................................................................17, 18

*Cassano* v. *Carb*,
    436 F.3d 74 (2d Cir. 2006) .....................................................................................15

*Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*,
    508 U.S. 520 (1993) ...............................................................................................24

*Cine SK8, Inc.* v. *Town of Henrietta*,
    507 F.3d 778 (2d Cir. 2007) ...................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Davis* v. *Shah*,
  821 F.3d 231 (2d Cir. 2016) ...................................................................................17

*Does* v. *Mills*,
  No. 1:21-cv-00242 (D. Me. Aug. 26, 2021), ECF 11 ...............................................10

*Dr. A* v. *Hochul*,
  No. 1:21-cv-1009 (Sept. 14, 2021 N.D.N.Y.), ECF 7 ...............................9, 10, 11, 12

*Emanuel* v. *Barry*,
  724 F. Supp. 1096 (E.D.N.Y. 1989) ........................................................................20

*Emp. Div., Dep't of Hum. Res. of Or.* v. *Smith*,
  494 U.S. 872 (1990) ...........................................................................................21, 22

*F.F.* v. *State*,
  194 A.D.3d 80 (N.Y. App. Div. 3d Dep't 2021)......................................................4, 22

*Faiveley Transp. Malmo AB* v. *Wabtec Corp.*,
  559 F.3d 110 (2d Cir. 2009) ...................................................................................12

*Fallon* v. *Mercy Catholic Med. Ctr. of Se. Penn.*,
  200 F. Supp. 3d 553 (E.D. Pa. 2016) .....................................................................16

*Fowlkes* v. *Ironworkers Loc. 40*,
  790 F.3d 378 (2d Cir. 2015) ...................................................................................15

*Fraternal Order of Police Newark Lodge No. 12* v. *City of Newark*,
  170 F.3d 359 (3d Cir. 1999) ...................................................................................23

*Friends of Falun Gong* v. *Pac. Cultural Enter., Inc.*,
  288 F. Supp. 2d 273 (E.D.N.Y. 2003) .................................................................19, 20

*Garcia* v. *N.Y.C. Dep't of Health & Mental Hygiene*,
  106 N.E.3d 1187 (N.Y. 2018) .................................................................................25

*Griffin* v. *Breckenridge*,
  403 U.S. 88 (1971) .............................................................................................21, 22

*Hanson Trust PLC* v. *SCM Corp.*,
  774 F.2d 47 (2d Cir. 1985) .....................................................................................11

*Hardaway* v. *Hartford Pub. Works Dep't*,
  879 F.3d 486 (2d Cir. 2018) ...................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

*Hillsborough Cnty., Fla.* v. *Automated Med. Lab'ys, Inc.*,
  471 U.S. 707 (1985) ........................................................................................................18

*Hopkins Hawley LLC* v. *Cuomo*,
  518 F. Supp. 3d 705 (S.D.N.Y. 2021) ...............................................................................25

*Int'l Bhd. Teamsters, Loc. 743* v. *Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds*,
  No. 1:21-cv-03840 (N.D. Ill. Aug. 3, 2021), ECF 21 ......................................................10

*Jacobson* v. *Massachusetts*,
  197 U.S. 11 (1905) .............................................................................................. 20, 21, 23

*Kalsi* v. *N.Y.C. Transit Auth.*,
  62 F. Supp. 2d 745 (E.D.N.Y. 1998) ................................................................................16

*Klaassen* v. *Trs. of Ind. Univ.*,
  --- F. Supp. 3d ---, No. 1:21-cv-238, 2021 WL 3073926 (N.D. Ind. July 18, 2021) ...................10

*LeBlanc-Sternberg* v. *Fletcher*,
  67 F.3d 412 (2d Cir. 1995) ................................................................................................20

*Legnani* v. *Alitalia Linee Aeree Italiane, S.P.A*,
  274 F.3d 683 (2d Cir. 2001) ..............................................................................................15

*Libertarian Party of Conn.* v. *Lamont*,
  977 F.3d 173 (2d Cir. 2020) ..............................................................................................11

*Litwin* v. *OceanFreight, Inc.*,
  865 F. Supp. 2d 385 (S.D.N.Y. 2011) ...............................................................................24

*Litzman* v. *N.Y.C. Police Dept.*,
  No. 12–CV–4681, 2013 WL 6049066 (S.D.N.Y. Nov. 15, 2013) ....................................24

*Locke* v. *Davey*,
  540 U.S. 712 (2004) ..........................................................................................................24

*Lowman* v. *NVI LLC*,
  821 F. App'x 29 (2d Cir. 2020) .........................................................................................17

*Maniscalco* v. *N.Y.C. Dep't of Educ.*,
  No. 21-2343 (2nd Cir. Sept. 27, 2021), ECF 27 ...............................................................11

*Maryland* v. *Louisiana*,
  451 U.S. 725 (1981) ..........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

*Mazurek* v. *Armstrong*,
   520 U.S. 968 (1997) ....................................................................................................11

*N.Y.C. Mun. Lab. Comm.* v. *City of N.Y.*,
   No. 158368/2021 (N.Y. Sup. Ct. Sept. 29, 2021), Doc. No. 38 ....................................11

*Norris* v. *Stanley*,
   No. 1:21-cv-00756 (W.D. Mich. Aug. 31, 2021), ECF 7 ............................................10

*People of State of N.Y. ex rel Abrams* v. *Seneci*,
   817 F.2d 1015 (2d Cir. 1987) .......................................................................................12

*Phillips* v. *City of N.Y.*,
   775 F.3d 538 (2d Cir. 2015) ....................................................................................21, 22

*Prince* v. *Massachusetts*,
   321 U.S. 158 (1944) .....................................................................................................21

*Resurrection Sch.* v. *Hertel*,
   11 F.4th 437 (6th Cir. 2021).........................................................................................22

*Robinson* v. *Child.'s Hosp. Bos.*,
   No. 14-cv-10263, 2016 WL 1337255 (D. Mass. Apr. 5, 2016).....................10, 18, 25

*Roman Cath. Diocese of Brooklyn* v. *Cuomo*,
   141 S. Ct. 63 (2020) ...............................................................................14, 14, 23, 25

*Romer* v. *Morgenthau*,
   119 F. Supp.2d 346 (S.D.N.Y. 2000) ..........................................................................18

*Sampson* v. *Murray*,
   415 U.S. 61 (1974) ..............................................................................................2, 9, 13

*Savage* v. *Gorski*,
   850 F.2d 64 (2d Cir. 1988) ...........................................................................................13

*Sutton* v. *Providence St. Joseph Med. Ctr.*,
   192 F.3d 826 (9th Cir. 1999) ........................................................................................15

*Tandon* v. *Newsom*,
   141 S. Ct. 1294 (2021)..................................................................................................23

*Ungar* v. *N.Y.C. Hous. Auth.*,
   363 F. App'x 53 (2d Cir. 2010) ....................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO* v. *Scott*,
  463 U.S. 825 (1983) ...........................................................................................................19

*Valdez* v. *Lujan Grisham*,
  No. 1:21-cv-00783 (D.N.M. Sept. 13, 2021), ECF 18 ..............................................10

