# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN DOES 1–2, JANE DOES 1–3, | ) | |
| JACK DOES 1–750, JOAN DOES 1–750, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:21-CV-05067-AMD-TAM |
| v. | ) | |
| | ) | |
| KATHY HOCHUL, in her official capacity as | ) | |
| Governor of the State of New York, | ) | |
| HOWARD A. ZUCKER, in his official capacity | ) | |
| as Commissioner of the New York State | ) | |
| Department of Health, TRINITY HEALTH, | ) | |
| INC., NEW YORK-PRESBYTERIAN | ) | |
| HEALTHCARE SYSTEM, INC., | ) | |
| WESTCHESTER MEDICAL CENTER | ) | |
| ADVANCED PHYSICIAN SERVICES, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OMNIBUS REPLY[1]
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

---

[1]  Due to the overlapping issues in Defendants' Oppositions (dkt 45, Trinity Health Opposition to Motion for Preliminary Injunction ("Trinity Opposition"); dkt. 50, State Defendants' Opposition to Motion for Preliminary Injunction ("State Opposition"); dkt. 52, Westchester Medical Center Opposition to Motion for Preliminary Injunction, ("WMC Opposition"); dkt. 54, New York Presbyterian Opposition to Motion for Preliminary Injunction, "NYP Opposition")), Plaintiffs, in the interest of judicial economy, submit this omnibus reply to all of them.

At 27 pages, this Reply is significantly shorter than the 40 pages available to Plaintiffs under the local rules if they were to file four separate replies. Accordingly, Plaintiffs do not believe that leave of this Court is necessary for the length of this Reply, but if such leave is necessary, Plaintiffs respectfully request leave.

## TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………………..ii

TABLE OF AUTHORITIES……………………………………………………………...iv

INTRODUCTION ………………………………………………………………………...1

LEGAL ARGUMENT…………………………………………………………………….4

I.     STATE DEFENDANTS' INTENTIONAL REMOVAL OF RELIGIOUS EXEMPTIONS FROM ITS VACCINE MANDATE WHILE ALLOWING MEDICAL EXEMPTIONS VIOLATES THE FIRST AMENDMENT………………..4

     A.     State Defendants' Singling Out of Religious Employees Who Decline Vaccination for Especially Harsh Treatment Is Not Religiously Neutral………….4

     B.     The Vaccine Mandate's More Favorable Treatment of Employees Declining Vaccination for Secular, Medical Reasons as Compared to Employees Declining Vaccination for Religious Reasons Is Not Generally Applicable………………………………………………………………………6

     C.     New York's Discriminatory Treatment of Religious Exemptions Is Subject to and Cannot Withstand Strict Scrutiny…………………………………………10

          1.     New York's favorable treatment of exemptions posing equal risks and New York's questionable risk assumptions undermine its claim of a compelling interest…………………………………………………..10

               a.     New York's favorable treatment of medical exemptions posing risks equal to excluded religious exemptions undermines its compelling interest claim………………………...10

               b.     New York's claimed compelling interest is based on questionable risk assumptions as shown by scientific evidence in the Verified Complaint and from the CDC…………..11

          2.     New York cannot demonstrate that its blanket refusal to recognize religious exemptions is the least restrictive means to achieve its interest……………………………………………………………………12

     D.     New York's Reliance on *Jacobson* Is Utterly Misplaced Because It Did Not Involve a First Amendment Challenge, Did Not Involve a State's Attempting to Revoke Protections of Federal Law in Violation of the Supremacy Clause, and Was Decided Decades Before Strict Scrutiny Became the Governing Standard…………………………………………………17

II.     DEFENDANTS' WHOLESALE REJECTION OF RELIGIOUS
        ACCOMMODATIONS IS PLAINLY INCONSISTENT WITH TITLE VII AND
        IS THEREFORE NULLIFIED AND SUPERSEDED BY FEDERAL LAW..............20

        A.      Title VII Supersedes New York's Rule Because Even the Employer
                Defendants Have Admitted That Title VII's Requirement of Religious
                Accommodation and New York's Revocation of Religious Exemptions Are
                in Conflict and That They Cannot Comply With Both..............................20

        B.      Title VII Explicitly Preempts State Laws, Like New York's, That Require
                the Doing of an Act That Is Prohibited by Title VII..................................22

III.    DEFENDANTS' FALSE REDUCTION THAT PLAINTIFFS' HARM IS
        COMPENSABLE AS A MERE EMPLOYMENT MATTER PLAINLY
        IGNORES THE BLATANT FIRST AMENDMENT INJURY BEING IMPOSED
        ON THEM EACH AND EVERY DAY, WHICH IS PER SE IRREPARABLE
        HARM, AND THE PURPOSE OF INJUNCTIVE RELIEF IN TITLE VII CASES
        AS PRESERVING THE STATUS QUO.......................................................24

        A.      Plaintiffs Are Suffering Textbook, Irreparable First Amendment Injury............24

        B.      Injunctive Relief in Title VII Cases Is Appropriate to Preserve the Status
                Quo and Plaintiffs Are Suffering Irreparable Title VII Injury Under Binding
                Precedent.................................................................................25

IV.     PLAINTIFFS ALSO SATISFY THE REMAINING REQUIREMENTS FOR A
        PRELIMINARY INJUNCTION..............................................................27

CONCLUSION.................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Agudath Israel of Am. v. Cuomo*, 983 F.3d 620 (2d Cir. 2020)……………………...………15, 16

*Bermand v. New York City Ballet, Inc.*, 616 F. Supp. 555 (S.D.N.Y. 1985)……………………26

*Blith v. City of Slidell*, 260 F. Supp. 3d 656 (E.D. La. 2017)……………………………………18

*Brown v. City of Chicago*, 8 F. Supp. 2d 1095 (N.D. Ill. 1998)…………………………………23

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016)…………………………………………15

*California Fed. Savings & Loan Assoc. v. Guerra*, 479 U.S. 272 (1987)…………………...21, 22

*Cantwell v. Connecticut*, 310 U.S. 296 (1940)……………….…………………………………17

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)………..5, 7, 8, 20

*City of Boerne v. Flores*, 521 US. 507 (1997)…………………………………………………...18

*Coalition for Economic Equality v. Wilson*, 122 F.3d 692 (9th Cir. 1997)………..…………….23

*Cunningham v. City of Shreveport*, 407 F. Supp. 3d 595 (W.D. La. 2019)………………………9

*Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945,
2021 WL 4618519 (6th Cir. Oct. 7, 2021)…………..……………………………………..2, 3, 5, 8

*Dr. A. v. Hochul*, No. 1:21-CV-1009, 2021 WL 4734404 (N.D.N.Y. Oct. 12, 2021)………*passim*

*Edenfield v. Fane*, 507 U.S. 761 (1993)…………………………………………………………10

*Everson v. Bd. of Educ. of Ewing Tp.*, 330 U.S. 1 (1947)…………………………………………18

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963)…………………………22

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*,
170 F.3d 359 (3d Cir. 1999)………………………………………………………………6, 7, 8, 9

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021)…………………………………………...8

*Gitlow v. New York*, 268 U.S. 652 (1925)…………………………..………………………17, 18

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006)…………..12

*Guardians Ass'n v. Civil Serv. Comm.*, 630 F.2d 79 (2d Cir. 1980)………………………………24

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985)………………………22

*Holt v. Continental Grp., Inc.*, 708 F.2d 87 (2d Cir. 1983)……………………………………...26

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905)…………………..……………………...17, 18, 19

