# EXHIBIT A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE 1, JANE DOES 1–3,<br>JACK DOES 1–1750, JOAN DOES 1–750,<br><br>Plaintiffs,<br>v.<br><br>KATHY HOCHUL, in her official capacity as<br>Governor of the State of New York,<br>HOWARD A. ZUCKER, in his official capacity<br>as Commissioner of the New York State<br>Department of Health, TRINITY HEALTH,<br>INC., NEW YORK-PRESBYTERIAN<br>HEALTHCARE SYSTEM, INC.,<br>WESTCHESTER MEDICAL CENTER<br>ADVANCED PHYSICIAN SERVICES, P.C.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)   Case No. 21-CV-5067<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES

For their VERIFIED COMPLAINT against Defendants, KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., and WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C. ("WMC Health"), Plaintiffs, JOHN DOE 1–2, JANE DOES 1–3, JACK DOES 1–750, and JOAN DOES 1–750, allege and aver as follows:

## URGENCIES JUSTIFYING EMERGENCY RELIEF

1.     The seminal issue before this Court can be boiled down to a simple question: Does federal law apply in New York? Though the question borders on the absurd, so does Defendants' answer to it. Defendants have explicitly claimed to healthcare workers in New York, including

1

Plaintiffs, that federal law does not apply, and neither should they. Defendants have informed Plaintiffs, who have sincerely held religious objections to the Governor's mandate that all healthcare workers in New York must be fully vaccinated against COVID-19 by September 27, 2021 (the "**COVID-19 Vaccine Mandate**"), that no protections or considerations are given to religious beliefs in New York. Indeed, Defendants' answer has been an explicit claim that federal law does not provide protections to New York's healthcare workers. When presented with requests from Plaintiffs for exemption and accommodation for their sincerely held religious beliefs, Defendants have responded in the following ways:

- "**Religious exemptions are no longer accepted" in New York**. (*See infra* ¶ 83.)

- "As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination – even those previously approved**." (*See infra* ¶ 86.)

- "**WMC Health, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered**." (*See infra* ¶ 89.)

- "**Under the emergency regulations the NYS DOH will not permit exemptions or deferrals for: Sincerely held religious beliefs . . . . We are required to comply with state law**." (*See infra* ¶¶ 92–93.)

2.    The answer to the question before this Court is clear: **federal law and the United States Constitution are supreme over any New York statute or edict, and New York cannot override, nullify, or violate federal law**. *See* U.S. Const. Art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). "**[The Supreme] Court has long made clear that**

federal law is as much the law of the several States as are the laws passed by their legislatures." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added). Indeed, "**[i]t is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712–13 (1985) (emphasis added) (cleaned up).

3. Thus, there can be no dispute that **New York is required to abide by federal law and provide protections to employees who have sincerely held religious objections to the COVID-19 vaccines**. And, here, the federal law is clear: There can be no dispute that Title VII of the Civil Rights Act prohibits Defendants from discriminating against Plaintiffs on the basis of their sincerely held religious beliefs. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . religion."). And, Defendants have a duty under Title VII to provide religious exemptions and accommodations to those with sincerely held religious objections to the COVID-19 Vaccine Mandate. In direct contrast to this unquestionable principle of black letter law, however, every Defendant in this suit has seen fit to claim to its healthcare workers that the converse is true, and that New York law is supreme over federal law; has engaged in a conspiracy and scheme to discourage employees with religious objections to the mandatory vaccines from even seeking religious exemptions from such a policy; has informed Plaintiffs that their requests for an exemption and accommodation from the mandate cannot even be evaluated or considered; and has flatly denied all requests for religious exemption and accommodation from the mandate that all healthcare workers receive a COVID-19 vaccine.

Employers bent on discrimination "usually don't post help wanted signs reading 'blacks need not apply.'" *Lewis v. City of Unity City*, 918 F.3d 1213, 1261 (11th Cir. 2019) (Rosenbaum, J., concurring in part). But New York and its healthcare employers have no problem being direct: "**religious misbelievers need not apply**."

4.      The dispute in this case is not about what accommodations are available to Plaintiffs or whether accommodation of Plaintiffs' sincerely held religious objections can be conditioned on compliance with certain reasonable requirements. Plaintiffs have already acknowledged to Defendants that they are willing to comply with reasonable health and safety requirements that were deemed sufficient a few, short weeks ago and have been sufficient to consider them heroes for the last eighteen months. **The dispute is about whether Defendants are required to even consider a request for reasonable accommodation of Plaintiffs' sincerely held religious beliefs**. The answer is clear: **yes**. And this Court should require Defendants to acknowledge and accept that federal law mandates accommodation for Plaintiffs' sincerely held religious beliefs and order that Defendants extend such protections.

5.      **Plaintiffs have been given a deadline to become vaccinated by September 27, 2021 for hospital employees and October 7, 2021 for other facilities, forcing them to accept a vaccine injection by various arbitrary deadlines set by the employers, including September 13 at the latest for many Plaintiffs. If Plaintiffs do not comply with the vaccine mandate, they will be terminated and deprived of their ability to feed their families. No American should be faced with this unconscionable choice, especially the healthcare heroes who have served us admirably for the entire duration of COVID-19. A TRO is needed now to ensure that Defendants are enjoined from their continued efforts to deny that federal law even applies in New York and to compel Defendants to extend the protections that federal law demands**

of them. **Plaintiffs will suffer (and some have already suffered) irreparable harm by being forced to choose between their jobs and their sincerely held religious beliefs. Despite the Governor's mandate only requiring full vaccination by September 27, Plaintiff Jane Doe 3 was told her deadline to comply with the mandate was September 3, and she has already suffered de facto termination as a result of the Governor's mandate. Relief from this unconscionable and unlawful deprivation of Plaintiffs' liberties cannot wait another day.**

6.      Earlier this year, the then-Governor of New York rightfully declared that New York's healthcare workers were "the true heroes in this crisis." *Amid Ongoing COVID-19 Pandemic, Governor Cuomo Calls on Federal Government to Provide Hazard Pay to Essential Public Workers* (Apr. 20, 2020), https://www.governor.ny.gov/news/amid-ongoing-COVID-19-pandemic-governor-cuomo-calls-federal-government-provide-hazard-pay. Every word of that statement is equally as true today as it was the day the Governor uttered it. **Yet, on August 16, 2021, those same heroes have now been cast as evil villains for requesting exemption and accommodation from the Governor's edict for their sincerely held religious beliefs**.

7.      Neither the Governor nor any of the Defendant employers is permitted to blatantly ignore federal protections under the First Amendment and Title VII, and that is precisely why emergency relief is needed in the instant action: Plaintiffs need **an order mandating that Defendants follow federal protections for religious objectors to the COVID-19 Vaccine Mandate.**

8.      Plaintiffs are all healthcare workers in New York who have sincerely held religious beliefs that preclude them from accepting any of the COVID-19 vaccines because of the vaccines' connections to aborted fetal cell lines and for other religious reasons that have been articulated to Defendants. John Doe 2 has sincerely held religious beliefs that compel him to abstain from all

5

vaccines, and he has followed that religious conviction his entire life. Since COVID-19 first arrived in New York, Plaintiffs have risen every morning, donned their personal protective equipment, and fearlessly marched into hospitals, doctor's offices, senior living facilities, emergency rooms, operating rooms, and examination rooms with one goal: to provide quality healthcare to those suffering from COVID-19 and every other illness or medical need that confronted them. They did it bravely and with honor. They answered the call of duty to provide healthcare to the folks who needed it the most and worked tirelessly to ensure that those ravaged by the pandemic were given appropriate care. **All Plaintiffs seek in this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for the last 18 months**. Defendants shamelessly seek to throw these healthcare workers out into the cold and ostracize them from the very medical facilities for which they have sacrificed so much solely because of Plaintiffs' desire to continue to provide quality healthcare while still exercising their sincerely held religious beliefs.

9.     The law mandates that Defendants permit them to do both. Regardless of whether New York sees fit to extend protections to religious objectors under its own statutory framework, **federal law demands that these Plaintiffs and all employees in New York receive protections for their sincerely held religious beliefs**. This Court should hold New York to the bargain it made with its citizens when it joined the union and ensure that New York extends the required protections that federal law demands. As the Supreme Court held just last year, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added). When we have demanded so much of our healthcare heroes, we owe them nothing less than the full measure of our own commitment

to constitutional principles. Anything less would be desecrating the sacrifice these medical heroes made for untold numbers of people—including Defendants—when the call of duty demanded it of them. As the former Governor once stated, "Thanks is nice, but recognition of their efforts and their sacrifice is appropriate. . . . They're the ones carrying us through this crisis." Chris Sommerfeldt, *Cuomo proposes hazard pay for coronavirus frontline workers*, NY Daily News (Apr. 20, 2020), https://www.nydailynews.com/coronavirus/ny-coronavirus-cuomo-briefing-20200420-joov5nje2va6jairdx45ctteei-story.html. Unfortunately, Defendants have neither thanked nor recognized Plaintiffs' extraordinary efforts. This Court should.

## **PARTIES**

10.     Plaintiff John Doe 1 is a citizen of New York and the President of the Board of a private, faith-based senior care facility in New York with employees who have sincerely held religious objections to the Governor's COVID-19 Vaccine Mandate. John Doe 1 has sincerely held religious objections to accepting or receiving the COVID-19 vaccines (*see infra*) and has sincerely held religious beliefs that he is to honor the sincerely held religious beliefs of his employees who object to the COVID-19 vaccines. John Doe 1 will have only 1 employee in his entire facility as of October 7 if the Governor's mandate is not enjoined. John Doe 1 has been threatened with the loss of his facility and daily fines for failure to reject the request for religious objections from his employees.

11.     John Doe 2 is a citizen of New York and is a healthcare worker employed by Defendant New York-Presbyterian at one of its hospital facilities in New York. John Doe 2 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon his sincerely held religious beliefs against all vaccines, including COVID-19 vaccines, but New York-Presbyterian denied the exemption because of the Governor's

mandate. New York-Presbyterian previously granted John Doe 2 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, New York-Presbyterian revoked John Doe 2's religious exemption.

12.     Jane Doe 1 is a citizen of the State of New York and is a healthcare worker employed by New York-Presbyterian at Brooklyn Methodist Hospital. Jane Doe 1 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but New York-Presbyterian denied the exemption because of the Governor's mandate. New York-Presbyterian previously granted Jane Doe 1 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, New York-Presbyterian revoked Jane Doe 1's religious exemption.

13.     Jane Doe 2 is a citizen of the State of New York and is a doctor employed by Defendant WMC Health. Jane Doe 2 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but WMC Health denied the exemption because of the Governor's mandate.

14.     Jane Doe 3 is a citizen of the State of New York and is a registered nurse employed by Defendant Trinity Health at its St. Joseph's Health Hospital in New York. Jane Doe 3 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but Trinity Health denied the exemption because of the Governor's mandate. Trinity

Health previously granted Jane Doe 3 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, Trinity Health revoked Jane Doe 3's religious exemption.

15.     Plaintiffs Jack Does 1–250 are citizens of the State of New York and are healthcare workers employed by Trinity Health at its healthcare facilities in New York. Jack Does 1–250 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but Trinity Health either denied their exemption requests or told them not to submit exemption requests because the Governor does not allow Trinity Health to grant or even consider religious exemption or accommodation requests.

16.     Plaintiffs Joan Does 1–250 are citizens of the State of New York and are healthcare workers employed by Trinity Health at its healthcare facilities in New York. Joan Does 1–250 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but Trinity Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow Trinity Health to grant or even consider religious exemption or accommodation requests.

17.     Plaintiffs Jack Does 251–500 are citizens of the State of New York and are healthcare workers employed by Defendant WMC Health at its healthcare facilities in New York. Jack Does 251–500 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but WMC Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow WMC Health to grant or even consider religious exemption or accommodation requests.

18.     Plaintiffs Joan Does 251–500 are citizens of the State of New York and are healthcare workers employed by WMC Health at its healthcare facilities in New York. Joan Does 251–500 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but WMC Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow WMC Health to grant or even consider religious exemption or accommodation requests.

19.     Plaintiffs Jack Does 501–750 are citizens of the State of New York and are healthcare workers employed by Defendant New York-Presbyterian at its healthcare facilities in New York. Jack Does 501–750 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but New York-Presbyterian either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow New York-Presbyterian to grant or even consider religious exemption or accommodation requests.

20.     Plaintiffs Joan Does 501–750 are citizens of the State of New York and are healthcare workers employed by New York-Presbyterian at its healthcare facilities in New York. Joan Does 501–750 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but New York-Presbyterian either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow New York-Presbyterian to grant or even consider religious exemption or accommodation requests.

21.     Defendant Kathy Hochul, in her official capacity as Governor of the State of New York (the "Governor"), is responsible for enacting the COVID-19 Vaccine Mandate. Governor Hochul is sued in her official capacity

22.     Defendant Howard A. Zucker, in his official capacity as Commissioner of the New York State Department of Health, is responsible for overseeing the healthcare industry in New York and is responsible for implementing the Governor's COVID-19 Vaccine Mandate and enforcing the provisions of threatened loss of licensure for those healthcare providers who refuse to mandate the COVID-19 vaccine. Defendant Zucker is sued in his official capacity.

23.     Defendant Trinity Health, Inc. is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

24.     Defendant New York-Presbyterian Healthcare System, Inc. is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

25.     Defendant Westchester Medical Center Advanced Physician Services, P.C. ("WMC Health") is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

## JURISDICTION AND VENUE

26.     This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under federal statutory laws, namely 42 U.S.C. § 1985(3) and 42 U.S.C. § 2000e-2.

27.     This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1331 and 1343.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

29.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

30.     This Court is authorized to grant Plaintiffs' prayer for a temporary restraining order and preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

31.     This Court is authorized to grant Plaintiffs' prayer for relief regarding damages under 42 U.S.C. § 2000e-5.

32.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

**A.     THE GOVERNOR'S COVID-19 VACCINE MANDATE FOR HEALTHCARE WORKERS IN NEW YORK.**

33.     On August 16, 2021 the Governor announced that "all healthcare workers in New York State, including staff at hospitals and long-term care facilities (LTCF), including nursing

homes, adult care, and other congregate care settings, will be required to be vaccinated against COVID-19 by Monday, September 27." (A true and correct copy of the Governor's Mandatory COVID-19 Vaccine Policy is attached hereto as **EXHIBIT A** and incorporated herein.)