*W.D.* v. *Rockland Cnty.*,
  521 F. Supp. 3d 358, 406–14 (S.D.N.Y. 2021) .......................................10, 20, 22, 24

*We the Patriots USA* v. *Hochul*,
  No. 1:21-cv-04954 (E.D.N.Y. Sept. 12, 2021) ...................................................10, 12

*We the Patriots USA, Inc.* v. *Hochul*,
  No. 21-2179 (2d Cir. Sept. 30, 2021), ECF 66 ...................................................10, 14

*Webb* v. *Goord*,
  340 F.3d 105 (2d Cir. 2003) ..............................................................................................18

*Winter* v. *Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................................................................11

*Wirzburger* v. *Galvin*,
  412 F.3d 271 (1st Cir. 2005) ............................................................................................24

*Workman* v. *Mingo Cnty. Bd. of Ed.*,
  419 Fed. App'x 348 (4th Cir. 2011).................................................................................26

*Yeager* v. *FirstEnergy Generation Corp.*,
  777 F.3d 362 (6th Cir. 2015) ............................................................................................15

*Yisrael* v. *Per Scholas, Inc.*,
  No. 01-cv-8290, 2004 WL 744485 (S.D.N.Y. Apr. 7, 2004) ...................................16

**Statutes**

42 U.S.C. § 1985(3) ...........................................................................................................*passim*

42 U.S.C. § 2000e–7 ...............................................................................................................18

42 U.S.C. § 2000h–4 ...............................................................................................................20

Maine P.L. 2019, ch. 154, §§ 9, 11 ....................................................................................4

N.Y. Public Health Law § 2164, as amended by L 2019, ch 35 §§ 1, 2 ............................4

N.Y. Pub. Health Law § 2806(1)(a)..............................................................................8, 25

# <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

**Regulations**

N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021) ........................................................................ 8

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3 (2001) .................................................................... 6

**Other Authorities**

Devin Watkins, *Pope Francis Urges People to Get Vaccinated Against Covid-19*,
    Vatican News (Aug. 18, 2021), https://www.vaticannews.va/en/pope/news/2021-
    08/pope-francis-appeal-covid-19-vaccines-act-of-love.html .................................................... 20

Jesse Berman, *Baltimore Rabbis Encourage Vaccinations in New Video*, Jewish
    Times (Aug. 12, 2021), https://www.jewishtimes.com/baltimore-rabbis-
    encourage-vaccinations-in-new-video ........................................................................................ 20

Jonathan Levin, *U.S. Evangelical Leaders Preach Covid Vaccine Benefits to Their
    Followers*, Bloomberg (Mar. 26, 2021, 10:03 AM),
    https://www.bloomberg.com/news/articles/2021-03-26/u-s-evangelical-leaders-
    preach-vaccine-to-holdout-flocks ............................................................................................... 20

## PRELIMINARY STATEMENT

In an effort to address the worst public health crisis in over a century—in which the U.S. death toll just passed 700,000, including at least 1800 healthcare workers—and to protect vulnerable patients, healthcare workers, and the general public, the New York State Department of Health (the "DOH") has adopted a rule (the "DOH Mandate" or the "Mandate") requiring all healthcare employees, other than those medically exempted, to be vaccinated against COVID-19. Plaintiffs now ask the Court to enjoin New York-Presbyterian Healthcare System, Inc. ("NYP") and other private hospitals from complying with that regulation. Their motion should be denied.

Since the beginning of the pandemic, NYP has been on the front lines in providing life-saving care to many thousands of patients suffering from COVID-19, helping to reduce the spread of the pandemic in the process. More recently, in June 2021, after effective vaccines became more widely available, NYP added the COVID-19 vaccine to its existing list of required vaccinations for all of its employees. NYP's policy originally provided for exemptions to this requirement based on employees' sincere religious objections as well as medical exemptions. In August, however, the DOH—NYP's primary regulator—issued the Mandate, requiring healthcare employees to be vaccinated against COVID-19, and permitting healthcare providers such as NYP to provide medical but not religious exemptions. In compliance with the Mandate, NYP advised its employees that it could not recognize religious exceptions to its COVID-19 vaccination policy.

Plaintiffs do not challenge NYP's vaccination policy or its denial of any religious exemption claims before the DOH Mandate was issued. Nor do they dispute that NYP may condition any exemptions on appropriate measures to protect patient and employee health and safety. Instead, plaintiffs challenge only NYP's determination—as the DOH Mandate requires—not to allow exemptions based on religious beliefs. Plaintiffs seek by this application to enjoin the

government defendants from enforcing the DOH Mandate to the extent it precludes religious exemptions, and appear to seek as well to compel NYP and the other private defendants to disregard the Mandate to the same extent. Plaintiffs have not established any of the elements necessary for a preliminary injunction against NYP, and their motion as to it should accordingly be denied.

**First**, as Judge Komitee concluded, "[p]laintiffs have not established a likelihood that the private defendants will cause irreparable harm absent injunctive relief." Order Den. TRO, ECF 35 at 3 n.2. To begin with, the Second Circuit and other courts have already temporarily enjoined the Mandate to the extent it prohibits religious exemptions, and NYP has consequently paused its vaccination policy for individuals with approved or pending religious exemption requests. There is thus no need for a separate injunction in this matter. Judge Komitee also concluded that the sole alleged harm to plaintiffs, a possible loss of earnings, "does not constitute 'irreparable harm' in the employment context," because such a loss can be fully compensated by reinstatement and money damages. *Id.* (quoting *Sampson* v. *Murray*, 415 U.S. 61, 90–92 (1974)). The same deficiency bars plaintiffs' current motion.

**Second**, plaintiffs cannot show that they are likely to succeed on any of their claims against NYP. Plaintiffs cannot prevail on their claim for employment discrimination under Title VII because they failed to exhaust (or even commence) administrative remedies as the statute requires as a condition of suit, and because the statute does not require employers to grant accommodations where doing so would cause them to violate state health and safety laws such as the DOH Mandate. Plaintiffs' purported claim under the Supremacy Clause, allegedly on the ground that Title VII preempts the DOH Mandate, fares no better. As the Supreme Court has held, the Supremacy Clause does not give rise to a cause of action and is not the source of any federal rights, and in any event the Mandate is not preempted.

Plaintiffs likewise cannot show a likelihood of success on their claim under Section 1985(3) that NYP allegedly conspired with the State to violate their First Amendment rights. That claim fails because there was no conspiracy, and none is alleged. All that NYP did was to comply with the DOH Mandate—as it was required to do—after state health officials adopted it.

Plaintiffs' claim under Section 1985 also fails for the independent reason that—as the Supreme Court has held for more than a century, and the Second Circuit has squarely ruled—vaccination mandates to protect the public health do not contravene the Constitution. Under this well-settled body of law, the DOH Mandate is no more vulnerable to constitutional challenges than the longstanding public health requirements that healthcare workers, schoolchildren, and others be vaccinated against other infectious diseases such as measles and rubella.