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*,
138 S. Ct. 2448 (2018)……………………………………………………………………...10

*Landmark Commc'ns, Inc. v. New York*, 435 U.S. 829 (1978)…………………………………10

*LeBlanc v. S. Bell Tel. & Tel. Co.*, 333 F. Supp. 602 (E.D. La. 1971)…………………………23

*Litzman v. N.Y. City Police Dep't*, No. 12 Civ. 4681(HB),
2013 WL 6049066 (S.D.N.Y. Nov. 15, 2013)…………………………………………………9

*Lynch v. Donnelly*, 465 U.S. 668 (1984)…………………………………………………………...5

*Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020)……………………9, 20

*McAllen Grave Brethren Church v. Salazar*, 764 F.3d 465 (5th Cir. 2014)……………………11

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014)…………………………………………………15, 16

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018)……………………………………………………21

*Norton v. City of Springfield*, 806 F3d 411 (7th Cir. 2015)……………………………………...18

*On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901 (W.D. Ky. 2020)…………………10

*Pan American v. Municipality of San Juan*, 2018 WL 6503215 (D.P.R. Dec. 10, 2018)……….18

*Republican Party of Minn. v. White*, 536 U.S. 765 (2002)………………………………………11

*Rinehart v. Westinghouse Elec. Corp.*, No. C 70-537,
 1971 WL 174 (N.D. Ohio Aug. 20, 1971)…………………………………………………23

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)……………………*passim*

*Romero Feliciano v. Torres Gaztambide*, 836 F.2d  (1st Cir. 1987)……………………………25

*Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2d Cir. 1981)……………………………...26

*Sherbert v. Verner*, 374 U.S. 398 (1963)…………………………………………………………...18

*Sindicator Puertorriqueno de Trabajaddores v. Fortuno*, 699 F.3d 1 (1sr Cir. 2012)…………..25

*Singh v. McHugh*, 185 F. Supp. 3d 201 (D.D.C. 2016)……………………………………………..9

*South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021)…………………….4, 5

*Sweezy v. New Hampshire*, 354 U.S. 234 (1957)…………………………………………………...18

*Tandon v. Newsom*, 141 S. Ct. 1289 (2021)……………………...…………………4, 6, 12, 13

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002)……………………9

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)………………………………………20

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994)……………………………………………10

*United States v. Carolene Prods. Co.*, 304 U.S. 144 (1938)………………………………………18

*Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012)………………………………………………………9

*Westchester Legal Servs., Inc. v. Westchester Cnty.*, 607 F. Supp. 1379 (S.D.N.Y. 1985)……...25

*We The Patriots USA, Inc. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021)…………..2

*Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015)………………………………………………11

*Wollschlaeger v. Florida*, 848 F.3d 1293 (11th Cir. 2017)………………………………………...18

**STATUTES**

42 U.S.C. § 2000e……………………………………………………………………………20, 23

**<u>INTRODUCTION</u>**

Against a rising tide of precedent and direct injunctions against State Defendants from two separate courts, including the Second Circuit, Defendants cling to the position that their blatantly discriminatory and unconstitutional refusal to extend protections to sincerely held religious beliefs survives review. It does not. **Today**, October 12, 2021, the Northern District of New York entered a preliminary injunction enjoining State Defendants from enforcing the Governor's COVID-19 Vaccine Mandate on healthcare workers. *See Dr. A. v. Hochul*, No. 1:21-CV-1009, 2021 WL 4734404 (N.D.N.Y. Oct. 12, 2021). Today's *Dr. A.* order converted to a preliminary injunction the court's previously entered temporary restraining order (TRO) to the same effect. *See* 2021 WL 4189533 (N.D.N.Y. Sept. 14, 2021). In *Dr. A.*, plaintiffs challenged New York's COVID-19 Vaccine Mandate on healthcare workers "'to the extent it categorically requires health care employers to deny or revoke religious exemptions from COVID-19 vaccination mandates.'" *Dr. A.*, 2021 WL 4734404, at *1. The court's preliminary injunction sustains the TRO restraints, specifically enjoining State Defendants from enforcing the COVID-19 Vaccine Mandate such that they are "**barred from enforcing any requirement that employers deny religious exemptions from COVID-19 vaccination or that they revoke any exemptions employers already granted before [the mandate] issued**," and "from interfering in any way with the granting of religious exemptions from COVID-19 vaccination going forward, or with the operation of exemptions already granted." *Id.* at *11 (emphasis added). The preliminary injunction also continues to enjoin State Defendants from "taking any action, disciplinary or otherwise, against the licensure, certification, residency, admitting privileges or other professional status or qualification of any of the plaintiffs **on account of their seeking or having obtained a religious exemption from mandatory COVID-19 vaccination**." *Id.* (emphasis added). Importantly, the claims brought by

1

the plaintiffs in *Dr. A* are virtually identical to the claims raised by Plaintiffs here in their Verified Complaint. (*See* N.D.N.Y. No. 1:21-cv-01009-DNH-ML, dkts. 1, 5.)

In the interim, on September 30, 2021, the Second Circuit gave its imprimatur to the *Dr. A.* TRO against State Defendants in *We The Patriots USA, Inc. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021). There, the Second Circuit issued an injunction pending appeal against the Governor's COVID-19 Vaccine Mandate, ordering that State Defendants "are hereby ENJOINED, pending resolution of the appeal or further order of this Court, from enforcing the mandate against persons claiming religious exemptions in a manner that would violate the terms of the temporary restraining order issued in *Dr. A v. Hochul*."

Additionally, on October 7, 2021, the Sixth Circuit issued an order affirming a preliminary injunction against Western Michigan University for its similar refusal to grant requested religious accommodations from a mandatory COVID-19 vaccine policy for collegiate athletics. *See Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021). In denying the university's request for a stay, the Sixth Circuit concluded that the student athletes' "free exercise challenge will likely succeed on appeal." *Id. at* *1. Specifically, the Sixth Circuit held,

> **the University's failure to grant religious exemptions to plaintiffs burdened their free exercise rights**. The University **put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports**. The University did not dispute that taking the vaccine would violate plaintiffs' "sincerely held Christian beliefs." Yet refusing the vaccine prevents plaintiffs from participating in college sports, as they are otherwise qualified (and likely were recruited) to do. By conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights.

*Id.* at *3 (emphasis added).

The court continued,

> For purposes of assessing whether the University has exerted coercive force or threatened a penalty to impede one's free exercise right, our focus is on student athletes. Fair enough, the University's vaccine mandate does not coerce a non-athlete to get vaccinated against her faith because she, as a non-athlete, cannot play intercollegiate sports either way. **But the mandate does penalize a student otherwise qualified for intercollegiate sports by withholding the benefit of playing on the team should she refuse to violate her sincerely held religious beliefs. As a result, plaintiffs have established that the University's vaccination policy for student-athletes burdens their free exercise of religion.**

*Id.* (emphasis added).