34.     On August 18, 2021 the New York State Department of Health issued an Order for Summary Action requiring all "Covered entities" to "continuously require all covered personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021." (A true and correct copy of the Department of Health's Order for Summary Action is attached hereto as **EXHIBIT B** and incorporated herein.)

35.     "Covered entity" was defined to include "a general hospital or nursing home pursuant to section 2801 of the Public Health Law." (Exhibit B at 3.)

36.     "Covered Personnel," who are those employees required to be fully vaccinated under the Governor's Mandate, include

> All persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose patients, residents, or personnel working for such entity to the disease.

(Exhibit B at 3-4.)

37.     In its Order for Summary Action on August 18, the State Department of Health included a religious exemption for those with sincerely held religious beliefs against receipt of one of the COVID-19 vaccines. (Exhibit B at 5.) Specifically, it stated: "Religious Exemption. Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer." (Exhibit B at 5–6.)

38.     Additionally, the Order for Summary Action provided for a medical exemption of those personnel for whom it was recommended by a physician or certified nurse practitioner and provided that reasonable accommodations should be provided for those employees as well. (Exhibit B at 5.)

39.     On August 26, the State Department of Health issued the amended rule concerning mandatory COVID-19 vaccines ("Section 2.61 Rule Change") finalizing the scope of the Governor's COVID-19 Vaccination Mandate. (A true and correct copy of the Section 2.61 Rule Change is attached hereto as **EXHIBIT C** and incorporated herein.)

40.     In the Section 2.61 Rule Change, New York completely removed religious exemptions and accommodations, precluding any healthcare worker in New York from requesting or obtaining a reasonable accommodation and exemption for their sincerely held religious beliefs. (Exhibit C at 3.)

41.     The Section 2.61 Rule Change retained the medical exemptions from the COVID-19 Vaccination Mandate, but specifically stripped religious objections from any accommodation or exemption process in New York.

**B.     PLAINTIFFS' SINCERELY HELD RELIGIOUS OBJECTIONS TO COVID-19 VACCINE MANDATE.**

42.     Plaintiffs all have sincerely held religious beliefs that preclude them from accepting or receiving any of the three available COVID-19 vaccines because of the connection between the various COVID-19 vaccines and the cell lines of aborted fetuses, whether in the vaccines' origination, production, development, testing, or other inputs.

43.     A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

44.  Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

45.  Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

46.  Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to their birth, and that because of this, life is sacred from the moment of conception. *See Psalms* 139:13–14 (ESV) ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made."); *Psalms* 139:16 (ESV) ("Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them."); *Isaiah* 44:2 (KJV) ("the LORD that made thee, and formed thee from the womb"); *Isaiah* 44:24 (KJV) ("Thus saith the LORD, thy redeemer, and he that formed thee from the womb, I am the LORD that maketh all things."); *Isaiah* 49:1 (KJV) ("The LORD hath called my from the womb; from the bowels of my mother hath he made mention of my name."); *Isaiah* 49:5 (KJV) ("the LORD that formed me from the womb to be his servant"); *Jeremiah* 1:5 (KJV) ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee.").

47.  Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because children are made in the image of God. *See Genesis* 1:26–27 (KJV) ("Let us make man in our image, after our likeness. . . . So God created man in his own image; in the image of God created he him; male and female created he them.").

48.     Plaintiffs also have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 (KJV) ("Though shalt not kill."); *Exodus* 21:22–23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 (KJV) ("the innocent and righteous slay thou not, for I will not justify the wicked"); *Genesis* 9:6 (KJV) ("Whoso sheddeth a man's blood, by man shall his blood by shed: for in the image of God made he man."); *Deuteronomy* 27:25 (KJV) ("Cursed be he that taketh reward to slay an innocent person."); *Proverbs* 6:16–17 (KJV) ("These six things doth the LORD hate: yea, seven are an abomination to him . . . hands that shed innocent blood.").

49.     Plaintiffs also have the sincerely held religious belief that it would be better to tie a millstone around their necks and be drowned in the sea than bring harm to an innocent child. *See Matthew* 18:6; *Luke* 17:2.

50.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that anything that condones, supports, justifies, or benefits from the taking of innocent human life via abortion is sinful, contrary to the Scriptures, and must be denounced, condemned, and avoided altogether.

51.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that it is an affront to Scripture's teaching that all life is sacred when any believer uses a product derived from or connected in any way with abortion.

52.     Plaintiffs' sincerely held religious beliefs, rooted in the above Scriptures, preclude them from accepting any one of the three currently available COVID-19 vaccines derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

53.     Plaintiffs have sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccine.

54.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Sept. 8, 2021) (bold emphasis original).

55.     The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used the PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/CenterPH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Sept. 8, 2021) (emphasis added).

56.     Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. *Meredith Wadman*, *Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full (last visited Sept. 8, 2021).

57.     Plaintiffs have sincerely held religious objections to the Moderna and Pfizer/BioNTech COVID-19 vaccines because both of these vaccines, too, have their origins in research on aborted fetal cells lines.

58.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19 _Vaccine_Fetal_Cell_Handout.pdf (last visited Sept. 8, 2021) (emphasis added).

59.     The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Sept. 8, 2021).

60.     Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

61.     Plaintiffs have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit. (*See 1 Corinthians* 6:15-20 (KJV) ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.").

62.     In addition to their sincerely held religious beliefs that compel them to abstain from any connection to the grave sin of abortion, Plaintiffs have sincerely held religious beliefs that the Holy Spirit—through prayer and the revelation of Scripture—guide them in all decisions they make in life.

63.     Plaintiffs have sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for their sins, and was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *See John* 16:7 (KJV) ("Nevertheless I tell you the truth, It is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you."); *John* 14:26 (KJV) ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you.").

64.     Plaintiffs have sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. *See John* 16:8, 13 (KJV) ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . . [W]hen he, the Spirit of truth, is come, he will guide you into all truth: for he

shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come.").

65. Plaintiffs also have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. *See James* 1:5 (KJV) ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him."); *Mark* 11:24 (KJV) ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them."); *Philippians* 4:6–7 (KJV) ("Be careful for nothing, but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus."); *1 John* 4:14–15 (KJV) ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him.").

66. Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and Plaintiffs have been convicted by the Holy Spirit in their beliefs that accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

67. Plaintiff John Doe 2 is a member of the Church of Christ, Scientist, and has a sincerely held religious objection to all vaccines. John Doe 2's Christian Scientist religious beliefs compel him to believe that healing comes through prayer.

68. John Doe 2's sincerely held religious beliefs compel him to focus on prayer and Bible-based approaches when dealing with all health-related issues, and his convictions compel

him to believe what the book of *Psalms* states, which is that God "healeth all thy diseases." *Psalms* 103:3.

69.     John Doe 2's sincerely held religious beliefs compel him to abstain from receiving all vaccines, and he has followed that religious practice his entire life.

## C.     PLAINTIFFS' WILLINGNESS TO COMPLY WITH ALTERNATIVE SAFETY MEASURES.

70.     Plaintiffs have offered, and are ready, willing, and able to comply with all reasonable health and safety requirements to facilitate their religious exemption and accommodation from the COVID-19 Vaccine Mandate.

71.     Plaintiffs have all informed their respective employers that they are willing to wear facial coverings, submit to reasonable testing and reporting requirements, monitor symptoms, and otherwise comply with reasonable conditions that were good enough to permit them to do their jobs for the last 18 months with no questions asked.

72.     In fact, last year the State said Plaintiffs were heroes because of their willingness to abide by the same conditions and requirements that Plaintiffs are willing to abide by now. *Amid Ongoing COVID-19 Pandemic, Governor Cuomo Calls on Federal Government to Provide Hazard Pay to Essential Public Workers* (Apr. 20, 2020), https://www.governor.ny.gov/news/amid-ongoing-COVID-19-pandemic-governor-cuomo-calls-federal-government-provide-hazard-pay.

73.     In fact, New York still recommends that vaccinated individuals wear a mask in public settings. *See* Karen Matthews & Michael Hillap, *Masks encouraged in New York but no city or state mandate*, AP (Aug. 2, 2021), https://apnews.com/article/lifestyle-business-health-coronavirus-pandemic-97863fa563eadaad177e0ccba8000cb4.

74.     And the reason for this is simple,

> A preliminary study has shown that in the case of a breakthrough infection, the Delta variant is able to grow in the noses of vaccinated people **to the same degree as if they were not vaccinated at all**. The virus that grows is just as infectious as that in unvaccinated people, meaning vaccinated people can transmit the virus and infect others.

Sanjay Mishra, *Evidence mounts that people with breakthrough infections can spread Delta easily*, National Geographic (Aug. 20, 2021), https://www.nationalgeographic.com/science/article/ evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily (emphasis added).

75. Masking and testing protocols remain sufficient to prevent the spread of COVID-19 among healthcare workers, and constitute a reasonable alternative to vaccination as an accommodation of sincerely held religious beliefs.

76. In fact, the United States District Court for the Western District of Louisiana just issued a temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body. *See Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021).

77. And the United States District Court for the Western District of Michigan issued a temporary restraining order against a school for its failure to allow students with religious exemptions and accommodations to participate in athletics and other extracurricular activities when masking and testing was available as a reasonable accommodation for such religious beliefs. *See Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 1:21-cv-757, 2021 WL 3891620, *2 (W.D. Mich. Aug. 31, 2021)

### D. PLAINTIFFS' DESIRE FOR AN ACCOMMODATION AND DEFENDANTS' RESPONSES CLAIMING FEDERAL LAW IS IRRELEVANT IN NEW YORK.

78.   Consistent with his sincerely held religious beliefs, John Doe 1 and his facility desires to obtain a religious exemption and accommodation from the Governor's COVID-19 Vaccination Mandate, so that he may offer his employees with sincerely held religious objections to the vaccine an accommodation from the mandate.

79.   The Governor and State Department of Health, by removing religious exemptions from the COVID-19 Vaccine Mandate, have precluded John Doe 1 from offering religious exemptions to his employees and violated his sincerely held religious beliefs and those of his facility.

80.   John Doe 1 has spoken with state officials that are responsible for regulating his facility, and he has been informed that offering religious exemptions and accommodation to his employees will result in daily fines and a potential closure of his facility.

81.   John Doe 2, for the last 10 years of his employment with New York-Presbyterian, has received an exemption from mandatory vaccines in his employment. In fact, on July 28, 2021 Defendant New York-Presbyterian approved John Doe 2 for an exemption and accommodation from the COVID-19 vaccine. (A true and correct copy of John Doe 2's accommodation acceptance is attached hereto as **EXHIBIT D** and incorporated herein.)

82.   After an announcement from his employer that the Governor's mandate precluded New York-Presbyterian from offering or accepting religious exemptions and accommodations, John Doe 2 communicated with his superiors to inquire whether his previously granted religious exemption and accommodation would be honored. (A true and correct copy of John Doe 2's email communications with his superiors is attached hereto as **EXHIBIT E** and incorporated herein.)

83.     New York-Presbyterian responded to John Doe 2, stating: "**Religious exemptions are no longer accepted**." (Exhibit E at 1 (emphasis added).)

84.     Jane Doe 1 has also requested and received religious accommodations from New York-Presbyterian and Brooklyn Methodist Hospital in the past, and on August 24, 2021 was granted a religious accommodation from the Governor's COVID-19 Vaccine Mandate. (A true and correct copy of Jane Doe 1's religious exemption and accommodation is attached hereto as **EXHIBIT F** and incorporated herein.)

85.     However, on August 30, New York-Presbyterian and Brooklyn Methodist Hospital informed Jane Doe 1 that her previously accepted religious exemption and accommodation had been revoked. (A true and correct copy of New York-Presbyterian's revocation of Jane Doe 1's religious exemption is attached hereto as **EXHIBIT G** and incorporated herein.)

86.     Specifically, New York-Presbyterian stated:

Late last week, the Public Health and Health Planning Council of the NYS Department of Health formally approved and adopted the state*s COVID-19 vaccination requirement for health care workers. **In addition, the Council made the determination to exclude religious exemptions as an alternative to receiving the vaccine.** The DOH cited examples of measles and other vaccinations, which are required of NY health care workers, as also not having a religious exemption. As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination 安 even those previously approved.**

(Exhibit G at 2.)

87.     Thus, Jane Doe 1 was initially given a religious accommodation, but had it revoked because New York-Presbyterian stated religious accommodations were no longer available in the State of New York.

88.     On August 26, 2021 Jane Doe 2 submitted a request for a religious exemption and accommodation to Defendant WMC Health outlining her religious beliefs against receipt of the COVID-19 Vaccine. However, on August 27, the very next day, WMC Health responded to Jane

Doe 2 informing her that because of the Governor's mandate, WMC Health was not even considering and reviewing, much less granting, requests for religious exemption or accommodation. (A true and correct copy of WMC Health's response to Jane Doe 2 is attached hereto as **EXHIBIT H** and incorporated herein.)

89.     Specifically, WMC Health stated:

On August 26, hospitals were notified that the New York State Department of Health was removing the option allowing hospitals to offer a religious exemption to health care workers from receiving the COVID-19 vaccination. Accordingly, **WMC Health, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered**.

(Exhibit H at 1 (emphasis added).)

90.     Jane Doe 3 also submitted a request for a religious accommodation and exemption from Defendant Trinity Health, and was initially approved for the religious exemption. (A true and correct copy of Trinity Health's approval of Jane Doe 3's religious exemption and accommodation is attached hereto as **EXHIBIT I** and incorporated herein.)

91.     On September 1, Trinity Health sent a communication to Jane Doe 3 informing her that her religious exemption had been revoked. (A true and correct copy of Trinity Health's communication revoking Jane Doe 3's religious exemption is attached hereto as **EXHIBIT J** and incorporated herein.)

92.     Specifically, Trinity Health stated that "**[u]nder the emergency regulations the NYS DOH will not permit exemptions or deferrals for: Sincerely held religious beliefs, Pregnancy, Planning to become pregnant**." (Exhibit J at 1 (emphasis added).)