The Free Exercise rights that plaintiffs invoke do not entitle them to an exemption from neutral and generally applicable laws such as the DOH Mandate. The Mandate applies in the same manner to *all* healthcare workers—religious and non-religious—who can safely receive the COVID-19 vaccine. Plaintiffs' contention that they are entitled to a religious exemption because the DOH Mandate provides an exemption for employees whose health would be threatened by the vaccine is unsupported by law, is contrary to clear Second Circuit precedent, and would, if accepted, gravely undermine the compelling public health interests served by the Mandate.

***Third***, the balance of equities weighs heavily against an injunction. Granting the injunction would, in the DOH's publicly stated view, undermine its compelling interest in containing the COVID-19 pandemic, and threaten the health of vulnerable hospital patients. In contrast, denying the injunction would do no more than require plaintiffs either to receive a vaccination that has been safely administered to hundreds of millions of people, or risk the loss of their jobs (a loss that can be fully compensated by money damages if they ultimately prevail).

*Fourth*, for similar reasons, plaintiffs fail to show that the injunction they seek is in the public interest. There can scarcely be a more compelling public interest today than containing the pandemic, and the public interest would be disserved by impeding the DOH's efforts to do so.

Plaintiffs' application for a preliminary injunction should be denied.

## STATEMENT OF FACTS

### I.   Healthcare Workers Have Long Been Subject to Vaccination Mandates

Healthcare settings present a high risk of contagious disease transmission. Declaration of Magdalena Sobieszczyk, MD, MPH, dated October 5, 2021 ("Sobieszczyk Decl.") ¶ 17. Hospital-acquired influenza, for example, can account for up to one-third of all influenza cases when healthcare worker vaccination rates are low. *Id*. As a result, vaccines are widely recommended—and, in many cases, mandated—for healthcare workers. The Centers for Disease Control and Prevention ("CDC") has long recommended that all healthcare workers receive vaccines for, among other diseases, hepatitis B, influenza, measles, mumps, rubella, chickenpox, tetanus, diphtheria, and pertussis. *Id*. Vaccination requirements have successfully controlled or eliminated these and other once-widespread diseases. *Id*. ¶ 17.

Several states, including New York, require vaccination in healthcare and school settings subject only to a medical exemption. In 2019, for example, Maine eliminated all non-medical exemptions to vaccination requirements for healthcare workers, school children, and employees of daycare facilities and New York eliminated religious exemptions to its vaccination requirements for students.[1] New York's revocation of religious exemptions withstood legal challenge. *See F.F. v. State*, 194 A.D.3d 80, 85–89 (N.Y. App. Div. 3d Dep't 2021).

---

[1]   *See* Maine P.L. 2019, ch. 154, §§ 9, 11 (effective Sept. 19, 2019); N.Y. Public Health Law § 2164, as amended by L 2019, ch 35 §§ 1, 2.

## II.   COVID-19 Sparks A Global Public Health Emergency

Since its emergence in early 2020, COVID-19 has infected over 43 million people in the U.S. and has killed over 700,000. Sobieszczyk Decl. ¶ 15. These figures include over 570,000 cases and at least 1,800 deaths among U.S. healthcare personnel. *See id.* These numbers are likely an undercount, *see id.*, and do not capture the devastating physical and emotional toll that the pandemic has unleashed on healthcare workers.

Fortunately, there are now three COVID-19 vaccines that have been authorized for use by the Food and Drug Administration and that are highly effective at preventing transmission. *See id.* ¶ 11. More than 6.25 billion doses of these vaccines have now been safely administered worldwide, including to more than 390 million people in the U.S. *Id.* ¶ 14. Some 50 professional healthcare organizations—including the American Medical Association, American Nurses Association, American Academy of Pediatrics and the Association of American Medical Colleges—have called for all healthcare employers to require their employees to be vaccinated against COVID-19. *See id.* ¶ 19.

Despite the nearly universal availability in the U.S. of safe and effective vaccines, the toll of death and disease from COVID-19 remains high, largely due to the emergence of the highly contagious Delta variant. *Id.* ¶¶ 6, 15, 20, 24. COVID-19 cases are on the rise and approaching levels reminiscent of months before the vaccine was publicly available. *Id.* ¶ 20. A recent study from the CDC indicates that people who are not fully vaccinated are 10 times more likely to be hospitalized or die as a result of COVID-19 than those who are fully vaccinated. *Id.* ¶ 35. From the third week of July to the present, on average, more than three quarters of COVID-19 patients at NYP have been unvaccinated, including ICU and ventilated patients. *Id.*

III.   **To Protect Its Patients, Staff, Visitors, And Communities, NYP Adds The COVID-19 Vaccine To Its List Of Mandatory Vaccinations For All Employees And Implements A Robust Process For Reviewing Exemptions**

NYP, along with its affiliates and subsidiaries, is a premier not-for-profit comprehensive healthcare system with roots in two historic healthcare institutions, the New York Hospital founded in 1771 and the Presbyterian Hospital founded in 1898. NYP provides health care services through seven world-class campuses throughout the New York Metropolitan area and receives more than two million visits annually, including more than 310,000 emergency department visits. *See* Declaration of Shaun E. Smith, dated October 5, 2021 ("Smith Decl.") ¶ 4.

To promote patient care and ensure the safety of its patients and healthcare workers, NYP has long required that its employees be vaccinated against infectious diseases such as influenza, measles, rubella, and varicella. *Id.* ¶ 5. Under New York State law, religious exemptions are not permitted for hospital workers for measles and rubella vaccinations. N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3 (2001).

NYP offered COVID-19 vaccines to all staff when the first vaccines were made available in December 2020, and actively campaigned to educate staff on vaccine safety in the hopes of encouraging voluntary vaccination. However, vaccination rates dropped off and remained fairly flat at roughly 64% of staff being fully vaccinated by early June. Smith Decl. ¶ 9–10.

On June 11, 2021, after careful consideration of the unique risks posed by COVID-19 and the widespread view in the scientific community that the available COVID-19 vaccines were safe and effective, NYP added COVID-19 vaccination to its list of required vaccinations for employees. Sobieszczyk Decl. ¶ 16; Smith Decl. ¶ 11. Following that determination, NYP sent a memorandum to all of its employees informing them that they would have to receive their first dose of the vaccine no later than September 1, 2021 (later adjusted to September 15, 2021 for non-supervisory employees), and complete the second dose, if any, within a prescribed timeframe, and explaining

6

the rationale for that requirement. Smith Decl. ¶ 12. The September deadline was intended to reduce the potential deleterious impact of a fall surge in coronavirus cases, compounded by seasonal influenza for which vaccinations typically begin in early September. *Id*. ¶ 13. NYP further communicated that employees who cannot be vaccinated for medical reasons, pregnancy, or religious reasons must apply for an exemption by August 1, 2021 (subsequently extended to August 6, 2021). *Id*. ¶ 14.