As is true here, the university offered medical exemptions and, theoretically, religious exemptions to its student-athletes, but refused to provide religious accommodations to those who requested them. *Id.* at *1. The Sixth Circuit found that such a discriminatory scheme of individualized exemptions made the vaccine mandate not neutral or generally applicable. *Id.* at *4. That alone, the court held, was sufficient to mandate the application of strict scrutiny under *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), which is a point Plaintiffs have pressed in this case. In *Dahl*, as is true here, the court found that the university failed strict scrutiny under the narrow tailoring prong:

> the University falters on the narrow tailoring prong. For one, public health measures are not narrowly tailored if they allow similar conduct that creates a more serious health risk. That is the case at the University, which allows non-athletes—the vast majority of its students—to remain unvaccinated. One need not be a public health expert to recognize that the likelihood that a student-athlete contracts COVID-19 from an unvaccinated non-athlete with whom she lives, studies, works, exercises, socializes, or dines may well meet or exceed that of the athlete contracting the virus from a plaintiff who obtains a religious exemption to participate in team activities. For another, narrow tailoring is unlikely if the University's conduct is "more severe" than that of other institutions. **To that point, several other universities grant exemptions from their COVID-19 mandates.**

2021 WL 4618519, at *5 (emphasis added) (cleaned up).

The Governor's COVID-19 Vaccine Mandate here should meet the same fate in the form of a preliminary injunction. Despite their contentions to the contrary, precluding, revoking, or

denying merited requests for religious exemption from the Governor's COVID-19 Vaccine Mandate is plainly unconstitutional, runs roughshod over the Supremacy Clause's demand that federal law be applied in the States, and imposes irreparable First Amendment injury on Plaintiffs' sincerely held religious beliefs. State Defendants' imposition of a mandatory vaccine requirement and their concomitant removal of religious exemptions while maintaining similarly situated secular exemptions is unconstitutional and should be enjoined. For, "**[e]ven in times of crisis—perhaps *especially* in times of crisis—we have a duty to hold governments to the Constitution**." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Gorsuch, J.) (bold emphasis added).

## LEGAL ARGUMENT

**I.    STATE DEFENDANTS' INTENTIONAL REMOVAL OF RELIGIOUS EXEMPTIONS FROM ITS VACCINE MANDATE WHILE ALLOWING MEDICAL EXEMPTIONS VIOLATES THE FIRST AMENDMENT.**

**A.    State Defendants' Singling Out of Religious Employees Who Decline Vaccination for Especially Harsh Treatment Is Not Religiously Neutral.**

State Defendants contend that New York's mandate that all healthcare workers in the State become fully vaccinated against COVID-19 by a date certain, and the concomitant removal of religious exemptions from the mandate, are facially neutral because they do not mention religion. (State Opp'n 9–14.) This is both factually and legally absurd. Importantly, New York entirely misses the relevant standard, namely, that "**government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise**." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (bold emphasis added). In fact, "the regulations cannot be viewed as neutral because they single out [religion] for especially harsh treatment." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020). "**When a State so**

4

**obviously targets religion for differential treatment, our job becomes that much clearer**." *South Bay*, 141 S. Ct. at 717 (Gorsuch, J.) (emphasis added). State Defendants attempt to evade this binding standard as somehow inapplicable to their Vaccine Mandate. But, as the Sixth Circuit just recognized, *Catholic Diocese*'s firm holding that treating **any** comparable activity more favorably than religious activity demands strict scrutiny. *Dahl*, 2021 WL 4618519, at *5.

Here, New York has plainly singled out religious employees who decline vaccination for especially harsh treatment (*i.e.*, depriving them from earning a living anywhere in the State), while favoring employees declining vaccination for secular, medical reasons. Under the *Tandon*, *South Bay*, and *Catholic Diocese* triumvirate, State Defendants' discriminatory treatment of unvaccinated religious employees violates the First Amendment. New York's only answer to *Tandon*'s unequivocal condemnation of treating **any** secular activity more favorably than religious activity is to declare that it "had no obligation to provide a religious exemption." (State Opp'n 11.) Balderdash. As the Supreme Court has made plain, "[t]he Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). By permitting **some, nonreligious** exemptions and accommodations to the COVID-19 vaccine mandate but excluding **religious** exemptions and accommodations, the State runs roughshod over Plaintiffs' sincerely held religious beliefs. And, not to put too fine a point on it, the State unquestionably does have an obligation to provide a religious exemption. As the Supreme Court has held time and again, the First Amendment "**affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility towards any**." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (emphasis added). State Defendants' contention to the contrary is plainly absurd.

State Defendants' intentional targeting of religion and the COVID-19 vaccine mandate's lack of neutrality is now no longer in question. As the Northern District of New York just held,

> Zucker's August 18 Order, which was imposed on a summary basis, included medical *and* religious exemptions to COVID-19 vaccination. The Health Council's adoption of § 2.61, which was imposed on a similar summary basis just eight days later, amended the vaccination mandate to eliminate the religious exemption. **This intentional change in language is the kind of "religious gerrymander" that triggers heightened scrutiny**.

*Dr. A*, 2021 WL 4734404, at *8 (emphasis added). Moreover, the court concluded that State Defendants' treatment of religion is also not generally applicable. *Id.* ("as plaintiffs point out, the medical exemption that remains in the current iteration of the State's vaccine mandate expressly accepts this "unacceptable" risk for a non-zero segment of healthcare workers," and as *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) requires, "comparability is concerned with risks various activities pose,' not the reasons for which they are undertaken") Thus, the court concluded that State Defendants were required to – **and cannot** – survive strict scrutiny.

**B.     The Vaccine Mandate's More Favorable Treatment of Employees Declining Vaccination for Secular, Medical Reasons as Compared to Employees Declining Vaccination for Religious Reasons Is Not Generally Applicable.**

New York's continuing recognition of only medical exemptions also removes the Vaccine Mandate from neutrality and general applicability. New York contends that offering medical exemptions from its Vaccine Mandate while excluding religious exemptions does not even implicate the First Amendment. (State Opp'n 13 n.7.) A host of precedent demonstrates the absurdity of that contention.

In *Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, Justice (then-Judge) Alito wrote unequivocally for the Third Circuit that "**[b]ecause the Department makes exemptions from its [no beards] policy for secular reasons and has not offered any substantial justification for refusing to provide similar treatment for officers who are**

**required to wear beards for religious reasons, we conclude that the Department's policy violates the First Amendment**." 170 F.3d 359, 360 (3d Cir. 1999) (emphasis added). There, like New York here, the city argued that it was required to provide medical accommodations under federal law but that religious exemptions were not required. *Id.* at 365. The court squarely rejected that rationale: "It is true that the ADA requires employers to make reasonable accommodations for individuals with disabilities. However, **Title VII of the Civil Rights Act of 1964 imposes an identical obligation on employers with respect to accommodating religion**." *Id.* (emphasis added) (cleaned up). And there (as here, V. Compl. ¶ 114–118) the government "has clearly been put on notice of Title VII's religious accommodation requirements." 170 F.3d at 365. Thus, the court held, "**we cannot accept the Department's position that its differential treatment of medical exemptions and religious exemptions is premised on a good-faith belief that the former may be required by law while the latter are not**." *Id.* (emphasis added).