93.     Trinity Health continued by noting: "We are required to comply with **state law**. Therefore, any colleague who was previously approved for one of the above-exemptions/deferrals will be required to provide proof of (1) first dose of a 2-dose series (mRNA) or (2) a single dose

vaccine (Johnson & Johnson) no later than September 21, 2021." (Exhibit J at 1 (emphasis added).) **However, Trinity Health has granted numerous exemptions and accommodations for its employees with religious beliefs at its facilities in other states, including *inter alia*, Michigan, Idaho, Florida and others**. Thus, Defendant knows that accommodations and exemptions are available but has refused to provide them.

94. Thus, what Defendants hath given in accordance with federal law, Defendants hath taken away in violation federal law. Defendants have purported to remove the protection of federal law from all healthcare workers in New York and are forcing Plaintiffs to choose between their religious convictions and their abilities to feed their families.

### E. DEFENDANTS ADMIT THAT OTHER, NON-RELIGIOUS EXEMPTIONS ARE AVAILABLE.

95. The Governor's mandate, the State Department of Health's rules, and Defendants' responses to Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs all confirm that New York is, indeed, willing to grant other exemptions from the Governor's COVID-19 Vaccine Mandate but have relegated religious exemption requests to constitutional orphan status.

96. On August 26, in its Section 2.61 rule change, Defendant Zucker's officials stripped out protections that were previously available under the Governor's mandate and have informed Plaintiffs and all healthcare workers in New York that their religious beliefs will not be honored in the workplace or in the State.

97. In its response to John Doe 2, Defendant New York-Presbyterian has indicated it is perfectly willing to accept and grant medical exemptions but will not allow religious exemptions. Specifically, it told John Doe 2: "Religious exemptions are no longer accepted. **This does not**

**impact an approved or submitted Medical exemption request**." (Exhibit E at 1 (emphasis added).)

98.     Thus, while New York-Presbyterian says it will consider and grant the preferred medical exemptions, **it will not even consider the constitutionally orphaned religious exemption requests**.

99.     Jane Doe 1 was similarly informed that though religious exemptions had been removed, the preferred medical exemption requests would still be honored and considered. (Exhibit G at 1 ("Staff must receive the first dose of the vaccine or have an approved medical exemption by no later than September 15, 2021.").)

100.    And New York-Presbyterian further noted to Jane Doe 1 that while religious exemption request were previously available, only medical exemption requests would now be considered or honored. (Exhibit G at 2.)

101.    The Governor, through the COVID-19 Vaccine Mandate, has created a two-tiered system of exemptions, and placed religious beliefs and those who hold them in a class less favorable than other exemptions that Defendants are perfectly willing to accept.

102.    Under the Governor's scheme of creating a disfavored class of religious exemptions, Defendants are not even willing to consider religious exemptions, much less grant them to those who have sincerely held religious objections to the COVID-19 vaccines.

**F.      IRREPARABLE HARM SUFFERED BY PLAINTIFFS.**

103.    Because of the Governor's COVID-19 Vaccine Mandate, John Doe 1 faces the unconscionable choice of violating his own sincerely held religious beliefs by demanding he require his employees to accept the Governor's mandatory vaccine or potentially having to close his facility for failure to adhere to the Governor's requirements.

104.    **As of October 8, absent injunctive relief protecting his sincerely held religious convictions and those of his faith-based senior care facility, John Doe 1 will face daily fines and the potential closure of his facility for the mere act of exercising his religious beliefs**.

105.    Because of the Governor's COVID-19 Vaccine Mandate, John Doe 1 also faces the unconscionable choice of refusing to grant his employees' requests for exemption and accommodation from the Governor's COVID-19 Vaccine Mandate or facing significant daily fines and the closure of his facility.

106.    Because John Doe 2's request for an exemption and accommodation of his sincerely held religious beliefs has been denied by New York-Presbyterian, John Doe 2 faces the unconscionable choice of accepting a vaccine that conflicts with his religious beliefs or losing his job. Unless John Doe 2 immediately violates his conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, he will be terminated from his employment.

107.    Because Jane Doe 1's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by New York-Presbyterian, Jane Doe 1 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 1 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment.

108.    Additionally, **because Jane Doe 1 has merely requested an accommodation for her sincerely held religious beliefs, she has already been placed on unpaid leave and has been told she will be terminated if she does not violate her beliefs and comply with the Governor's mandate by September 10.**

28

109.    Because Jane Doe 2's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by WMC Health, Jane Doe 2 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 2 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment.

110.    Because Jane Doe 3's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by Trinity Health, Jane Doe 3 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 3 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment

111.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being prohibited from engaging in their constitutionally and statutorily protected rights to the free exercise of their sincerely held religious beliefs.

112.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being forced to choose between maintaining the ability to feed their families and the free exercise of their sincerely held religious beliefs.

113.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being stripped of their rights to equal protection of the law and being subjected to disfavored class status in New York.

### G. PLAINTIFFS' ATTEMPTS TO SECURE RELIEF PRIOR TO SEEKING A TRO AND PRELIMINARY INJUNCTION.

114. On September 1, 2021, Plaintiffs' counsel sent the Governor, Commissioner Zucker, and New York Attorney General Letitia James a letter informing them that the COVID-19 Vaccine Mandate, both on its own and in its interpretation and application by others, deprives Plaintiffs of their rights to request an accommodation of their sincerely held religious beliefs under federal law. (A true and correct copy of the Letter sent to the Governor, Commissioner, and Attorney General is attached hereto as **EXHIBIT K** and incorporated herein.)

115. Plaintiffs requested that the Governor withdraw her unlawful directives and publicly announce that any interpretation of her mandate to deprive Plaintiffs and all healthcare workers in New York of their rights to request and receive an exemption and accommodation for their sincerely held religious objections to the mandatory COVID-19 vaccine was unlawful and impermissible.

116. Plaintiffs requested the response and the public announcement from the Governor prior to September 7, 2021.

117. Plaintiffs' counsel requested a response informing counsel that the Governor would permit Plaintiffs and other healthcare workers with sincere religious objections to the vaccine to request and receive reasonable accommodation from the mandate.

118. Neither Governor Hochul, Commissioner Zucker, nor Attorney General James responded to Plaintiffs' counsel, nor announced that federal law would continue to apply in New York, nor provided any information to healthcare employers in New York that federal law required Defendants to accept and permit their healthcare employees to request and receive religious exemption and accommodation from the COVID-19 Vaccine Mandate.

30

## COUNT I—VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION.
### (All Plaintiffs v. Government Defendants)

119.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

120.    The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

121.    Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

122.    Plaintiffs reallege the discussion of their sincerely held religious beliefs (*supra* Section B) as if fully set forth herein.

123.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccine.

124.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

125.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

31

126.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their ability to feed their families.

127.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable.

128.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, specifically targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

129.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

130.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, constitutes a religious gerrymander by unconstitutionally orphaning exemption and accommodation requests based solely on sincerely held religious beliefs of healthcare workers in New York while permitting the more favored medical exemptions to be granted.

131.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

132.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

133.     There is no legitimate, rational, or compelling interest in the Governor's COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs.

134.     The Governor's COVID-19 Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest.

135.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

136.    Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

**COUNT II—DEFENDANTS' WILLFUL DISREGARD OF FEDERAL PROTECTIONS VIOLATES THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION BY ATTEMPTING TO MAKE NEW YORK LAW SUPERSEDE FEDERAL LAW**
**(All Plaintiffs v. All Defendants)**

137.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

138.    The Supremacy Clause provides:

> **This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 22 (emphasis added).

139.    "**When federal law forbids an action that state law requires, the state law is without effect**." *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 486 (2013) (emphasis added).

140.    Simply put, "**It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (emphasis added) (cleaned up).

33

141.    By claiming that the protections of Title VII are inapplicable in the State of New York, which all Defendants have either explicitly or tacitly stated, Defendants are running roughshod over the Supremacy Clause and appointing themselves independent of the protections of federal law.

142.    As demonstrated by Defendant New York-Presbyterian's response to John Doe 2, New York-Presbyterian believes that "**religious accommodations are no longer accepted**" in New York (Exhibit E at 1 (emphasis added).)

143.    More specifically, in response to Jane Doe 1's request for an accommodation for her sincerely held religious beliefs, New York-Presbyterian stated that because New York "made the determination to exclude religious exemptions . . . **NYP must follow the NYS DOH requirement [and] can no longer consider any religious exemptions.**" (Exhibit G at 2.)

144.    Similarly, in its response to Jane Doe 3, Trinity Health explicitly stated that "[w]e are required to comply with **state law**," and **state law "will not permit exemptions or deferrals for . . . Sincerely held religious beliefs**." (Exhibit J at 1 (emphasis added).)

145.    Thus, all Defendants have purported to remove the availability of religious exemptions and accommodations within the State of New York, have ignored Title VII's commands that employers provide reasonable accommodations to individuals with sincerely held religious beliefs, and have claimed that the Governor's COVID-19 Vaccine Mandate prohibits employers in New York from even considering a religious exemption or accommodation request.

146.    By purporting to place itself outside of the protections of Title VII and the First Amendment, New York and each individual Defendant have violated the most basic premise that "**federal law is as much the law of the several States as are the laws passed by their legislatures**." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added).

147.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

148.     Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

### COUNT III—VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (All Plaintiffs v. Government Defendants)

149.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

150.     The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

151.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is an unconstitutional abridgment of Plaintiffs' right to equal protection under the law, is not neutral, and specifically targets Plaintiffs' sincerely held religious beliefs for discriminatory and unequal treatment.

152.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits the State to treat Plaintiffs differently from other similarly situated healthcare workers on the basis of Plaintiffs' sincerely held religious beliefs.

153.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, singles out Plaintiffs for selective treatment based upon their sincerely held religious objections to the COVID-19 vaccines.

154.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is intended to inhibit and punish the exercise of Plaintiffs sincerely held religious beliefs and objections to the COVID-19 vaccines.

155.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, creates a system of classes and categories that permit the Governor to accommodate the exemptions of some healthcare workers while denying consideration of those individuals requesting religious exemptions to the COVID-19 Vaccine Mandate.

156.    By removing statutorily required religious accommodations from consideration in New York, the Governor has created and singled out for disparate treatment a specific class of healthcare employees (*i.e.*, religious objectors to COVID-19 vaccinations) as compared to other similarly situated healthcare workers (*i.e.*, those with medical exemption requests).

157.    There is no rational, legitimate, or compelling interest in the Governor's COVID-19 Vaccine Mandate's application of different standards to the similarly situated field of healthcare workers.

158.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, discriminates between religion and nonreligion by allowing certain, nonreligious exemptions to the COVID-19 Vaccine Mandate while prohibiting religious exemptions to the same mandate for the same similarly situated field of healthcare workers.

159.    The Governor's COVID-19 Vaccine Mandate and New York's removal of religious exemptions for healthcare workers in New York, on their face and as applied, are each a "status-

based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996).

160.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

161.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, along with the State Department of Health's removal of religious exemptions from immunizations—while keeping medical exemptions as perfectly acceptable in the healthcare field—results in a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

162.    "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [an exemption from the COVID-19 Vaccine Mandate] is itself a denial of equal protection of the laws in the most literal sense." *Id.* The Governor's COVID-19 Vaccine Mandate, on its face and as applied, and the State Department Of Health's removal of religious exemptions for healthcare workers, are each such a law.

163.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

164.    Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT IV—VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*
### (All Plaintiffs v. Private Employer Defendants)

165.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

166.     Title VII prohibits discrimination against employees on the basis of their religion. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .").

167.     Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Moreover, as the EEOC has made clear, Title VII's protections also extend nonreligious beliefs if related to morality, ultimate ideas about life, purpose, and death. *See EEOC*, *Questions and Answers: Religious Discrimination in the Workplace* (June 7, 2008), https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace ("Title VII's protections also extend to those who are discriminated against or need accommodation because they profess no religious beliefs."); (*Id.* ("Religious beliefs include theistic beliefs (i.e. those that include a belief in God) as well as non-theistic 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.' Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious, beliefs are not protected merely because they are strongly held. Rather, religion typically concerns 'ultimate ideas' about 'life, purpose, and death.'").)

38

168.     Each of Defendants New York-Presbyterian, WMC Health, and Trinity Health is an employer within the meaning of Title VII and employs more than 15 employees.

169.     By refusing to even consider, much less grant, any religious accommodation or exemption to the Governor's COVID-19 Vaccine Mandate, Defendants have discriminated against Plaintiffs' sincerely held religious beliefs with respect to the terms, conditions, and privileges of employment.

170.     By threatening to fire Plaintiffs unless they violate their sincerely held religious beliefs and comply with the Governor's COVID-19 Vaccine Mandate, Defendants have unlawfully discriminated against Plaintiffs by discharging them or constructively discharging them for the exercise of their religious beliefs.

171.     Each Plaintiff has a bona fide and sincerely held religious belief against the COVID-19 vaccines, as outlined above.

172.     Plaintiffs' sincerely held religious beliefs conflict with Defendants' policies in collusion with the Governor to impose the Governor's COVID-19 Vaccine Mandate and to withhold from Plaintiffs any consideration of sincerely held religious objections.

173.     Plaintiffs have all raised their sincerely held religious beliefs with their respective Defendant employers, have brought their objections and their desire for a religious accommodation and exemption to the respective Defendants' attention, and have requested a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

174.     Employer Defendants' termination, threatened termination, denial of benefits, and other adverse employment actions against Plaintiffs are the result of Plaintiffs' exercise of their sincerely held religious beliefs.

175.    Employer Defendants' refusal to consider or grant Plaintiffs' requests for accommodation and exemption from the Governor's COVID-19 Vaccine Mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

176.    Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT V—DEFENDANTS HAVE ENGAGED IN AN UNLAWFUL CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1985
### (All Plaintiffs v. All Defendants)

177.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

178.    Section 1985 provides a cause of action against public and private defendants who unlawfully conspire to deprive an individual of his constitutionally protected liberties. 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws").

179.    The elements of the claim of conspiracy to violate civil rights under § 1985 include (1) a conspiracy, (2) a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws or of a constitutionally protected liberty, (3) an overt act in furtherance of the conspiracy, and (4) a deprivation of a constitutionally protected right. *See Mian v. Donaldson, Lukin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

180.    The Governor's COVID-19 Vaccine Mandate, combined with the Defendant employers' agreements to enforce its provisions and revoke any potential for a religious exemption for healthcare workers in New York, constitutes a conspiracy to violate Plaintiffs' civil and constitutional rights.