As discussed above, NYP's vaccination program provided two types of exemptions— medical and religious—to its employees. Under that program, medical exemptions were available to a narrow and objectively defined group of employees for whom it is not safe to get vaccinated for COVID-19. Sobieszczyk Decl. ¶¶ 26–27. As of September 1, 2021, NYP received 359 formal medical exemption requests. Smith Decl. ¶ 19. NYP ultimately granted medical exemptions to approximately 200 employees out of over 37,000 NYP employees. *Id*. Approximately two-thirds of medical exemption requests were granted on a temporary basis, such as those based on certain pregnancy-related conditions. *Id*. In contrast, more than 1,400 individuals submitted religious exemption requests. Smith Decl. ¶ 17. Those requests have been, or are being, reviewed by an NYP internal committee, resulting in 129 approvals with approximately 450 requests that are pending. *Id*. In developing its process for review of exemption requests, NYP considered that reaching the highest possible level of vaccination consistent with permitting appropriate exemptions is critical to protecting those who are at higher risk for COVID-19 and reducing the risk of breakthrough infections. Sobieszczyk Decl. ¶¶ 21–22, 25–27. As of September 23, 2021, fewer than 200 employees were deemed to have resigned for non-compliance with the vaccine policy. Smith Decl. ¶ 21.

**IV.    The DOH Compels Hospitals To Require Personnel To Be Fully Vaccinated Against COVID-19 And Precludes Religious Exemptions, Thereby Requiring NYP To Amend Its COVID-19 Vaccination Program**

On August 26, 2021, the New York State Public Health and Health Planning Council (a division of DOH) invoked DOH's emergency powers to mandate that hospitals and other healthcare institutions require personnel to be "fully vaccinated against COVID-19 . . . absent receipt of an exemption as allowed" by the regulation. *Prevention of COVID-19 Transmission by Covered Entities*, N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021). The Council issued its Mandate "in response to [the] significant public health threat" posed by COVID-19 and the Delta variant and the special risk faced by unvaccinated healthcare workers and patients. *Id.* The Mandate allows medical, but not religious, exemptions. *Id.*(d); Smith Decl. ¶¶ 24–28.

NYP, as a New York-based hospital system, is obligated to comply with DOH mandates, and is subject to stringent penalties for non-compliance, including loss of its license. *See* N.Y. Pub. Health Law § 2806(1)(a) (2021) ("A hospital operating certificate may be revoked, suspended, limited or annulled . . . [if] the hospital has failed to comply with the provisions of [Article 28] or rules and regulations promulgated thereunder."). NYP informed its employees on August 30, 2021 of the DOH Mandate and that DOH had "made the determination to exclude religious exemptions as an alternative to receiving the vaccine." ECF 1-13 at 2 (emphasis omitted); Smith Decl. ¶¶ 27–28. NYP further stated that "NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination[,] even those previously approved." ECF 1-13 at 2 (emphasis omitted).

**V.    This Litigation**

Plaintiffs commenced this lawsuit against Governor Kathy Hochul, Commissioner Howard A. Zucker, and the private employer defendants, seeking preliminary and permanent injunctive relief, declaratory relief, and damages. *See* ECF 1 ("Compl."). Plaintiffs John Doe 2 and Jane

Doe 1 allege that they are NYP employees who received religious exemptions that were revoked after DOH issued the Mandate. *Id.* ¶¶ 11–12, 81–87.

Plaintiffs do not challenge NYP's policy or the DOH Mandate requiring all non-exempted employees to be vaccinated. Nor do they challenge NYP's prior religious exemption review process or NYP's denial of any religious exemption request before the DOH Mandate was issued. They challenge only NYP's determination, in compliance with the DOH Mandate, not to allow exemptions based upon religious beliefs. Plaintiffs purport to assert claims against NYP and the other private employer defendants under the Supremacy Clause (Count II), Title VII of the Civil Rights Act of 1964 (Count IV), and 42 U.S.C. § 1985(3) (Count V). *Id.*

On September 13, 2021, Judge Komitee held a hearing on plaintiffs' application for a TRO. On September 14, 2021, in a separate action, Judge Hurd of the Northern District of New York temporarily restrained the enforcement of the DOH Mandate statewide to the extent that DOH is barred from requiring employers to deny religious exemptions or to revoke any exemptions employers already granted. *Dr. A* v. *Hochul*, No. 1:21-cv-1009 (Sept. 14, 2021 N.D.N.Y.), ECF 7 ("*Dr. A*"). On September 14, 2021, Judge Komitee then denied plaintiffs' application as moot in light of Judge Hurd's order. With respect to the private employers, Judge Komitee noted that "it [was] not obvious that Plaintiffs are even seeking relief against the private defendants in the instant motion" and that plaintiffs filed no proposed order "indicating precisely what relief they seek against the private defendants." Order Den. TRO at 3 n.2. Judge Komitee also concluded that, in light of the fact that the only alleged harm to plaintiffs was a possible loss of earnings, which "does not constitute 'irreparable harm' in the employment context," plaintiffs "have not established a likelihood that the private defendants will cause irreparable harm absent injunctive relief." *Id.* (quoting *Sampson* v. *Murray*, 415 U.S. 61, 90–92 (1974)).

Plaintiffs now seek a preliminary injunction based on the same brief as their TRO application. As to NYP, plaintiffs seek to require NYP to "consider, evaluate, or accept plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs" and to "grant Plaintiffs' requests for religious exemption[s] . . . provided that Plaintiffs agree to abide by reasonable accommodation provisions such as masking, testing, symptom monitoring, and reporting." Compl. at ¶ 43.

## VI.  Other Actions Challenging the DOH Mandate and NYP's Response

Healthcare employees have brought several challenges to the lack of religious exemption in the DOH Mandate. In *We the Patriots USA* v. *Hochul*, Judge Kuntz of this Court denied an application for a TRO and preliminary injunction. No. 1:21-cv-04954 (E.D.N.Y. Sept. 12, 2021). A request for injunctive relief was also denied in *Buckley* v. *N.Y. & Presbyterian Hosp.*, No. 1:21-cv-07864 (S.D.N.Y. Sept. 21, 2021), ECF 6 at 2. As noted, in *Dr. A*, the district court temporarily enjoined the DOH Mandate to the extent that it precludes religious exemptions. *Dr. A*, No. 1:21-cv-1009, ECF 7 (N.D.N.Y.). Thereafter, on appeal in *We the Patriots*, the Second Circuit applied the same injunction pending its ruling on appeal. *We the Patriots USA, Inc.* v. *Hochul*, No. 21-2179, ECF 66 (2d Cir. Sept. 30, 2021).[2] The court ordered expedited merits briefing and argument, with argument scheduled for October 14, 2021.