Here, New York contends that the availability of medical exemptions, while religious exemptions were specifically targeted and excluded, does not violate the First Amendment because the two are not comparable. (State Opp'n 12.) Justice Alito squarely rejected that contention:

> We also reject the argument that, because the medical exemption is not an "individualized exemption," the *Smith /Lukumi* rule does not apply. While the Supreme Court did speak in terms of "individualized exemptions" in *Smith* and *Lukumi,* **it is clear from those decisions that the Court's concern was the prospect of the government's deciding that secular motivations are more important than religious motivations. If anything, this concern is only further implicated when the government does not merely create a mechanism for individualized exemptions, but instead, actually creates a categorical exemption for individuals with a secular objection but not for individuals with a religious objection**.

*Fraternal Order of Police*, 170 F.3d at 365 (emphasis added) (cleaned up). The same is true here. New York maintained a policy that permitted religious exemptions and medical exemptions from mandatory vaccinations. (V. Compl. ¶¶ 37–38.) Then, New York specifically removed religious

exemptions while maintaining medical exemptions. (V. Compl. ¶¶ 39–41.) And, under *Fraternal Order of Police*, that discriminatory removal of a religious exemption while maintaining a medical exemption violates the First Amendment. 170 F.3d at 365 ("**Therefore, we conclude that the Department's decision to provide medical exemptions while refusing religious exemptions is sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny under *Smith* and *Lukumi*.**" (emphasis added)).

Here, New York claims secular, medical reasons for declining vaccination are important enough to overcome its interest in ensuring high vaccination rates but that religious reasons for declining vaccination are not. (State Opp'n 12, 13 n.7.) The Third Circuit, however, concluded such a value judgment does not legitimize a discriminatory policy:

> **[T]he medical exemption raises concern because it indicates that the Department has made a value judgment that secular (i.e., medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not. As discussed above, when the government makes a value judgment in favor of secular motivations, but not religious motivations, the government's actions must survive heightened scrutiny.**

170 F.3d at 366 (emphasis added). Essentially, as here, "**[w]e thus conclude that the Department's policy cannot survive any degree of heightened scrutiny and thus cannot be sustained.**" *Id.* at 367 (emphasis added).

The Sixth Circuit reached a conclusion identical to Justice Alito's. Specifically, the court stated, "a policy that provides a 'mechanism for individualized exemptions' is not generally applicable." *Dahl*, 2021 WL 4618519, at *3 (quoting *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021)). And, as in *Fraternal Order of Police*, the Sixth Circuit found that the granting of medical exemptions while precluding religious exemptions is such a system. *Id.* at *4.

Justice Alito's opinion for the court in *Fraternal Order of Police* hardly represents a novel proposition. As the Sixth Circuit explained, "**a double standard is not a neutral standard**." *Ward v. Polite*, 667 F.3d 727, 740 (6th Cir. 2012) (emphasis added). And, as many courts have recognized, allowing medical exemptions while prohibiting religious exemptions is unconstitutional. *See, e.g.*, *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165–66 (3d Cir. 2002) ("[I]n situations where government officials exercise discretion in applying a facially neutral law, so that whether they enforce the law depends on their evaluation of the reasons underlying a violator's conduct, they contravene the neutrality requirement if they exempt some secularly motivated conduct but not comparable religiously motivated conduct."); *Litzman v. N.Y. City Police Dep't*, No. 12 Civ. 4681(HB), 2013 WL 6049066, at *3 (S.D.N.Y. Nov. 15, 2013) (holding that a policy that permits medical exemptions but not religious exemptions is neither neutral nor generally applicable and must be subject to strict scrutiny); *Singh v. McHugh*, 185 F. Supp. 3d 201, 225 (D.D.C. 2016) ("In sum, it is difficult to see how accommodating plaintiff's religious exercise would do greater damage to the Army's compelling interests in uniformity, discipline, credibility, unit cohesion, and training than the tens of thousands of medical shaving profiles the Army has already granted."); *Cunningham v. City of Shreveport*, 407 F. Supp. 3d 595, 607 (W.D. La. 2019) (allowing medical exemptions while precluding religious exemptions removes law from neutrality and general applicability). New York's discriminatory retention of medical exemptions while excluding religious exemptions must be subjected to, and cannot withstand, strict scrutiny. Put simply, "**restrictions inexplicably applied to one group and exempted from another do little to further [the government's] goals and do much to burden religious freedom**." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 615 (6th Cir. 2020) (emphasis added).

**C.** **New York's Discriminatory Treatment of Religious Exemptions Is Subject to and Cannot Withstand Strict Scrutiny.**

    **1.** **New York's favorable treatment of exemptions posing equal risks and New York's questionable risk assumptions undermine its claim of a compelling interest.**

        **a.** **New York's favorable treatment of medical exemptions posing risks equal to excluded religious exemptions undermines its compelling interest claim.**

Where, as here, First Amendment rights are at issue, "**the government must shoulder a corresponding heavier burden and is entitled to considerably less deference in its assessment that a predicted harm justifies a particular impingement on First Amendment rights**." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2472 (2018) (emphasis added). Here, because New York's Vaccine Mandate and its exclusion of religious exemptions implicate Plaintiffs' First Amendment rights, New York "must do more than simply posit the existence of the disease sought to be cured. **It must demonstrate that the recited harms are real, not merely conjectural**." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994); *see also Edenfield v. Fane*, 507 U.S. 761, 770 (1993). This is so because "[d]eference to [the government] cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark Commc'ns, Inc. v. New York*, 435 U.S. 829, 843 (1978).

To be sure, efforts to contain the spread of a deadly disease are "compelling interests of the highest order." *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 910 (W.D. Ky. 2020). But New York's permitting unvaccinated employees with medical exemptions to continue in their same healthcare positions while claiming unvaccinated employees with religious exemptions would put the entire healthcare system at risk undermines any claim that New York's interest is compelling. **If any unvaccinated employees pose a risk to New York's healthcare system because they are unvaccinated, then all unvaccinated employees pose the same risk**.

Put simply, New York's Vaccine Mandate "cannot be regarded as protecting an interest of the highest order . . . **when it leaves appreciable damage to that supposedly vital interest unprohibited**." *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002) (emphasis added) (cleaned up). Where, as here (V. Compl. ¶¶ 46–49), the government permits exceptions, the Supreme Court has recognized that such exceptions "can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 448 (2015) (cleaned up). Indeed, "**[w]here a regulation already provides an exception from the law for a particular group, the government will have a higher burden in showing that the law . . . furthers a compelling interest**." *McAllen Grave Brethren Church v. Salazar*, 764 F.3d 465, 472 (5th Cir. 2014) (emphasis added).

> **b.    New York's claimed compelling interest is based on questionable risk assumptions as shown by scientific evidence in the Verified Complaint and from the CDC.**

New York asserts that mandatory vaccination for healthcare workers is supported by a compelling interest because nothing else can protect the healthcare industry and patient health in New York. (State Opp'n 13.) New York claims that vaccines are the only way to prevent the spread of COVID-19, and that unvaccinated individuals are at greater risk of infection from the Delta variant than vaccinated. (*Id*.) But, as demonstrated in the Verified Complaint,

> A preliminary study has shown that in the case of a breakthrough infection, the Delta variant is able to grow in the noses of vaccinated people **to the same degree as if they were not vaccinated at all**. The virus that grows is just as infectious as that in unvaccinated people, meaning vaccinated people can transmit the virus and infect others.