181.    The Governor and Commissioner Zucker have both reached an agreement with the Defendant employers to deprive all healthcare workers in New York with any exemption or accommodation for the exercise of their sincerely held religious beliefs.

182.    The Governor and Defendant employers have reached an express or tacit agreement to mandate COVID-19 vaccines for their employees while explicitly agreeing to deprive them of their right to request and receive an accommodation and exemption for their sincerely held religious beliefs.

183.    The purpose behind the Governor's COVID-19 Vaccine Mandate, the State Department of Health's removal of the option for a religious exemption in the State of New York, and all Defendants' agreement to blatantly ignore federal law's requirement that employees be provided with a religious exemption and accommodation for sincerely held religious beliefs is based upon a conspiratorial purpose to deprive Plaintiffs of their rights to the exercise of their religious beliefs and equal protection.

184.    Defendants' conspiratorial agreement has been made express by their stating that no religious exemptions would be permitted and by informing Plaintiff employees of the legally ridiculous positions that Title VII does not apply in New York and that federal law does not supersede New York law when it comes to the Governor's COVID-19 Vaccine Mandate.

185.    The Governor has engaged in an overt act in furtherance of the conspiracy to deprive Plaintiffs of their civil rights by mandating that all healthcare workers receive a mandatory

COVID-19 vaccine and by failing to recognize that federal law provides each of these employees with the option to request and receive a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

186.    Defendant employers have each engaged in an overt act in furtherance of the conspiracy to deprive Plaintiffs of their civil rights by refusing to consider, evaluate, or accept any Plaintiff's request for a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

187.    By denying Plaintiffs their requested religious exemption and accommodation and threatening termination and discharge from employment because of the exercise of their sincerely held religious beliefs, Defendants' conspiracy has resulted in a deprivation of Plaintiffs' constitutionally protected rights to free exercise of religion.

188.    By denying Plaintiffs their requested religious exemption and accommodation and threatening termination and discharge from employment because of the exercise of their sincerely held religious beliefs while at the same time granting and accepting the preferred category and class of medical exemptions for similarly situated healthcare workers, Defendants' conspiracy has resulted in a deprivation of Plaintiffs' constitutionally protected rights to equal protection of the laws under the Fourteenth Amendment.

189.    Defendants' refusal to consider or grant Plaintiffs' requests for accommodation and exemption from the Governor's COVID-19 Vaccine Mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

190.    Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.     That the Court issue a temporary restraining order restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate such that:

  i.     Defendant Governor Hochul will not enforce her unconstitutional mandate that John Doe 1 require his employees to receive a COVID-19 vaccine and refuse to provide a religious exemption or accommodation for such employees in violation of John Doe 1's and his employees' sincerely held religious beliefs;

  ii.    Defendants immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

  iii.   Defendants will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, provided that Plaintiffs agree to abide by reasonable accommodation provisions such as masking, testing, symptom monitoring, and reporting;

       iv.     Defendants will immediately cease threatening to discharge and terminate Plaintiffs from their employment for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs; and

       v.     Defendants will immediately cease proclaiming that federal law does not apply in New York or otherwise declining Plaintiffs' requests for religious exemption on the basis that Title VII does not apply in the State of New York;

B.     That the Court issue a preliminary injunction pending trial, and a permanent injunction upon judgment, restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate such that:

       i.     Defendant Governor Hochul will not enforce her unconstitutional mandate that John Doe 1 require his employees to receive a COVID-19 vaccine and refuse to provide a religious exemption or accommodation for such employees in violation of John Doe 1's and his employees' sincerely held religious beliefs;

       ii.     Defendants immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

       iii.     Defendants will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, provided that Plaintiffs agree to abide by reasonable

accommodation provisions such as masking, testing, symptom monitoring, and reporting;

iv.    Defendants will immediately cease threatening to discharge and terminate Plaintiffs from their employment for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs; and

v.    Defendants will immediately cease proclaiming that federal law does not apply in New York or otherwise declining Plaintiffs' requests for religious exemption on the basis that Title VII does not apply in the State of New York;

C.    That this Court render a declaratory judgment declaring that the Governor's COVID-19 Vaccine Mandate, both on its face and as applied by Defendants is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from healthcare workers in New York, and further declaring that

i.    in imposing a mandatory COVID-19 vaccine without any provision for exemption or accommodation for sincerely held religious beliefs, the Governor has violated the First Amendment to the United States Constitution by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs while granting exemptions to similarly situated healthcare workers with medical exemptions to the COVID-19 Vaccine Mandate;

ii.    by refusing to consider or evaluate Plaintiffs' requests for religious exemption and accommodation, Defendants have violated Title VII and other federal protections for Plaintiffs in New York and have blatantly ignored the Supremacy Clause's mandate that federal protections for

religious objectors in New York supersede and apply with full force in New York;

iii. by terminating, threatening to terminate, or otherwise taking adverse employment action against Plaintiffs on the basis of their sincerely held religious beliefs, Defendants have violated Title VII of the Civil Rights Act of 1964;

iv. that by creating a class system in which religious objectors in New York are disparately and discriminatorily denied the option of receiving an exemption or accommodation while simultaneously allowing and granting exemptions for other nonreligious reasons, Defendant Governor Hochul has violated Plaintiffs' rights to equal protection of the law; and

v. that by entering into an agreement to unlawfully deprive Plaintiffs of their right to request and receive a religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, Defendants have conspired to violate Plaintiffs' civil rights to free exercise of religious beliefs and equal protection of the law;

D.     That this Court award Plaintiffs damages in an amount to be proven at trial, including damages for adverse employment action resulting in lost wages and other compensatory damages, and further including nominal damages in the absence of proof of damages;

E.     That this Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

    F.     That this Court retain jurisdiction over the matter for the purposes of enforcing the Court's order;

    G.     That this Court award Plaintiffs the reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988; and

    H.     That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
*Applications for Admission pro hac vice pending

***Attorneys for Plaintiffs***

## **VERIFICATION**

I, John Doe 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ John Doe 1
John Doe 1
(Original Signature of John Doe 1 retained by Counsel)

## **VERIFICATION**

I, John Doe Doe 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ John Doe 2
John Doe 2
(Original Signature of John Doe 2 retained by Counsel)

## **VERIFICATION**

I, Jane Doe 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 1
Jane Doe 1
(Original Signature of Jane Doe 1 retained by Counsel)

## **VERIFICATION**

I, Jane Doe 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 2_____
Jane Doe 2
(Original Signature of Jane Doe 2 retained by Counsel)

## **VERIFICATION**

I, Jane Doe 3, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 3_____
Jane Doe 3
(Original Signature of Jane Doe 3 retained by Counsel)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
John Does 1-2; Jane Does 1-3; Jack Does 1-750; Joan Does 1-750

**DEFENDANTS**
Kathy Hochul, in her official capacity as Governor of the State of New York, et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mathew Staver, Horatio Mihet, Roger Gannam, Daniel Schmid, Liberty  Counsel, PO Box 540774, Orlando, FL 32854

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury  - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983, 42 U.S.C. 2000e, First and Fourteenth Amendments to the United States Constitution
Brief description of cause:
Civil rights action challenging denial of religious exemptions for COVID-19 vaccine mandate for healthcare workers

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
9/10/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Roger K. Gannam

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| John Does 1-2; Jane Does 1-3; Jack Does 1-750; Joan Does 1-750 _____ *Plaintiff(s)* v. Kathy Hochul, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., _____ *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No.  21-CV-5067 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Kathy Hochul, Governor of New York
NYS State Capitol Building
Albany, NY 12224

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Roger K. Gannam
PO Box 540774
Orlando, FL 32854

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  21-CV-5067

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| John Does 1-2; Jane Does 1-3; Jack Does 1-750; Joan Does 1-750 <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> Kathy Hochul, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br> Civil Action No.  21-CV-5067 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Howard A. Zucker
Commissioner
New York State Department of Health
Corning Tower
Empire State Plaza
Albany, NY 12237

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Roger K. Gannam
PO Box 540774
Orlando, FL 32854

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____           _____

*Signature of Clerk or Deputy Clerk*

Civil Action No.  21-CV-5067

### PROOF OF SERVICE
***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                        *Server's signature*

                                            _____
                                                        *Printed name and title*

                                            _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| John Does 1-2; Jane Does 1-3; Jack Does 1-750; Joan Does 1-750 | ) ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 21-CV-5067 |
| Kathy Hochul, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., | ) ) ) ) ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  TRINITY HEALTH, INC.
ANDRE SALAMAN
92-16 ROCKAWAY BEACH BLVD,
ROCKAWAY BEACH, NY, United States, 11693

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Roger K. Gannam
PO Box 540774
Orlando, FL 32854

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                    *Signature of Clerk or Deputy Clerk*

Civil Action No. 21-CV-5067

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| John Does 1-2; Jane Does 1-3; Jack Does 1-750; Joan Does 1-750 <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> Kathy Hochul, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., <br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No.  21-CV-5067 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC.
OFFICE OF LEGAL AFFAIRS
NEW YORK-PRESBYTERIAN HOSPITAL
ATTENTION: GENERAL COUNSEL,
466 LEXINGTON AVENUE - BOX 36,
NEW YORK, NY, United States, 10017

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Roger K. Gannam
PO Box 540774
Orlando, FL 32854

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  21-CV-5067

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| John Does 1-2; Jane Does 1-3; Jack Does 1-750; Joan Does 1-750 <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> Kathy Hochul, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., <br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No.  21-CV-5067 |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C.
C/O WESTCHESTER COUNTY HEALTH CARE CORPORATION
100 WOODS RD.,
VALHALLA, NY, United States, 10595

        A lawsuit has been filed against you.

        Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Roger K. Gannam
PO Box 540774
Orlando, FL 32854

        If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  21-CV-5067

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Case 1:21-cv-05067-AMD-TAM   Document 37   Filed 08/17/21   Page 65 of 119 PageID #: 1929

**September 7, 2021** | 2:16 pm

## COVID-19 Vaccines

On August 23, the FDA announced the full approval of the Pfizer-BioNTech vaccine for the prevention of COVID-19 disease in individuals age 16 and older. Read more.

**DETAILS ›**



**GOVERNOR**
KATHY HOCHUL

**AUGUST 16, 2021** | Albany, NY

# Governor Cuomo Announces COVID-19 Vaccination Mandate for Healthcare Workers

**COVID-19 VACCINE**     **(/KI   HEALTH   )VID/KI   PUBLIC SAFETY**     **(/KEYWORDS/PUBLIC-**
                         **19-                                           SAFETY)**
                         **VACCINE)**

Department of Health Issues Section 16 Orders to Hospitals and Long-Term Care Facilities Requiring Policy to Ensure All Employees Are Vaccinated

First Dose Required by September 27

Department of Health Authorizes Third Dose for Immunocompromised New Yorkers

Governor Andrew M. Cuomo announced today that all healthcare workers in New York State, including staff at hospitals and long-term care facilities (LTCF), including nursing homes, adult care, and other congregate care settings, will be required to be vaccinated against COVID-19 by Monday, September 27. The State Department of Health will issue Section 16 Orders requiring all hospital, LTCF, and nursing homes to develop and implement a policy mandating employee vaccinations, with limited exceptions for those with religious or medical reasons. To date, 75% of the state's ~450,000 hospital workers, 74% of the state's ~30,000 adult care facility workers, and 68% of the state's ~145,500 nursing home workers have completed their vaccine series. Lt. Governor Kathy Hochul's administration was briefed prior to the announcement.

"When COVID ambushed New York last year, New Yorkers acted, while the Federal Government denied the problem," **Governor Cuomo said.** "Now, the Delta variant is spreading across the nation and across New York -- new daily positives are up over 1000% over the last six weeks (https://www.governor.ny.gov/sites/default/files/2021-08/Presentation1.pdf), and over 80 percent of recent positives in New York State are linked to the Delta variant. We must now act again to stop the spread. Our healthcare heroes led the battle against the virus, and now we need them to lead the battle between the variant and the vaccine. We have always followed the science, and we're doing so again today, with these recommendations by Dr. Zucker and federal and state health experts. But we need to do more. I have strongly urged private businesses to implement vaccinated-only admission policies, and school districts to mandate vaccinations for teachers. Neither will occur without the state legally mandating the actions -- private businesses will not enforce a vaccine mandate unless it's the law, and local school districts will be hesitant to make these challenging decisions without legal direction."

Governor Cuomo also announced that the Department of Health has authorized a third COVID-19 vaccine dose for New Yorkers with compromised immune systems, following the Centers for Disease Control and Prevention's recommendation last week. Eligible New Yorkers can receive their third dose 28 days after the completion of their two-dose vaccine series, effective immediately.

The CDC is currently recommending that moderately to severely immunocompromised people receive an additional dose, including people who have:

- Been receiving active cancer treatment for tumors or cancers of the blood;
- Received an organ transplant and are taking medications to suppress the immune system;
- Received a stem cell transplant within the last 2 years or are taking medicine to suppress the immune system;
- Moderate or severe primary immunodeficiency (such as DiGeorge syndrome, Wiskott-Aldrich syndrome);
- Advanced or untreated HIV infection;
- Active treatment with high-dose corticosteroids, cancer chemotherapy that causes severe immunosuppression, or other medications that may suppress your immune response.

New Yorkers should contact their healthcare provider about whether getting an additional dose is appropriate for them at this time.

**New York State Health Commissioner Dr. Howard Zucker said,** "While we have made tremendous progress in getting New Yorkers vaccinated, this pandemic is far from over and more must be done. The data and science tell us that getting more people vaccinated as quickly as possible is the best way to keep people safe, prevent further mutations, and enable us to

resume our daily routines. This mandate will both help close the vaccination gap and reduce the spread of the Delta variant. I want to thank all New York State's healthcare workers for stepping up once again and showing our state that getting vaccinated is safe, easy, and most importantly, effective."

These steps follow Governor Cuomo's August 2 announcement that MTA and Port Authority employees working in New York facilities will be required to be vaccinated for COVID-19 by Labor Day, and his July 28 announcement that state employees and patient-facing employees in state-run hospitals will be required to get vaccinated for COVID-19 by Labor Day. State employees who choose to remain unvaccinated will be required to undergo weekly COVID testing.