---

[2]  Courts in other jurisdictions have broadly rejected challenges to vaccine mandates brought against government entities and private companies. *See, e.g.*, *Klaassen* v. *Trs. of Ind. Univ.*, --- F. Supp. 3d ---, No. 1:21-cv-238, 2021 WL 3073926, at *25 (N.D. Ind. July 18, 2021), *motion for injunction pending appeal denied*, --- F.4th ---, No. 21-2326, 2021 WL 3281209 (7th Cir. Aug. 2, 2021), *emergency application for writ of injunction denied*, No. 21A15 (U.S. Aug. 12, 2021); *Robinson* v. *Child.'s Hosp. Bos.*, No. 14-cv-10263, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016); *W.D.* v. *Rockland Cnty.*, 521 F. Supp. 3d 358, 406–14 (S.D.N.Y. 2021); *Does* v. *Mills*, No. 1:21-cv-00242 (D. Me. Aug. 26, 2021), ECF 11, at 2–3; *Int'l Bhd. Teamsters, Loc. 743* v. *Cent. States, Se. & Sw. Areas Health & Welfare & Pension Funds*, No. 1:21-cv-03840 (N.D. Ill. Aug. 3, 2021), ECF 21, at 2; *Valdez* v. *Lujan Grisham*, No. 1:21-cv-00783 (D.N.M. Sept. 13, 2021), ECF 18, at 27–28; *Beckerich* v. *St. Elizabeth Med. Ctr., Inc.*, No. 2:21-cv-00105(E.D. Ky. Sept. 17, 2021), ECF 34; *Norris* v. *Stanley*, No. 1:21-cv-00756

In late August 2021, in response to the temporary restraining order in *Dr. A*, NYP voluntarily paused the implementation of its vaccination program for all employees who had an approved or pending religious exemption request as of that time.  ECF 34; ECF 38.  The pause remains in effect.

## ARGUMENT

A preliminary injunction is "an extraordinary and drastic remedy." *Mazurek* v. *Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quotation marks and citation omitted); *see Hanson Trust PLC* v. *SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) ("[The] preliminary injunction, which is one of the most drastic tools in the arsenal of judicial remedies . . . must be used with great care.") (quotation marks and citation omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The Second Circuit "required the movant to meet a higher standard where . . . an injunction will alter, rather than maintain, the status quo."  *Libertarian Party of Conn.* v. *Lamont*, 977 F.3d 173, 177 (2d Cir. 2020) (quotation marks and citation omitted).  In such cases, an injunction will issue only "on a showing of a clear or substantial likelihood of success on the merits," in addition to a demonstration of irreparable harm.  *Id.*

---

(W.D. Mich. Aug. 31, 2021), ECF 7, at 5–6; *N.Y.C. Mun. Lab. Comm.* v. *City of N.Y.*, No. 158368/2021 (N.Y. Sup. Ct. Sept. 29, 2021), Doc. No. 38, at 7.  Most recently, the Second Circuit denied a motion to enjoin a mandate imposed by the City of New York requiring teachers and other Department of Education employees to receive a COVID-19 vaccination, and the United States Supreme Court denied a motion for the same relief.  *Maniscalco* v. *N.Y.C. Dep't of Educ.*, No. 21-2343 (2nd Cir. Sept. 27, 2021), ECF 27.

Because plaintiffs have failed to make a showing that they are entitled to a preliminary injunction, their motion should be denied.

## I.      Plaintiffs Cannot Demonstrate Irreparable Harm

Irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co.* v. *Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983). To meet their burden, plaintiffs "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB* v. *Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citation omitted).

*First*, there can be no irreparable harm because existing orders prohibit enforcement of the absence of a religious exemption in the DOH Mandate and NYP has decided to pause its vaccination program for employees (including the plaintiffs here allegedly employed by NYP) with approved and pending religious exemption requests. As Judge Komitee noted in his order denying plaintiffs' motion for a TRO, a motion for injunctive relief should be denied where the same relief has already been granted by another court. *See* Memorandum & Order, ECF 35, at 2–3 (denying motion for TRO because the request for injunctive relief was moot and no longer justiciable); *see also People of State of N.Y. ex rel Abrams* v. *Seneci*, 817 F.2d 1015, 1016 (2d Cir. 1987) (affirming dismissal of portion of complaint seeking injunctive relief on mootness grounds, given that another court had already granted the requested injunctive relief). The injunctions in *We the Patriots* and *Dr. A* provide all the relief that plaintiffs seek. In light of those orders and the expedited schedule set by the Second Circuit in *We the Patriots*, plaintiffs cannot now show irreparable harm absent a preliminary injunction.

*Second*, as Judge Komitee concluded, plaintiffs' allegation that they are threatened with loss of their jobs unless the Court issues a preliminary injunction does not establish irreparable harm. It is well-established that neither the loss of employment nor financial loss constitutes "irreparable harm" in determining whether an injunction is warranted. *See Sampson*, 415 U.S. at 90–92 (vacating a preliminary injunction, in part, because "loss of income . . . falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction"); *Savage* v. *Gorski*, 850 F.2d 64, 67 (2d Cir. 1988) ("Loss of employment does not in and of itself constitute irreparable injury"). That is because reinstatement or money damages can make a discharged employee whole. *Savage*, 850 F.2d at 68. As the court held in *Buckley*, "Plaintiff's allegation that she is threatened with the loss of employment is insufficient to carry [her] burden of showing irreparable harm because she makes no showing that the loss of her employment cannot be remedied with money damages." *Buckley*, ECF 6 at 2 (denying motion for TRO and certifying that any appeal from the order "would not be taken in good faith"). Plaintiffs' inability to establish irreparable harm is fatal to their motion.

Plaintiffs' contention that the loss of First Amendment rights is irreparable as a matter of law is misplaced. Motion for Temporary Restraining Order and Preliminary Injunction, ECF 2 at 8 (citing *Roman Cath. Diocese of Brooklyn* v. *Cuomo*, 141 S. Ct. 63, 67 (2020)). A movant is entitled to the presumption that a loss of First Amendment freedoms constitutes irreparable harm only when he "alleges injury from a rule or regulation that *directly limits*" a First Amendment right. *Bronx Household of Faith* v. *Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003) (emphasis added). Neither the DOH Mandate nor NYP's policy limits plaintiffs' exercise of their First Amendment rights; they only impose conditions on the plaintiffs' ability to work at NYP or other covered healthcare facilities in a job that involves in-person contact with patients or other

employees.  As one court reasoned in dismissing healthcare workers' challenge to a COVID-19 vaccination mandate:

> [Plaintiff] has not been coerced.  [Plaintiff] says that she is being forced to be injected with a vaccine or be fired.  That is not coercion.  [The hospital] is trying to do their business of saving lives without giving them the COVID-19 virus.  It is a choice made to keep staff, patients, and their families safer.  [Plaintiff] can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply have to work somewhere else. . . .  Every employment includes limits on the worker's behavior in exchange for his remuneration.  That is all part of the bargain.

*Bridges* v. *Houston Methodist Hosp.*, No. 21-cv-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021).

The cases plaintiffs rely on are inapposite.  In *Roman Catholic Diocese* and *Agudath Israel of Am.* v. *Cuomo*, 983 F.3d 620 (2d Cir. 2020), the challenged order imposed stringent capacity limits on "houses of worship," and thus precluded worshippers from attending services and practicing important religious rituals that "require personal attendance" at worship services. *Roman Cath. Diocese*, 141 S. Ct. at 67; *see also Agudath Israel*, 938 F.3d at 636 (same).  No comparable religious exercise is allegedly infringed here, and any indirect harm consists only of threatened loss of employment—a threatened loss that, as noted, is not irreparable.  Accordingly, plaintiffs fail to demonstrate irreparable harm.[3]

## II.  Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits

Plaintiffs challenge the constitutionality of the DOH Mandate and assert that NYP has violated Title VII, the Supremacy Clause, and 42 U.S.C. § 1985(3).  Plaintiffs' attempt to establish a likelihood of success on the merits, however, falls short as to each claim.