(V. Compl. ¶ 79 (quoting Sanjay Mishra, *Evidence mounts that people with breakthrough infections can spread Delta easily*, National Geographic (Aug. 20, 2021),

https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily (emphasis added)).) *See also* Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR, https://www.cdc.gov/media/releases/2021/s0730-mmwr-COVID-19.html (last visited Sept. 17, 201) (noting that "**the Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people**" (emphasis added).) Thus, New York's assumptions of the relative risks of transmission by vaccinated and unvaccinated employees are scientifically questionable, further undermining New York's claimed compelling interest in mandating vaccination. And, critically, it is the Government's burden to demonstrate the compelling interest. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) ("the burdens at the preliminary injunction stage track the burdens at trial"). New York has not met that burden here.

> **2.** **New York cannot demonstrate that its blanket refusal to recognize religious exemptions is the least restrictive means to achieve its interest.**

Even assuming *arguendo* that imposing a mandatory COVID-19 vaccination requirement on healthcare workers in New York while excluding religious exemptions is supported by a compelling government interest, the Vaccine Mandate still fails strict scrutiny because it is not the least restrictive means of achieving the government's interest. As the Supreme Court said in *Tandon*,

> narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. **Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied.** Otherwise, precautions that suffice for other activities suffice for religious exercise too.

141 S. Ct. at 1296–97 (emphasis added). Unfortunately for New York, nearly every other state **has found a way to accommodate religion under the same alternative protective measures Plaintiffs request here. New York's position that the same alternative measures approved and effective in other states simply do not work in New York is incorrect**.

In fact, despite New York's contentions that there are no alternatives to a vaccine mandate that prohibits religious exemptions, healthcare providers across the country are regularly providing religious accommodations to healthcare workers. And, the Employer Defendants here have noted that they are allowing unvaccinated employees with requests for religious accommodations to continue to work while the instant matter is litigated. (*See, e.g.*, dkt. 34, 34-1 (noting that New York-Presbyterian was suspending its mandatory vaccine policy while the litigation plays out in courts).) **Notably, the sky has not fallen as Defendants suggested it would if they permitted religious objectors to remain employed in the healthcare industry unvaccinated**. In fact, it has been nearly a month since Employer Defendants paused their termination threats to religious objectors, and the doomsday scenario predicted by Defendants has not come to pass.

Moreover, countless healthcare providers and employers throughout the country are permitting their healthcare employees to continue to work while still protecting their employees with sincerely held religious beliefs that compel them to abstain from accepting the COVID-19 vaccine. The availability and workability of accommodations for patient-facing healthcare workers with sincerely held religious objections to COVID-19 vaccination is evident from sea to shining sea, at large employers and small. (*See* EXHIBITS 1-32 (demonstrating accommodations granted to healthcare employees in New York, Oregon, California, Washington, New Mexico, Missouri, Texas, Wisconsin, Minnesota, Illinois, Colorado, Michigan, Ohio, Pennsylvania, Delaware, Maryland, and Florida).)

The largest healthcare provider in the nation has granted requested religious exemptions with a mere form. (*See* Ex. 1, Decl. Employee Witness 1.) In her testimony, Employee Witness 1 notes that she was merely required to check a box requesting a religious exemption and states that the VA "permits and freely grants exemptions and accommodations to healthcare employees with sincerely held religious objections to mandatory vaccinations." (Ex. 1, Decl. Employee Witness 1 ¶ 5.) This employee was granted an accommodation of wearing a mask while at work, and he is "permitted to carry out [his] duties and responsibilities to the same extent as always," including interacting with patients "both with COVID and without COVID." (*Id.* ¶ 10.) Another VA employee was likewise given an accommodation under similar circumstances. (Ex. 2, Decl. Employee Witness 2 ¶¶ 2–6.)

But, more fatally for Defendants' assertions that they cannot possibly provide accommodations and exemptions for religious objectors, **Defendant Trinity Health is providing religious exemptions and accommodations at its other healthcare facilities that are not subject to the New York mandate.** (*See* Ex 5, Decl. Employee Witness 5 ¶ 4.) And, that employee was granted an exemption and accommodation under the same circumstances and with the same alternatives that Plaintiffs here are willing to abide by with their employers. Specifically, Employee Witness 5 notes that Trinity "permits [her] to continue all of [her] previous duties and responsibilities, including working on-site, interacting with colleagues, and providing quality and safe care to [her] patients." (Ex. 5, ¶ 5.) Employee Witness 5 is merely required to use PPE, monitor and report symptoms daily, submit to temperature checks upon entering her facility, and undergo twice-weekly testing. (*Id.*) The same is true for Trinity Health employees in Michigan, (*See* Ex. 23, Decl. Employee Witness 23, ¶¶4-6; Ex. 24, Decl. Employee Witness 23, ¶¶4-5.) So, too, for Trinity Health employees in Pennsylvania, Delaware, and Florida. (Ex. 29, Decl.

Employee Witness 29, ¶¶5-7; Ex. 30, Decl. Employee Witness 30, ¶¶4-6; Ex. 32, Decl. Employee Witness 32, ¶¶4-5.))

As these employee witnesses demonstrate, religious exemptions and accommodations are available and being adequately deployed across the country, including by some of the very same Defendants who are before this Court now. Defendants' contentions that no such accommodation or exemption can be had for those with sincerely held religious beliefs in New York is utter nonsense, and demonstrably false. Indeed, the list of healthcare providers granting exemptions across the country involves (a) top education and research hospitals, including University of Colorado, University of Chicago, University of Maryland, Temple University, (b) some of the largest healthcare providers in the nation, including Kaiser Permanente, Trinity Health (a Defendant herein), and Advocate Aurora Healthcare with hundreds of thousands of employees providing patient-facing care and accommodating the subset of those with sincere religious beliefs, and (c) mid-size and smaller healthcare providers that have also readily accommodated patient-facing personnel with sincere religious beliefs. (*See* Exs. 3-32.)

And, this point is critical because the government must show it "**seriously** undertook to address the problem with less intrusive tools readily available to it," meaning that it "**considered different methods that other jurisdictions have found effective**." *McCullen v. Coakley*, 134 S. Ct. 2518, 2539 (2014) (emphasis added). *See also Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (same). And the Governor must "show either that **substantially less-restrictive alternatives were tried and failed**, or that the **alternatives were closely examined and ruled out for good reason**," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016) (emphasis added), and that "imposing lesser burdens on religious liberty 'would fail to achieve the

government's interest, not simply that the chosen route was easier.'" *Agudath Israel*, 983 F.3d at 633 (quoting *McCullen*, 134 S. Ct. at 495).

And, as the Northern District of New York just held, State Defendants' chosen mandate is not the least restrictive means. *Dr. A*, 2021 WL 4734404, at *9. Indeed, "**there is no adequate explanation from defendants about why the 'reasonable accommodation' that must be extended to a medically exempt healthcare worker under § 2.61 could not similarly be extended to a healthcare worker with a sincere religious objection**." *Id.* (emphasis added).