# Contact the Governor's Press Office

📞 **Contact us by phone:**

Albany: **(518) 474-8418**
New York City: **(212) 681-4640**

✉️ **Contact us by email:**

**Press.Office@exec.ny.gov**

# Translations

---

### Arabic Translation
الترجمة إلى العربية

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Arabic.pdf)

---

### Bengali Translation
বাংলা অনুবাদ

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Bengali.pdf)

### Chinese Translation
中文翻譯

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Chinese.pdf)

---

### Haitian-Creole Translation
Tradiksyon kreyòl ayisyen

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_HaitianCreole.pdf)

---

### Italian Translation
Traduzione italiana

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Italian.pdf)

---

### Korean Translation
한국어 번역

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Korean.pdf)

---

### Polish Translation
Polskie tłumaczenie

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Polish.pdf)

---

### Russian Translation
Перевод на русский язык

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Russian.pdf)

---

### Spanish Translation
Traducción al español

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Spanish.pdf)

---

### Yiddish Translation
אידישע איבערטייטשונג

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Yiddish.pdf)

---

STATE OF NEW YORK : DEPARTMENT OF HEALTH
--------------------------------------------------------------------------------

IN THE MATTER

OF

COVERED ENTITIES IN THE PREVENTION
AND CONTROL OF THE 2019 NOVEL
CORONAVIRUS
--------------------------------------------------------------------------------

**ORDER FOR
SUMMARY
ACTION**

WHEREAS the 2019 Novel Coronavirus ("COVID-19") is an infection associated with fever

and signs and symptoms of pneumonia and other respiratory illness that is easily transmitted

from person to person, predominantly through droplet transmission, and has significant public

health consequences; and

WHEREAS COVID-19 is a global pandemic that, to date, has resulted in 2,195,903 documented

cases and 43,277 deaths in New York State alone; and

WHEREAS the Centers for Disease Control and Prevention (CDC) has identified a concerning

national trend of increasing circulation of the Delta COVID-19 variant; and

WHEREAS the U.S. Food and Drug Administration (FDA) granted Emergency Use

Authorizations (EUA) for Pfizer -BioNTech, Moderna, and  Janssen COVID-19 vaccines which

have been shown to be safe and effective as determined by data from the manufacturers and

findings from large clinical trials; and

WHEREAS while New York State has aggressively promoted vaccination since COVID-19 vaccines first became available in December 2020, current vaccination rates are not high enough to prevent the spread of the Delta variant, which is approximately twice as transmissible as the original SARS-CoV-2 strain; and

WHEREAS data show that unvaccinated individuals are approximately 5 times as likely to be diagnosed with COVID-19 as are vaccinated individuals; and

WHEREAS those who are unvaccinated have over 10 times the risk of being seriously ill and hospitalized with COVID-19; and

WHEREAS since early July, cases have risen 10-fold, and 95 percent of sequenced recent positives in New York State were the Delta variant; and

WHEREAS certain settings, such as healthcare facilities, pose increased challenges and urgency for controlling the spread of this disease because of the vulnerable patient and resident populations that they serve; and

WHEREAS unvaccinated personnel in such settings have an unacceptably high risk of both acquiring COVID-19 and transmitting such virus to colleagues and/or vulnerable patients or residents; and

WHEREAS based upon the foregoing, the Commissioner of Health of the State of New York is of the Opinion that all entities identified in this Order ("covered entities"), must immediately implement and comply with the requirements identified herein, and that failure to do so constitutes a danger to the health, safety, and welfare of the people of the State of New York; and

WHEREAS the Commissioner of Health of the State of New York has determined that requiring covered entities to immediately implement and comply with the requirements set forth herein and cannot be achieved through alternative means, including the adoption of the Public Health and Health Planning Council of emergency regulations, without delay, which would be prejudicial to health, safety, and welfare of the people of the State of New York; and

WHEREAS it therefore appears to be prejudicial to the interest of the people to delay action for fifteen (15) days until an opportunity for a hearing can be provided in accordance with the provisions of Public Health Law Section (PHL) 12-a.

NOW, THEREFORE, THE HEALTH COMMISSIONER HEREBY ORDERS THAT:  Pursuant to PHL § 16:

(a)  Definitions.

  (1)  Covered entity shall mean a general hospital or nursing home pursuant to section 2801 of the Public Health Law.

  (2)  Covered Personnel. All persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if

they were infected with COVID-19, they could potentially expose, patients, residents, or personnel working for such entity to the disease.

(3) Fully vaccinated. Covered personnel are considered fully vaccinated for COVID-19 ≥ 2 weeks after receiving either (1) the second dose in a 2-dose series (e.g., Pfizer-BioNTech or Moderna), or (2) a single-dose vaccine (e.g., Johnson & Johnson [J&J]/Janssen), authorized for emergency use or approved by the U.S. Food and Drug Administration, and holds an emergency use listing by the World Health Organization.

(4) Documentation of vaccination shall include:

 (i) a record prepared and signed by the licensed health practitioner who administered the vaccine, which may include a CDC COVID-19 vaccine card;

 (ii) an official record from one of the following, which may be accepted as documentation of immunization without a health practitioner's signature: a foreign nation, NYS Countermeasure Data Management System (CDMS), the NYS Immunization Information System (NYSIIS), City Immunization Registry (CIR), a Department-recognized immunization registry of another state, or an electronic health record system; or

 (iii) any other documentation determined acceptable by the Department. Unless otherwise specified by the Department.

 (iv) The following elements, unless otherwise specified by the Department: manufacturer, lot number(s), date(s) of vaccination; and vaccinator or vaccine clinic site.

(b) Covered entities shall continuously require all covered personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021. Documentation of such vaccination shall be made in personnel records or other appropriate records in accordance with applicable privacy laws, except as set forth in section (c) of this order.

(c) Limited exemptions to vaccination:

1.  Medical exemption. If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to a specific member of a covered entity's personnel, based upon a specific pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be subject to a reasonable accommodation of such health condition only until such immunization is found no longer to be detrimental to the health of such member. The nature and duration of the medical exemption must be stated in the personnel employment medical record and must be in accordance with generally accepted medical standards, (see, for example, the recommendations of the Advisory Committee on Immunization Practices of the U.S. Department of Health and Human Services).  Covered entities shall document medical exemptions and any reasonable accommodation in personnel records or other appropriate records in accordance with applicable privacy laws by September 27, 2021, and continuously, as needed, thereafter.

2.  Religious exemption. Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the

employer. Covered entities shall document such exemptions and such reasonable accommodations in personnel records or other appropriate records in accordance with applicable privacy laws by September 27, 2021, and continuously, as needed, thereafter.

(d) Upon the request of the Department, covered entities must report the number and percentage of covered personnel that have been vaccinated against COVID-19 and the number of personnel for which medical or religious exemptions have been granted by covered entities in a manner and format determined by the Department.

(e) Covered entities shall develop and implement a policy and procedure to ensure compliance with the provisions of Order.

(f) The Department may require all covered personnel, whether vaccinated or unvaccinated, to wear acceptable face coverings for the setting in which they work. Covered entities shall supply acceptable face coverings required by this section at no cost to covered personnel.

FURTHER, I DO HEREBY give notice that any entity that receives notice of and is subject to this Order is provided with an opportunity to be heard at 10:00 a.m. on September 2, 2021, via videoconference, to present any proof that failure to implement and comply with the requirements of this Order does not constitute a danger to the health of the people of the State of New York. If any such entity desires to participate in such a hearing, please inform the Department by written notification to **Vaccine.Order.Hearing@health.ny.gov**, New York State Department of Health, Corning Tower, Room 2438, Governor Nelson A. Rockefeller Empire

State Plaza, Albany, New York 12237, within five (5) days of their receipts of this Order. Please

include in the notification the email addresses of all individuals who will be representing or

testifying for the entity at the hearing so that an invitation to access the hearing remotely can be

provided.


DATED:        Albany, New York              NEW YORK STATE DEPARTMENT OF HEALTH
              August 18, 2021


                              *Howard Zucker M.D.*

              BY: _____
                      HOWARD A. ZUCKER, M.D., J.D.
                      Commissioner of Health

Pursuant to the authority vested in the Public Health and Health Planning Council and the Commissioner of Health by Public Health Law Sections 225, 2800, 2803, 3612, and 4010, as well as Social Services Law Sections 461 and 461-e, Title 10 (Health) of the Official Compilation of Codes, Rules and Regulations of the State of New York, is amended, to be effective upon filing with the Department of State, to read as follows:

*Part 2 is amended to add a new section 2.61, as follows:*

2.61. Prevention of COVID-19 transmission by covered entities.

(a) Definitions.

  (1)      "Covered entities" for the purposes of this section, shall include:

         (i) any facility or institution included in the definition of "hospital" in section 2801 of the Public Health Law, including but not limited to general hospitals, nursing homes, and diagnostic and treatment centers;

         (ii) any agency established pursuant to Article 36 of the Public Health Law, including but not limited to certified home health agencies, long term home health care programs, acquired immune deficiency syndrome (AIDS) home care programs, licensed home care service agencies, and limited licensed home care service agencies;

         (iii) hospices as defined in section 4002 of the Public Health Law; and

         (iv) adult care facility under the Department's regulatory authority, as set forth in Article 7 of the Social Services Law.

(2) "Personnel," for the purposes of this section, shall mean all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.

(3) "Fully vaccinated," for the purposes of this section, shall be determined by the Department in accordance with applicable federal guidelines and recommendations. Unless otherwise specified by the Department, documentation of vaccination must include the manufacturer, lot number(s), date(s) of vaccination; and vaccinator or vaccine clinic site, in one of the following formats:

(i) record prepared and signed by the licensed health practitioner who administered the vaccine, which may include a CDC COVID-19 vaccine card;

(ii) an official record from one of the following, which may be accepted as documentation of immunization without a health practitioner's signature: a foreign nation, NYS Countermeasure Data Management System (CDMS), the NYS Immunization Information System (NYSIIS), City Immunization Registry (CIR), a Department-recognized immunization registry of another state, or an electronic health record system; or

(iii) any other documentation determined acceptable by the Department.

(c) Covered entities shall continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 for general hospitals and nursing homes, and by October 7, 2021 for all other covered entities absent receipt of an exemption as allowed below. Documentation of such vaccination shall be made in personnel records or other appropriate records in accordance with applicable privacy laws, except as set forth in subdivision (d) of this section.

(d) Exemptions. Personnel shall be exempt from the COVID-19 vaccination requirements set forth in subdivision (c) of this section as follows:

(1) Medical exemption. If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health. The nature and duration of the medical exemption must be stated in the personnel employment medical record, or other appropriate record, and must be in accordance with generally accepted medical standards, (see, for example, the recommendations of the Advisory Committee on Immunization Practices of the U.S. Department of Health and Human Services), and any reasonable accommodation may be granted and must likewise be documented in such record.  Covered entities shall document medical exemptions in personnel records or other appropriate records in accordance with applicable privacy laws by: (i) September 27, 2021 for general hospitals and nursing homes; and (ii) October 7,

2021 for all other covered entities. For all covered entities, documentation must occur continuously, as needed, following the initial dates for compliance specified herein, including documentation of any reasonable accommodation therefor.

(e) Upon the request of the Department, covered entities must report and submit documentation, in a manner and format determined by the Department, for the following:

(1) the number and percentage of personnel that have been vaccinated against COVID-19;

(2) the number and percentage of personnel for which medical exemptions have been granted;

(3) the total number of covered personnel.

(f) Covered entities shall develop and implement a policy and procedure to ensure compliance with the provisions of this section and submit such documents to the Department upon request.

(g) The Department may require all personnel, whether vaccinated or unvaccinated, to wear an appropriate face covering for the setting in which such personnel are working in a covered entity. Covered entities shall supply face coverings required by this section at no cost to personnel.

*Subparagraph (vi) of paragraph (10) of subdivision (b) of Section 405.3 of Part 405 is added to read as follows:*

(vi) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation immediately available upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (5) of subdivision (a) of Section 415.19 of Part 415 is added to read as follows:*

(5) collects documentation of COVID-19 or documentation of a valid medical exemption to such vaccination, for all personnel pursuant to section 2.61 of this title, in accordance with applicable privacy laws, and making such documentation immediately available upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (7) of subdivision (d) of Section 751.6 is added to read as follows:*

(7) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department
, as well as any reasonable accommodation addressing such exemption.

*Paragraph (6) of subdivision (c) of Section 763.13 is added to read as follows:*

(6) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making

such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (7) of subdivision (d) of Section 766.11 is added to read as follows:*

(7) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (8) of subdivision (d) of Section 794.3 is added to read as follows:*

(8) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (v) of subdivision (q) of Section 1001.11 is added to read as follows:*

(v)  documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (18) of subdivision (a) of Section 487.9 of Title 18 is added to read as follows:*

(18) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of Title 10, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (14) of subdivision (a) of Section 488.9 of Title 18 is added to read as follows:*

(14) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of Title 10, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (15) of subdivision (a) of Section 490.9 of Title 18 is added to read as follows:*

(15) Operator shall collect documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of Title 10, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

# REGULATORY IMPACT STATEMENT

**Statutory Authority:**

The authority for the promulgation of these regulations is contained in Public Health Law (PHL) Sections 225(5), 2800, 2803(2), 3612 and 4010 (4). PHL 225(5) authorizes the Public Health and Health Planning Council (PHHPC) to issue regulations in the State Sanitary Code pertaining to any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York, including designation and control of communicable diseases and ensuring infection control at healthcare facilities and any other premises.

PHL Article 28 (Hospitals), Section 2800 specifies that "hospital and related services including health-related service of the highest quality, efficiently provided and properly utilized at a reasonable cost, are of vital concern to the public health. In order to provide for the protection and promotion of the health of the inhabitants of the state, pursuant to section three of article seventeen of the constitution, the department of health shall have the central, comprehensive responsibility for the development and administration of the state's policy with respect to hospital and related services, and all public and private institutions, whether state, county, municipal, incorporated or not incorporated, serving principally as facilities for the prevention, diagnosis or treatment of human disease, pain, injury, deformity or physical condition or for the rendering of health-related service shall be subject to the provisions of this article."