---

[3]   Moreover, in view of the fact that plaintiffs are proceeding as anonymous John and Jane Does (and purport to include hundreds of anonymous persons about whom no specific facts are alleged), it is far from clear that plaintiffs can show any harm, irreparable or otherwise.

### A.   Plaintiffs Have Failed to Show They Are Likely to Succeed On Their Title VII Claim

Plaintiffs' claim that NYP discriminated against them in violation of Title VII by failing to grant religious exemptions fails for at least three reasons.

*First*, plaintiffs have not exhausted their administrative remedies. "It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes* v. *Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015). Exhaustion of administrative remedies is "a precondition of suit," *id.*, and "operates as an affirmative defense." *Hardaway* v. *Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). In particular, before commencing suit, Title VII plaintiffs are obligated to pursue relief before the EEOC and obtain a right to sue letter. *See Legnani* v. *Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001). Plaintiffs' failure to do so is fatal to their Title VII claim.

*Second*, an employer is not obligated to grant a religious exemption under Title VII when "accommodating an employee's religious beliefs would require it to violate federal law or state law." *Sutton* v. *Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999); *see Lowman* v. *NVI LLC*, 821 F. App'x 29, 31–32 (2d Cir. 2020); *Cassano* v. *Carb*, 436 F.3d 74, 75 (2d Cir. 2006) (per curiam). "[W]hen accommodating an employee's religious beliefs would require the employer to violate federal or state law[,] . . . the existence of such a law establishes 'undue hardship'" under Title VII, relieving the employer of any obligation to provide the accommodation. *Sutton*, 192 F.3d at 830. Title VII thus does not require an employer to disregard its legal obligations "in the name of reasonably accommodating an employee's religious practices." *Yeager* v. *FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015).

Courts have rejected Title VII claims on these grounds in closely analogous circumstances. In *Yisrael* v. *Per Scholas, Inc.*, the court determined that the plaintiff failed to establish a prima

facie case of religious discrimination under Title VII on the ground that the requested religious exemption was from a requirement imposed by law, not by the employer. No. 01-cv-8290, 2004 WL 744485, at *3 (S.D.N.Y. Apr. 7, 2004). Likewise, in *Bhatia* v. *Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383–84 (9th Cir. 1984), the court held that the employer would incur an undue hardship by granting a religious accommodation where doing so would violate state health and safety standards. *See also Kalsi* v. *N.Y.C. Transit Auth.*, 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998) (granting summary judgment for employer on Title VII claims where the proposed accommodations "threaten[ed] to compromise workplace safety"), *aff'd*, 189 F.3d 461 (2d Cir. 1999). Here, too, Title VII does not require NYP to grant a religious accommodation in contravention of state law obligations imposed by the DOH Mandate.

*Third*, in light of the threat that COVID-19 poses to the health and safety of NYP's patients and employees, religious accommodations for certain employees could well constitute an undue hardship. *See Robinson*, 2016 WL 1337255, at *8 (rejecting employee's failure to accommodate claim under Title VII where religious exemption to influenza vaccination would "cause or increase safety risks or the risk of legal liability for the employer"). Under Title VII, NYP is free to reassess its exemption policy in light of the emergence of the Delta variant and the risk of further variants as the winter months approach. *See Fallon* v. *Mercy Catholic Med. Ctr. of Se. Penn.*, 200 F. Supp. 3d 553, 561 n.3 (E.D. Pa. 2016) (noting that mere fact of previous accommodation is not an irrevocable exemption), *aff'd*, 877 F.3d 487 (3d Cir. 2017).

### B.   Plaintiffs Fail To Demonstrate A Likelihood Of Success On Their Supremacy Clause Claim

Plaintiffs have not shown and cannot show that they are likely to succeed on their purported claim under the Supremacy Clause. There is no cause of action under the Supremacy Clause, and

Title VII does not preempt the DOH Mandate or require employers to grant religious accommodations that would violate state health and safety regulations.

*First*, as the Supreme Court has held, the Supremacy Clause "certainly does not create a cause of action." *Armstrong* v. *Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015). The Supremacy Clause is not "the source of any federal rights," but a "rule of decision" that courts should not give effect to state laws that conflict with federal laws. *Id.* at 324 (citation omitted). The Court reasoned that reading a cause of action into the Supremacy Clause would be "strange" given the Constitution's "silen[ce] regarding who may enforce federal laws in court, and in what circumstances they may do so," and that the result of permitting a private right of action would be to "significantly curtail [Congress's] ability to guide the implementation of federal law." *Id.* at 325–26; *see also Davis* v. *Shah*, 821 F.3d 231, 245 (2d Cir. 2016) (stating that, under *Armstrong*, there is no "implied right of action arising out of the Supremacy Clause.").

*Second*, plaintiffs' claim under the Supremacy Clause fails for an additional reason that Title VII does not preempt the DOH Mandate. "[P]re-emption is not to be lightly presumed." *Cal. Fed. Sav. & Loan Ass'n* v. *Guerra*, 479 U.S. 272, 281 (1987) (citing *Maryland* v. *Louisiana*, 451 U.S. 725, 746 (1981)). Rather, federal law preempts state law only where Congress expressly provides for preemption; the federal regulatory scheme is sufficiently comprehensive that Congress has "'left no room' for supplementary state regulation"; or there is an actual conflict such that compliance with both is "a physical impossibility" or state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 280–81.

Title VII does not conflict with the DOH Mandate because, as discussed above, the statute does not require employers to grant religious accommodations that conflict with state laws. *See*

17

pp. 15–16, above.  Furthermore, there is a strong presumption that "state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough Cnty., Fla.* v. *Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 715 (1985).[4]  Plaintiffs' claim under the Supremacy Clause accordingly fails as a matter of law.

### C.   Plaintiffs Fail To Demonstrate A Likelihood Of Success On Their Section 1985 Claim

Plaintiffs are unlikely to prevail on their claim under 42 U.S.C. § 1985(3) that NYP conspired with defendants to deprive plaintiffs of their First Amendment rights.  To prevail on a claim under the statute, a plaintiff must establish "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc.* v. *Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).  Plaintiffs have not pleaded and will not be able to prove either a conspiracy in violation of the statute or a violation of their First Amendment rights.

#### 1.   *Plaintiffs Do Not Plead and Cannot Prove a Conspiracy in Violation of § 1985*

A claim of conspiracy must "provide some factual basis . . . that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb* v. *Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer* v. *Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000)).  In

---

[4]   The first two bases for preemption under *Cal. Fed.* are inapplicable.  Plaintiffs do not claim that Title VII expressly preempts the DOH Mandate or that Title VII is so comprehensive that it leaves "'no room' for supplementary state regulation." *Cal. Fed.*, 479 U.S. at 280–81.  Nor could they.  In Title VII, Congress "explicitly disclaimed any intent categorically to pre-empt state law," *id.* at 281 (citing 42 U.S.C. §§ 2000e–7; 2000h–4), and made clear that state law consistent with Title VII remains valid and enforceable. 42 U.S.C. §§ 2000e–7; 2000h–4.

addition, "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO* v. *Scott*, 463 U.S. 825, 830 (1983). Finally, the plaintiffs must show that the alleged conspiracy was the result of "class-based, invidiously discriminatory animus." *Griffin* v. *Breckenridge*, 403 U.S. 88, 102 (1971).