**If 49 other states, the Department of Veterans Affairs, and a who's-who of prestigious healthcare providers can accommodate their employees' religious beliefs and still advance their interests in protecting patients, New York can and must do the same.** And, the Northern District of New York again proves this point beyond cavil. "Nor have defendants explained why they chose to depart from similar healthcare vaccination mandates issued in other jurisdictions that include the kind of religious exemption that was originally present in the August 18 Order." *Dr. A*, 2021 WL 4734404, at *9. New York has brought forth no record facts to even suggest, let alone prove, that the COVID situation in New York is so much worse than the rest of the country, to justify its lonesome, draconian approach. In fact, as demonstrated in the Declaration of Shaun Smith (dkt. 54), at New York-Presbyterian "**over 99% of all employees**" have been vaccinated. (Dkt. 4, ¶ 20 (emphasis added).) And, as State Defendants admit, the vaccine rate for nursing home staff is 92%, the vaccine rate for hospital staff is 92%, and the vaccine rate for adult care facilities staff is 89%. (State Opp'n 7 n5.) The notion that granting accommodations to religious employees with sincerely held beliefs against such vaccination would threaten the safety of the New York healthcare system is ludicrous. The Vaccine Mandate's targeting of religious beliefs is a solution in search of a problem.

**D.** **New York's Reliance on *Jacobson* Is Utterly Misplaced Because It Did Not Involve a First Amendment Challenge, Did Not Involve a State's Attempting to Revoke Protections of Federal Law in Violation of the Supremacy Clause, and Was Decided Decades Before Strict Scrutiny Became the Governing Standard.**

New York largely hangs its entire defense on *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), claiming that *Jacobson* provides broad latitude for the State to mandate vaccination. (State Opp'n 11-12.) But, **critically, this case is not about a challenge to vaccine mandates in general and does not even challenge the Governor's authority to issue them. It solely focuses on whether – when a mandate has been issued – the government must still follow federal protections for sincerely held religious beliefs.** *Jacobson* has nothing to say on this issue and is inapposite.

It can hardly be argued that a 1905 case with minimal progeny, and substantial jurisprudential developments arising since its holding was articulated 115 years ago, remains the lodestar for current times. History and the Constitution demand otherwise. Moreover, New York largely ignores the salient point: ***Jacobson* did not involve a First Amendment challenge, which requires an entirely different analysis.** Plaintiffs' claims against New York arise under the First Amendment. (V. Compl. ¶¶ 119–136.) *Jacobson* was decided long before the First Amendment even applied to the States, and decades before the Supreme Court would even consider the current tiers of scrutiny in constitutional analysis.

Indeed, the First Amendment's various clauses were not even applicable to the states until decades after *Jacobson* was decided. It would not be until 1940 that the Supreme Court would first articulate the notion that "[t]he fundamental concept of liberty embodied in [the Fourteenth] Amendment embraces the liberties guaranteed by the First Amendment." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause); *see also Gitlow v. New York*,

268 U.S. 652, 666 (1925) (holding, under the doctrine of incorporation, that the Free Speech Clause is applicable as against the States); *Everson v. Bd. of Educ. of Ewing Tp.*, 330 U.S. 1, 16 (1947) (holding, under the doctrine of incorporation, that the Establishment Clause is applicable as against the States). It would be another quarter century before "exacting judicial scrutiny" would even enter the First Amendment lexicon in *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 n.4 (1938), another 50 years before the phrase "compelling interest" would be introduced to First Amendment jurisprudence in Justice Frankfurter's concurrence in *Sweezy v. New Hampshire*, 354 U.S. 234, 65 (1957) (Frankfurter, J., concurring), and another 60 years before strict scrutiny would ever be applied in its current form in *Sherbert v. Verner*, 374 U.S. 398 (1963).

Moreover, in recent years there has been a monumental shift in how and when strict scrutiny is mandated. *See, e.g.*, *Blith v. City of Slidell*, 260 F. Supp. 3d 656, 666 (E.D. La. 2017) ("*Reed v. Town of Gilbert* then **worked a sea change in First Amendment law**" (emphasis added)); *see also Wollschlaeger v. Florida*, 848 F.3d 1293, 1332 (11th Cir. 2017) (Tjoflat, J., dissenting) (same); *Pan American v. Municipality of San Juan*, 2018 WL 6503215, at *12 (D.P.R. Dec. 10, 2018) (noting that *Reed* "worked a sea change in First Amendment law" (citing *Norton v. City of Springfield*, 806 F3d 411, 412 (7th Cir. 2015) (Easterbrook, J.)).

Simply put, *Jacobson* preceded all of these developments, did not involve the same First Amendment questions at issue here, and could not foresee that jurisprudence would require the current mandate—which discriminatorily targeted and revoked religious exemptions—survive "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 US. 507, 534 (1997). *Jacobson* is therefore unhelpful at best, and utterly inapposite at worst. This is not the first time *Jacobson* has been dusted off to deprive constitutional rights in this pandemic, and those prior efforts were squarely rejected by the Supreme Court numerous times. As Justice Gorsuch

pointed out in *Catholic Diocese*, "***Jacobson* hardly supports cutting the Constitution loose during a pandemic. That decision involved an entirely different mode of analysis [and] an entirely different right**." *Catholic Diocese*, 141 S. Ct. at 70 (Gorsuch, J., concurring). Put simply,

> *Jacobson* didn't seek to depart from normal legal rules during a pandemic, and it supplies no precedent for doing so. Instead, *Jacobson* applied what would become the traditional legal test associated with the right at issue—exactly what the Court does today. **Here, that means strict scrutiny: The First Amendment traditionally requires a State to treat religious exercises at least as well as comparable secular activities unless it can meet the demands of strict scrutiny—showing it has employed the most narrowly tailored means available to satisfy a compelling state interest**.

*Id.* (emphasis added).

Moreover, "[e]ven if judges may impose emergency restrictions on rights that some have found hiding in the Constitution's penumbras, **it does not follow that the same fate should befall the textually explicit right to religious exercise**." *Id.* at 70–71 (emphasis added). Contrary to New York's contentions, *Jacobson* does not represent some "towering authority that overshadows the Constitution during a pandemic," for the simple reason that the judiciary "may not shelter in place when the Constitution is under attack. Things never go well when [it] do[es]." *Id.* at 71.

In fact, even *Jacobson*'s own language suggests that it is inapplicable to a situation where—as here—the government imposes restrictions that plainly violate the First Amendment:

> we deem it appropriate, in order to prevent misapprehension of our views, to observe—perhaps to repeat a thought already sufficiently expressed, namely—that the police power of a state, whether exercised directly by the legislature, or by a local body acting under its authority, may be exerted in such circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression.

*Jacobson*, 197 U.S. at 38. "**There is no question, therefore, that even under the plain language of *Jacobson*, a public health measure may violate the Constitution**." *Cnty. of Butler v. Wolf*, 486 F. Supp. 3d 833, 897 (W.D. Pa. 2020) (emphasis added). Where, as here, New York has

purported to completely remove the textual protections of the First Amendment and Title VII for healthcare workers in New York, there is no dispute that New York's Vaccine Mandate "regulates [and] prohibits conduct because it is undertaken for religious reasons," *Lukumi*, 508 U.S. at 532, while exempting secular conduct of like kind, and therefore violates the First Amendment "and plainly so." *Maryville Baptist*, 957 F.3d at 613. *Jacobson* simply provides no refuge or escape for New York, and its discriminatory treatment of fundamental First Amendment rights to religious exercise must be subjected to, and cannot survive, strict scrutiny.