PHL Section 2803(2) authorizes PHHPC to adopt and amend rules and regulations, subject to the approval of the Commissioner, to implement the purposes and provisions of PHL Article 28, and to establish minimum standards governing the operation of health care facilities.

PHL Section 3612 authorizes PHHPC to adopt and amend rules and regulations, subject to the approval of the Commissioner, with respect to certified home health agencies, long term home health care programs, acquired immune deficiency syndrome (AIDS) home care programs, licensed home care service agencies, and limited licensed home care service agencies.  PHL Section 4010 (4) authorizes PHHPC to adopt and amend rules and regulations, subject to the approval of the Commissioner, with respect to hospice organizations.

Social Service Law (SSL) Section 461 requires the Department to promulgate regulations establishing general standards applicable to Adult Care Facilities (ACF). SSL Section 461-e authorizes the Department to promulgate regulations to require adult care facilities to maintain certain records with respect to the facilities residents and the operation of the facility.

**Legislative Objectives:**

The legislative objective of PHL Section 225 empowers PHHPC to address any issue affecting the security of life or health or the preservation and improvement of public health in the state of New York, including designation and control of communicable diseases and ensuring infection control at healthcare facilities and any other premises. PHL Article 28 specifically addresses the protection of the health of the residents of the State by assuring the efficient provision and proper utilization of health services of the highest quality at a reasonable cost. PHL Article 36 addresses the services rendered by certified home health agencies, long term home health care programs, acquired immune deficiency syndrome (AIDS) home care programs, licensed home care service agencies, and limited licensed home care service agencies. PHL Article 40 declares that hospice is a socially and financially beneficial alternative to conventional

curative care for the terminally ill.  Lastly, the legislative objective of SSL Section 461 is to promote the health and well-being of residents of ACFs.

**Needs and Benefits:**

The Centers for Disease Control and Prevention (CDC) has identified a concerning national trend of increasing circulation of the SARS-CoV-2 Delta variant. Since early July, cases have risen 10-fold, and 95 percent of the sequenced recent positives in New York State were the Delta variant.  Recent New York State data show that unvaccinated individuals are approximately 5 times as likely to be diagnosed with COVID-19 compared to vaccinated individuals.  Those who are unvaccinated have over 11 times the risk of being hospitalized with COVID-19.

The COVID-19 vaccines are safe and effective.  They offer the benefit of helping to reduce the number of COVID-19 infections, including the Delta variant, which is a critical component to protecting public health.  Certain settings, such as healthcare facilities and congregate care settings, pose increased challenges and urgency for controlling the spread of this disease because of the vulnerable patient and resident populations that they serve. Unvaccinated personnel in such settings have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients or residents, exacerbating staffing shortages, and causing unacceptably high risk of complications.

In response to this significant public health threat, through this emergency regulation, the Department is requiring covered entities to ensure their personnel are fully vaccinated against COVID-19, and to document evidence thereof in appropriate records.  Covered entities are also required to review and make determinations on medical exemption requests, and provide

reasonable accommodations therefor to protect the wellbeing of the patients, residents and personnel in such facilities. Documentation and information regarding personnel vaccinations as well as exemption requests granted are required to be provided to the Department immediately upon request.

**Costs for the Implementation of and Continuing Compliance with these Regulations to the Regulated Entity:**

Covered entities must ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. Covered entities must also review and make determinations on requests for medical exemptions, which must also be documented in personnel or other appropriate records, as well as any reasonable accommodations. This is a modest investment to protect the health and safety of patients, residents, and personnel, especially when compared to both the direct medical costs and indirect costs of personnel absenteeism.

**Cost to State and Local Government:**

The State operates several healthcare facilities subject to this regulation. Most county health departments are licensed under Article 28 or Article 36 of the PHL and are therefore also subject to regulation. Similarly, certain counties and the City of New York operate facilities licensed under Article 28. These State and local public facilities would be required to ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. They must also review and make determinations on requests for

medical exemptions, which must also be documented in personnel or other appropriate records, along with any reasonable accommodations.

Although the costs to the State or local governments cannot be determined with precision, the Department does not expect these costs to be significant.  State facilities should already be ensuring COVID-19 vaccination among their personnel, subject to State directives. Further, these entities are expected to realize savings as a result of the reduction in COVID-19 in personnel and the attendant loss of productivity and available staff.

**Cost to the Department of Health:**

There are no additional costs to the State or local government, except as noted above. Existing staff will be utilized to conduct surveillance of regulated parties and to monitor compliance with these provisions.

**Local Government Mandates:**

Covered entities operated by local governments will be subject to the same requirements as any other covered entity subject to this regulation.

**Paperwork:**

This measure will require covered entities to ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. Covered entities must also review and make determinations on requests for medical exemptions, which must also be documented in personnel or other appropriate records along with any reasonable accommodations.

Upon the request of the Department, covered entities must report the number and percentage of total covered personnel, as well as the number and percentage that have been vaccinated against COVID-19 and those who have been granted a medical exemption, along with any reasonable accommodations.  Facilities and agencies must develop and implement a policy and procedure to ensure compliance with the provisions of this section, making such documents available to the Department upon request.

**Duplication:**

This regulation will not conflict with any state or federal rules.

**Alternative Approaches:**

One alternative would be to require covered entities to test all personnel in their facility before each shift worked. This approach is limited in its effect because testing only provides a person's status at the time of the test and testing every person in a healthcare facility every day is impractical and would place an unreasonable resource and financial burden on covered entities if PCR tests couldn't be rapidly turned around before the commencement of the shift. Antigen tests have not proven as reliable for asymptomatic diagnosis to date.

Another alternative to requiring covered entities to mandate vaccination would be to require covered entities to mandate all personnel to wear a fit-tested N95 face covering at all times when in the facility, in order to prevent transmission of the virus. However, acceptable face coverings, which are not fit-tested N95 face coverings have been a long-standing requirement in these covered entities, and, while helpful to reduce transmission it does not prevent transmission

and; therefore, masking in addition to vaccination will help reduce the numbers of infections in these settings even further.

**Federal Requirements:**

There are no minimum standards established by the federal government for the same or similar subject areas.

**Compliance Schedule:**

These proposed emergency regulations will become effective upon filing with the Department of State and will expire, unless renewed, 90 days from the date of filing.   As the COVID-19 pandemic is consistently and rapidly changing, it is not possible to determine the expected duration of need at this point in time.   The Department will continuously evaluate the expected duration of these emergency regulations throughout the aforementioned 90-day effective period in making determinations on the need for continuing this regulation on an emergency basis or issuing a notice of proposed ruling-making for permanent adoption.  This notice does not constitute a notice of proposed or revised rule making for permanent adoption.

**Contact Person:**     Ms. Katherine E. Ceroalo
NYS Department of Health
Bureau of House Counsel, Regulatory Affairs Unit
Corning Tower Building, Room 2438
Empire State Plaza
Albany, NY 12237
(518) 473-7488
(518) 473-2019 –FAX
REGSQNA@health.state.ny.us

# REGULATORY FLEXIBILITY ANALYSIS

**Effect on Small Business and Local Government:**

This regulation will not impact local governments or small businesses unless they operate a covered entity as defined in the proposed emergency regulation. Currently, 5 general hospitals, 79 nursing homes, 75 certified home health agencies (CHHAs), 20 hospices and 1,055 licensed home care service agencies (LHCSAs), and 483 adult care facilities (ACFs) are small businesses (defined as 100 employees or less), independently owned and operated affected by this rule. Local governments operate 19 hospitals, 137 diagnostic and treatment facilities, 21 nursing homes, 12 CHHAs, at least 48 LHCSAs, 1 hospice, and 2 ACFs.

**Compliance Requirements:**

Covered entities are required to ensure their personnel are fully vaccinated against COVID-19, and to document evidence thereof in appropriate records. Covered entities are also required to review and make determinations on medical exemption requests, along with any reasonable accommodations.

Upon the request of the Department, covered entities must report the number and percentage of total covered personnel, as well as the number and percentage that have been vaccinated against COVID-19 and those who have been granted a medical exemption, along with any reasonable accommodations. Facilities and agencies must develop and implement a policy and procedure to ensure compliance with the provisions of this section, making such documents available to the Department upon request.

**Professional Services:**

There are no additional professional services required as a result of this regulation.

**Compliance Costs:**

Covered entities must ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. Covered entities must also review and make determinations on requests for medical exemptions, which must also be documented in personnel or other appropriate records, along with any reasonable accommodations. This is a modest investment to protect the health and safety of patients, residents, and personnel, especially when compared to both the direct medical costs and indirect costs of personnel absenteeism.

**Economic and Technological Feasibility:**

There are no economic or technological impediments to the rule changes.

**Minimizing Adverse Impact:**

As part of ongoing efforts to address the COVID-19 pandemic, regulated parties have been a partner in implementing measures to limit the spread and/or mitigate the impact of COVID-19 within the Department since March of 2020. Further, the Department currently has an emergency regulation in place, which requires nursing homes and adult care facilities to offer COVID-19 vaccination to personnel and residents, which has helped to facilitated vaccination of personnel. Further, it is the Department's understanding that many facilities across the State have begun to impose mandatory vaccination policies. Lastly, on August 18, 2021, President Biden announced that as a condition of participating in the Medicare and Medicaid programs, the United States Department of Health and Human Services will be developing regulations requiring nursing homes to mandate COVID-19 vaccination for workers.

**Small Business and Local Government Participation:**

Due to the emergent nature of COVID-19, small businesses and local governments were not consulted.  If these regulations are proposed for permanent adoption, all parties will have an opportunity to provide comments during the notice and comment period.

## RURAL AREA FLEXIBILITY ANALYSIS

**Type and Estimated Numbers of Rural Areas:**

While this rule applies uniformly throughout the state, including rural areas, for the purposes of this Rural Area Flexibility Analysis (RAFA), "rural area" means areas of the state defined by Exec. Law § 481(7) (SAPA § 102(10)).  Per Exec. Law § 481(7), rural areas are defined as "counties within the state having less than two hundred thousand population, and the municipalities, individuals, institutions, communities, and programs and such other entities or resources found therein.  In counties of two hundred thousand or greater population 'rural areas' means towns with population densities of one hundred fifty persons or less per square mile, and the villages, individuals, institutions, communities, programs and such other entities or resources as are found therein."

The following 42 counties have an estimated population of less than 200,000 based upon 2019 United States Census projections:

| | | |
|---|---|---|
| Allegany County | Greene County | Schuyler County |
| Broome | Hamilton County | Seneca County |
| Cattaraugus County | Herkimer County | St. Lawrence County |
| Cayuga County | Jefferson County | Steuben County |
| Chautauqua County | Lewis County | Sullivan County |
| Chemung County | Livingston County | Tioga County |
| Chenango County | Madison County | Tompkins County |
| Clinton County | Montgomery County | Ulster County |
| Columbia County | Ontario County | Warren County |
| Cortland County | Orleans County | |
| Delaware County | Schoharie County | |

Essex County

Franklin County

Fulton County

Genesee County

Oswego County

Otsego County

Putnam County

Rensselaer County

Schenectady County

Washington County

Wayne County

Wyoming County

Yates County

The following counties of have population of 200,000 or greater, and towns with population densities of 150 person or fewer per square mile, based upon 2019 United States Census population projections:

Albany County

Dutchess County

Erie County

Monroe County

Niagara County

Oneida County

Onondaga County

Orange County

Saratoga County

Suffolk County

**Reporting, recordkeeping, and other compliance requirements; and professional services:**

Covered entities are required to ensure their personnel are fully vaccinated against COVID-19, and to document evidence thereof in appropriate records. Covered entities are also required to review and make determinations on medical exemption requests, along with any reasonable accommodations.

Upon the request of the Department, covered entities must report the number and percentage of total covered personnel, as well as the number and percentage that have been vaccinated against COVID-19 and those who have been granted a medical exemption, along with any reasonable accommodations. Facilities and agencies must develop and implement a policy

and procedure to ensure compliance with the provisions of this section, making such documents available to the Department upon request.

**Compliance Costs:**

Covered entities must ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records.  Covered entities must also review and make determinations on requests for medical exemptions, which must also be documented in personnel or other appropriate records, along with any reasonable accommodations. This is a modest investment to protect the health and safety of patients, residents, and personnel, especially when compared to both the direct medical costs and indirect costs of personnel absenteeism.

**Minimizing Adverse Impact:**

As part of ongoing efforts to address the COVID-19 pandemic, regulated parties have been a partner in implementing measures to limit the spread and/or mitigate the impact of COVID-19 within the Department since March of 2020.  Further, the Department currently has an emergency regulation in place, which requires nursing homes and adult care facilities to offer COVID-19 vaccination to personnel and residents, which has helped to facilitated vaccination of personnel.  Further, it is the Department's understanding that many facilities across the State have begun to impose mandatory vaccination policies. Lastly, on August 18, 2021, President Biden announced that as a condition of participating in the Medicare and Medicaid programs, the United States Department of Health and Human Services will be developing regulations requiring nursing homes to mandate COVID-19 vaccination for workers.

**Rural Area Participation:**

Due to the emergent nature of COVID-19, parties representing rural areas were not consulted. If these regulations are proposed for permanent adoption, all parties will have an opportunity to provide comments during the notice and comment period.

# JOB IMPACT STATEMENT

**Nature of Impact:**

Covered entities may terminate personnel who are not fully vaccinated and do not have a valid medical exemption and are unable to otherwise ensure individuals are not engaged in patient/resident care or expose other covered personnel.

**Categories and numbers affected:**

This rule may impact any individual who falls within the definition of "personnel" who is not fully vaccinated against COVID-19 and does not have a valid medical exemption on file with the covered entity for which they work or are affiliated.

**Regions of adverse impact:**

The rule would apply uniformly throughout the State and the Department does not anticipate that there will be any regions of the state where the rule would have a disproportionate adverse impact on jobs or employment.

**Minimizing adverse impact:**

As part of ongoing efforts to address the COVID-19 pandemic, regulated parties have been a partner in implementing measures to limit the spread and/or mitigate the impact of COVID-19 within the Department since March of 2020.  Further, the Department currently has an emergency regulation in place, which requires nursing homes and adult care facilities to offer COVID-19 vaccination to personnel and residents, which has helped to facilitated vaccination of personnel.  Further, it is the Department's understanding that many facilities across the State

have begun to impose mandatory vaccination policies. Lastly, on August 18, 2021, President

Biden announced that as a condition of participating in the Medicare and Medicaid programs, the

United States Department of Health and Human Services will be developing regulations

requiring nursing homes to mandate COVID-19 vaccination for workers.