Plaintiffs cannot satisfy these standards. *First*, they "fail to plead a conspiracy or meeting of the minds" between NYP and the government defendants or a conspiracy to influence the government defendants' activities. *Friends of Falun Gong* v. *Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003). The facts plaintiffs allege show only that NYP acted in compliance with the DOH Mandate, as it was obligated to do. This is insufficient. *Id.* at 279.

*Second*, plaintiffs cannot show any discriminatory animus. *Griffin*, 403 U.S. at 102; *Abdi* v. *Brookhaven Sci. Assocs., LLC*, 447 F. Supp. 2d 221, 226–27 (E.D.N.Y.). Plaintiffs allege in conclusory fashion that defendants acted with a "purpose to deprive Plaintiffs of their rights to the exercise of their religious beliefs and equal protection." Compl. ¶ 183. But they cite no facts indicating that NYP was motivated by animus in complying with a legal mandate imposed by the State. Plaintiffs cite no statements or actions by NYP from which any "invidiously discriminatory animus" can be inferred. Nor could plaintiffs plausibly allege any discriminatory intent given that NYP's vaccination program permitted religious exemptions until the DOH Mandate was issued.

Plaintiffs also fail to identify a recognized class that is the target of any animus. While the Complaint alleges that the named plaintiffs are religious believers and members of Christian faiths, leaders of a wide variety of religions—including many Christian denominations—have publicly

stated that there is no religious impediment to receiving COVID-19 vaccines.[5] And, as discussed above, the Mandate applies to religious believers and nonbelievers alike. Plaintiffs' claim under § 1985(3) thus fails because they cannot establish the purpose element of a § 1985(3) claim, namely that "defendants' impetus [in complying with the DOH Mandate] was the plaintiffs' religion." *LeBlanc-Sternberg* v. *Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995).

### 2.     *Plaintiffs Cannot Establish a Constitutional Violation*

As this Court has repeatedly held, "to maintain a claim pursuant to § 1985(3), there must be some predicate constitutional right which the alleged conspiracy violates." *Friends of Falun Gong*, 288 F. Supp. 2d at 279; *see Emanuel* v. *Barry*, 724 F. Supp. 1096, 1102 (E.D.N.Y. 1989). Plaintiffs are unlikely to prevail on their claim under § 1985(3) because they cannot establish any predicate constitutional violation.

Plaintiffs' claims that the DOH Mandate violates the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, Compl. ¶¶ 119–136, 149–164, are contrary to long-settled law permitting the government to protect the public health by imposing generally applicable vaccination requirements. *See Jacobson* v. *Massachusetts*, 197 U.S. 11, 12 (1905) (rejecting constitutional challenge to smallpox vaccination mandate); *Rockland Cnty.*, 521 F. Supp. 3d at 372 n.4, 396 (upholding a State requirement that all public school children receive measles, mumps and rubella vaccine because it is "clearly directed towards a public health

---

[5]   Devin Watkins, *Pope Francis Urges People to Get Vaccinated Against Covid-19*, Vatican News (Aug. 18, 2021), https://www.vaticannews.va/en/pope/news/2021-08/pope-francis-appeal-covid-19-vaccines-act-of-love.html; Jonathan Levin, *U.S. Evangelical Leaders Preach Covid Vaccine Benefits to Their Followers*, Bloomberg (Mar. 26, 2021, 10:03 AM), https://www.bloomberg.com/news/articles/2021-03-26/u-s-evangelical-leaders-preach-vaccine-to-holdout-flocks; Jesse Berman, *Baltimore Rabbis Encourage Vaccinations in New Video*, Jewish Times (Aug. 12, 2021), https://www.jewishtimes.com/baltimore-rabbis-encourage-vaccinations-in-new-video.

goal, as the disease continue[s] to be prevalent in children and the covered children were unvaccinated [and] most susceptible to contracting and spreading the virus"). As the Supreme Court held nearly 80 years ago in rejecting a challenge to a state vaccination mandate on Free Exercise grounds, "[t]he right to practice religion freely does not include liberty to expose the community . . . to communicable disease." *Prince* v. *Massachusetts*, 321 U.S. 158, 166–67 (1944).

*The DOH Mandate Does Not Violate the Free Exercise Clause*. The Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp. Div., Dep't of Hum. Res. of Or.* v. *Smith*, 494 U.S. 872, 879 (1990). Under these standards, the Free Exercise Clause does not require states to offer religious exemptions to generally applicable vaccination requirements. The Supreme Court in that case expressly identified "compulsory vaccination laws" as among the neutral, generally applicable laws that do not require religious exemptions. *Smith*, 494 U.S. at 889. Likewise, the Second Circuit has affirmed that, following *Jacobson* and *Prince*, "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause." *Phillips* v. *City of N.Y.*, 775 F.3d 538, 543 (2d Cir. 2015). The court noted that the New York law at issue provided an exemption based upon the parents' religious beliefs, but emphasized that in doing so "New York law goes beyond what the Constitution requires." *Id.*

The DOH Mandate is both neutral and generally applicable and accordingly satisfies these standards. It imposes the same obligation on *all* healthcare workers—religious and non-religious—who can safely get vaccinated. *See Ungar* v. *N.Y.C. Hous. Auth.*, 363 F. App'x 53, 56 (2d Cir. 2010) (upholding public housing policy because it "ma[de] no reference to religious practice" and had exemptions only for specified categories, such as domestic violence victims,

rather than on an ad hoc basis), *cert. denied* 562 U.S. 840 (2010). Contrary to plaintiffs' assertion that the Mandate "singles out religious objectors for disparate treatment," Mot. at 8, the Mandate treats religious and non-religious objections identically: health care employees who can safely receive the vaccination are required to do so, regardless of any religious or non-religious objections they may have. The DOH Mandate likewise offers medical exemptions to all eligible employees regardless of religious belief. Finally, nothing in the record suggests that DOH Mandate was motivated by animus against religion generally or any particular religious beliefs.