## II. DEFENDANTS' WHOLESALE REJECTION OF RELIGIOUS ACCOMMODATIONS IS PLAINLY INCONSISTENT WITH TITLE VII AND IS THEREFORE NULLIFIED AND SUPERSEDED BY FEDERAL LAW.

### A. Title VII Supersedes New York's Rule Because Even the Employer Defendants Have Admitted That Title VII's Requirement of Religious Accommodation and New York's Revocation of Religious Exemptions Are in Conflict and That They Cannot Comply With Both.

Employer Defendants' primary contention concerning their utter refusal to comply with the demands of Title VII is that New York's revocation of religious exemptions from the COVID-19 Vaccine Mandate are not inconsistent with Title VII, and thus they need not comply. (Trinity Opp'n at 10-12; WMC Opp'n 9-12; NYP Opp'n at 15-16.) Employer Defendants are wrong. Title VII plainly requires that every employer with over 15 employees (which includes all Employer Defendants (V. Compl. ¶ 168) **must provide religious accommodations** "unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship." 42 U.S.C. § 2000e(j). *See also Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977) ("the employer's statutory obligation to make reasonable accommodation for the religious observance of its employees, short of incurring an undue hardship, **is clear**" (emphasis added)). Despite that mandate of federal law, New York has issued a wholesale revocation of religious exemptions and accommodations for

healthcare workers and has abolished the entire exemption and accommodation process under Title VII for religious objectors. (V. Compl. ¶ 440 (noting that New York "completely removed religious exemptions and accommodations, precluding any healthcare worker in New York from requesting or obtaining a reasonable accommodation and exemption for their sincerely held religious beliefs").) Additionally, State Defendants have admitted that the COVID-19 vaccine mandate does not include a religious exemption or accommodation. (State Opp'n at 7 ("It does not include a religious exemption from the vaccine requirement.").)

Thus, Title VII's requirement that employers provide at least a process for seeking an accommodation for an employee's sincerely held religious beliefs, and New York's refusal to provide such a process, are in direct conflict. Under such a scheme, the Supremacy Clause demands that Defendants comply with Title VII. Indeed, as the Northern District of New York just stated, the Governor's COVID-19 vaccine mandate "**has effectively foreclosed the pathway to seeking a religious accommodation that is guaranteed under Title VII**." *Dr. A.*, 2021 WL 4734404, at *6 (emphasis added). Thus, State Defendants are already prohibited and enjoined from failing to provide Plaintiffs with the process of requesting and receiving a religious exemption and accommodation from the mandated vaccine. And, the reason for this is simple: where—as here— federal law "imposes restrictions [and] confers rights on private actors," and New York law "imposes restrictions that conflict with the federal law," "**the federal law takes precedence** and the state law is preempted." *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (emphasis added). Employer Defendants take great pains to suggest that New York's refusal to extend religious protections is not preempted by Title VII's demand that employers provide a reasonable accommodation for religious beliefs. This is incorrect. Title VII supersedes state laws where—as here—"compliance with both federal and state regulations is a physical impossibility." *California*

*Fed. Savings & Loan Assoc. v. Guerra*, 479 U.S. 272, 281 (1987) (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)).

In their Oppositions, Employer Defendants now claim to this Court that it is not impossible for them to comply with both Title VII and New York's revocation of religious exemptions from the COVID-19 Vaccine Mandate. (*See, e.g.*, Trinity Opp'n 12; WMC Opp'n at 10; NYP Opp'n at 15.) In fact, Employer Defendants made it clear that they believe compliance with Title VII is not required because it would cause a violation of state law. (*See, e.g.*, NYP Opp'n at 16 ("Title VII does not require NYP to rant a religious accommodation in contravention of state law obligations imposed by the DOH mandate.").) Employer Defendants' admission is fatal. "**[T]he Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712–13 (1985) (emphasis added) (cleaned up). Employer Defendants admit that compliance with both is impossible, which requires a finding that Title VII supersede New York's inconsistent and contrary rules. *California Fed. Savings & Loan*, 479 U.S. at 281. New York's discriminatory revocation of religious exemptions simply does not relieve Employer Defendants of their obligations under Title VII, and the Supremacy Clause demands that New York provide the protections explicitly provided by Title VII.

### B. Title VII Explicitly Preempts State Laws, Like New York's, That Require the Doing of an Act That Is Prohibited by Title VII.

Employer Defendants also take great pains to point out that Title VII imposes no affirmative obligation upon them to violate an inferior state law that is in direct conflict with Title VII. (*See* NYP Opp'n at 16; Trinity Opp'n at 12; WMC Opp'n at 10.) **Under the plain language**

**of Title VII, New York's refusal to recognize and accommodate Plaintiffs' sincerely held religious beliefs is preempted and overridden by Title VII.** Indeed,

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, **other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter**.

42 U.S.C. § 2000e-7 (emphasis added). Thus, because New York's rule revoking religious exemptions and accommodations "purports to require" discrimination on the basis of religion, and purports to abolish the exemption and accommodation procedure explicitly provided in Title VII, each of which are "an unlawful employment practice" under Title VII, *see* 42 U.S.C. §2000e-2(a), New York's rules are superseded and preempted by Title VII.

In addition to the explicit textual preemption of Title VII, abundant precedent demonstrates that New York cannot require employers to engage in a practice that is unlawful under Title VII. *See, e.g.*, *Coalition for Economic Equality v. Wilson*, 122 F.3d 692, 710 (9th Cir. 1997) (noting that Title VII preempts state laws that "purport to require the doing of any act which would be an unlawful employment practice under Title VII"); *Brown v. City of Chicago*, 8 F. Supp. 2d 1095, 1112 (N.D. Ill. 1998) (noting that Congress "'intended to supercede [*sic*] all provisions of State law which require or permit the performance of an act which can be determined to constitute an unlawful employment practice under the terms of Title VII of the Act or are inconsistent with any of its purposes'" (quoting *Rinehart v. Westinghouse Elec. Corp.*, No. C 70-537, 1971 WL 174, at *2 (N.D. Ohio Aug. 20, 1971)); *LeBlanc v. S. Bell Tel. & Tel. Co.*, 333 F. Supp. 602, 608 (E.D. La. 1971) (noting that Louisiana's employment law provisions that conflict with Title VII "are invalid under the Supremacy Clause").

Moreover, as a matter of binding law in the Second Circuit, Employer Defendants are not permitted to rely upon New York's revocation of protections for religious objectors as a defense to refusing to do what Title VII requires. *See, e.g.*, *Guardians Ass'n v. Civil Serv. Comm.*, 630 F.2d 79, 104–105 (2d Cir. 1980) ("Nor can the City justify the use of rank-ordering by reliance on what it contends are requirements of state law. **Title VII explicitly relieves employers from any duty to observe a state hiring provision "which purports to require or permit" any discriminatory employment practice**." (emphasis added) (citation omitted)). This utterly destroys Defendant WMC's contention that should the injunctions issued against New York's enforcement not continue, it would be required to comply with the state's mandate regardless of Title VII. (WMC Opp'n at 10.) The Second Circuit plainly demonstrates otherwise, as does the explicit text of Title VII itself.