# EMERGENCY JUSTIFICATION

The Centers for Disease Control and Prevention (CDC) has identified a concerning national trend of increasing circulation of the SARS-CoV-2 Delta variant. Since early July, cases have risen 10-fold, and 95 percent of the sequenced recent positives in New York State were the Delta variant. Recent New York State data show that unvaccinated individuals are approximately 5 times as likely to be diagnosed with COVID-19 compared to vaccinated individuals. Those who are unvaccinated have over 11 times the risk of being hospitalized with COVID-19.

The COVID-19 vaccines are safe and effective. They offer the benefit of helping to reduce the number of COVID-19 infections, including the Delta variant, which is a critical component to protecting public health. Certain settings, such as healthcare facilities and congregate care settings, pose increased challenges and urgency for controlling the spread of this disease because of the vulnerable patient and resident populations that they serve. Unvaccinated personnel in such settings have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients or residents, exacerbating staffing shortages, and causing unacceptably high risk of complications.

In response to this significant public health threat, through this emergency regulation, the Department is requiring covered entities to ensure their personnel are fully vaccinated against COVID-19, and to document evidence thereof in appropriate records. Covered entities are also required to review and make determinations on medical exemption requests, and provide reasonable accommodations therefor to protect the wellbeing of the patients, residents and personnel in such facilities. Documentation and information regarding personnel vaccinations as well as exemption requests granted are required to be provided to the Department immediately upon request.

Based on the foregoing, the Department has determined that these emergency regulations are necessary to control the spread of COVID-19 in the identified regulated facilities or entities. As described above, current circumstances and the risk of spread to vulnerable resident and patient populations by unvaccinated personnel in these settings necessitate immediate action and, pursuant to the State Administrative Procedure Act Section 202(6), a delay in the issuance of these emergency regulations would be contrary to public interest.

**From:**
**To:**
**Subject:**      Fwd: VaxApp - Religious/Deeply Held Belief Exemption Request Update
**Date:**

FYI

---

**From:** VaxApp-DoNotReply@nyp.org <VaxApp-DoNotReply@nyp.org>
**Sent:** Wednesday, July 28, 2021 10:20 AM
**To:**
**Subject:** VaxApp - Religious/Deeply Held Belief Exemption Request Update

Your request for exemption from the COVID-19 vaccine has been approved.
Please note that this exemption will be good for this COVID-19 vaccine period.
If your approval is for a temporary medical exemption, the approval is good
through the deferral date provided by the WHS provider.

Should you have any questions, please email whs-datamanagement@nyp.org
or contact the WHS hotline at 646-697-9470. As a reminder, you can check the
status of your exemption request in VaxApp.

---

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies
(http://infonet.nyp.org/QA/HospitalManual).

**From:**
**To:**
**Subject:**      Fwd: Vaccine Mandate Exemption
**Date:**        Wednesday, September 08, 2021 5:58:27 PM

FYI

---

**From:** WHS-Data Management
**Sent:** Wednesday, September 8, 2021 12:00 PM
**To:**
**Subject:** RE: Vaccine Mandate Exemption

Religious exemptions are no longer accepted.  This does not impact an approved or submitted Medical exemption request. No alternative options for fully remote staff at this time.

WHS

---

**From:**
**Sent:** Tuesday, September 7, 2021 1:03 PM
**To:** WHS-Data Management <whs-datamanagement@nyp.org>
**Subject:** Vaccine Mandate Exemption

Good Afternoon.

What are the options for an employee whom had a previously approved medical exemption which is now voided due to the change in NYS Religious Exemptions?

Can there be alternative options for employees whom are fully remote? Can they agree to weekly testing and 100% Mask compliance?

Thanks in advance.

---

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

---

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

**From:**
**To:**
**Subject:**     Fwd: Fw: VaxApp - Religious/Deeply Held Belief Exemption Request Update
**Date:**        Wednesday, September 08, 2021 5:30:36 PM

Below- 8/24 approved.

---------- Forwarded message ---------
From:
Date: Fri, Sep 3, 2021 at 1:29 PM
Subject: Fw: VaxApp - Religious/Deeply Held Belief Exemption Request Update
To:

Patient Services Administration
**NewYork- Presbyterian Brooklyn Methodist Hospital**

**From:** VaxApp-DoNotReply@nyp.org <VaxApp-DoNotReply@nyp.org>
**Sent:** Tuesday, August 24, 2021 8:42 PM
**To:**
**Subject:** VaxApp - Religious/Deeply Held Belief Exemption Request Update

Your request for exemption from the COVID-19 vaccine has been approved. Please note that this exemption will be good for this COVID-19 vaccine period. If your approval is for a temporary medical exemption, the approval is good through the deferral date provided by the WHS provider.

Should you have any questions, please contact the WHS hotline at 646-697-9470. As a reminder, you can check the status of your exemption request in VaxApp.

Confidential Information subject to NYP's (and its affiliates'| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

This electronic message is intended to be for the use only of the named recipient, and may contain information that is confidential or privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error or are not the named recipient, please notify us immediately by contacting the sender at the electronic mail address noted above, and delete and destroy all copies of this message. Thank you.

code:d34y


--

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Subject:** | Fwd: Fw: UPDATE: COVID-19 Vaccination Program |
| **Date:** | Wednesday, September 08, 2021 5:33:00 PM |

Below- general email that was sent on 8/30at 5:13pm.

---------- Forwarded message ---------
From:
Date: Fri, Sep 3, 2021 at 1:25 PM
Subject: Fw: UPDATE: COVID-19 Vaccination Program
To:

Patient Services Administration
**NewYork- Presbyterian Brooklyn Methodist Hospital**
(718) 780-3375

---

**From:** Notify NYP
**Sent:** Monday, August 30, 2021 5:13 PM
**To:** Notify NYP
**Subject:** UPDATE: COVID-19 Vaccination Program

Dear Colleagues:

We want to express our thanks to all of our NYP team members who have participated in our COVID-19 Vaccination Program˝ either by receiving the COVID-19 vaccine, or by applying for an exemption due to a medical contraindication or pregnancy. The vaccines are the most effective tool available to protect all of us against COVID-19 and the highly contagious Delta variant. Please see below for key information and dates regarding our vaccine program, and an important update.

**Key Dates:**

If you have not yet received your vaccination, please keep in mind the upcoming deadlines for NYP employees. Staff must receive the first dose of the vaccine or have an approved medical exemption by no later than **September 15, 2021** (with the second dose of a two-dose vaccine to be received by October 15)**.** For Supervisors and above, the deadline is **September 1.**

**NYP employees who do not comply with the vaccination program by the deadlines above will be placed off duty for seven days without pay**, and given those seven days to meet the program requirements. Employees who choose not to meet the program requirements after seven days will be deemed to have opted to resign. We want all of our team members to continue working with us as we balance the imperative to protect our patients, employees, and communities.

**Important Update on the Exemption Process:**

When the NYP COVID-19 Vaccination Program was established, it included a process by which employees could apply for an exemption on the basis of certain medical conditions or religious beliefs. Soon after, New York State issued orders requiring all health care workers in the state, including workers in hospitals, and in long-term care facilities or nursing homes, to receive the COVID-19 vaccine, with limited exemptions for medical or religious reasons.

Late last week, the Public Health and Health Planning Council of the NYS Department of Health formally approved and adopted the state*s COVID-19 vaccination requirement for health care workers. **In addition, the Council made the determination to exclude religious exemptions as an alternative to receiving the vaccine.** The DOH cited examples of measles and other vaccinations, which are required of NY health care workers, as also not having a religious exemption. As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination 每 even those previously approved.**

NYS has also indicated they will be issuing further guidance on medical exemptions. We will keep you updated on that or any other vaccination-related information as it evolves.

**How to Access the Vaccine:**

You may receive your COVID-19 vaccination by walking in to your local NYP WHS clinic during our recently extended hours. No appointment is needed. **View the updated WHS schedule here.** Or, you may receive the vaccine outside of NYP. Our **COVID Vaccine Finder by State** can help you find a convenient location. If you are vaccinated outside of NYP, please log in to **VaxApp** with your NYP CWID and password, and upload a copy of your vaccination record as soon as possible as it can take a few days to validate your vaccination and update our records.

**Resources and Support:**

We want everyone who works at NYP to have the facts and support needed to make an informed decision about vaccination. If you have questions or want to learn more about the vaccines and this process, we have several available sources of information:

- **Brief clinical videos on the COVID-19 vaccines -** NYP physicians discuss the vaccines and topics employees have said are of interest, including allergies, fertility, pediatrics, and COVID-19 variants.
- **COVID-19 Vaccination Program FAQs**

- **COVID-19 Vaccination Resource page**
- The WHS COVID-19 hotline: **646坼697坼9470**

In addition, if you have specific medical or religious concerns, we encourage you to discuss those with your physician or a leader in your faith.

We will continue to update you with news on COVID-19 and safety measures as we learn more. We expect to hear more from the U.S. government about recommendations related to booster shots in the coming months.

Thank you for all you are doing, every day, to protect the safety and well-being of our patients and one another. By participating in this program, you are helping us continue to lead the fight against the pandemic in our communities, and taking another important step as health care heroes.

Shaun E. Smith
Senior Vice President and Chief People Officer

Robert Holdom
Vice President, Total Rewards

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

This electronic message is intended to be for the use only of the named recipient, and may contain information that is confidential or privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error or are not the named recipient, please notify us immediately by contacting the sender at the electronic mail address noted above, and delete and destroy all copies of this message. Thank you.
code:d34y

--

**From:** COVID19Exemptions <COVID19Exemptions@wmchealth.org>
**Sent:** Friday, August 27, 2021 3:49 PM
**To:**                                                       COVID19Exemptions
<COVID19Exemptions@wmchealth.org>
**Cc:**
**Subject:** RE: #External                                  - Religious Exemption Application - Aug 26, 2021

On August 26, hospitals were notified that the New York State Department of Health was removing the option allowing hospitals to offer a religious exemption to health care workers from receiving the COVID-19 vaccination.  Accordingly, WMCHealth, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered .  All members of the workforce are reminded that they must be fully vaccinated by September 30, 2021, with the first dose of the vaccine received no later than September 27, 2021.   Just as a reminder due to the three or four week waiting period between shots for the Pfizer and Moderna vaccines, workforce members are encouraged to schedule their first vaccination well prior to September 30th deadline.

Thank you.

**From:**
**Sent:** Friday, August 27, 2021 1:18 PM
**To:** COVID19Exemptions <COVID19Exemptions@wmchealth.org>
**Cc:**
**Subject:** #External Email#                         Religious Exemption Application - Aug 26, 2021

Hello- I wanted to verify the following email with attached documentation was received.

Thank you,

Begin forwarded message:

**From:**                                                       >
**Date:** August 26, 2021 at 6:43:03 PM EDT
**To:** COVID19Exemptions@wmchealth.org
**Subject:**                         **Religious Exemption Application - Aug 26, 2021**

Scanned with TurboScan.

 ...External Email

**WMCHealth is operating under a heightened CYBER SECURITY THREAT LEVEL.** Do not click on links or open attachments unless you recognize the sender. Never provide your User ID or Password.



CASE N° [redacted]

CREATION DATE: 07/16/2021 19:30

# 2021 Covid-19 Vaccination Document

**Colleague ID**: [redacted]
**Organization:** SYR10 St Joseph Hospital Health Center
**Legal Full Name:** [redacted]
**Preferred Name:** [redacted]

**Is the 2021 Covid-19 Vaccination <u>Exemption</u> Approved?**
Yes

Dear Colleague,

On August 26, 2021, the New York State Department of Health (NYS DOH) issued emergency regulations that require all of our healthcare personnel be fully vaccinated against COVID-19.  Fully vaccinated is defined as two weeks after receiving (1) the second dose in a 2-dose series (mRNA) or (2) a single dose vaccine (Johnson & Johnson).

Under the emergency regulations the NYS DOH will not permit exemptions or deferrals for:

- · Sincerely held religious beliefs
- · Pregnancy
- · Planning to become pregnant

We are required to comply with state law. Therefore, any colleague who was previously approved for one of the above exemptions / deferrals will be required to provide proof of (1) first dose of a 2-dose series (mRNA) or (2) a single dose vaccine (Johnson & Johnson) no later than September 21, 2021.

**Action Needed**

# LIBERTY COUNSEL

| **DISTRICT OF COLUMBIA** | **FLORIDA** | **VIRGINIA** |
|---|---|---|
| 109 Second Street NE | PO Box 540774 | PO Box 11108 |
| Washington, DC 20002 | Orlando, FL 32854 | Lynchburg, VA 24506 |
| Tel 202-289-1776 | Tel 407-875-1776 | Tel 407-875-1776 |
| Fax 407-875-0770 | Fax 407-875-0770 | Fax 407-875-0770 |
| LC.org | | Liberty@LC.org |

**REPLY TO FLORIDA**

September 1, 2021

**<u>VIA FACSIMILE and EMAIL</u>**

Kathy Hochul
Governor
State of New York
NYS State Capital Building
Albany, NY 12224
Facsimile: (518) 474-1513

Letitia James
Office of the Attorney General
State of New York
28 Liberty Street
New York, NY 10005
Facsimile: (212) 416-6030
Email: civil.rights@ag.ny.gov

Howard A. Zucker
Commissioner
New York State Department of Health
Corning Tower
Empire State Plaza
Albany, NY 12237
Email: dohweb@health.ny.gov

> RE:  Unlawful Attempt to Remove Religious Exemptions and Accommodations from
> State's Mandatory COVID-19 Vaccine Policy

**<span style="color:red">THIS IS A LEGAL DEMAND LETTER. YOUR PROMPT RESPONSE IS
REQUIRED ON OR BEFORE TUESDAY, SEPTEMBER 7, 2021 AT 12:00
P.M. TO AVOID A LAWSUIT</span>**

Dear Governor Hochul, Commissioner Zucker, and Attorney General James:

Liberty Counsel is a national non-profit litigation, education and public policy organization
with an emphasis on First Amendment liberties, and a particular focus on religious freedom and
the sanctity of human life. Liberty Counsel has engaged in extensive litigation in the last year
regarding civil rights violations ostensibly justified by "COVID-19," and has had great success
holding both government entities and private actors accountable. *See, e.g., Harvest Rock Church,
Inc. v. Newsom*, 141 S. Ct. 1289 ( 2021) (permanent injunction granted and $1,350,000 in
attorney's fees awarded in *Harvest Rock Church, Inc. v. Newsom*, No. 2:20-cv-06414, C.D. Cal.,
May 17, 2021); *Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 889 (2020); *Elim Romanian*

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 2

*Pentecostal Church v. Pritzker,* 962 F.3d 341 (7th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020).