Plaintiffs' contention that DOH Mandate violates the Free Exercise Clause because it permits medical but not religious exemptions is mistaken. In *Phillips*, the Second Circuit determined that the State was *not* required to offer religious exemptions for a generally applicable rule requiring vaccination although "a medical exemption [was] available" under the same statute. *Phillips*, 775 F.3d at 540, 543; *see Rockland Cnty.*, 521 F. Supp. 3d at 395–96. Likewise, in *Smith*, the Supreme Court upheld against a Free Exercise Clause attack a state law prohibiting possession of peyote, and providing exemption for such substances "prescribed by a medical practitioner," but with no exemption for religious practices involving peyote use. *Smith*, 494 U.S. at 874; *see also F.F.*, 194 A.D.3d at 89–9 (upholding the repeal of a religious exemption during a measles outbreak as neutral and generally applicable, although there was a medical exemption); *C.F. v. N.Y.C. Dep't of Health & Mental Hygiene*, 139 N.Y.S.3d 273, 292 (App. Div. 2d Dep't 2020) (upholding vaccination requirement under rational basis test where the regulation "does not even mention religion" and there was "absolutely no indication that the resolution was adopted for the purpose of infringing" religious practice or belief, despite the existence of a medical exemption); *Resurrection Sch. v. Hertel*, 11 F.4th 437, 449 (6th Cir. 2021) (upholding state vaccination orders where nonreligious exceptions were "narrow and discrete."); *Workman v. Mingo Cnty. Bd. of Ed.*,

419 Fed. App'x 348, 353–54 (4th Cir. 2011) (upholding state mandatory vaccination law that allowed only medical exemptions).[6]

Contrary to plaintiffs' assertion, medical exemptions are not "comparable" to religious exemptions in both their purpose and their potential impact. *Cf. Tandon* v. *Newsom*, 141 S. Ct. 1294, 1296 (2021) (stating that government regulations are not neutral and generally applicable "whenever they treat any comparable secular activity more favorably than religious exercise") (emphasis omitted). Denying exemptions to individuals for whom vaccination demonstrably creates a medical risk would undermine the State's interest in protecting the public health and safety. In contrast, denying religious exemptions *furthers* that public purpose by controlling the spread of COVID-19 in health care facilities. Moreover, only an extremely limited set of individuals for whom vaccination is unsafe are eligible for medical exemptions. Sobieszczyk Decl. ¶¶ 26–27. Some medical exemptions are also limited in duration. *Id.* ¶ 26. As noted, NYP received far fewer requests for medical exemptions than for religious exemptions, and some medical exemptions were granted on only a temporary basis. Smith Decl. ¶¶ 17, 19. For these reasons, too, medical and religious exemptions are not comparable.

The DOH Mandate readily satisfies the rational basis review. "Stemming the spread of COVID–19 is unquestionably a compelling interest." *Roman Cath. Diocese*, 141 S. Ct. at 67. And requiring vaccination is rationally related—indeed, in the view of the State and the medical community, it is the most effective method—to achieving that goal. *See Jacobson*, 197 U.S. at 31 (upholding municipality's mandatory vaccination law based on its "real and substantial relation" to protecting public health).

---

[6]   At oral argument on their TRO application, plaintiffs cited *Fraternal Order of Police Newark Lodge No. 12* v. *City of Newark*, 170 F.3d 359, 367 (3d Cir. 1999). As explained in NYP's September 14, 2021 letter to the Court, ECF 31, that case is neither controlling nor relevant.

The DOH Mandate also satisfies the more stringent (and inapplicable) strict scrutiny standard.  To withstand strict scrutiny, a regulation "must advance interests of the highest order and must be narrowly tailored in pursuit of those interests."  *Litzman* v. *N.Y.C. Police Dept.*, No. 12–CV–4681, 2013 WL 6049066, at *4 (S.D.N.Y. Nov. 15, 2013) (citing *Church of the Lukumi Babalu Aye, Inc.* v. *City of Hialeah*, 508 U.S. 520, 546 (1993)).  The DOH Mandate is narrowly tailored to healthcare workers, and follows months of other measures taken to address COVID-19 transmission concerns in healthcare settings.  In light of the availability of multiple safe and effective vaccines, the emergence of the Delta variant, and the oncoming flu season, vaccination is a more critical tool than ever to address the COVID-19 pandemic.  *See Rockland Cnty.*, 521 F. Supp. 3d at 407–08.

**_There Is No Equal Protection Violation._**  Plaintiffs also allege that their right to equal protection of the laws has been violated by the lack of a religious exemption in the DOH Mandate. "Where a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts."  *Wirzburger* v. *Galvin*, 412 F.3d 271, 282 (1st Cir. 2005) (citing *Locke* v. *Davey*, 540 U.S. 712, 720 n.3 (2004)).  As shown above, the DOH Mandate readily satisfies rational basis review.  *See Rockland Cnty.*, 521 F. Supp. 3d at 410 (local emergency declaration barring unvaccinated children from places of public assembly, while providing for only medical exemptions, was "rationally related to its public health purpose [of preventing the spread of measles], even though it treated children with religious exemptions differently from vaccinated children and children with medical exemptions").

## III.   Plaintiffs Fail To Show That The Balance Of The Equities Tips In Their Favor

Plaintiffs' request for an injunction should also be denied because plaintiffs cannot "clearly show[] that the balance of equities favors the movant."  *Litwin* v. *OceanFreight, Inc.*, 865 F. Supp.

2d 385, 401 (S.D.N.Y. 2011) (citation omitted).  As discussed, plaintiffs will suffer no irreparable

harm if the Court denies them an injunction.  *See supra* pp. 12–14.  If they ultimately prevail, they

can be made whole through reinstatement and back pay.  On the other hand, if the TRO for the

DOH Mandate lapses, an order compelling NYP to grant religious exemptions would cause NYP

to violate a state regulation, jeopardizing NYP's license and ability to care for tens of thousands

of patients, *see* N.Y. Pub. Health Law § 2806(1)(a) (2021), and would create health risks for

patients, employees, and the public.  The balance of equities weighs strongly against an injunction.

## IV.    The Public Interest Favors NYP

The public interest also weighs against an injunction.  Stemming the spread of COVID-19

is a compelling interest, *Roman Cath. Diocese*, 141 S. Ct. at 67, and NYP's compliance with the

DOH Mandate "effectuates that compelling interest," *Hopkins Hawley LLC* v. *Cuomo*, 518 F.

Supp. 3d 705, 717 (S.D.N.Y. 2021).  There is "[u]ndisputedly . . . a very direct connection"

between vaccination and "the preservation of health and safety."  *Garcia* v. *N.Y.C. Dep't of Health*

*& Mental Hygiene*, 106 N.E.3d 1187, 1196 (N.Y. 2018); *see also Robinson*, 2016 WL 1337255,

at *2, *10 (granting summary judgment for employer hospital on claims related to mandatory flu

vaccine policy where the "risk of infection and fatality" is high).  As discussed, NYP's compliance

with state law also ensures that NYP will remain licensed to continue providing patient care during

this critical time.  The public interest therefore strongly counsels against an injunction.

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiffs' motion for a preliminary

injunction.

Dated:   October 5, 2021
         New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  */s/ Liza M. Velazquez* _____

Bruce Birenboim
Michael E. Gertzman
Liza M. Velazquez
Gregory F. Laufer
Jonathan Hurwitz
Emily A. Vance
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
bbirenboim@paulweiss.com
mgertzman@paulweiss.com
lvelazquez@paulweiss.com
glaufer@paulweiss.com
jhurwitz@paulweiss.com
evance@paulweiss.com

*Attorneys for NewYork-Presbyterian*
*Healthcare System, Inc.*