**III. DEFENDANTS' FALSE REDUCTION THAT PLAINTIFFS' HARM IS COMPENSABLE AS A MERE EMPLOYMENT MATTER PLAINLY IGNORES THE BLATANT FIRST AMENDMENT INJURY BEING IMPOSED ON THEM EACH AND EVERY DAY, WHICH IS PER SE IRREPARABLE HARM, AND THE PURPOSE OF INJUNCTIVE RELIEF IN TITLE VII CASES AS PRESERVING THE STATUS QUO.**

**A. Plaintiffs Are Suffering Textbook, Irreparable First Amendment Injury.**

Defendants devote much ink to the notion that Plaintiffs cannot show irreparable harm because they can be reinstated to their jobs and given remuneration for lost wages. (WMC Opp'n 16-17; NYP Opp'n 12-14; Trinity Opp'n at 5-7.) While it is generally true that a loss of employment does not constitute irreparable harm, **that ignores the seminal First Amendment questions before the Court**. And there can be no dispute that State Defendants' substantial burden on Plaintiffs' religious exercise constitutes irreparable harm as a matter of law. As the Supreme Court has held time and again, Plaintiffs "are irreparably harmed by the loss of free exercise rights for even minimal periods of time." *Tandon*, 141 S. Ct. at 1297. Indeed, "**[t]here can be no**

**question that the challenged [mandate], if enforced, will cause irreparable harm**." *Catholic Diocese*, 141 S. Ct. at 67 (emphasis added). Contrary to Defendants' assertions, Plaintiffs' constitutional injuries in the instant matter are presumed irreparable harm under binding law. *See, e.g.*, *Sindicator Puertorriqueno de Trabajaddores v. Fortuno*, 699 F.3d 1, 11 (1sr Cir. 2012) ("irreparable injury is presumed" in First Amendment cases). Put simply, "a violation of plaintiffs' constitutional right, and in particular, a violation of First Amendment rights, constitutes irreparable harm, *per se*." *Westchester Legal Servs., Inc. v. Westchester Cnty.*, 607 F. Supp. 1379, 1385 (S.D.N.Y. 1985).

Defendants' collective false reduction, that Plaintiffs face only the loss of a job rather than the unconscionable loss of First Amendment rights at the hand of State Defendants, must be rejected. The impact of New York's far-reaching mandate cannot be understated. Plaintiffs cannot simply go from one employer who unlawfully discriminates, and get a job at a different employer to feed their families while their legal claims are pending. New York has essentially ensured the Plaintiffs **cannot work anywhere in the entire State**. If that's not irreparable harm, the word has no meaning. Indeed, "**[t]he harm [Plaintiffs] would suffer is not only, as [Defendants] argue[],
the loss of [their] job[s]** *per se,* **but also the penalty for exercising [their First Amendment]
rights. The chilling effect of that penalty cannot be adequately redressed after the fact**."
*Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 4 (1st Cir. 1987) (emphasis added)

> **B.  Injunctive Relief in Title VII Cases Is Appropriate to Preserve the Status Quo
> and Plaintiffs Are Suffering Irreparable Title VII Injury Under Binding
> Precedent.**

Defendants claim that Plaintiffs cannot show irreparable harm because Title VII remedies can adequately address their injuries. (NYP Opp'n 12-14; Trinity Opp'n at 6-7; WMC Opp'n at 16-19.) This, too, is plainly incorrect as a matter of binding law. Second Circuit precedent demands

that Defendants' false contentions be rejected because, even in the Title VII context, injunctive relief is available to preserve the status quo. *See Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 (2d Cir. 1981). Specifically, the Second Circuit held that "if the court eventually will have jurisdiction of the substantive claim and an administrative tribunal has preliminary jurisdiction, **the court has incidental equity jurisdiction to grant temporary relief to preserve the status quo pending ripening of the claim for judicial action on the merits**." *Id.* (emphasis added). It continued, "within the framework of Title VII, we are persuaded that Congress intended the federal courts to have resort to all of their traditional equity powers, direct and incidental, in aid of the enforcement of the Title." *Id.* at 885. Indeed,

> It is noteworthy that the court is the only arbiter of the merits of a discrimination claim, and **we think it plain that for the court to renounce its incidental equity jurisdiction to stay such employer retaliation pending the EEOC's consideration would frustrate Congress's purposes**. Unimpeded retaliation during the now-lengthy (180-day) conciliation period is likely to diminish the EEOC's ability to achieve conciliation. It is likely to have a chilling effect on the complainant's fellow employees who might otherwise desire to assert their equal rights, or to protest the employer's discriminatory acts, or to cooperate with the investigation of a discrimination charge. **And in many cases the effect on the complainant of several months without work or working in humiliating or otherwise intolerable circumstances will constitute harm that cannot adequately be remedied by a later award of damages** Given the singular role in 1964 of the individual private action as the only method of enforcing Title VII, and the continued view in 1972 of that right of action as "paramount," **we cannot conclude that Congress intended to preclude the courts' use of their incidental equity power in these circumstances to prevent frustration of Congress's goals**.

*Id.* at 885-86 (emphasis added).

Put simply, "**where a person has filed a Title VII charge with the EEOC, the court has jurisdiction to entertain a motion for temporary injunctive relief against employer retaliation while the charge is pending before the EEOC and before the EEOC has issued a right to sue letter**." *Id.* at 887 (emphasis added). *See also Holt v. Continental Grp., Inc.*, 708 F.2d 87, 89-90 (2d Cir. 1983) (same); *Bermand v. New York City Ballet, Inc.*, 616 F. Supp. 555, 556

(S.D.N.Y. 1985) ("Decisions by our Court of Appeals, however, **firmly establish** . . . this Court has jurisdiction to entertain applications for preliminary injunctive relief for the purpose of preserving the status quo pending EEOC's investigative and conciliatory process." (emphasis added)). Plaintiffs awarded immediate injunctive relief to remedy their present and ongoing loss of First Amendment rights.

## IV. PLAINTIFFS ALSO SATISFY THE REMAINING REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

As the Northern District of New York recognized, "the public interest lies with enforcing the guarantees enshrined in the Constitution and federal anti-discrimination laws." *Dr. A*, 2021 WL 4734404, at *10. Additionally, "**the balance of the hardships clearly favors plaintiffs**." *Id.* (emphasis added). Indeed, as there, "defendants have not shown that granting the same benefit to religious practitioners that was originally included in the August 18 Order would impose any more harm—especially when Plaintiffs have been on the front lines of stopping COVID for the past 18 months while donning PPE and exercising other proper protocols in effectively slowing the spread of the disease." *Id.* A preliminary injunction should issue today.

<u>CONCLUSION</u>

Because State Defendants' revocation of religious exemptions from the COVID-19 Vaccine Mandate is neither neutral nor generally applicable, and because adequate, less restrictive alternatives are available to Defendants, Plaintiffs are likely to succeed on the merits of their claim. Moreover, because the harm Plaintiffs face from Employer Defendants is irreparable as a matter of settled Second Circuit law, and First Amendment injuries from State Defendants is per se irreparable under the First Amendment, the preliminary injunction should issue immediately.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid**
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
*Admitted pro hac vice
**Applications for Admission pro hac vice pending

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October, 2021, I caused a true and correct copy of the foregoing to be electronically file with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronica notification system.

/s/ Roger K. Gannam
Roger K. Gannam

28