I write on behalf of numerous doctors, nurses, medical professionals, and other health care workers who have been forced to choose between the exercise of their sincerely held religious beliefs and feeding their families. No individual in New York should be forced into such an unconscionable decision. On August 16, 2021, the Governor of New York announced that the State will now require health care workers to accept or receive one of the three currently available COVID-19 vaccines in order to remain employed in the healthcare profession. *See* Office of Governor, *Governor Cuomo Announces COVID-19 Vaccination Mandate for Healthcare Workers* (Aug. 16, 2021), https://www.governor.ny.gov/news/governor-cuomo-announces-covid-19-vaccination-mandate-healthcare-workers (last visited Sept. 1, 2021) ((hereinafter "Mandatory COVID-19 Vaccination Policy"). The deadline for healthcare workers in New York to become fully vaccinated is Monday September 27, 2021. (*Id.*) The Mandatory COVID-19 Vaccination Policy applies to healthcare workers in all "hospitals, nursing homes, diagnostic and treatment centers, adult care facilities, certified home health agencies, hospices, long-term home health care programs, AIDS home care programs, licensed home care service agencies and limited licensed home care service agencies." (*Id.*)

Though the Governor's announcement initially indicated that there would be "limited exceptions for workers with religious or medical reasons" (*id.*), the State's Public Health and Health Planning Council eliminated such an exemption and accommodation for religious reasons on August 26th. *See* Spencer Tracy, *New York Department of Health eliminates religious exemption for healthcare workers who refuse vaccination* Localsyr.com (Aug. 31, 2021), https://www.localsyr.com/health/coronavirus/unvaccinated-healthcare-workers-could-lose-jobs-over-new-vaccine-mandate/ (last visited Sept. 1, 2021). In fact, under the State's rule change, the only exemptions permitted in the State of New York will be for medical reasons documented by a physician or certified nurse practitioner. *See* Section 2.61 Rule Change (Aug. 26, 2021), https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2021-08-26/docs/revised_proposed_regulation.pdf (last visited Sept. 21, 2021).

**As you are undoubtedly aware, while New York may choose not to provide certain religious exemptions in its state statutory scheme under some circumstances, <u>virtually every employee in New York – including the health care workers who have been subjected to the Mandatory COVID-19 Vaccination Policy – are protected by Title VII of the Civil Rights Act, which does provide for religious exemptions and accommodations, and mandates that employers provide them</u>.**

**New York cannot override federal law, or the federal Constitution. New York's purported guidance and attempts to remove federal protections and even religious exemptions available under federal law is causing direct and irreparable harm.**

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 3

     **We ask that you advise us and the public by noon on this <u>Tuesday September 7, 2021</u>, that New York will honor all federal protections and entitlements to accommodation for sincerely held religious beliefs. Your failure to timely and positively provide this assurance will indicate to us that New York is, in fact, continuing in its attempt to nullify and override legal protections afforded to religious objectors under federal law and the United States Constitution. In that event, we will proceed with an emergency legal action against New York and other entities to protect the fundamental rights of New York's citizenry.**

    A.     **New York's Attempt to Nullify, Override, Dissuade, Discourage, or Suppress Requests for Religious Accommodations and Exemptions is Plainly Inconsistent with Title VII; Denying Merited Religious Exemptions and Accommodations Would Violate Title VII; and New York is Not Permitted to Inquire into Correctness of an Employee's Sincerely Held Religious Beliefs.**

     As you are undoubtedly aware, Title VII of the Civil Rights Act prohibits every employer in New York from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin"). *See also EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) (same). And, **health care workers who are employed by the State of New York itself are also afforded the same protection under Title VII**. *See* 42 U.S.C. §2000e(f); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) (noting that States are also required to abide by Title VII's mandates in relation to their employees). Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. §2000e(j). Put simply, an employer violates Title VII if it makes employment decisions related to an employee based solely upon that individual's sincerely held religious beliefs. *Abercrombie & Fitch*, 575 U.S. at 773 ("**An employer may not make an applicant's religious practices, confirmed or otherwise, a factor in employment decisions**." (emphasis added)).

     Put simply, employers in New York and the State itself as an employer are mandated by Title VII to provide reasonable accommodations to employees with sincerely held religious objections to the COVID-19 vaccines. 42 U.S.C. §2000e(j). Indeed, hospitals have been sued and lost over forced influenza vaccines. *See, e.g. EEOC v. Mission Hosp., Inc.*, No. 1:16-cv-118-MOC-DLH, 2017 WL 3392783 (W.D.N.C. Aug. 7, 2017) (resulting in permanent injunction against Mission Hospital from improperly denying religious exemptions from mandatory vaccinations and requiring the hospital to pay $89,000 in damages); *United States v. Ozaukee Cnty.*, No 18-cv-343-pp (E.D. Wis. 2018) (resulting in a permanent injunction against the county for failure to grant religious exemptions from compulsory vaccinations and ordering county to pay $18,000 in damages to the employee).

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 4

As you also must know, **federal law and the United States' Constitution are supreme over any New York statute or edict, and New York cannot override, nullify, or violate federal law**. *See* U.S. Const. Art. VI, cl. 2 ("**This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (emphasis added)). "**This Court has long made clear that federal law is as much the law of the several States as are the laws passed by their legislatures**." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added). In fact, as the Supreme Court has made clear,

> **It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law.**

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (emphasis added) (cleaned up). **Thus, as you are undoubtedly aware, New York's constant refrain to its health care workers that there is no religious exemption to the Mandatory COVID-19 Vaccination Policy is legally incorrect. Federal law provides protection for every health care worker in New York with a religious objection, and requires accommodation from such mandates. New York simply has no authority to override this federal law.**

While there may be some who consider COVID-19 vaccines to be acceptable as a matter of religious doctrine or belief, no employer in New York – including the State – is permitted to determine which religious adherent has a correct understanding of religious doctrine or whether a health care worker's sincerely held religious beliefs are shared broadly among members of her faith. As the Supreme Court has recognized, an employee's "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). *See also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531 (1993) (same). Additionally, though membership in or adherence to the tenets of an organized religious is plainly sufficient to provide protection for an individual's sincerely held religious beliefs, it is not a necessary precondition. *See Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 834 (1989) ("**Undoubtedly, membership in an organized religious denomination, especially one with a specific tenet forbidding members to work on Sunday, would simplify the problem of identifying sincerely held religious beliefs, but we reject the notion that to claim the protection [for sincerely held religious beliefs], one must be responding to the commands of a particular religious organization**." (emphasis added)). *See also Office of Foreign Assets Control v. Voices in the Wilderness*, 329 F. Supp. 2d 71, 81 (D.D.C. 2004) (noting that the law provides protection for "sincerely held religious beliefs," "not just tenets of organized religion").

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 5

In fact, the law provides protection for sincerely held religious beliefs even when some members of the same religious organization, sect, or denomination disagree with the beliefs espoused by the individual. That some individuals may have sincerely held religious beliefs that differ from those espoused by health care providers with a sincere religious objection to the three currently available COVID-19 vaccines is irrelevant to whether those sincerely held religious beliefs are entitled to protection under Title VII. Indeed,

> **[i]ntrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences . . .** and **the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation**."

450 U.S. at 715-16 (emphasis added).

Moreover, the denial of an employee's request for a religious accommodation and exemption based upon the views of other individuals who do not share their sincere religious beliefs is unlawful. In fact, it is legally irrelevant what other individuals think or religiously believe. Once an employee has articulated her sincerely held religious objections to acceptance or receipt of the currently available COVID-19 vaccines, the proper inquiry is at its end.

Indisputably, all three of the currently available COVID-19 vaccines are produced by, derived from, manufactured with, tested on, developed with, or otherwise connected to aborted fetal cell lines. There is no question about the accuracy of this determination. The North Dakota Department of Health, in its literature for those considering one of the three, currently available COVID-19 vaccines, notes the following: "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (bold added).

The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (bold added).

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 6

The same is true of the Moderna and Pfizer/BioNTech mRNA vaccines. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf. The North Dakota Department of Health, in its handout literature on COVID-19 vaccines, notes: "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 10, 2021) (emphasis added).

Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, the sincerely held religious beliefs of the employees we represent compel them to abstain from accepting or injecting any of these products into their body, regardless of the perceived benefit or rationale. Thus, while there may be some faith leaders and other adherents whose understanding of Scripture is different, and who may be willing to accept one of the three currently available COVID-19 vaccines despite their connection with aborted fetal cell lines, official recognition of a sincerely held religious objection to acceptance or receipt of a vaccine that is inextricably intertwined with aborted fetal cell lines is unnecessary to warrant protection.

**In sum, denying a health care worker's request for a religious accommodation based upon the beliefs of others is unlawful, and refusing to grant a health care worker a religious accommodation at all is plainly a violation of Title VII, regardless of the New York rule or any other provision of New York law**.

B.    **The First Amendment to the United States Constitution Protects New York Healthcare Workers Employed by the State of New York.**

Further, all healthcare workers in the State of New York that are employed by the State also have protection for the exercise of their sincerely held religious beliefs under the First Amendment. It is beyond cavil that government employees do not shed their constitutional rights upon entering government employment. *See Martin v. Lauer*, 686 F.2d 24, 31(D.C. Cir. 1982) ("**government employees do not shed their first amendment rights on assuming public responsibilities**" (emphasis added)). Indeed, "**people do not give up their free-exercise or free-speech rights when they become government employees**." *Warnock v. Archer*, 380 F.3d 1076, 1082 (8th Cir. 2004) (emphasis added). *See also Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 675 (1996) ("The First Amendment's guarantee . . . protects government employees."); *Putnam v. Regional Sch. Unit 50*, No. 1:14-cv-154-JAW, 2015 WL 5440783, *14

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 7

(D. Me. Sept. 15, 2015) ("This guarantee applied to government employees as well, who should not 'suffer reprisal from a government official . . . because of the possible chilling effect against the free exercise of constitutional rights.'" Quoting *Rosaura Bldg. Corp. v. Mun. of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015)).

As the Supreme Court made clear last year, "**even in a pandemic, the Constitution cannot be put away and forgotten.**" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (emphasis added). Moreover, the Supreme Court has further noted that it will not "abandon the field when government officials with experts in tow seek to infringe a constitutionally protected liberty." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Gorsuch, J.). Indeed, **"[e]ven in times of crisis—perhaps *especially* in times of crisis—we have a duty to hold governments to the Constitution**." *Id.* (emphasis added).

Every healthcare worker employed by the State of New York has the First Amendment right to the free exercise of their religion, including whether to accept a forcible injection of a vaccine. Neither the flick of the Governor's pen, nor a purported public health emergency cannot override those cherished constitutional liberties.

### C.  New York Law Protects Every Individual's Right to Refuse Unwanted Medical Treatment.

New York law provides a long-established common law right to all individuals to refuse unwanted medical care. *See Rivers v. Katz*, 495 N.Y.2d 337, (N.Y. Ct. App. 1986) ("we recognized that a patient's right to determine the course of his medical treatment was paramount to what might otherwise be the doctor's obligation to provide medical care, and that **the right of a competent adult to refuse medical treatment must be honored, even though the recommended treatment may be beneficial or even necessary to preserve the patient's life**" (emphasis added)); *Randolph v. City of N.Y.*, 501 N.Y.S.2d 837, 841 (N.Y. Sup. Ct. 1986) (noting "the right of the competent adult to make his own decision . . . although the treatment may be beneficial or even necessary to preserve the patient's life"); *In re Westchester Cnty. Med. Ctr. on Behalf of Connor*, 72 N.Y.2d 517, (N.Y. Ct. App. 1988) ("It has long been the common-law rule in this State that a person has the right to decline medical treatment, even life-saving treatment").

As the California Supreme Court noted,

Anglo American law starts with the premise of thorough-going self-determination. It follows that **each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of lifesaving surgery, or other medical treatment**. A doctor might well believe that an operation or form of treatment is desirable or necessary, but the law does not permit him to substitute his own judgment for that of the patient by any form of artifice or deception.

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 8

*Thor v. Superior Ct.*, 855 P.2d 375, 381-82 (Cal. 1993) (emphasis added).

Put simply, "if the patient's informed consent is to have any meaning at all, **it must be accorded respect even when it conflicts with the advice of the doctor or the values of the medical profession as a whole**." *Thor*, 855 P.2d at 386. By mandating that all New York health care workers submit to one of the COVID-19 vaccines as a condition of retaining their ability to feed their families and earn a living, New York runs roughshod over this basic protection. If an employee decides for herself that she desires to abstain from forcible injunction of a COVID-19 vaccine that violates her sincerely held religious beliefs, that is her basic right. Put simply, "**[t]he forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty**." *Washington v. Harper*, 494 U.S. 210, 229 (1990) (emphasis added). The Governor's Mandatory COVID-19 Vaccination Policy blatantly ignores this well-established principle of bodily integrity and personal autonomy.

## CONCLUSION

**We await your prompt confirmation, on or before close of business on this Tuesday, Sept. 7, 2021, that New York will no longer purport to nullify or override the right of New York citizens to seek religious exemptions from vaccination requirements under federal and state law. Absent this confirmation, we will understand that New York is continuing in its attempt to nullify and override legal protections afforded to religious objectors, and we will proceed with an emergency legal action against New York and other entities to protect the fundamental rights of New York's citizenry. We will seek emergency injunctive relief and all other remedies available under law.**

Sincerely,

Daniel J. Schmid†

cc:
Laurian Cristea (Attorney admitted in New York)
Horatio G. Mihet

---

† Licensed in Virginia